CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

FEB - 3 2005

LODGED_____ REC'D_____
PAID_____ DOCKETED_____

1    Steven M. Hedberg, OSB No. 84244 (shedberg@perkinscoie.com)
     Douglas R. Pahl, OSB No. 95047 (dpahl@perkinscoie.com)
2    Jeanette L. Thomas, OSB No. 98042 (jthomas@perkinscoie.com)
     PERKINS COIE LLP
3    1120 N.W. Couch Street, Tenth Floor
     Portland, OR 97209-4128
4    Telephone: (503) 727-2000

5
           Of Attorneys for Committee of Parishioners
6

7

8

9

10                   UNITED STATES BANKRUPTCY COURT

11                      FOR THE DISTRICT OF OREGON

12   In re                              │ NO. 04-37154-elp11
13   ROMAN CATHOLIC ARCHBISHOP OF       │
14   PORTLAND IN OREGON, and successors, a │
     corporation sole, dba the ARCHDIOCESE OF │
15   PORTLAND IN OREGON,                │

16           Debtor.                    │

17   ────────────────────────────────  │

18   TORT CLAIMANTS COMMITTEE,          │ Adversary Proceeding
                                        │ No. 04-3292-elp
19           Plaintiff,                 │
                                        │ **MEMORANDUM IN SUPPORT OF**
20   v.                                 │ **MOTION TO INTERVENE**

21   ROMAN CATHOLIC ARCHBISHOP OF       │
     PORTLAND IN OREGON, and successors, a │
22   corporation sole, dba the ARCHDIOCESE OF │
     PORTLAND IN OREGON,                │
23
             Defendant.                 │
24

25

26

PAGE
        **MEMORANDUM IN SUPPORT OF MOTION**

                                        **Perkins Coie LLP**
                                 1120 N.W. Couch Street, Tenth Floor
                                     Portland, OR 97209-4128
                                     Phone: (503) 727-2000
                                      Fax: (503) 727-2222

[54319-0001-000000/PA042610.050]

# CONTENTS

INTRODUCTION ............................................................................................................1

FACTS AND BACKGROUND .....................................................................................1

ARGUMENT .................................................................................................................3

    A.    The Committee of Parishioners is Entitled to Intervene as a Matter of Right...................................................................................................................3

          1.    Significant Protectable Interest ...............................................4

          2.    Disposition of the Action Will Impede or Impair the Applicant's Ability to Protect Its Interest....................................................8

          3.    The Request has Been Timely Made ......................................9

          4.    The Existing Representation May be Inadequate ..................9

    B.    Permissive Intervention ..........................................................................11

CONCLUSION.............................................................................................................12

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1

**TABLE OF AUTHORITIES**

2

3    **Cases**

4    *Agan v. U.S. Nat'l Bank,* 227 Or. 619, 363 P.2d 765 (1961) ......................................6

5    *Allen v. Hendrick,* 104 Or. 202, 206 P.2d 733 (1922) .............................................6

6    *Beach v. Holland,* 172 Or. 396, 142 P.2d 990 (1943)...............................................6

7    *Belton v. Buesing,* 240 Or. 399 (1965)...................................................................6, 7

8    *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914 (1979)................................6

9    *County of Fresno v. Andrus,* 622 F.2d 436 (9th Cir. 1980) ......................................5

10    *Donnelly v. Glickman,* 159 F.3d 405 (9th Cir. 1998) .......................................4, 5, 8

11    *Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489 n.8 (9th Cir.
12        1995) ....................................................................................................................13

13    *Good Samaritan Hosp. and Med. Ctr. v. U.S. Nat'l Bank,* 246 Or. 478, 425 P.2d
         541 (1967)...............................................................................................................7
14

15    *Greene v. United States,* 996 F.2d 973 (9th Cir. 1993) ............................................5

16    *Hollbrook v. Hendricks' Estate,* 175 Or. 159, 152 P.2d 573 (1944)........................6

17    *Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392 (9th Cir. 1995)........................3

