**Albert N. Kennedy**, OSB No. 82142
    Direct Dial:  (503) 802-2013
    Facsimile:   (503) 972-3713
    E-Mail:      al@tonkon.com
**Timothy J. Conway**, OSB No. 85175
    Direct Dial:  (503) 802-2027
    Facsimile:   (503) 972-3727
    E-Mail:      tim@tonkon.com
**Michael W. Fletcher**, OSB No. 01044
    Direct Dial:  (503) 802-2169
    Facsimile:   (503) 972-3869
    E-Mail:      michaelf@tonkon.com
**TONKON TORP** LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

    Attorneys for Tort Claimants Committee

CLERK US BANKRUPTCY COURT
DISTRICT OF OREGON

'05 MAY -5 P3:50

LODGED_____REC'D____
PAID_____DOCKETED____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | ) |
| | ) |
| ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, AND SUCCESSORS, A CORPORATION SOLE, dba the ARCHDIOCESE OF PORTLAND IN OREGON, | ) ) ) ) ) ) ) |
| Debtor. | ) ) |
| ———————————————— | ) |
| TORT CLAIMANTS COMMITTEE, | ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, AND SUCCESSORS, A CORPORATION SOLE, dba the ARCHDIOCESE OF PORTLAND IN OREGON, | ) ) ) ) ) |
| Defendant. | ) ) |

Case No. 04-37154-elp11

Adv. Proc. No. 04-03292-elp

**TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

* * *

1

## **TABLE OF CONTENTS**

2

I.      INTRODUCTION ....................................................................................................1

II.     OVERVIEW OF THE FIRST AMENDMENT ........................................................2

        A.      THE RELIGION CLAUSES ........................................................................2

        B.      CASES INVOLVING JUDICIAL INQUIRY INTO RELIGIOUS
                INSTITUTIONS ..........................................................................................3

III.    THE COURT HAS SUBJECT MATTER JURISDICTION.  INDEED, THE
        RELIGION CLAUSES REQUIRE THE COURT TO DECIDE THESE
        PROPERTY OWNERSHIP ISSUES ........................................................................4

        A.      THE COURT HAS SUBJECT MATTER JURISDICTION............................5

                1.      This Challenge to Debtor's Third Affirmative Defense is Ripe.............5

                2.      The Ecclesiastical Abstention Cases are Irrelevant Because the
                        Dispute is Between a Religious Institution and Third-Party
                        Creditors....................................................................................7

                3.      There is no Dispute over Religious Doctrine........................................9

                4.      Even the Ecclesiastical Abstention Cases Provide That Courts
                        May Apply Neutral Principles of Law to Decide Intrachurch
                        Disputes That Do Not Hinge on Religious Doctrine or Practice...........9

        B.      ALLOWING DEBTOR TO UNILATERALLY DETERMINE WHAT
                CONSTITUTES ITS BANKRUPTCY ESTATE WOULD VIOLATE
                THE ESTABLISHMENT CLAUSE .............................................................10

        C.      THE *LEMON V. KURTZMAN* STANDARD IS MET ...................................13

IV.     DEBTOR'S FIFTH AFFIRMATIVE DEFENSE IS WITHOUT MERIT TO
        THE EXTENT IT INVOKES THE FREE EXERCISE CLAUSE OF THE
        FIRST AMENDMENT AND THE RELIGIOUS FREEDOM
        RESTORATION ACT...............................................................................................14

        A.      THE FREE EXERCISE CLAUSE DOES NOT PRECLUDE
                APPLICATION OF NEUTRAL PRINCIPLES OF LAW TO THE
                REAL PROPERTY ISSUE..........................................................................14

        B.      RFRA HAS NO BEARING ON THIS CASE................................................16

V.      THE OREGON CONSTITUTION AND O.R.S. § 65.042 HAVE NO
        BEARING ON THIS CASE.......................................................................................19

i

A.    DEBTOR'S STATE CONSTITUTIONAL ARGUMENTS FAIL FOR
      THE SAME REASONS ITS FIRST AMENDMENT ARGUMENTS
      ARE WITHOUT MERIT .................................................................................19

B.    O.R.S. § 65.042 IS ALSO IRRELEVANT TO THE DISPOSITION
      OF THIS CASE ...........................................................................................21

VI.   ALL NECESSARY PARTIES HAVE BEEN JOINED.............................................21

A.    DEBTOR'S PARISHES AND SCHOOLS ARE PART OF, NOT
      SEPARATE FROM, DEBTOR.......................................................................22

      1.    Debtor is a Unitary Entity That Includes its Parishes and
            Schools.............................................................................................22

      2.    Oregon Courts Have Consistently—and Repeatedly—Found
            That the Parishes and Schools are Part of Debtor................................25

      3.    Courts Throughout the Country Have Found That
            Unincorporated Parishes and Schools are Part of a Roman
            Catholic Diocese ...............................................................................26

      4.    Debtor Should be Judicially Estopped From Claiming That its
            Parishes or Schools are Separate Entities ...........................................27

            a.    *Archdiocese of Portland v. Thorne* (1979) .............................. 28

            b.    *Archdiocese of Portland & Diocese of Baker v.
                  Employment Div. (Mattson)* (1991) ........................................ 29

            c.    *Central Catholic Educ. Ass'n v. Archdiocese of
                  Portland* (1996)....................................................................... 30

VII.  CONCLUSION...........................................................................................32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ii

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

# TABLE OF AUTHORITIES

## Cases

*Akoury v. Roman Catholic Archbishop of Boston*
  No. 04-3803-B (Mass. Sup. Ct. Sept. 14, 2004) .................................................................. 27

*Albers v. Church of the Nazarene*
  698 F.2d 852 (7th Cir. 1983) ............................................................................................. 24

*Ambassador College v. Geotzke*
  675 F.2d 662 (5th Cir. 1982) ............................................................................................. 16

*Archdiocese of Portland & Diocese of Baker v. Employment Div.*
  Nos. 86-T-0818-111 (Or. Employment Div. Oct. 16, 1990) ........................................ 29, 30

*Archdiocese of Portland in Oregon v. Raymond Thorne, Ass't Dir. for Employment*
  No. 78-T-62 (Or. Employment Div. Jan. 22, 1979).................................................... 28, 29

*Archdiocese v. County of Washington*
  458 P.2d 682 (Or. 1969) ..................................................................................................... 25

*Bell v. Presbyterian Church (U.S.A.)*
  126 F.3d 328 (4th Cir. 1997) ............................................................................................... 8

*Blackhawk v. Pennsylvania*
  381 F.3d 202 (3d Cir. 2004) ............................................................................................... 15

*Board of Educ. of Kiryas Joel Village School Dist. v. Grumet*
  512 U.S. 687 (1994)............................................................................................................ 11

*Bryce v. Episcopal Church in the Diocese of Colorado*
  289 F.3d 648 (10th Cir. 2002) ........................................................................................ 8, 11

*Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*
  166 F. Supp. 2d 432 (D. Md. 2001)..................................................................................... 24

*Caldwell v. Ogden Sea Transport, Inc.*
  618 F.2d 1037 (4th Cir. 1980) ............................................................................................. 6

*Cantwell v. Connecticut*
  310 U.S. 296 (1940)............................................................................................................. 3

*Central Catholic Educ. Ass'n v. Archdiocese of Portland*
  916 P.2d 303 (Or. 1996) ....................................................................................... 25, 30, 31

*Central Catholic Educ. Ass'n v. Archdiocese of Portland*
  No. PR-1-93 (Or. Employment Rel. Bd. Sept. 14, 1993)
  *aff'd* 891 P.2d 1318 (Or. App. 1995) ................................................................................ 31

i

*Chavez v. Director, Office of Workers Compensation Programs*
 961 F.2d 1409 (9th Cir. 1992) ............................................................................ 6

*Church of the Lukumi Babalu Aye v. City of Hialeah*
 508 U.S. 520 (1993)................................................................................... 3, 15

*City of Boerne v. Flores*
 521 U.S. 507 (1997)........................................................................... 3, 15, 16

*Dickerson v. United States*
 530 U.S. 428 (2000) ................................................................................... 17

*Dolquist v. Heartland Presbytery*
 2004 WL 624962 (D. Kan. Mar. 9, 2004) ........................................................ 16

*Duke Power Co. v. Carolina Environmental Study Group Inc.*
 438 U.S. 59 (1978)........................................................................................ 7

*Eberle v. Benedictine Sisters of Mt. Angel and Archdiocese of Portland in Oregon*
 385 P.2d 765 (Or. 1963) ............................................................................. 25

*EEOC v. Electro-Term, Inc.*
 167 F.R.D. 344 (D. Mass. 1996).................................................................... 16

*EEOC v. Roman Catholic Diocese of Raleigh, N.C.*
 213 F.3d 795 (4th Cir. 2000) ......................................................................... 8

*EEOC v. St. Francis Xavier Parochial School*
 77 F. Supp. 2d 71 (D.D.C. 1999).............................................................. 24, 26

*Employment Div. v. Archdiocese of Portland*
 600 P.2d 926 (Or. App. 1979) ................................................................. 25, 29

*Employment Div. v. Smith*
 494 U.S. 872 (1990)............................................................................. 3, 4, 15

*Eugene Sand & Gravel v. City of Eugene*
 558 P.2d 338 (Or. 1976) .............................................................................. 20

*Everson v. Bd. of Educ.*
 330 U.S. 1 (1947).......................................................................................... 11

*F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago*
 754 F.2d 216 (7th Cir. 1985) ........................................................................ 26

*Fernhoff v. Tahoe Regional Planning Agency*
 803 F.2d 979 (9th Cir. 1986) ........................................................................ 23

*Gen. Council on Fin. and Admin. of the United Methodist Church v. Superior
Court of California*
 439 U.S. 1355 (1978)......................................................................... 4, 7, 8, 14

ii

*Guam v. Guerrero*
  290 F.3d 1210 (9th Cir. 2002) ............................................................ 16, 17

*Hamilton v. State Farm Fire & Cas. Co.*
  270 F.3d 778 (9th Cir. 2001) .................................................................. 31

*Helfand v. Gerson*
  105 F.3d 530 (9th Cir. 1997) .................................................................. 27

*Ho v. Presbyterian Church of Laurelhurst*
  840 P.2d 1340 (Or. App. 1992) .............................................................. 15

*In re Belcher*
  287 B.R. 839 (Bankr. N.D. Ga. 2001) ................................................... 15

*In re Canter*
  299 F.3d 1150 (9th Cir. 2002) ............................................................... 18

*In re Cardelucci*
  285 F.3d 1231 (9th Cir. 2002) ............................................................... 18

In re Carmel of St. Joseph of Santa Ynez
  237 B.R. 155 (9th Cir. B.A.P. 1999) ..................................................... 15