18    *In re Coupon Clearing Services, Inc.,* 113 F.3d 1091 (9th Cir. 1997) .....................5

19    *In re Sale Guaranty Corp.,* 220 B.R. 660 (9th Cir. BAP 1998) ...............................6

20    *Kootenai Tribe of Idaho v. Veneman,* 313 F.3d 1094 (2002) .................................11

21    *Lake Investors v. Egidi Development,* 715 F.2d 1256 (7th Cir. 1983) .....................4

22    *Lozano v. Summit Prairie Cattlemens' Assoc.,* 155 Or. App. 32 (1998) .................6

23    *Mitsui Mfrs. Bank v. Unicom Computer Corp.,* 13 F.3d 321 (9th Cir. 1994)...........6

24    *Natural Resources Defense Council v. Costle,* 561 F.2d 904 (D.C. Cir. 1977).......9

25    *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825 (9th Cir. 1996).......9

26    *Pennoyer v. Wadhams,* 20 Or. 274, 25 P. 720 (1891)..............................................7

PAGE

**ii - MEMORANDUM IN SUPPORT OF MOTION**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[54319-0001-000000/PA042610.050]

1   *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434 (1940)................................................11

2   *Sierra Club v. Espy*, 18 F.3d at 1207 ........................................................................9

3   *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810 (9th Cir. 2001)..............4, 10

4   *Trbovich v. United Mine Workers of America*, 404 U.S. 528 n.10 (1972) ...............................9

5   *U.S. ex. rel. McGough v. Covington Tech.,* 967 F.2d 1391 (9th Cir. 1992) ............................4

6   *U.S. v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002)........................................................5

7   *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004).........................................4

8

9   *Venegas v. Skaggs*, 867 F.2d 527, *aff'd*, 495 U.S. 82 (1989)...................................................11

**Other Authorities**

RESTATEMENT (SECOND) OF TRUSTS § 27(1), cmt. a. (2003) ...................................................6

RESTATEMENT (SECOND) OF TRUSTS § 28, cmt. i. (2003)........................................................7

RESTATEMENT (SECOND) OF TRUSTS § 348 (2003)..................................................................7

**Rules**

11 U.S.C. § 541.............................................................................................................5

11 U.S.C. § 541(d).........................................................................................................5

Fed. R. Civ. P. 24..........................................................................................................3

Fed. R. Civ. P. 24(a)(2).............................................................................................3, 4

Fed. R. Civ. P. 24(b)(1)..............................................................................................11

Fed. R. Civ. P. 24(b)(2)..............................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**iii - MEMORANDUM IN SUPPORT OF MOTION**

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[54319-0001-000000/PA042610.050]

# INTRODUCTION

This memorandum of law is filed in support of the motion to intervene as third party defendants filed by the Committee of Catholic Parishes, Parishioners and Interested Parties in the Archdiocese of Portland in Oregon (the "Committee of Parishioners") comprised of sixty-nine parish communities within the territory of the Archdiocese of Portland in Oregon. The Committee represents the interests of parishes, parishioners, beneficiaries, donors, settlers and other parties with significant interests in the above-captioned litigation.

## FACTS AND BACKGROUND

The following represents a summary of factual information taken from the declarations filed in support of the Motion, including the Declaration of John Rickman, the Declaration of Cathy Holland, the Declaration of Glenn Pelikan, the Declaration of Johnston Mitchell, and the Declaration of Mary-Helen Brennan.

Since the 1830s, when the first Catholics arrived in the Oregon territory, Catholic parishioners in western Oregon practiced their religion by attending Mass and by otherwise advancing the religious and charitable missions of the Catholic faith. In 1839, Oregon's first parish was established in St. Paul, Oregon. Since then, 123 parishes have been established through the sustained efforts of the faithful.

Throughout this history, parishes and schools have been built through the efforts of parish communities. In some instances, land has been donated for parish purposes. In other instances, land has been purchased by the efforts of parishioners through fundraising and donations. Improvements, such as the construction of chapels, parish halls, rectories, schools, cemetery facilities and others, have been funded and accomplished by parishioners or other donors. Many of the funds were raised by parishioner-initiated efforts, such as auctions, sales and dinners. Parishioners made these donations and efforts, and solicited them from others, for the benefit of their parish communities and their missions, not the Archdiocese.