*In re Contemporary Mission, Inc.*
  44 B.R. 940 (Bankr. D. Conn. 1984) ..................................................... 16

*In re Sugar Indust. Antitrust Litig.*
  579 F.2d 13 (3d Cir. 1978) ..................................................................... 24

*In re The Bible Speaks*
  69 B.R. 643 (Bankr. D. Mass. 1987) ..................................................... 16

*Jones v. Wolf*
  443 U.S. 595 (1979) ........................................................................ passim

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in No. Am.*
  344 U.S. 94 (1952) ................................................................................... 4

*La Voz Radio de la Communidad v. FCC*
  223 F.3d 313 (6th Cir. 2000) ................................................................. 17

*Lang v. Oregon Idaho Annual Conference of United Methodist Church*
  21 P.3d 1116 (Or. App. 2001) ............................................................... 15

*Larkin v. Grendel's Den, Inc.*
  459 U.S. 116 (1982) ............................................................................... 11

*Lemon v. Kurtzman*
  403 U.S. 602 (1971) ........................................................................... 3, 13

iii

*Locke v. Davey*
  540 U.S. 712, 124 S. Ct. 1307 (2004).................................................................... 15

*Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*
  179 F.3d 1244 (9th Cir. 1999) ............................................................. 10, 13, 25

*Malicki v. Doe*
  814 So. 2d 347 (Fla. 2002) ......................................................................... 8, 11

*McKelvey v. Pierce*
  800 A.2d 840 (N.J. 2002) .................................................................................. 9

*Meltebeke v. Bureau of Labor and Industries*
  852 P.2d 859 (Or. App. 1993) ........................................................................ 20

*New Hampshire v. Maine*
  532 U.S. 742 (2001)........................................................................................ 27

*NLRB v. Bildisco & Bildisco*
  465 U.S. 513 (1984)........................................................................................ 18

*Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Devel. Comm'n*
  461 U.S. 190 (1983).......................................................................................... 6

*Powell v. Bunn*
  59 P.3d 559 (Or. App. 2002) ......................................................................... 20

*Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem. Presbyterian Church*
  393 U.S. 440 (1969)................................................................................. 3, 4, 7

*Rayburn v. Gen. Conf. of Seventh-Day Adventists*
  772 F.2d 1164 (4th Cir. 1985) .................................................................... 8, 11

*Reynolds v. United States*
  98 U.S. 145 (1878)................................................................................. 3, 4, 15

*Roman Catholic Archbishop of Diocese of Oregon v. Baker*
  15 P.2d 391 (Or. 1932) .................................................................................. 25

*San Jose Christian College v. City of Morgan Hill*
  360 F.3d 1024 (9th Cir. 2004) ...................................................................... 17

*School District of Abington Township, Pa. v. Schempp*
  374 U.S. 203 (1963)........................................................................................... 3

*Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*
  426 U.S. 696 (1976).................................................................................. passim

*Smith v. Employment Div.*
  721 P.2d 445 (Or. 1986) ................................................................................ 20

iv

*Smith v. O'Connell*
      986 F. Supp. 73 (D.R.I. 1997) ............................................................... 11

*Smith v. Raleigh Dist. of N.C. Conf. of United Methodist Church*
      63 F. Supp. 2d 694 (E.D.N.C. 1999) ................................................. 8, 11

*Trustees of the Presbytery of Willamette v. Hammer*
      385 P.2d 1013 (Or. 1963) ...................................................................... 15

*United States v. ITT Blackburn Co.*
      824 F.2d 628 (8th Cir. 1987) ................................................................. 24

*United States v. Lee*
      455 U.S. 252 (1982) ................................................................................. 4

*Wagner v. Professional Engineers in California Govt.*
      354 F.3d 1036 (9th Cir. 2004) .............................................................. 27

Watson v. Jones
      80 U.S. 679 (1871) ................................................................................... 7

*Western Beef, Inc. v. Compton Inv. Co.*
      611 F.2d 587 (5th Cir. 1980) ................................................................. 24

### Statutes

42 U.S.C. § 2000bb ...................................................................... 16, 17, 19

O.R.S. § 65.042 ................................................................................... 21

O.R.S. § 65.067 .............................................................................. 16, 22

Religious Liberty and Charitable Donation Protection Act of 1998
      Pub. L. No. 105-183, 112 Stat. 517 ...................................................... 16

### Other Authorities

The Federalist No. 42 (James Madison) .................................................. 18

### Constitutional Provisions

Or. Const. , art. 1, § 2 .......................................................................... 19

Or. Const. , art. 1, § 3 .......................................................................... 19

Or. Const. , art. 1, § 5 .......................................................................... 20

U.S. Const. art. 1, § 8, cl. 4 ................................................................. 18

Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE: JURISDICTION 2D
      § 3532.5, at 175-193 (1984) .................................................................... 7

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

vi

**Tonkon Torp**LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1 | **I.    INTRODUCTION**

2 |         The Roman Catholic Archbishop of Portland in Oregon, and Successors, a

3 | Corporation Sole, dba the Archdiocese of Portland in Oregon ("Debtor") voluntarily initiated

4 | this Chapter 11 case and thereby stayed numerous tort cases alleging very serious illegal

5 | misconduct. Debtor freely embraces the protections afforded to all debtors under the

6 | Bankruptcy Code—secular and religious alike. It has obtained a bar date and seeks discharge

7 | of an untold number of future claims by the victims of priest abuse.

8 |         At the same time, Debtor takes a decidedly more circumscribed view of its

9 | obligations toward its creditors. Cloaking itself in the First Amendment, Debtor asserts in its

10 | Third Affirmative Defense that the Court lacks subject matter jurisdiction to determine the

11 | assets of the bankruptcy estate and must simply accept its decision that the Disputed Real

12 | Property[1], which comprises the vast majority of its real property, is held in trust for its

13 | parishes and schools.[2] Debtor's Fifth Affirmative Defense broadly invokes "religious

14 | freedom" and suggests that Oregon law and other nonbankruptcy law—perhaps the Religious

15 | Freedom Restoration Act, 42 U.S.C. § 2000bb *e. seq.* ("RFRA")—precludes the Court from

16 | identifying and marshaling the assets of this estate.[3] Debtor's First Affirmative Defense

17 | claims that its parishes are necessary parties.[4]

18 |         Debtor's novel argument is flawed. To begin with, Debtor's affirmative

19 |

20 | [1] The "Disputed Real Property" is the real property identified in subsections I and II of Exhibit 14b of Debtor's Statement of Financial Affairs, as amended.

21 |

22 | [2] Debtor's Third Affirmative Defense asserts Lack of Subject Matter Jurisdiction and is apparently based on the First Amendment arguments it has begun to articulate in earlier filings with the Court. *See* Answer ¶ 17; Debtor's Mem. of 8/3/04 Regarding Currently

23 | Identified Major Issues at 5 (hereafter "Debtor's Mem. of 8/3/04").

24 | [3] The Central Catholic High School Alumni and Parents Associations' Third Affirmative Defense also asserts "Religious Freedom."

25 |

26 | [4] The Central Catholic High School Alumni and Parents Associations' Second Affirmative Defense raises the identical issue.

**Page 1 of 32 -**    TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  defenses turn the First Amendment on its head. Instead of **preventing** the Court from

2  adjudicating this dispute, the First Amendment actually **requires** the Court to determine

3  ownership of the Disputed Real Property by applying the Bankruptcy Code and neutral state

4  law governing trusts and real property. Debtor's religious character is of no relevance

5  whatsoever to determining ownership of the Disputed Real Property. In fact, for the Court to

6  deny its jurisdiction—and thereby allow Debtor unilaterally to determine the extent of its

7  bankruptcy estate—would be to give it an unconstitutional preference based solely on its

8  status as a religious institution. Second, RFRA has no bearing on this action because Debtor

9  cannot satisfy its basic elements and because the uses to which it apparently seeks to put the

10  statute would violate the First Amendment. Third, Oregon constitutional and nonprofit

11  corporation law are irrelevant here. Finally, Debtor's contention that its parishes are

12  necessary parties is without merit. The parishes and schools have no separate existence

13  under civil law and, therefore, cannot sue or be sued.

14       The Committee is accordingly entitled to the dismissal of Debtor's First, Third

15  and Fifth Affirmative Defenses. The Court has jurisdiction to determine the ownership of the

16  Disputed Real Property through the application of ordinary principles of bankruptcy,

17  property and trust law, which point to only one conclusion: the Disputed Real Property

18  belongs to Debtor and is part of its bankruptcy estate.

19  **II.    OVERVIEW OF THE FIRST AMENDMENT**

20       The First Amendment states, in relevant part, that "Congress shall make no

21  law respecting an establishment of religion, or prohibiting the free exercise thereof."

22  U.S. Const. amend. I. The Religion Clauses are typically referred to as the Establishment

23  Clause and the Free Exercise Clause.

24       **A.    THE RELIGION CLAUSES**

25       The Establishment Clause polices the boundary between church and state by

26  preventing the government from passing laws that "aid one religion, aid all religions, or

**Page 2 of 32 -**   TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  prefer one religion over another." *School District of Abington Township, Pa. v. Schempp*,

2  374 U.S. 203, 216 (1963), *quoting Everson v. Bd. of Educ.*, 330 U.S. 1, 15 (1947). The

3  Supreme Court has articulated a three-part test to determine whether a law complies with the

4  Establishment Clause: "First, the [law] must have a secular legislative purpose; second, its

5  principal or primary effect must be one that neither advances nor inhibits religion; finally, the

6  statute must not foster an excessive government[al] entanglement with religion." *Lemon v.*

7  *Kurtzman*, 403 U.S. 602, 612-13 (1971) (internal citations omitted).

8       The Free Exercise Clause guarantees "first and foremost, the right to believe

9  and profess whatever religious doctrine one desires." *Employment Div. v. Smith*, 494 U.S.

10  872, 877 (1990). The Supreme Court has long held that the Free Exercise Clause "embraces

11  two concepts,—freedom to believe and freedom to act. The first is absolute but, in the nature

12  of things, the second cannot be. Conduct remains subject to regulation for the protection of

13  society." *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940); *Reynolds v. United States,*

14  98 U.S. 145, 166-67 (1878). Accordingly, generally applicable neutral laws are

15  constitutional even if they incidentally burden the exercise of religion. *Smith*, 494 U.S. at

16  878; *see also City of Boerne v. Flores*, 521 U.S. 507, 535 (1997); *Church of the Lukumi*

17  *Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993). The courts have no discretion; the

18  rule of law applies to religious conduct.