PAGE

**1 - MEMORANDUM IN SUPPORT OF MOTION**

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[54319-0001-000000/PA042610.050]

1        Parishes placed funds generated by fundraising and donations in the custody of the

2    Archdiocese. The Archdiocese has separately tracked and identified the funds belonging to each

3    parish in funds entitled Archdiocesan Loan and Investment Program ("ALIP"), Catholic

4    Education Endowment Funds ("CEEF") and other identified funds. The Archdiocese has

5    identified itself as the fiduciary of these funds and has treated the funds as the separate property

6    of each parish, as required by the laws of the Catholic Church, without which parishioner

7    donations would cease. The parish communities also regard these funds as parish property

8    available only for the purposes and missions of the parish community.

9        Those in the parish communities, including members of the Committee of Parishioners

10   and their constituents, use these parish properties for religious worship, the baptism of their

11   children, the education of their youth, the marriage of their young people and the burial of their

12   loved ones. In addition to the beneficial use of the Parish properties for the parishioners' own

13   religious purposes, these places are integral to the exercise of religious practices that benefit

14   others, including the carrying out of religious and charitable missions, such as programs to aid

15   the ill, elderly, disadvantaged, homeless and hungry.

16       On July 6, 2004, the Roman Catholic Archbishop of Portland in Oregon (the "Debtor" or

17   "Archdiocese") filed its Chapter 11 petition. In the weeks that followed, a number of

18   parishioners from parishes in western Oregon gathered informally to discuss the significance of

19   the filing and likely process before the Bankruptcy Court. These discussions continued into

20   August 2004, when the Committee of Parishioners was initially formed. The purpose of the

21   Committee of Parishioners is to: (1) represent the interests of parishes, parishioners and other

22   interested parties in the bankruptcy case; (2) promote and preserve parish ministries and

23   missions; and (3) participate in the bankruptcy case in relation to the proper treatment and

24   ownership of parish, parishioner and/or interested party assets as distinguished from

25   Archdiocesan assets. Rickman Decl., Ex. A, p 1. The Committee of Parishioners now represents

26

PAGE

**2 - MEMORANDUM IN SUPPORT OF MOTION**

[54319-0001-000000/PA042610.050]

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1  69 parish communities that include more than half of the 389,000 parishioners in the

2  Archdiocese, with the direct participation of 134 parishioners.

3       The Archdiocese has taken the position in its schedules and Statement of Financial

4  Affairs that certain assets in its possession or titled in its name are not property of the estate but

5  instead are properties held for others.  The others for whom these assets are held are the members

6  and constituents of the Committee of Parishioners.

7       The Committee of Tort Claimants moved for summary judgment on November 13, 2004.

8  In response to the issues raised by that motion, the Committee of Parishioners launched a

9  significant effort to document the histories of its members.  Pursuant to the Court's instructions,

10  the Archdiocese worked with the Committee of Parishioners and selected nine parishes and one

11  school that will be the focus of the pending summary judgment motion.  Seven of the ten

12  parishes selected are members of the Committee of Parishioners.  The Committee of Parishioners

13  is working with the representatives and others in the selected parish communities to prepare the

14  response to the summary judgment motion.

15       Pursuant to the Court's order dated December 8, 2004, the Committee of Parishioners is

16  to file its motion to intervene on or before February 3, 2005.

17                            **ARGUMENT**

18  **A.    The Committee of Parishioners is Entitled to Intervene as a Matter of Right**

19       Intervention is permitted as "of right" when "the applicant claims an interest relating to

20  the property or transaction which is the subject of the action and the applicant is so situated that

21  the disposition of the action may as a practical matter impair or impede the applicant's ability to

22  protect that interest, unless the applicant's interest is adequately represented by existing parties."