19
20  **B.    CASES INVOLVING JUDICIAL INQUIRY INTO RELIGIOUS**
       **INSTITUTIONS**

21       The Supreme Court has held that the Religion Clauses forbid a court from

22  exercising jurisdiction when an intrachurch dispute cannot be resolved without the court

23  deciding a matter of "discipline, faith, internal organization, or ecclesiastical rule, custom or

24  law." *Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*, 426 U.S. 696,

25  713 (1976). *See also Jones v. Wolf*, 443 U.S. 595, 604 (1979); *Presbyterian Church in the*

26  *U.S. v. Mary Elizabeth Blue Hull Mem. Presbyterian Church*, 393 U.S. 440, 449 (1969);

**Page 3 of 32 -**   TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
                       MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in No. Am.*, 344 U.S. 94,
2 | 120-21 (1952).

3 | This principle implicates both the Free Exercise and Establishment Clauses.
4 | The "ecclesiastical abstention"[5] cases "are premised on a perceived danger that in resolving
5 | intrachurch disputes the state will become entangled in essentially religious controversies or
6 | intervene on behalf of groups espousing particular doctrinal beliefs." *Gen. Council on Fin.*
7 | *and Admin. of the United Methodist Church v. Superior Court of California*, 439 U.S. 1355,
8 | 1373 (1978); *see also Mary Elizabeth Blue Hull*, 393 U.S. at 449. They also uphold the basic
9 | First Amendment principle that religious institutions must have "power to decide for
10 | themselves, free from state interference, matters of church government as well as those of
11 | faith and doctrine." *Kedroff*, 344 U.S. at 116. *See also Serbian E. Orthodox Diocese*, 426
12 | U.S. at 724-25; *United States v. Lee*, 455 U.S. 252, 257 (1982).

13 | Importantly, the ecclesiastical abstention cases do not stand for independence
14 | or autonomy from civil law. Instead, they state simply that government may not determine
15 | religious belief. *Smith*, 494 U.S. at 877; *Reynolds*, 98 U.S. at 166.

16 | **III.    THE COURT HAS SUBJECT MATTER JURISDICTION. INDEED, THE**
   |         **RELIGION CLAUSES REQUIRE THE COURT TO DECIDE THESE**
17 |         **PROPERTY OWNERSHIP ISSUES**

18 | Nothing in this inquiry requires the Court to investigate or rule on religious
19 | beliefs. Rather, traditional principles of bankruptcy, real property and trust law control. If
20 | the Court declines to apply these neutral civil laws, it will have violated the Establishment
21 | Clause by granting Debtor an unprecedented privilege based solely on its status as a religious
22 | institution: the power to decide the extent of its bankruptcy estate.

23 | * * *

24 |

---

25 | [5] "Ecclesiastical abstention" refers to the fundamental holding in these cases that courts must
   | abstain from exercising jurisdiction to resolve intrachurch disputes over the interpretation of
26 | religious doctrine or ecclesiastical law.

**Page 4 of 32 -**    TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
                        MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    **A.    THE COURT HAS SUBJECT MATTER JURISDICTION**

2    Debtor's status as a religious institution does not limit the Court's subject

3    matter jurisdiction, and the Tort Claimants Committee's (the "Committee") challenge to

4    Debtor's Third Affirmative Defense is ripe for adjudication. The First Amendment prevents

5    a court from deciding a case involving a religious institution only when two criteria are met:

6    (1) the matter involves an intrachurch dispute **and** (2) the outcome rests **solely** on a

7    determination of religious doctrine or ecclesiastical law. Here, the dispute is between a

8    religious institution and third parties, and there is no dispute over religious doctrine or

9    ecclesiastical law. Moreover, even the "ecclesiastical abstention" cases provide that a court

10    may decide an intrachurch dispute by applying neutral principles of law.

11
    **1.    THIS CHALLENGE TO DEBTOR'S THIRD AFFIRMATIVE
         DEFENSE IS RIPE**
12

13    Debtor has argued that the Committee's challenge to its Third Affirmative

14    Defense is not ripe:

15        We are not saying, Your Honor, that the Court does not have
         subject matter jurisdiction over the complaint that has been
16        filed at this time. However, we also cannot say today that there
         is no circumstance in which some of the First Amendment
17        jurisdictional issues might not arise in the future. The issue
         simply regarding the Court's subject matter jurisdiction is not
18        ripe. We're not raising it now; it may come up later; it may
         never come up.
19

20    Tr. of 12/28/04, at 10:12-19.

21    Debtor appears to be arguing that the merits of its Third Affirmative Defense

22    will not be ripe until the Court issues a ruling that somehow trespasses on the First

23    Amendment. However, the Court is not required to let this sword of Damocles hang over the

24    Committee's adversary proceeding. Under well-established principles of ripeness, the Court

25    need not wait any longer before considering Debtor's Third Affirmative Defense.

26    The doctrine of ripeness requires a court to determine whether a dispute is

**Page 5 of 32 -**   TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
            MOTION FOR PARTIAL SUMMARY JUDGMENT

1    ready for decision. Ripeness turns on "the fitness of the issues for judicial decision" and the

2    "hardship to the parties of withholding court consideration." *Pacific Gas & Elec. Co. v. State*

3    *Energy Resources Conserv. & Devel. Comm'n*, 461 U.S. 190, 201 (1983). The United States

4    Court of Appeals for the Ninth Circuit has cautioned that "[h]owever much the courts might

5    prefer to resolve a particular question at another time and place, they should have a very

6    good reason for indulging that preference, if in doing so they are refusing a petitioner's

7    request to be relieved of an onerous legal uncertainty." *Chavez v. Director, Office of*

8    *Workers Compensation Programs*, 961 F.2d 1409, 1415 (9th Cir. 1992), *quoting Continental*

9    *Air Lines, Inc. v. CAB*, 522 F.2d 107, 128 (D.C. Cir. 1975).

10              There are at least three reasons why the Committee's challenge to the Third

11   Affirmative Defense is ripe. First, an issue is ripe for decision where the uncertainty it

12   creates has a debilitating effect on a party's ability to plan for the future. *See Pacific Gas*,

13   461 U.S. at 201-202. Under this principle, an issue is ripe if the court's decision will impact

14   further judicial proceedings. *See Caldwell v. Ogden Sea Transport, Inc.*, 618 F.2d 1037,

15   1047 n.12 (4th Cir. 1980). Here, Debtor's Third Affirmative Defense will dramatically affect

16   the course of these proceedings unless the Court addresses it sooner rather than later. As all

17   parties recognize, the core issue in this case—and the chief impediment to the prompt

18   resolution of creditors' claims—is whether the estate includes all the property to which

19   Debtor holds legal title. Debtor's invocation of the First Amendment has delayed the Court's

20   resolution of this issue, which in turn will affect the willingness and ability of creditors to

21   engage in meaningful mediation efforts with Debtor. Debtor's creditors will be unable to

22   decide how to proceed in their discussions with Debtor until the Court resolves the First

23   Amendment and parish issues.

24              Second, an issue is ripe for adjudication if delay will cause hardship and the

25   court can base its decision on broad principles that do not require further factual

26   development. *See Duke Power Co. v. Carolina Environmental Study Group Inc.*, 438 U.S.

**Page 6 of 32 -**    TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
                          MOTION FOR PARTIAL SUMMARY JUDGMENT

1   59, 81-82 (1978) (plaintiffs living near nuclear power plant construction sites need not wait

2   for nuclear accident to challenge statutory provisions limiting total amount of liability in the

3   event of such an accident). Here, the Court can rule on Debtor's Third Affirmative Defense

4   without further factual development and base its decision on broad principles of

5   constitutional law.

6          Third, a court can rule on the validity of prospective state action where a party

7   has a reasonable fear of civil sanction. *See generally* Wright, Miller & Cooper, FEDERAL

8   PRACTICE & PROCEDURE: JURISDICTION 2D § 3532.5, at 175-193 (1984). In a typical case,

9   the party under threat of civil sanction challenges the threatened state action and argues that

10  the case is ripe. Here, by contrast, Debtor has invoked the First Amendment because it

11  believes the Court may infringe on its free exercise rights, yet it is Debtor that seeks to delay

12  the Court's resolution of the issue. The Court should refuse to countenance this tactical

13  invocation of the Constitution and rule on the merits of Debtor's Third Affirmative Defense

14  now.

15        **2.**      **THE ECCLESIASTICAL ABSTENTION CASES ARE**

16                **IRRELEVANT BECAUSE THE DISPUTE IS BETWEEN A RELIGIOUS INSTITUTION AND THIRD-PARTY**

17                **CREDITORS**

18         The ecclesiastical abstention cases are irrelevant here because this adversary

19  proceeding is a dispute between Debtor and its creditors, and not between factions within a

20  church.[6] As then-Justice Rehnquist explained almost 30 years ago, the ecclesiastical

21  abstention cases have no bearing in conflicts between religious institutions and third parties.

22  In *Gen. Council on Fin. and Admin. of the United Methodist Church v. Superior Court,* the

23  _____

24  [6] In each of the Supreme Court's ecclesiastical abstention cases, the Court addressed a conflict between two factions of a church. *See Jones,* 443 U.S. at 597; *Serbian E. Orthodox Diocese,* 426 U.S. at 696; *Mary Elizabeth Blue Hull,* 393 U.S. at 441; *Watson v. Jones,* 80

25  U.S. 679, 681 (1871). We are aware of no reported case in which a United States court held that it did not have subject matter jurisdiction to adjudicate a dispute between a religious

26  organization and a third party solely because of the religious character of one of the parties.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  petitioner was a defendant in a class action suit involving claims for breach of contract, fraud

2  and violations of state securities law.  Invoking the ecclesiastical abstention cases that Debtor

3  likely relies on here, the petitioner requested an interlocutory stay of the state court

4  proceedings while it sought a writ of certiorari from the Supreme Court.  Justice Rehnquist

5  denied the petition and explained that:

> [t]here are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes. See *Serbian Eastern Orthodox Diocese v. Milivojevich*. But this Court never has suggested that those constraints similarly apply outside the context of such intraorganization disputes. Thus, *Serbian Orthodox Diocese* and the other cases cited by applicant are not on point. Those cases are premised on a perceived danger that in resolving intrachurch disputes the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs. . . . **Such considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization** . . . .

14  *Gen. Council*, 439 U.S. at 1372-73 (emphasis added).