23  Fed. R. Bankr. P. 7024 applying Fed. R. Civ. P. 24(a)(2).

24       Courts are to construe Rule 24 "broadly in favor of the applicants."  *Idaho Farm Bureau*

25  *Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995).  "In determining whether intervention is

26  appropriate, courts are guided primarily by practical and equitable considerations, and the

PAGE

**3 - MEMORANDUM IN SUPPORT OF MOTION**

[54319-0001-000000/PA042610.050]

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1   requirements for intervention are broadly interpreted in favor of intervention." *United States v.*

2   *Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

3          In this bankruptcy case, this Court has set forth the well accepted test for intervention.

4   Intervention should be permitted if the party seeking intervention can show that:

5                (1) it has a 'significant protectable interest' relating to the property or
               transaction that is the subject of the action; (2) the disposition of the action
6              may, as a practical matter, impair or impede the applicant's ability to
               protect its interest; (3) the application is timely; and (4) the existing parties
7              may not adequately represent the applicant's interest.

8   *In re Roman Catholic Archbishop of Portland in Oregon and Successors (Roman Catholic*

9   *Archbishop of Portland in Oregon and Successors v. Ace USA, Inc.)*, Order Denying Tort

10  Claimants Committee's Motion to Intervene, Docket No. 82 at * 2, (November 29, 2004)

11  (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)) (hereinafter, "Insurance

12  Intervention Order"). *See also United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir.

13  2004); *U.S. ex. rel. McGough v. Covington Tech.*, 967 F.2d 1391 (9th Cir. 1992).

14         A motion to intervene as of right "should not be [denied] unless it appears to a certainty

15  that the intervenor is not entitled to relief under any set of facts which could be proved under the

16  complaint [or counterclaim]." *Lake Investors v. Egidi Development*, 715 F.2d 1256, 1258 (7th

17  Cir. 1983). In construing an applicant's motion to intervene, courts are "required to accept as

18  true the non-conclusory allegations made in support of an intervention motion." *Southwest*

19  *Center for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

20  **1.    Significant Protectable Interest**

21         In determining whether a movant has demonstrated the requisite interest in the subject

22  matter of the action, a court should define "interest" broadly. *Lake Investors*, 715 F.2d at 1258.

23  In order to determine whether an interest is sufficient for purposes of Rule 24(a)(2), a court must

24  consider the legal validity, cognizableness, and sufficiency of the movant's underlying claim.

25         "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest

26  that is protected under some law, and (2) there is a 'relationship' between its legally protected

PAGE

**4 - MEMORANDUM IN SUPPORT OF MOTION**

[54319-0001-000000/PA042610.050]

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone: (503) 727-2000
Fax:  (503) 727-2222

1   interest and the plaintiff's claims." *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir 1998). The

2   relationship requirement is satisfied "if the resolution of the plaintiff's claims actually will affect

3   the applicant." *Id.* at 410.

4          The "interest" test is not a clear-cut or bright-line rule, because "[n]o specific legal or

5   equitable interest need be established." *U.S. v. City of Los Angeles,* 288 F.3d 391, 398 (9th Cir.

6   2002) (quoting *Greene v. United States,* 996 F.2d 973, 976 (9th Cir. 1993). Instead, courts are to

7   make a "practical, threshold inquiry." *Id.* Indeed, the test "is primarily a practical guide to

8   disposing of lawsuits by involving as many apparently concerned persons as is compatible with

9   efficiency and due process." *Id.* quoting *County of Fresno v. Andrus,* 622 F.2d 436, 438 (9th Cir.

10  1980).

11         In this proceeding, the Committee of Parishioners will allege that: (1) significant portions

12  of the "Disputed Property" (as defined in the Complaint) are not property of the estate under

13  11 U.S.C. § 541 because the Archdiocese holds only legal title to, and not an equitable interest

14  in, such property; (2) the members and constituents of the Committee of Parishioners, and their

15  predecessors, donated significant portions of the Disputed Property with intent that the property

16  be dedicated to the religious and charitable purposes of the parish and the parish community, and

17  that such donations and intentions create charitable trusts enforceable under Oregon law; (3) the

18  members and constituents of the Committee of Parishioners are beneficiaries of the charitable

19  trusts mentioned above and possess enforceable rights under Oregon law to enforce the trust.