15      Justice Rehnquist's discussion of third-party harm focused on fraud and the

16  other causes of action in the case before him.  Both state and federal courts have

17  subsequently confirmed that his reasoning applies with equal force to other disputes between

18  religious organizations and third parties. *See Bryce v. Episcopal Church in the Diocese of*

19  *Colorado*, 289 F.3d 648, 657 (10th Cir. 2002) (quoting *Bell*); *EEOC v. Roman Catholic*

20  *Diocese of Raleigh, N.C.*, 213 F.3d 795, 801 (4th Cir. 2000); *Bell v. Presbyterian Church*

21  *(U.S.A.)*, 126 F.3d 328, 331 (4th Cir. 1997) (quoting *Gen. Council*); *Rayburn v. Gen. Conf. of*

22  *Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985) ("[C]hurches are not—and

23  should not be—above the law.  Like any other person or organization, they may be held

24  liable for their torts and upon their valid contracts."); *Smith v. Raleigh Dist. of N.C. Conf. of*

25  *United Methodist Church*, 63 F. Supp. 2d 694, 713 (E.D.N.C. 1999) (quoting *Gen. Council*);

26  *Malicki v. Doe*, 814 So. 2d 347, 351 n.2 & 357 (Fla. 2002) (quoting *Bell* and citing dozens of

**Page 8 of 32 -**   TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | federal and state sexual abuse cases); *McKelvey v. Pierce*, 800 A.2d 840, 851 (N.J. 2002)

2 | (quoting *Rayburn and Bell*).

3 | **3.    THERE IS NO DISPUTE OVER RELIGIOUS DOCTRINE**

4 | The ecclesiastical abstention cases are also inapplicable here because there is

5 | no doctrinal dispute.

6 | There is no doctrinal conflict between Debtor and its parishes because they

7 | apparently endorse the same interpretation of canon law.[7]  Moreover, the Committee

8 | expresses no view on the relationship between an archdiocese and parish under the internal

9 | doctrine of the Roman Catholic Church.[8]

10 | **4.    EVEN THE ECCLESIASTICAL ABSTENTION CASES**
11 | **PROVIDE THAT COURTS MAY APPLY NEUTRAL**
**PRINCIPLES OF LAW TO DECIDE INTRACHURCH**
**DISPUTES THAT DO NOT HINGE ON RELIGIOUS**
12 | **DOCTRINE OR PRACTICE**

13 | The Court would have jurisdiction to determine the real property issue even if

14 | the dispute were between two religious entities. As the Supreme Court stressed in *Jones v.*

15 | *Wolf*, the First Amendment does not require "the States to adopt a rule of compulsory

16 | deference to religious authority in resolving church property disputes . . . where no issue of

17 | 

_____

[7] Debtor and its parishes have had an opportunity to show whether this case raises the risk of
18 | an intrachurch doctrinal dispute. On February 3, 2005, the Parishioners Committee filed its
Motion to Intervene, which sought leave to intervene as of right pursuant to
19 | Fed. R. Civ. P. 24(a)(2). One of the requirements for intervention as of right is a showing
that existing parties may not adequately represent the interests of the proposed intervenor.
20 | The Parishioners Committee asserted that the interests of Debtor and *parishioners* might
diverge over whether parishioners possess civilly enforceable rights in relation to the
21 | Disputed Property. However, the Parishioners Committee conspicuously refrained from
stating that canon law is susceptible to different interpretations. Moreover, the Parishioners
22 | Committee did not state that Debtor and its *parishes* might take differing positions on any
issue, under either civil or canon law. Parishioners Committee's Mem. in Support of Motion
23 | to Intervene at 9-11. Debtor did not object to the Parishioners Committee's motion. *See*
Debtor's Response to Motions to Intervene at 2.
24 | 

[8] The existence of a doctrinal dispute is a necessary but hardly sufficient condition for the
25 | applicability of the ecclesiastical abstention doctrine. A court can exercise jurisdiction even
in cases involving an intrachurch dispute so long as it can be resolved by the application of
26 | neutral principles of civil law. *See infra* at III.A.4.

**Page 9 of 32 -**    TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   doctrinal controversy is involved." 443 U.S. at 605. Instead, the courts are "constitutionally

2   entitled to adopt neutral principles of law as a means of adjudicating a church property

3   dispute." *Id.* at 604. Such principles include "objective, well-established concepts of trust

4   and property law familiar to lawyers and judges," including the language of deeds, the terms

5   of church charters and the state statutes governing the holding of church property. *Id.* at 603.

6   In dictum, the Court went on to explain how religious entities could avoid internal property

7   disputes in the first place—by following settled law. *Id.* at 606.

8           Six years ago, the Ninth Circuit applied neutral principles to resolve a

9   religious dispute. In *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d

10  1244 (9th Cir. 1999), a Sufi religious order and its leader sued a breakaway organization and

11  its founders, who challenged the legitimacy of the leader's succession. The district court

12  dismissed the case after concluding that it turned on doctrinal issues. Although the Ninth

13  Circuit agreed that the district court could not declare whether the leader's succession was

14  legitimate under the doctrines of the religious order, it held that the lower court could decide

15  the plaintiffs' trademark, Lanham Act, unfair competition and tortious conversion of property

16  claims by applying ordinary principles of federal and state law. *Id.* at 1249-50.

17          Just as in *Maktab*, the Court here can apply "secular principles of property,

18  trust and corporate law . . .", *id.* at 1249, to determine the ownership of the Disputed Real

19  Property. It is not as though Debtor has organized its affairs without the benefit of the law.

20  It has formed a corporation sole and bought and sold property under existing law. The First

21  Amendment provides no excuse for now proceeding as though those actions never took

22  place, as if Debtor is somehow above the laws it has repeatedly relied upon in ordering its

23  affairs.

24          **B.      ALLOWING DEBTOR TO UNILATERALLY DETERMINE WHAT
                      CONSTITUTES ITS BANKRUPTCY ESTATE WOULD VIOLATE**
25          **THE ESTABLISHMENT CLAUSE**

26          The Court must treat Debtor as it would any other party in bankruptcy by

**Page 10 of 32 -** TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   applying secular principles of law to determine the ownership of the Disputed Real Property.

2   Not only do the ecclesiastical abstention cases authorize this approach, *see supra* at II.A.4,

3   but the alternative that Debtor has proposed would violate the Establishment Clause.

4            The Establishment Clause prevents the government from passing or enforcing

5   laws that "aid one religion, aid all religions, or prefer one religion over another." *Everson,*

6   330 U.S. at 15. Many courts have accordingly concluded that religious institutions are

7   subject to the tort law claims of third parties because exempting them from liability solely on

8   the basis of their religious status would place them in a privileged position. *Bryce,* 289 F.3d

9   at 657; *Rayburn,* 772 F.2d at 1171; *Smith v. Raleigh Dist.,* 63 F. Supp. 2d at 716 n.18; *Smith*

10  *v. O'Connell,* 986 F. Supp. 73, 80 (D.R.I. 1997); *Malicki,* 814 So. 2d at 351.

11           Here, allowing Debtor to unilaterally decide whether its bankruptcy estate

12  includes the Disputed Real Property would similarly violate the Establishment Clause by

13  granting a privilege to an institution based solely on its religious status.[9] If a religious

14  institution can invoke the protections of the Bankruptcy Code and then compel the

15  bankruptcy court to defer to its unilateral decision on the extent of the estate, it will have

16  gained an advantage in its relations with creditors that goes far beyond any accommodation

17  of religion recognized under the First Amendment.

18           The Establishment Clause plainly forbids a court from giving what Justice

19  Rehnquist has termed "blind deference" to the dictates of a religious organization. As he

20  * * *

21

22  [9] Allowing Debtor to define the extent of its bankruptcy estate would not only grant a
    privilege to religion; it would also usurp a core function of the Court. The Supreme Court
23  has never addressed whether such deference to the unilateral determinations of a religious
    litigant is unconstitutional. However, it has held in the context of school administration and
24  liquor store licensure that the Establishment Clause forbids delegation of the government's
    discretionary authority "to a group defined by its character as a religious community, in a
25  legal and historical context that gives no assurance that governmental power has been or will
    be exercised neutrally." *Board of Educ. of Kiryas Joel Village School Dist. v. Grumet,* 512
26  U.S. 687, 696 (1994); *see also Larkin v. Grendel's Den, Inc.,* 459 U.S. 116 (1982).

**Page 11 of 32 -**  TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
                     MOTION FOR PARTIAL SUMMARY JUDGMENT

1  noted in his dissenting opinion[10] in *Serbian E. Orthodox Diocese*:

2          To make available the coercive powers of civil courts to
        rubber-stamp ecclesiastical decisions of hierarchical religious

3          associations, when such deference is not accorded similar acts
        of secular voluntary associations, would, in avoiding the free

4          exercise problems petitioners envision, itself create far more
        serious problems under the Establishment Clause.

5

6  426 U.S. at 734.

7          Finally, Debtor can hardly complain that the Court's enforcement of neutral

8  principles will frustrate any Church doctrine concerning the relationship between an

9  archdiocese and its parishes.  The application of neutral principles of law to a church

10  property dispute does not interfere with the free exercise of religion because it does not

11  foreordain the outcome of the case for or against the church.  A church—like any other actor

12  engaging in economic activity—has an obligation to ensure that its deeds and other legal

13  instruments conform with the requirements of the law.  As the Supreme Court stated in *Jones*

14  *v. Wolf*:

15          At any time before the dispute erupts, the parties can ensure, if
        they so desire, that the faction loyal to the hierarchical church

16          will retain the church property . . . [by] modify[ing] the deeds
        or the corporate charter [or by modifying] the constitution of

17          the general church . . . to recite an express trust . . . .  The
        burden involved in taking such steps will be minimal.  And the

18          civil courts will be bound to give effect to the result indicated
        by the parties, provided it is embodied in some legally

19          cognizable form.

20  443 U.S. at 606.

21          The Ninth Circuit relied on this principle in *Maktab*.  Noting that the religious

22  order had "adopted certain state and federal legal structures" by incorporating itself and

23  _____

[10] Three years after Justice Rehnquist authored his dissent in *Serbian E. Orthodox Diocese*,

24  the Supreme Court adopted his analysis and held in *Jones v. Wolf* that courts may apply
neutral principles of law to decide intrachurch property ownership disputes without violating

25  the Religion Clauses.  433 U.S. at 604.  The *Jones* Court also went one step further, by
explaining how churches can make their property ownership intentions clear by following the

26  prevailing law.  *Id.* at 606.

**Page 12 of 32** -  TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | registering trademarks, the Court concluded that "it is incumbent upon the civil court now to

2 | apply to those structures the secular law that governs them." 179 F.3d at 1250.

3 |      Here, if Debtor had wished to establish that it holds the Disputed Real

4 | Property as trustee for the parishes, it could have taken the legal steps required to do so—by

5 | incorporating the parishes and declaring legally cognizable trusts. But Debtor instead titled

6 | the Disputed Real Property in its own name and declined every opportunity to embody the

7 | purported requirements of canon law in instruments that a civil court could enforce. It is now

8 | the Court's duty to exercise subject matter jurisdiction in this case and resolve the dispute by

9 | enforcing the forms of property ownership that Debtor has, in fact, adopted.