20         Section 541 of the Bankruptcy Code recognizes a debtor's limited property interests in the

21  definition of property of the bankruptcy estate. *In re Coupon Clearing Services, Inc.,* 113 F.3d

22  1091 (9th Cir. 1997). Section 541(d) states:

23              Property in which the debtor holds, as of the commencement of the case,
                only legal title and not an equitable interest ... becomes property of the
24              estate ... only to the extent of the debtor's legal title to such property, but
                not to the extent of any equitable interest in such property that the debtor
25              does not hold.

26

PAGE

**5 - MEMORANDUM IN SUPPORT OF MOTION**

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

"The nature and extent of a debtor's interest in property is determined by state law, with the estate having no greater rights in property than those held by the debtor prior to bankruptcy." *Id. citing Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918 (1979). Property held by the debtor in trust is not property of the estate. *Mitsui Mfrs. Bank v. Unicom Computer Corp.,* 13 F.3d 321, 324 (9th Cir. 1994). *See also In re Sale Guaranty Corp.,* 220 B.R. 660 (9th Cir. BAP 1998).

Under Oregon law, an express trust is one in which the circumstances give rise to an inference that the grantor had the affirmative intent to create a trust. *Lozano v. Summit Prairie Cattlemens' Assoc.,* 155 Or. App. 32, 37 (1998); *Belton v. Buesing,* 240 Or. 399, 405-06 (1965). Additionally, express trusts require the supposed trustee to have received property under conditions that impose a fiduciary duty to the grantor or a third person. *Lozano,* 155 Or. App. at 38. An express trust may arise from conduct alone where there is no expression of intent and where the circumstances lead to the conclusion that a trust was or would have been intended by the grantor if he or she had thought about it. *Belton,* 240 Or. at 406-07.

In determining whether assets should be subject to a trust under Oregon law, "the guiding principle is that the court should give effect to the intent of the person creating the fund if it is possible to learn from competent evidence what that intent was." *Beach v. Holland,* 172 Or. 396, 142 P.2d 990 (1943). Where the written evidence is ambiguous, resort may be had to extrinsic evidence to determine the intent of the parties. *Hollbrook v. Hendricks' Estate,* 175 Or. 159, 169, 152 P.2d 573 (1944). No particular form of words is required to create a trust, and whether one exists is to be ascertained from the intention of the party as manifested by the words used and the surrounding circumstances. *Allen v. Hendrick,* 104 Or. 202, 206 P.2d 733 (1922).

Trusts may be created for charitable purposes. RESTATEMENT (SECOND) OF TRUSTS § 27(1), cmt. a. (2003); *Agan v. U.S. Nat'l Bank,* 227 Or. 619, 628, 363 P.2d 765 (1961). A charitable trust is:

PAGE

**6 - MEMORANDUM IN SUPPORT OF MOTION**

[54319-0001-000000/PA042610.050]

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1   a fiduciary relationship with respect to property arising as a result of a
    manifestation of an intention to create it, and subjecting the person by
2   whom the property is held to equitable duties to deal with the property for
    a charitable purpose.
3

4   RESTATEMENT (SECOND) OF TRUSTS § 348 (2003).  A charitable trust may be created "where the

5   beneficiary is an association with varying membership whose purposes are charitable." *Good*

6   *Samaritan Hosp. and Med. Ctr. v. U.S. Nat'l Bank*, 246 Or. 478, 482, 425 P.2d 541 (1967).