10 | **C.**     **THE *LEMON V. KURTZMAN* STANDARD IS MET**

11 |      The laws at issue here satisfy the standard articulated in *Lemon v. Kurtzman*,

12 | 403 U.S. at 612-13, and their enforcement will not violate the Establishment Clause.

13 |      First, the purposes of bankruptcy law and Oregon real property law are

14 | incontrovertibly secular.

15 |      Second, applying bankruptcy and real property laws to determine the Disputed

16 | Real Property's ownership will neither advance nor inhibit religion. Holding religious

17 | entities to the same bankruptcy or real property standards as any secular party merely puts

18 | religious entities on an equal footing with all other debtors and real property owners. While

19 | Debtor may argue that finding the Disputed Real Property to be part of its bankruptcy estate

20 | will inhibit its religious mission, the counter argument is equally true: Failing to apply

21 | generally applicable, neutral principles of bankruptcy and Oregon real property law to

22 | religious debtors and property owners allows them a special benefit that materially advances

23 | religion.

24 |      Third, the Court will not excessively entangle itself with a religious entity by

25 | applying generally applicable, neutral principles of law to determine the Disputed Real

26 | Property's ownership. This case does not turn on, or even involve, ecclesiastical doctrine or

**Page 13 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    religious belief. There is no danger that in resolving this dispute, the Court will, as Justice

2    Rehnquist warned, "become entangled in essentially religious controversies or intervene on

3    behalf of groups espousing particular doctrinal beliefs." *Gen. Council*, 439 U.S. at 1372-73.

4    Whatever Debtor's beliefs may be, only its conduct is relevant to the legal questions posed in

5    this case.

6    **IV.    DEBTOR'S FIFTH AFFIRMATIVE DEFENSE IS WITHOUT MERIT TO**
7    **THE EXTENT IT INVOKES THE FREE EXERCISE CLAUSE OF THE**
     **FIRST AMENDMENT AND THE RELIGIOUS FREEDOM RESTORATION**
8    **ACT**

9              Debtor's Fifth Affirmative Defense asserts that adjudication of the

10   Committee's complaint "could potentially entangle the Court in the interpretation of religious

11   law in violation of the First Amendment . . . and other applicable nonbankruptcy law."

12   Answer ¶ 19. Debtor has not yet defined the scope of its First Amendment defense or

13   identified the "other applicable nonbankruptcy law" it plans to invoke in this action. In other

14   contexts, however, Debtor has asserted that RFRA requires the Court to defer to its internal

15   ecclesiastical rules in deciding the real property issue and that something it terms the

16   "constitutional privilege of freedom of religion" shields it from answering creditors'

17   questions about its structure and finances.[11] Debtor's Fifth Affirmative Defense is without

18   merit to the extent it embraces these claims, and the Committee is entitled to summary

19   judgment.

20   **A.    THE FREE EXERCISE CLAUSE DOES NOT PRECLUDE**
     **APPLICATION OF NEUTRAL PRINCIPLES OF LAW TO THE REAL**
21   **PROPERTY ISSUE**

22             The Free Exercise Clause of the First Amendment does not constrain the

23   Court's power to decide the real property issue by applying ordinary principles of civil law.

24   As the Supreme Court held in *Smith*, and repeatedly confirmed in subsequent decisions, it is

25   _____

26   [11] See Debtor's Mem. of 8/3/04, at 5.

**Page 14 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1   black letter law that a neutral law of general applicability binds all persons and institutions,

2   even if it incidentally burdens a particular religious practice. *Smith*, 494 U.S. at 878-82; *see*

3   *also Locke v. Davey*, 540 U.S. 712, 124 S. Ct. 1307, 1312-13 (2004); *Lukumi*, 508 U.S. at

4   531; *City of Boerne*, 521 U.S. at 515; *Reynolds*, 98 U.S. at 166. A law is "neutral" if it does

5   not target religiously motivated conduct on its face and is not based on animus or hostility

6   toward a religious entity or religion in general. *Lukumi*, 508 U.S. at 532-33. *See also Locke*,

7   124 S. Ct. at 1312; *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004). It is

8   "generally applicable" unless it "burdens a category of religiously motivated conduct but

9   exempts or does not reach a substantial category of conduct that is not religiously motivated

10  and that undermines the purposes of the law to at least the same degree as the covered

11  conduct that is religiously motivated." *Id.*

12          In the course of deciding the real property issue, the Court will apply the

13  Bankruptcy Code as well as Oregon real property and trust law. As noted above, these laws

14  are generally applicable and neutral within the meaning of *Smith*.[12] *See In re Belcher*, 287

15  B.R. 839, 848 (Bankr. N.D. Ga. 2001) ("bankruptcy law is facially neutral and applies to all

16  applicants for the benefits involved."). The First Amendment not only permits, but requires,

17  the Court to enforce these generally applicable and neutral laws. *Smith*, 494 U.S. at 885.

18          Under *Smith*, moreover, the courts may not craft accommodations to neutral

19  and generally applicable laws. Accommodation is the job of the legislature. *Id.* at 890.

20  Here, Congress and the Oregon legislature have already spoken by giving special

21  _____

22  [12] Although the scale of this case is unique, it is hardly the first time that a religious
    institution has filed for or been placed into bankruptcy. In resolving disputes with third
    parties that have arisen in such cases, the courts have enforced the Code and generally

23  applicable principles of trust and property law. *See, e.g., In re Carmel of St. Joseph of Santa
    Ynez*, 237 B.R. 155 (9th Cir. B.A.P. 1999). Moreover, Oregon courts routinely apply basic

24  principles of trust and property law in disputes between religious institutions and third
    parties. *Trustees of the Presbytery of Willamette v. Hammer*, 385 P.2d 1013 (Or. 1963) (real

25  property and trust dispute); *Lang v. Oregon Idaho Annual Conference of United Methodist
    Church*, 21 P.3d 1116 (Or. App. 2001) (land sale dispute); *Ho v. Presbyterian Church of*

26  *Laurelhurst*, 840 P.2d 1340 (Or. App. 1992) (same).

**Page 15 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
          MOTION FOR PARTIAL SUMMARY JUDGMENT

1  accommodation to religious persons and institutions. *See* Religious Liberty and Charitable

2  Donation Protection Act of 1998, Pub. L. No. 105-183, 112 Stat. 517 (amending several

3  sections of Bankruptcy Code to exclude certain religious contributions from consideration by

4  the bankruptcy courts for various purposes); O.R.S. § 65.067 (authorizing creation of a

5  religious "corporation sole" that lacks a board of directors and is "managed by a single

6  director who shall be the individual constituting the corporation").

7         Finally, the Free Exercise Clause will not limit whatever discovery may be

8  necessary in this case. Contrary to Debtor's fanciful suggestion, there is no "constitutional

9  privilege of the freedom of religion" that shields a religious institution from discovery

10  concerning its organizational structure and finances in the course of litigation with a private

11  third party. *See Ambassador College v. Geotzke*, 675 F.2d 662, 662-65 (5th Cir. 1982);

12  *Dolquist v. Heartland Presbytery*, 2004 WL 624962, at *2 (D. Kan. Mar. 9, 2004); *EEOC v.*

13  *Electro-Term, Inc.*, 167 F.R.D. 344, 346-47 (D. Mass. 1996); *In re The Bible Speaks*, 69 B.R.

14  643, 644-48 (Bankr. D. Mass. 1987); *In re Contemporary Mission, Inc.*, 44 B.R. 940, 942-43

15  (Bankr. D. Conn. 1984).

16         **B.    RFRA HAS NO BEARING ON THIS CASE**

17         In defiance of *Smith* and in violation of the separation of powers, Congress

18  enacted RFRA in 1993 to impose strict scrutiny analysis on neutral, generally applicable laws

19  that incidentally burden religion. *See* 42 U.S.C. § 2000bb(a) (legislative findings); *City of*

20  *Boerne*, 521 U.S. at 513-515, 536 (summarizing RFRA's legislative history and concluding

21  that "RFRA contradicts vital principles necessary to maintain separation of powers"). The

22  Supreme Court decided in *City of Boerne* that RFRA exceeded Congress' enforcement

23  powers under Section Five of the Fourteenth Amendment, and declared it unconstitutional as

24  applied to state and local government. *Id.* at 536. The Ninth Circuit has held that RFRA is

25  constitutional as applied to the federal government. *Guam v. Guerrero*, 290 F.3d 1210, 1221

26  (9th Cir. 2002). However, other courts have voiced doubts on this issue, particularly in light

**Page 16 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  of the Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428, 437 (2000),

2  which reaffirmed that the separation of powers forbids Congress from statutorily superseding

3  the Supreme Court's constitutional decisions.[13] *La Voz Radio de la Communidad v. FCC*,

4  223 F.3d 313, 319 (6th Cir. 2000) (doubting constitutionality of RFRA and citing cases).

5    Debtor asserts that RFRA requires the Court to set aside neutral principles of

6  law and defer to its unilateral decision on the extent of its own bankruptcy estate.  Even if

7  RFRA is generally constitutional as applied to the federal government, Debtor's argument

8  runs roughshod over RFRA's basic statutory elements and would result in an as-applied

9  violation of the Establishment Clause.

10    A party invoking RFRA must first demonstrate that governmental action

11  substantially burdens its exercise of religion.  The government must then show that

12  imposition of the burden is the least restrictive means of furthering a compelling

13  governmental interest.  § 2000bb-1(a)-(b).  The Ninth Circuit stated in *Guerrero* that state

14  action substantially burdens free exercise if it "put[s] substantial pressure on an adherent to

15  modify his behavior and to violate his beliefs," and it cautioned that a "substantial" burden

16  must be more than an inconvenience.  290 F.3d at 1222, *quoting Thomas v. Review Bd. of*

17  *Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981).  More recently, the Ninth Circuit has

18  held there is no substantial burden on free exercise under the analogous Religious Land Use

19  and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.*, unless governmental

20  action imposes a "significantly great restriction or onus" that "render[s] religious exercise

21  effectively impracticable." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d

22  1024, 1034-35 (9th Cir. 2004).

23    The only state action in this case will be the Court's routine enforcement of

24  the Bankruptcy Code and Oregon law in resolving the real property issue.  Debtor cannot

25  

---

[13] The Committee preserves without further argument the issue whether RFRA is

26  constitutional as applied to the federal government.

**Page 17 of 32 -** TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   colorably maintain that the Court's application of these neutral principles would pressure it to

2   alter its religious practices or abandon its beliefs, much less prevent it from exercising those

3   beliefs.  Indeed, Debtor has sought Chapter 11 protection so that it can continue to promote

4   its religious purposes after settling the sexual abuse cases Debtor believes financially threaten

5   its existence.  Debtor's Mem. of 8/3/04, at 2; *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527

6   (1984) (noting that debtor rehabilitation is a primary aim of Chapter 11).