7   "Trusts for the support of public worship and religious instruction have always been held

8   charitable." *Pennoyer v. Wadhams*, 20 Or. 274, 25 P. 720 (1891).  According to the Oregon

9   Supreme Court, gifts for the erection, maintenance and repair of churches, the maintenance of

10  worship, the support of clergymen, the promotion and promulgation of religious doctrines, the

11  aid of missionary, bible and other religious societies, and "all other objects and purposes which

12  are really religious," are charitable purposes.  *Id.  See also* RESTATEMENT (SECOND) OF

13  TRUSTS § 28, cmt. i. (2003).

14  The evidence, as set forth in part in the declarations filed in support of the Motion, will

15  overwhelmingly demonstrate that parishioners have made donations to their individual parishes

16  and schools with the intent and expectation that their donations will be devoted to and held for

17  the benefit of their parish communities and associated missions.  The Archdiocese agrees that it

18  holds only legal title and not the beneficial interest in the Disputed Properties.  The Committee

19  of Parishioners will demonstrate that the Archdiocese has long conducted itself in a manner

20  consistent with the presence of a charitable religious trust.

21  Although documents exist to clearly demonstrate many charitable trusts in favor of

22  individual parishes, Oregon law allows a trust to be inferred from the surrounding circumstances

23  or by conduct alone.  *Belton*, 240 Or. at 406-07.  The Committee of Parishioners will present

24  substantial documentary and nondocumentary evidence to support the existence of enforceable

25  charitable trusts.  The interests of members of the Committee of Parishioners in the enforcement

26  of the trust alleged here are legally enforceable under Oregon law.

PAGE

**7 - MEMORANDUM IN SUPPORT OF MOTION**

[54319-0001-000000/PA042610.050]

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1   There is a direct connection between the present adversary proceeding and the interests

2   the Committee of Parishioners seeks to protect. *Donnelly,* 159 F.3d 409.  Granting plaintiff's

3   claims in this proceeding will place properties and funds which are now held in trust for the

4   benefit of parish communities to be made available to creditors in the main bankruptcy case.

5   Such a result places these assets at significant risk, a risk that may result in the loss of the assets

6   and diversion of the assets from their intended purposes.

7   The Committee of Parishioners and its constituents possess a significant protectable

8   interest in the outcome of the present proceeding sufficient to support intervention.

9   **2.   Disposition of the Action Will Impede or Impair the Applicant's Ability to Protect Its Interest**

10

11   The second requirement has also been met.  The central issue in this adversary

12   proceeding is whether the Disputed Property is owned by the Archdiocese or held in trust for

13   parishioners.  If the Archdiocese owns the Disputed Property outright, and not in trust for the

14   parish communities, the Tort Committee believes the property should be used to satisfy the

15   claims of the tort claimants and other creditors.  This may ultimately require that assets be

16   liquidated.

17   Any determination that the Disputed Property is property of the estate will necessarily

18   "impair or impede" the ability of members of the parish communities to protect their interests in

19   the Disputed Property.  Any determination made without the participation of the Committee of

20   Parishioners would arguably be binding on the Committee of Parishioners and its constituents in

21   subsequent proceedings.  This is likely the view of the Tort Claimants Committee.  Certainly, a

22   *stare decisis* impact on parishioner interests will result from this proceeding, with or without

23   their participation.  As a result, it is imperative that the Committee of Parishioners be allowed to

24   actively participate in the adversary proceeding.

25

26

PAGE

**8 - MEMORANDUM IN SUPPORT OF MOTION**

[54319-0001-000000/PA042610.050]

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1    **3.    The Request has Been Timely Made**

2         The timing of the Motion has been specifically contemplated by the Court and the parties

3    at various hearings.  As a result, this Court directed that the Motion be filed on or before

4    February 3, 2005.  See Order dated December 8, 2004 (Docket No. 36).  The Motion has been

5    filed within the time period established by the Court and therefore the request is timely.

6    **4.    The Existing Representation May be Inadequate**

7         The fourth requirement is that the proposed intervenor must demonstrate that

8    representation through existing parties "may be" inadequate.  The "burden of that showing

9    should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528,

10   538-39 n.10 (1972); *accord Sierra Club v. Espy*, 18 F.3d at 1207.