7                   Even if Debtor could show a substantial burden on free exercise, the

8   government has a compelling interest in the Court's routine administration of Debtor's case.

9   Uniformity and predictability are necessary in the bankruptcy context.  From the

10  Constitution's authorization of "uniform Laws on the subject of Bankruptcies" to the more

11  recent standards governing the withdrawal of district court referrals under 28 U.S.C.

12  § 157(d), the bankruptcy system has required the consistent and predictable treatment of

13  debtors.  U.S. Const. art. 1, § 8, cl. 4; *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002)

14  (noting that "uniformity of bankruptcy administration" is a factor in determining whether

15  there is cause for district court to withdraw referral of case to bankruptcy court); *In re*

16  *Cardelucci*, 285 F.3d 1231, 1236 (9th Cir. 2002) (noting, in rejecting rational-basis

17  challenge, that "application of the federal interest rate to all claims is rationally related to the

18  legitimate interests in efficiency, fairness, predictability, and uniformity within the

19  bankruptcy system"); The Federalist No. 42 (James Madison) ("The power of establishing

20  uniform laws of bankruptcy is so intimately connected with the regulation of commerce . . .

21  that the expediency of it seems not likely to be drawn into question.").  The least restrictive

22  means of advancing the uniform administration of the bankruptcy system—indeed, the only

23  means of advancing this interest—is for the Court to treat Debtor as it would any other

24  institution.

25                  Most important of all, Debtor's construction of RFRA falls afoul of both the

26  Establishment Clause and the express provisions of the statute.  If the Court allows Debtor to

**Page 18 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  define the extent of the bankruptcy estate, it will violate the Establishment Clause by

2  improperly promoting religion. *Supra* at II.B. Debtor cannot achieve through RFRA what

3  the First Amendment forbids, and RFRA itself disclaims such a result. The final provision of

4  RFRA states that "[n]othing in this chapter shall be construed to affect, interpret, or in any

5  way address that portion of the First Amendment prohibiting laws respecting the

6  establishment of religion. . . ." § 2000bb-4. In sum, the Court's inquiry under RFRA ends

7  when it finds, as it must, that the Religion Clauses require it to apply neutral principles of law

8  to the real property issue.

9  **V.    THE OREGON CONSTITUTION AND O.R.S. § 65.042 HAVE NO BEARING
10        ON THIS CASE**

11  Debtor's Fifth Affirmative Defense asserts that adjudication of the

12  Committee's complaint could entangle the Court in the interpretation of religious law in

13  violation of O.R.S. § 65.042 and the Oregon Constitution's equivalent of the First

14  Amendment. Answer ¶ 19. Debtor's defenses assume that the Bankruptcy Code does not

15  preempt these state law provisions and that they compel a different analysis of the religion

16  issues addressed above. However, the Oregon Constitution and § 65.042 do not extend any

17  greater protection to Debtor—or impose any more constraints upon government—than the

18  First Amendment and RFRA. Thus, if the Court concludes that Debtor's First Amendment

19  and RFRA defenses are without merit, it can also dismiss the state law defenses without even

20  taking up the preemption issue.

21  **A.    DEBTOR'S STATE CONSTITUTIONAL ARGUMENTS FAIL FOR
             THE SAME REASONS ITS FIRST AMENDMENT ARGUMENTS ARE
22           WITHOUT MERIT**

23  The Oregon Constitution addresses religion issues in three clauses that are

24  relevant here. Article 1, Section 2 provides that "[a]ll men shall be secure in the Natural

25  right, to worship Almighty God according to the dictates of their own consciences."

26  Article 1, Section 3 provides that "[n]o law shall in any case whatever control the free

**Page 19 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  exercise, and enjoyment of religeous [*sic*] opinions, or interfere with the rights of

2  conscience." Article 1, Section 5 provides that "[n]o money shall be drawn from the

3  Treasury for the benefit of any religeous [*sic*] or theological institution, nor shall any money

4  be appropriated for the payment of any religeous [*sic*] services in either house of the

5  Legislative Assembly." Sections 2 and 3 broadly track the Free Exercise Clause of the First

6  Amendment. Although the state constitution lacks an express establishment clause, the

7  Oregon Supreme Court has held that the above-quoted provisions collectively require

8  governmental neutrality toward religion. *Eugene Sand & Gravel v. City of Eugene*, 558 P.2d

9  338, 342 (Or. 1976); *see also Powell v. Bunn*, 59 P.3d 559, 575 (Or. App. 2002).

10          In the past two decades, Oregon courts have used the same analytical

11  frameworks that apply under the First Amendment and RFRA to resolve religion issues

12  arising under the state constitution. As to free exercise, the courts apply *Smith*-like principles

13  in some contexts and RFRA-like strict scrutiny in others. *Compare Smith v. Employment*

14  *Div.*, 721 P.2d 445, 448-49 (Or. 1986) (upholding denial of benefits "through the operation of

15  a statute that is neutral both on its face and as applied"), *with Meltebeke v. Bureau of Labor*

16  *and Industries*, 852 P.2d 859, 864-65 (Or. App. 1993) (holding that agency rule governing

17  "religious discrimination" by employer was unconstitutional as applied because state could

18  not show that an incidental burden on religion was "essential to accomplish an overriding

19  governmental interest"). As to establishment issues, the Oregon Supreme Court has adopted

20  the tripartite *Lemon v. Kurtzman* standard. *Eugene Sand & Gravel*, 558 P.2d at 342.

21          In view of these symmetries, the Court need not predict how an Oregon court

22  would analyze Debtor's affirmative defenses under the state constitution. Whatever standard

23  the court applied would mirror *Smith, Lemon* or RFRA, and as the Committee has shown

24  above, Debtor's defenses fail under all three federal analogues.

25  * * *

26  * * *

**Page 20 of 32 -** TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

**B.     O.R.S. § 65.042 IS ALSO IRRELEVANT TO THE DISPOSITION OF THIS CASE**

O.R.S. § 65.042 is a provision of the Oregon Nonprofit Corporations Act (the "Act"). It states that:

> [i]f religious doctrine or practice governing the affairs of a religious corporation is inconsistent with the provisions of this chapter on the same subject, the religious doctrine or practice shall control to the extent required by the Constitution of the United States or the Constitution of this state, or both.

No Oregon court has ever construed or applied § 65.042 in a published opinion. However, it is difficult to discern the statute's relevance because this adversary proceeding does not allege that Debtor has violated the Act. In any event, § 65.042 merely confirms that the Act does not displace the requirements of the state and federal constitutions, and for all the reasons provided above, neither the First Amendment nor its Oregon equivalents ultimately have any bearing on the Court's decision here.

**VI.     ALL NECESSARY PARTIES HAVE BEEN JOINED**

In this adversary proceeding, Debtor's First Affirmative Defense asserts the Committee "has failed to join necessary parties or parties whose presence is required for just adjudication," presumably its parishes and schools. Answer ¶ 15.

Debtor's position is factually unsupportable, and it conflicts with the basic principles of Oregon law that the Court must apply here. Debtor's representatives have acknowledged in these proceedings that Debtor governs the parishes and schools. In addition, Debtor has repeatedly admitted in other legal proceedings that the parishes and schools are part of its corporation sole, and it has derived significant advantages from the courts' recognition of its unitary corporate structure.

Because the uncontroverted record shows that Debtor's parishes and schools have no independent existence, they **cannot** sue or be sued. The Committee is therefore entitled to the dismissal of Debtor's First Affirmative Defense. Moreover, in view of

**Page 21 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Debtor's frequent representations that the parishes and schools have no independent

2   existence, the Court should judicially estop Debtor from now taking a contrary position.

3       **A.    DEBTOR'S PARISHES AND SCHOOLS ARE PART OF, NOT
4               SEPARATE FROM, DEBTOR**

5           This is not the first time that Debtor has litigated the nature of its relationship

6   to its parishes and schools. In numerous prior cases, Debtor has asserted that its parishes and

7   schools are part of its corporation sole. It has uniformly and consistently prevailed on that

8   point and won important concessions from government in the spheres of taxation and

9   employment.

10          Now that Debtor is faced with the bankruptcy consequences of its unitary

11  corporate structure, it wants to take a different tack. However, the uncontroverted record

12  shows that the parishes and schools are part of Debtor and that they have no independent

13  existence. The Court—like every other court that has previously addressed the question—

14  must find that Debtor, its schools and parishes are one.

15      **1.    DEBTOR IS A UNITARY ENTITY THAT INCLUDES ITS
16              PARISHES AND SCHOOLS**

17          Debtor is the governing body of the Roman Catholic Church for western

18  Oregon. Its head is Archbishop John Vlazny, and it has organized itself as a corporation sole

19  pursuant to O.R.S. § 65.067.[14] Archbishop Vlazny is Debtor's only corporate director. He is

20  _____

[14] O.R.S. § 65.067(1) provides as follows:

> Any individual may, in conformity with the constitution,
> canons, rules, regulations and disciplines of any church or
> religious denomination, form a corporation hereunder to be a
> corporation sole. Such corporation shall be a form of religious
> corporation and will differ from other such corporations
> organized hereunder only in that it shall have no board of
> directors, need not have officers and shall be managed by a
> single director who shall be the individual constituting the
> corporation and its incorporator or the successor of the
> incorporator.

**Page 22 of 32** -  TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
            MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | responsible for Debtor's governance and has final say in all decisions. Amended Concise
2 | Statement, ¶¶ 10, 11.

3 | Debtor has divided its territory into approximately 124 local parishes through
4 | which it administers pastoral activities and operates schools. Debtor also directly operates
5 | three secondary schools.[15] Only one parish is separately incorporated, and Debtor holds title
6 | to all real property in use by the parishes. Amended Concise Statement ¶¶ 3-6. Archbishop
7 | Vlazny is responsible for the governance of Debtor. He is responsible for all administrative
8 | affairs for all of Debtor's schools and parishes. Amended Concise Statement ¶ 11. Debtor's
9 | Director of Financial Services for the Archdiocese has signing authority on all of Debtor's
10 | accounts, including parish checking accounts. Amended Concise Statement ¶ 17.

11 | Parishes are responsible for the day-to-day operation of schools. However,
12 | Debtor and the Diocese of Baker have stipulated in other legal proceedings[16] that they
13 | "operate elementary and secondary schools through **their** local parishes and religious
14 | orders," that the schools "are a part of the Archdiocese and Diocese respectfully [*sic*]," and
15 | that they "have no separate legal existence apart from that of [Debtor and Diocese of Baker]."
16 | Amended Concise Statement ¶¶ 25-27 (emphasis added). Archbishop Levada, who was
17 | Archbishop Vlazny's predecessor, has testified that parishes are entities "within" Debtor, and,
18 | if a parish has a school, "the school is under the principal; the principal is hired and fired by
19 | the pastor; the pastor is appointed by me." Amended Concise Statement ¶ 14.