11        Again, as observed by this Court in this bankruptcy case:

12            In determining whether an applicant's interest is adequately represented by
             the parties, [the court considers] (1) whether the interest of a present party
13           is such that it will undoubtedly make all the intervenor's arguments; (2)
             whether the present party is capable and willing to make such arguments;
14           and (3) whether the would-be intervenor would offer any necessary
             elements to the proceedings that other parties neglect.
15

16   Insurance Intervention Order, at * 2 (quoting *Northwest Forest Resource Council v. Glickman*,

17   82 F.3d 825, 838 (9th Cir. 1996)).

18        While there is commonality of interests between the Archdiocese and the parish and

19   parishioner applicants, partial commonality "does not necessarily ensure agreement in all

20   particular respects about what the law requires." *Natural Resources Defense Council v. Costle*,

21   561 F.2d 904, 912 (D.C. Cir. 1977) (allowing industry to intervene in environmental

22   organization's suit against Environmental Protection Agency).

23        The Committee of Parishioners and its members offer a unique perspective to the issues

24   raised in the adversary proceeding.  Canon Law is likely to play an interesting role in the

25   resolution of the issues raised in this proceeding.  The Tort Claimants Committee has indicated

26   Canon Law should play no role.  The Archdiocese has indicated it must play a central role.

PAGE

**9 - MEMORANDUM IN SUPPORT OF MOTION**

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[54319-0001-000000/PA042610.050]

1    While the Committee of Parishioners will assert that Canon Law should play an important role in

2    this proceeding, it is worthy of note that, outside of the bankruptcy process, Canon Law would

3    form the basis for resolving disputes between the Archdiocese and parishes regarding the

4    ownership of property such as the Disputed Property. Civil law would not apply.

5         In this proceeding, a civil court, rather than Church tribunals, is being called upon to

6    resolve this matter. It is clear that civil law will play an important role in the Court's resolution

7    of this matter. As stated above, the Committee of Parishioners will assert that trusts have been

8    created at each parish in favor of the parish communities. Parish communities are comprised

9    primarily of parishioners but also include nonparishioners who benefit from the missions of the

10    parish. The Committee of Parishioners will also assert that parishioners possess rights to enforce

11    these trusts. Under Canon Law, the clergy are to play the central role in the administration of

12    parish properties. In light of this Canon Law structure, the Committee of Parishioners believes

13    the Archdiocese is unlikely advance a number of arguments in this proceeding that suggest

14    parishioners possess civilly enforceable rights in relation to parish property. In this regard, the

15    ultimate objective of the Committee of Parishioners differs in a fundamental sense from that of

16    the Archdiocese. *Southwest Center*, 268 F.3d at 823 ("ultimate objective" presumption of

17    adequacy rebutted because parties do not have sufficiently congruent interests).

18         The Committee of Parishioners and the Archdiocese also appear before the Court with

19    differing duties and obligations. Foremost among these is the fiduciary obligation owed by the

20    Archdiocese, as the Debtor, to its creditors. The Committee of Parishioners possesses no such

21    obligation or duty. It is very possible that the Archdiocese's fiduciary obligations will conflict

22    with the interests of the Committee of Parishioners and its members. Further, if the Tort

23    Claimants successfully reach properties of some parishes, these Parish communities will have

24    claims adverse to the Debtor. It is unrealistic to expect the Archdiocese to aggressively represent

25    interests that could result in claims against it. Finally, the Tort Claimants Committee has

26    asserted that the Archdiocese must be estopped from asserting a number of legal arguments in

**10 - MEMORANDUM IN SUPPORT OF MOTION**

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1   this proceeding because of positions previously taken by the Archdiocese in separate legal

2   proceedings. The Committee of Parishioners is not encumbered by such estoppel contentions

3   and may therefore be able to advance positions unavailable to the Archdiocese.

4        For these reasons, the interests of the Committee of Parishioners and its members may

5   not be adequately represented in this adversary proceeding by the Archdiocese.

6   **B.    Permissive Intervention**

7        Even if the Court were to deny intervention of right under Rule 24(b)(1), it may grant

8   permissive intervention under Rule 24(b)(2). An applicant seeking to intervene under Rule

9   24(b)(2) must show that (1) there is grounds for jurisdiction, (2) its application is timely, and

10  (3) its claim or defense and the main action have a question of law or fact in common. *Venegas*

11  *v. Skaggs*, 867 F.2d 527, (1989).