20 | The parish pastor is the administrator of parish property, and he has final say
21 | over all day-to-day parish affairs. Amended Concise Statement ¶ 15. Worshippers in a

22 | _____
23 | [15] Debtor's schedules identify three unincorporated schools for which it claims to hold real property: Central Catholic High School, Marist High School and Regis High School. There are other Catholic secondary schools within the Archdiocese's boundaries, but they are
24 | separately incorporated and ownership of their property is not at issue.

25 | [16] These stipulations of fact are non-hearsay under Fed. R. Evid. 801(d)(2), and the Court may consider them in ruling on this motion for summary judgment. *Fernhoff v. Tahoe*
26 | *Regional Planning Agency*, 803 F.2d 979, 985 (9th Cir. 1986).

**Page 23 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1  particular parish have no say over the appointment of their pastor, and Debtor has admitted

2  before this Court that parishes have no supervisory authority over pastors.  Amended Concise

3  Statement ¶ 13.  Instead, supervisory authority resides with the Archbishop.  He is solely

4  responsible for the placement, transfer and oversight of priests, and pastors make a promise

5  of obedience to the Archbishop when they are ordained as priests to the Archdiocese.

6  Amended Concise Statement ¶¶ 12, 13, 16.  Pastors are bound to carry out legitimate

7  instructions of the Archbishop, and they regard themselves as the Archbishop's

8  representatives in the parishes.  Amended Concise Statement ¶ 16.

9          Finally, Archbishop Vlazny has the authority to establish as well as suppress

10  parishes, and he has exercised his powers of suppression in this Archdiocese and elsewhere.

11  As Bishop of the Diocese of Winona, Minnesota, he suppressed parishes "a couple of times."

12  Amended Concise Statement ¶ 18-21.  Since his appointment in Oregon, the Archbishop has

13  suppressed, merged and established parishes within Debtor.  Amended Concise Statement

14  ¶ 18.

15          In civil law, a corporation may have many divisions, but those divisions have

16  no legally recognized identity.  *See United States v. ITT Blackburn Co.*, 824 F.2d 628, 631

17  (8th Cir. 1987) ("[A]n unincorporated division cannot be sued or indicted, as it is not a legal

18  entity."); *Western Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 590 (5th Cir. 1980)

19  (explaining that an unincorporated division is "not a separate legal entity wholly apart from

20  its owner"); *In re Sugar Indust. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978).

21  Unincorporated divisions have no separate assets; instead, all assets are owned by the

22  corporation or organization.  *Albers v. Church of the Nazarene*, 698 F.2d 852, 857 (7th Cir.

23  1983); *see also Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 440

24  (D. Md. 2001); *EEOC v. St. Francis Xavier Parochial School*, 77 F. Supp. 2d 71, 76 (D.D.C.

25  1999).

26          The Ninth Circuit held in *Maktab* that when religious institutions adopt certain

**Page 24 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   legal structures, "it is incumbent upon the civil court . . . to apply to those structures the

2   secular law that governs them." 179 F.3d at 1250.  On the record before the Court, the

3   applicable law points to only one conclusion:  Debtor's parishes and schools have no legally

4   recognized identity.  Instead, they are merely unincorporated divisions of Debtor under the

5   day-to-day administration of a pastor who is appointed and supervised by the Archbishop.  If

6   Debtor had wanted its parishes and schools to be separate legal entities, it could have

7   incorporated them.  Indeed, there is at least one parish and several Catholic schools within

8   the Archdiocese that are separately incorporated.  Having failed to create its parishes and

9   schools as distinct legal entities, Debtor cannot now claim the bankruptcy advantages of

10  separate incorporation.

11          2.      **OREGON COURTS HAVE CONSISTENTLY—AND
                    REPEATEDLY—FOUND THAT THE PARISHES AND**
12                  **SCHOOLS ARE PART OF DEBTOR**

13          Debtor has often litigated claims concerning parishes and schools.  In each

14  instance, the Oregon courts have resolved the case on the basis that Debtor, and not the

15  parish or school, is the owner of the property.  These cases demonstrate that, throughout its

16  history, Debtor has consistently claimed that its parishes and schools are subordinate parts of

17  its corporation sole with no legal identity of their own.  *See, e.g., Central Catholic Educ.*

18  *Ass'n v. Archdiocese of Portland,* 916 P.2d 303 (Or. 1996) (Central Catholic High School is

19  "owned and operated by Debtor"); *Archdiocese v. County of Washington,* 458 P.2d 682 (Or.

20  1969) (Debtor sought permit to build "its" proposed church and school); *Eberle v.*

21  *Benedictine Sisters of Mt. Angel and Archdiocese of Portland in Oregon,* 385 P.2d 765 (Or.

22  1963) (claim against Debtor as the "owner" of the St. Paul's School in Marion County);

23  *Roman Catholic Archbishop of Diocese of Oregon v. Baker,* 15 P.2d 391 (Or. 1932) (Debtor

24  acquired real property, erected a church and subsequently maintained it); *Employment Div. v.*

25  *Archdiocese of Portland,* 600 P.2d 926 (Or. App. 1979) (all of Debtor's primary and

26  secondary schools are subject to the direct control of Debtor and therefore exempt from

**Page 25 of 32 -** TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | unemployment compensation taxes).

2 | **3.    COURTS THROUGHOUT THE COUNTRY HAVE FOUND**
3 | **THAT UNINCORPORATED PARISHES AND SCHOOLS ARE PART OF A ROMAN CATHOLIC DIOCESE**

4 | Courts throughout the country have consistently concluded that

5 | unincorporated Roman Catholic parishes and schools have no separate legal existence and

6 | are instead part of their diocese or archdiocese.

7 | The Seventh Circuit recognized that parishes have no separate existence in

8 | *F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago*, 754 F.2d 216 (7th Cir. 1985).

9 | F.E.L. sued the Catholic Bishop for tortious interference with F.E.L.'s business relationship

10 | with certain parishes.  The Seventh Circuit dismissed this claim, holding that tortious

11 | interference was legally impossible because the Catholic Bishop and its parishes are the same

12 | entity.  *Id.* at 220.  The court further stated that:

13 | As a "corporation sole," the Catholic Bishop owns all the real and personal property in the Chicago Archdiocese.  The
14 | parishes themselves have no individual capacity to sue or be sued.  In short, the parishes within the Archdiocese are not
15 | legal entities separate and independent from the Catholic Bishop, but are subsumed under the Catholic Bishop.
16 |

17 | *Id.* at 221.

18 | In *EEOC v. St. Francis Xavier Parochial School*, the Equal Employment

19 | Opportunity Commission ("EEOC") sued the school and church of St. Francis Xavier Parish

20 | within the Archdiocese of Washington.  The court concluded that, as unincorporated

21 | divisions of the Archdiocese, the parish school and church lacked the legal capacity to sue or

22 | be sued.  77 F. Supp. 2d at 74-80.  It reasoned that:

23 | An incorporated religious organization constitutes a single legal entity, and that unincorporated divisions of that
24 | organization lack any independently recognized legal status. Because the Archdiocese of Washington is incorporated as a
25 | corporation sole and holds title to all Archdiocese assets, its unincorporated divisions also lack any independently
26 | recognized status.

**Page 26 of 32 -**  TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | *Id.* at 79.

2 |     Most recently, members of St. Albert the Great Parish in the Archdiocese of

3 | Boston sought to enjoin the Archbishop from selling parish assets and taking parish funds.

4 | *Akoury v. Roman Catholic Archbishop of Boston*, No. 04-3803-B, mem. op. at 2 (Mass. Sup.

5 | Ct. Sept. 14, 2004) (Declaration of Timothy J. Conway, Ex. 15). The court denied the

6 | motion after finding that the parish was merely an unincorporated subdivision of the

7 | Archdiocese and that the parish priest held the assets as agent for the Archdiocese. *Id.* at 5.

8 |     **4.    DEBTOR SHOULD BE JUDICIALLY ESTOPPED FROM CLAIMING THAT ITS PARISHES OR SCHOOLS ARE**
9 |     **SEPARATE ENTITIES**

10 |     Judicial estoppel is an equitable doctrine that precludes a party from

11 | advantageously taking a position in one court proceeding and then taking an inconsistent

12 | position in a later case. *Wagner v. Professional Engineers in California Govt.*, 354 F.3d

13 | 1036, 1044 (9th Cir. 2004). The doctrine is "intended to protect the integrity of the judicial

14 | process by preventing a litigant from playing fast and loose with the courts." *Id.* (internal

15 | quotation omitted). It applies whether the position "is an expression of intention, a statement

16 | of fact, or a legal assertion." *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997). The

17 | United States Supreme Court has devised the following non-exhaustive list of factors that

18 | courts may consider in determining whether to apply judicial estoppel:

19 |         First, a party's later position must be "clearly inconsistent" with its earlier position. . . . Second, courts regularly inquire
20 |         whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an
21 |         inconsistent position in a later proceeding would create "the perception that either the first or second court was misled."
22 |         . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair
23 |         advantage or impose an unfair detriment on the opposing party if not estopped.

24 |

25 | *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001).

26 |     In prior legal proceedings, Debtor contended that parishes and schools are part

**Page 27 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1   of its corporation sole.  Courts accepted these assertions and granted Debtor significant

2   benefits.  Now that it finds itself in bankruptcy, however, Debtor claims that the parishes and

3   schools are separate entities with interests in the Disputed Real Property.  The Court should

4   estop Debtor from repudiating the factual claims and legal assertions it has repeatedly, and

5   successfully, advanced in other courts.  A few examples will suffice to show how Debtor is

6   attempting to play "fast and loose" with the Court.

7              **a.      *Archdiocese of Portland v. Thorne* (1979)**

8              In *Archdiocese of Portland in Oregon v. Raymond Thorne, Ass't Dir. for*

9   *Employment*, No. 78-T-62 (Or. Employment Div. Jan. 22, 1979) (Amended Concise

10  Statement ¶ 22), Debtor asserted that parochial schools under the immediate supervision of

11  parish pastors were part of itself.  Debtor's memorandum of law made the following

12  statements:

13              [T]he parochial schools operated by the Catholic church are an
              integral part of the church.
14
              [T]he Archdiocese, through its local pastor, is also responsible
15            for the employment of all parish personnel, including lay
              teachers in the parish school.
16
              [I]t is clear that the Archdiocese intends its parochial schools to
17            be an integral part of the church itself, and effect must be given
              to such an intent.
18
              Said schools must be considered an integral part of the Catholic
19            Church . . . .