12       In the Ninth Circuit, the threshold for permissive intervention under Rule 24(b)(2) is

13  minimal. Rule 24(b)(2) "plainly dispenses with any requirement that the intervenor have a direct

14  personal or pecuniary interest in the subject of the litigation." *Kootenai Tribe of Idaho v.*

15  *Veneman*, 313 F.3d 1094, 1108 (2002) (quoting *SEC v. U.S. Realty & Improvement Co.*, 310

16  U.S. 434, 459 (1940)). Thus, close scrutiny of an applicant's interests is "inappropriate;" the only

17  question to be resolved is "whether the applicants to intervene assert a claim or defense in

18  common with the main action." *Id.* at 1109-10. Thus, so long as the applicant "asserts defenses

19  . . . directly responsive to the claims for injunction asserted by plaintiffs," the court has discretion

20  to permit the applicant to participate. *Id.* at 1110.

21       As set forth above, allowing the Committee of Parishioners to intervene would be an

22  entirely appropriate exercise of the Court's discretion. The issues involved in this adversary

23  proceeding go to the heart of the bankruptcy case and directly impact both the parishes and the

24  parishioners. How these issues are resolved could fundamentally alter the Catholic Church in

25  western Oregon for years to come. Given the significant impact that any ruling will have on the

26  parishes and parishioners and their activities and charitable works in the future, permitting them

PAGE

**11 - MEMORANDUM IN SUPPORT OF MOTION**

[54319-0001-000000/PA042610.050]

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1    to intervene will undoubtedly benefit the process by having the active involvement of the parties

2    most directly affected by the proceeding.  Moreover, if discussions toward a global resolution of

3    the case and a plan of reorganization were initiated, the active and organized participation of

4    parishes and parishioners would enhance the ability of those discussions to be successful.

5           Finally, allowing the Committee of Parishioners to intervene will not unduly delay the

6    proceedings or prejudice the rights of the original parties.  In fact, allowing the Committee of

7    Parishioners to participate will benefit the process because the Committee of Parishioners is

8    uniquely situated to coordinate and assist in the assembling of factual information relating to the

9    history, maintenance and operations of each of the member parishes.  This has been tested in the

10    present proceeding in relation to the gathering of parish histories to respond to summary

11    judgment.

12           The Committee of Parishioners asserts defenses directly responsive to the claims asserted

13    by the Tort Claimants Committee.  The Committee of Parishioners requests that the Court

14    exercise its discretion to permit the Committee of Parishioners to participate as intervenors in

15    this proceeding.

16                       **CONCLUSION**

17           Few proceedings have the potential to affect Catholic parishes more than does this one.

18    The Committee of Parishioners respectfully requests the Court allow it to intervene of right, a

19    result amply justified by the facts and the applicable law.  In the alternative, the Court should

20    exercise its discretion to grant permissive intervention.

21           As stated by the Ninth Circuit,

22              A liberal policy in favor of intervention serves both efficient resolution of
                    issues and broadened access to the courts.  By allowing parties with a
23              *practical* interest in the outcome of a particular case to intervene, we often
                    prevent or simplify future litigation involving related issues; at the same
24              time, we allow an additional interested party to express its views before
25              the court.

26

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1    *Forest Conservation Council v. U.S. Forest Serv.,* 66 F.3d 1489, 1496 n.8 (9th Cir. 1995)

2    (internal quotations omitted).

3          DATED:  February 3, 2005.

4                              **PERKINS COIE** LLP

5

6                    By _____
                        Steven M. Hedberg, OSB No. 84244

7                        Douglas R. Pahl, OSB No. 95047
                        Jeanette L. Thomas, OSB No. 98042

8                    Of Attorneys for Committee of Parishioners

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE

**13 - MEMORANDUM IN SUPPORT OF MOTION**

[54319-0001-000000/PA042610.050]