20            The parochial schools, not being separately incorporated, are
              clearly not legal entities separate from the church itself.
21
              Plaintiff also meets the requirement of control, in that the
22            parochial schools of the Archdiocese are operated, supervised,
              controlled or principally supported by The Catholic Church
23            represented by the Archdiocese here in Western Oregon.
              These schools are not separately incorporated and the Catholic
24            Church has legal control over them.  For the same reason that
              the schools must be seen as an integral part of the church, . . .
25            their schools must likewise be seen as controlled by the church.

26  *Id.* at 5-6.

**Page 28 of 32 -**  TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

1    The Referee adopted Debtor's position. In his ruling, he found that it was

2    "beyond question" and "amply demonstrated in both word and deed for decades" that "the

3    Catholic church considers its denominational schools to be but a portion of itself." *Id.* at 7.

4    He concluded that "the parochial schools are so intertwined within plaintiff's corporate

5    structure as to be an inseparable part thereof." *Id.* at 8.

6    On appeal by the Employment Division, Debtor further refined the positions it

7    had taken before the Referee. In a brief submitted to the Oregon Court of Appeals, Debtor

8    urged the court to find that there is a "distinction between church operated institutions which

9    are separately incorporated and those which are not." Amended Concise Statement ¶ 23.

10   The latter, it argued, should be exempt from unemployment taxation because they are merely

11   "one organization within the legal entity of the corporate structure of the Portland

12   Archdiocese" and "subordinates of the Catholic Church." *Id.* Debtor again prevailed, with

13   the Court of Appeals finding that the schools "are subject to the direct legal control of the

14   Archdiocese and its parishes . . . ." *Employment Div. v. Archdiocese of Portland*, 600 P.2d at

15   928.

16                        **b.      *Archdiocese of Portland & Diocese of Baker v. Employment***
17                                  ***Div. (Mattson) (1991)***

18   Years later, Debtor repeatedly claimed in *Archdiocese of Portland & Diocese*

19   *of Baker v. Employment Div.*, Nos. 86-T-081; 86-T-111 (Or. Employment Div. Oct. 16,

20   1990) (hereafter "*Mattson*") (Amended Concise Statement ¶ 25) that it owns and controls its

21   parishes and schools.[17] At the administrative level, Debtor and the Diocese of Baker

22

---

23   [17] Debtor did not prevail in *Mattson*. However, it would be appropriate for the Court to
     consider Debtor's assertions in this litigation because it succeeded in persuading the Referee
24   that parochial school workers are employees of the Archdiocese.

25   Ironically, Debtor was so persuasive on this point that it undercut its own
     Establishment Clause argument. Debtor claimed that it should be exempt from the
26   unemployment compensation system because an excessive entanglement with religion would
     result when the Employment Division became involved in the cases of employees discharged

**Page 29 of 32 -** TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
                    MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    stipulated that they "operate elementary and secondary schools through their local parishes

2    and religious orders" and that these schools "are a part of the Archdiocese and Diocese . . . ."

3    *Id.*

4            On appeal to the Oregon Supreme Court, Debtor and the Diocese of Baker

5    asserted that a majority of the former's employees, and close to a majority of the latter's

6    employees, work in their schools.  They further claimed that "[t]hese elementary and

7    secondary schools are operated primarily for religious purposes and have no separate legal

8    existence apart from that of the [a]pplicants."  Amended Concise Statement ¶ 27.  In their

9    petition to the United States Supreme Court for a writ of certiorari, Debtor and its co-

10   appellant again represented that they "collectively operate 63 elementary and secondary

11   schools through their local parishes and religious orders" and that the schools "have no

12   separate legal existence apart from that of the [p]etitioners."  *Id.*

13                    **c.    *Central Catholic Educ. Ass'n v. Archdiocese of Portland***
                             **(1996)**
14

15           Debtor most recently claimed that a high school was part of its corporation

16   sole in *Central Catholic Educ. Ass'n v. Archdiocese of Portland*, 916 P.2d 303 (Or. 1996)

17   (hereafter "*Central Catholic*").  A union had petitioned for certification as the exclusive

18   bargaining representative for certain high school employees.  Debtor asserted that the

19   employees worked for the Archdiocese.  Debtor also contended that it was not an employer

20   subject to the jurisdiction of the Employment Relations Board because, viewing the totality

21   of financial activities, it was instead subject to the exclusive jurisdiction of the National

22   Labor Relations Board ("NLRB").

23

24   for doctrinal reasons.  However, the Referee noted that Debtor "has approximately 120
     people leave its employment each year," but only five separations in the previous three years
25   were the result of doctrinal violations.  The Referee concluded that "[t]he applicants have not
     established that a real problem has occurred in this area."  Amended Concise Statement ¶ 25;
26   Conway Decl. Ex. 8, at 6.

**Page 30 of 32** -  TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
              MOTION FOR PARTIAL SUMMARY JUDGMENT

1              In its Brief on the Merits to the Oregon Supreme Court, Debtor stated that

2    "[t]he Archbishop is responsible for all of the pastoral and administrative affairs of each of

3    the parishes, schools and agencies within his geographic jurisdiction." Amended Concise

4    Statement ¶ 28. It further claimed that the "Archbishop alone has final authority within the

5    Archdiocese, subject only to the Pope's ultimate authority," and that his powers include

6    "ultimate authority" over the Archdiocese's schools. *Id.* In view of the Archbishop's control

7    over schools and teachers, Debtor contended that the union would "interpose a third party in

8    the relationship between the Archbishop and his teachers." *Id.*

9              Debtor prevailed on its claims. The Employment Relations Board, the Oregon

10   Court of Appeals and the Oregon Supreme Court found that Debtor owned and operated the

11   high school, and they agreed that all of Debtor's activities should be considered in

12   determining whether it satisfied the financial criteria for NLRB jurisdiction. See *Central*

13   *Catholic*, No. PR-1-93, mem. op. at 2-3, 9-10 (Or. Employment Rel. Bd. Sept. 14, 1993)

14   (Amended Concise Statement ¶ 29), *aff'd,* 891 P.2d 1318, 1321 (Or. App. 1995), 916 P.2d at

15   310.

16            The above-quoted statements show that Debtor has repeatedly persuaded other

17   courts that its corporation sole embraces unincorporated parishes and schools. Debtor's

18   belated abandonment of this position threatens the integrity of both the judicial process and

19   the bankruptcy system, which "depends on full and honest disclosure by debtors of all their

20   assets." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001); *see also*

21   *Helfand*, 105 F.3d at 535. Debtor's conduct satisfies the criteria for judicial estoppel, and the

22   Court should invoke the doctrine to prevent Debtor from claiming that its parishes and

23   schools are separate entities that can somehow claim an interest in the Disputed Real

24   Property.

25   * * *

26   * * *

**Page 31 of 32** - TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  **VII.    CONCLUSION**

2          For the foregoing reasons, Debtor's First, Third and Fifth Affirmative

3  Defenses should be dismissed.

4          DATED this 5th day of May, 2005.

5                          TONKON TORP LLP

6

7                          By _____
                              ALBERT N. KENNEDY, OSB No. 82142
8                             TIMOTHY J. CONWAY, OSB No. 85175
                              Attorneys for Tort Claimants Committee
9
                              MARCI A. HAMILTON, *Pro Hac Vice*
10                            36 Timber Knoll Drive
                              Washington Crossing, PA 18977
11                            Telephone: (215) 493-1973

12                            Special Counsel for Tort Claimants Committee

13  032545\00001\625394 V001

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 32 of 32 -**  TORT CLAIMANT COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND
               MOTION FOR PARTIAL SUMMARY JUDGMENT

1

**CERTIFICATE OF SERVICE**

2

3          I hereby certify that I served the foregoing **TORT CLAIMANT**
**COMMITTEE'S MEMORANDUM IN SUPPORT OF SECOND MOTION FOR**
4   **PARTIAL SUMMARY JUDGMENT** on:

5   Pamela J. Griffith                                      David A. Foraker
    U.S. Trustee's Office                                   Greene & Markley, P.C.
6   620 S.W. Main Street, Room 213                          1515 S.W. Fifth Avenue, Suite 600
    Portland, OR 97205                                      Portland, OR 97201-5492
7                                                                   Future Claimants Representative

    Howard M. Levine
8   Thomas W. Stilley                                       **REQUESTS FOR NOTICE:**
    William N. Stiles
9   Sussman Shank LLP                                       Steven M. Hedberg
    1000 S.W. Broadway, Suite 1400                          Douglas R. Pahl
10  Portland, OR 97205-3089                                 Jeanette L. Thomas
          Attorneys for Debtor Roman Catholic               Perkins Coie LLP
11        Archbishop of Portland in Oregon                  1120 NW Couch Street, 10th Floor
                                                            Portland, OR 97209-4128
12  James M. Finn                                                   Attorneys for Parishes and
    Schwabe, Williamson & Wyatt, P.C.                               Parishioners Committee
13  1600-1900 Pacwest Center
    1211 S.W. Fifth Avenue                                  John L. Langslet
14  Portland, OR 97204-3795                                 Scott A. Kamin
          Special Counsel for Debtor                        Michael J. Farrell
15                                                          Martin, Bischoff, Templeton,
    L. Martin Nussbaum                                        Langslet & Hoffman
16  Rothgerber Johnson & Lyons LLP                          900 Pioneer Tower
    Wells Fargo Tower, Suite 1100                           888 SW Fifth Avenue
17  90 South Cascade Avenue                                 Portland, OR 97204
    Colorado Springs, CO 80903                                      Attorneys for Oregon Insurance
18        Special Counsel for Debtor                                Guaranty Association

19  Brad T. Summers
    Ball Janik LLP
20  1100 One Main Place
    101 S.W. Main Street
21  Portland, OR 97204-3219
          Attorneys for Central Catholic High
22        School Parents Association and
          Central Catholic High School Alumni
23        Association

24
                  ☒ mailing a copy thereof in a sealed, first-class postage prepaid envelope,
25  addressed to each party's last-known address and depositing in the U.S. mail at Portland,
    Oregon on the date set forth below;

26

**Page 1 of 2** -CERTIFICATE OF SERVICE

1      ☐ causing a copy thereof to be hand-delivered to each party at each party's last-known address on the date set forth below;

2

3      ☐ sending a copy thereof via overnight courier in a sealed, prepaid envelope, addressed to each party's last-known address on the date set forth below;

4      ☐ faxing a copy thereof to each party at such party's last-known facsimile number on the date set forth below; or

5

6      ☐ e-mailing a copy thereof to each party at such party's last-known e-mail address on the date set forth below.

7      DATED this 5th day of May, 2005.

8      TONKON TORP LLP

9

By      _____

10      ALBERT N. KENNEDY, OSB No. 82142
TIMOTHY J. CONWAY, OSB No. 85175

11      Attorneys for Tort Claimants Committee

12    032545\00001\625394 V001

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 2 of 2** -CERTIFICATE OF SERVICE

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440