CLERK U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

SEP 1 9 2005

LODGED_____ REC'D_____
PAID_____ DOCKETED____
AFTER 4:30 P.M.

1  Steven M. Hedberg, OSB No. 84244 (shedberg@perkinscoie.com)
   Douglas R. Pahl, OSB No. 95047 (dpahl@perkinscoie.com)
2  Jeffrey C. Dobbins , OSB No. 02042,(jdobbins@perkinscoie.com)
   PERKINS COIE LLP
3  1120 N.W. Couch Street, Tenth Floor
   Portland, OR  97209-4128
4  Telephone:  (503) 727-2000

5

6      Of Attorneys for Defendant Class and Committee of Catholic Parishes, Parishioners and
       Interested Parties

7

8                    UNITED STATES BANKRUPTCY COURT

9                       FOR THE DISTRICT OF OREGON

10

11  In re                                    │  NO. 04-37154-elp11

12  ROMAN CATHOLIC ARCHBISHOP OF
    PORTLAND IN OREGON, and successors, a
13  corporation sole, dba the ARCHDIOCESE OF
    PORTLAND IN OREGON

14
                Debtor.
15
    ─────────────────────────────────────
16  TORT CLAIMANTS COMMITTEE,              │  Adversary Proceeding
                                           │  No. 04-3292-elp
17              Plaintiff,
                                           │  **PARISH AND PARISHONERS' CLASS
18  v.                                     │  AND PARISH COMMITTEE
                                           │  MEMORANDUM IN OPPOSITION TO
19  ROMAN CATHOLIC ARCHBISHOP OF           │  PLAINTIFFS' RESTATED SECOND
    PORTLAND IN OREGON, and successors, a  │  MOTION FOR PARTIAL SUMMARY
20  corporation sole, dba the ARCHDIOCESE OF │ JUDGMENT**
    PORTLAND IN OREGON, et al.,
21
22              Defendant.

23         In answer to Plaintiff's Restated Second Motion for Partial Summary Judgment (the

24  "Second Motion"), the Defendant Class of Parishes, Parishioners and other interested parties

25  certified by the Court in this proceeding, by and through Class Representatives John Rickman,

26  Glenn Pelikan, Johnston Mitchell, St. Andrews Catholic Church (Portland) (through its pastor,

PAGE  1-  PARISH AND PARISHIONERS' CLASS AND PARISH
          COMMITTEE MEMORANDUM IN OPPOSITION TO
          PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
          SUMMARY JUDGMENT

1   Reverend Charles Lienert), St. Anthony Catholic Church (Tigard) (through its pastor, Reverend

2   Leslie M. Sieg) and St. Juan Diego Church (Portland) (through its pastor, Reverend John Kerns),

3   and Intervenor Defendant Committee of Catholic Parishes, Parishioners and Interested Parties in

4   the Archdiocese of Portland in Oregon (the "Committee") (the Committee and the Class, through

5   its Class Representatives, are collectively referred to as the "Parish Defendants") offer the

6   following memorandum in opposition.

7                                    **INTRODUCTION**

8           The Tort Claimants' Committee (the "TCC") seeks summary judgment on three grounds.

9   First, it seeks to dismiss the Debtor's third affirmative defense entitled "lack of subject matter

10  jurisdiction." Second, it seeks to dismiss the Debtor's third affirmative defense entitled

11  "religious freedom." Finally, it seeks a declaration that "the Debtor's parishes and schools" are

12  not separate from the Debtor and do not have the capacity to sue or be sued.

13          The TCC's motion is anticipatory and fails to advance the case. First, affirmative

14  defenses often are, by their nature, contingent and lay dormant in anticipation of circumstances

15  that call them into action. There is no reason to resolve them here, since circumstances requiring

16  application of some of the more complex constitutional defenses may never arise. Furthermore,

17  for the Second Motion to prevail, the Court must conclude that there are *no* circumstances in

18  which the affirmative defenses might apply. This, the Court cannot and should not do.

19          Moreover, because the facts of this case present innumerable circumstances in which the

20  Court might exceed its jurisdiction or infringe upon religious freedoms, the affirmative defenses

21  cannot be dismissed. For instance, the third component of the TCC's motion, seeks a declaration

22  regarding parish and school separateness. If granted, the TCC's request would alter the parish

23  community structure of the Catholic Church – a structure that is at the core of the religious

24  understandings and experiences shared by Catholics in western Oregon. If the TCC's view

25  prevails, the Court would obliterate the significant elements of religious practice and community

26

PAGE  2-   PARISH AND PARISHIONERS' CLASS AND PARISH        **Perkins Coie** LLP
           COMMITTEE MEMORANDUM IN OPPOSITION TO          1120 N.W. Couch Street, Tenth Floor
           PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL   Portland, OR  97209-4128
           SUMMARY JUDGMENT                                 Phone:  (503) 727-2000
                                                            Fax:  (503) 727-2222

1    that separate parishes entail.  The TCC's request significantly undermines religious freedoms

2    guaranteed to parishioners, and must therefore be rejected.

3          Furthermore, a number of Supreme Court decisions involving the autonomy of religious

4    organizations loom over this case and threaten to strip the Court of its jurisdiction.  As the Court

5    is aware, these decisions place significant limits on the ability of civil courts to enter orders

6    affecting the polity of religious entities.  The TCC apparently views it as unseemly for the

7    Debtor to seek the protections of the United States Bankruptcy Code (the "Code") while at the

8    same time insisting that its religious structures and practices be respected.  But religious

9    organizations are neither barred from seeking protection under Chapter 11 nor required to check

10    their constitutional protections at the Bankruptcy Court's door.[1]

11          The Parish Defendants believe the Court may proceed to decide the issues before it based

12    neutral principles of state law (described more fully below), and that, by doing so, it can avoid

13    the constitutional issues that the TCC wants this Court to resolve now.  As recognized by the

14    U.S. Supreme Court, a "neutral principles" approach permits consideration of accepted religious

15    doctrine.  The proper application of that approach in this case leads to the conclusion that

16    separate parish identities must be respected, and that the TCC's motion should be denied.

17                                **BACKGROUND**

18          For many individual Catholics now before the Court, the exercise of their Catholic faith

19    begins, ends and is primarily devoted to their respective local Catholic parishes.  Despite the

20    Archdiocese's role in the hierarchy of the church and its service as the legal entity holding title to

21    parish property, the site and focus of parishioners' religious activities is their respective Parish

22    and Parish Defendants.  In addition to being the gathering place and focal point for parishioners'

23    religious worship, it is at the Parishes where parishioners baptize their children, educate their

24

25    _____

26          [1] In any event, the Parish Defendants did not seek the protection of the Bankruptcy Court.  They
simply seek a result that gives them the statutory and constitutional protections to which they are entitled.

PAGE   3-   PARISH AND PARISHIONERS' CLASS AND PARISH
            COMMITTEE MEMORANDUM IN OPPOSITION TO
            PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
            SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1  youth, marry their young people and bury their loved ones. Parish Defendants and their

2  properties are integral to the exercise of religiously-motivated practices that benefit others,

3  including programs to aid the ill, elderly, disadvantaged, homeless and hungry. See Declaration

4  of John Rickman at ¶¶ 5-13.

5      These real and personal properties, along with the improvements and liquid assets that

6  now comprise the Parishes, exist primarily because of the donations of money, time and labor of

7  parishioners within their respective Parishes. These parishioners intend that those assets be

8  devoted to the benefit of their respective parish communities and their religious and charitable

9  missions. *Id.* A determination by the Court that the Disputed Property should be included as

10  part of the bankruptcy estate and made available, possibly through liquidation, to satisfy general

11  claims against the Archdiocese, is directly at odds with Canon Law, with longstanding religious

12  practice, and with the intentions of generations of parishioners who, in the exercise of their

13  religious faith, donated the funds, materials and labor that now comprise the Disputed Property.

14      The Code of Canon Law (1983) ("Canon Law") is the principal legislative document of

15  the Catholic Church. It is regarded as "an indispensable instrument to ensure order both in

16  individual and social life, and also in the Church's own activity." Canon Law, p. xxx. Canon

17  Law governs the ownership and use of temporal goods – the real and personal property that

18  comprises archdioceses, dioceses and parishes. Canon 1254, Paragraph 1. Under Canon Law,

19  both an archdiocese and a parish are defined by the Code as public juridic persons – artificial

20  persons with the capacity for continued existence. Canon 515(3). The Code also describes a

21  parish as a "community of the Christian faithful" established on a stable basis. Canon 515,

22  Paragraph 1. Contributions made to a public juridic person are presumed to be the property of

23  that juridic person and no other. Canon 1267, Paragraph 1. A recurring theme in Canon Law,

24  particularly in the Code's section relating to temporal goods, is the duty of church administrators

25  to honor the intentions of donors and founders. See, e.g., Canon 1267, Paragraph 3.

26

PAGE  4-    PARISH AND PARISHIONERS' CLASS AND PARISH
            COMMITTEE MEMORANDUM IN OPPOSITION TO
            PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
            SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

**LEGAL STANDARD**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *State Farm Mutual Auto. Ins. Co. v. Davis,* 7 F.3d 180, 182 (9th Cir. 1993). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). That burden may only be met by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. If the moving party has met its burden, the nonmoving party may identify facts that show a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 249-50.

**ARGUMENT**

**A. The Affirmative Defense Regarding Subject Matter Jurisdiction is Appropriate Because the Court *Could* Exceed its Jurisdiction, and it Should Not Be Resolved Here Because There Is Not Yet a Need to Do So.**

The third affirmative defense states a logical syllogism: "To the extent this Court does not have jurisdiction over one or more of the Plaintiff's claims, such claims should be dismissed for lack of jurisdiction." Debtor's Answer, p. 10. But defenses based on lack of subject matter jurisdiction are never waived, and may be raised at any time, both at the trial level and on appeal, by the parties or by the Court on its own motion. *See, e.g., U.S. v. Cotton*, 535 U.S. 625, 630, 122 S.Ct. 1781, 1785 (2002); *Oregon Laborers-Employers Trust Funds v. Pacific Fence and Wire Co.,* 726 F. Supp. 786, 788 (D.Or. 1989). As a result, it makes little sense for the Court to strike this affirmative defense.

This conclusion holds particularly true where, as here, the Court and parties are still determining what course they intend to chart in resolving the issues presented in this proceeding. The TCC has asked the Court to determine that parish property is property of the estate free of

PAGE 5- PARISH AND PARISHIONERS' CLASS AND PARISH COMMITTEE MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1    any restriction.  The Archdiocese and Parish Defendants argue to the contrary, and that issue will

2    be joined for the first time, with respect to particular parishes, only in the briefing and argument

3    involving the TCC's Third motion for partial summary judgment.

4            In considering both this motion and the TCC's third motion, the Court has available to it a

5    number of approaches that minimize the constitutional and jurisdictional issues that need to be

6    resolved in this proceeding.  In choosing between those approaches, the Court has a "duty to

7    avoid deciding constitutional questions presented unless essential to proper disposition of a

8    case." *Harmon v. Brucker*, 355 U.S. 579, 581, 78 S.Ct. 433 (1958); *Spector Motor Service v.*

9    *McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152 (1944) ("If there is one doctrine more deeply

10   rooted than any other in the process of constitutional adjudication, it is that we ought not to pass

11   on questions of constitutionality . . . unless such adjudication is unavoidable").  Notably, the

12   parties appear to agree that the Court should apply state law pursuant to the "neutral principles"

13   doctrine described in the *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020 (1979).  If the Court can

14   resolve the case by applying such neutral principles, it can avoid taking action (or avoiding it)

15   based on constitutional interpretations.

16           The TCC places great emphasis on the so-called "ecclesiastical abstention" cases; these

17   cases impose jurisdictional limitations on courts in dealing with disputes, like the present one,

18   involving religious organizations.  *See, e.g., Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727-730,

19   733 (1871) (noting, in context of dispute regarding religious doctrine, that various arguments for

20   dismissal "all ... may be said to be questions of jurisdiction").  Those cases, however, will apply

21   only if the Court believes that the TCC has raised a legitimate dispute involving the meaning of

22   Canon Law.  Similarly, the Defendants would have to rely on the Religion Clauses of the First

23   Amendment and on the Religious Freedom Restoration Act ("RFRA") only if the Court

24   concluded that neither the "neutral principles" nor the "abstention" cases applied.

25           Contrary to all principles of judicial restraint, however, the TCC's motion calls upon the

26   Court to resolve *all* of these issues now.  Its effort to accelerate the Court's rulings on these

PAGE   6-    PARISH AND PARISHIONERS' CLASS AND PARISH
                COMMITTEE MEMORANDUM IN OPPOSITION TO
                PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
                SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1    matters is unnecessary and unwise. The TCC's motion to dismiss the third affirmative defense

2    should be denied.

3    **B. The Fifth Affirmative Defense Should Remain Because Issues of Religious**
     **Freedom Will Continue to Play a Central in this Proceeding.**

4

5        Like the third affirmative defense, the fifth affirmative defense is also a truism in light of

     the facts of this case. It states that "[t]he adjudication of the Complaint could potentially
6
     entangle the Court in religious matters in violation of the First Amendment to the United States
7
     Constitution, Oregon law, and other applicable nonbankruptcy law." Given the remedy sought
8
     by the TCC, the applicability of these defenses is apparent. *Jones.* 443 U.S. 595; *Serbian*
9
     *Eastern Orthodox Diocese for the USA and Canada,* 426 U.S. 696, 710, 96 S.Ct. 2372 (1976);
10
     *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian*
11
     *Church,* 393 U.S. 440, 446, 89 S.Ct. 601 (1969); *Watson,* 80 U.S. (13 Wall.) 691.
12
13       In its Complaint, the TCC seeks a ruling that Parish Property is property of the estate and

     available to creditors of the Archdiocese. Under that ruling, however, the fifth affirmative
14
     defense correctly forecasts that significant religious freedom issues would arise to prevent the
15
     Court from might arise. These issues arise out of the Religious Freedom Restoration Act, 42
16
     U.S.C. § 2000bb ("RFRA"), as well as the First Amendment.
17
18       **1. The Religious Freedom Restoration Act.**

19       Religious freedom issues may arise as a result of RFRA. Under RFRA,

20           Government may substantially burden a person's exercise of religion *only*
             if it demonstrates that application of the burden to the person--

21           (1) is in furtherance of a compelling governmental interest;

22           (2) is the least restrictive means of furthering that compelling
23           governmental interest.

24

25

26

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1   42 U.S.C. § 2000bb-1(b) (2003) (emphasis added).[2]  In determining whether a government

2   action "substantially burdens" a person's religious practice, courts look to sincerely held religious

3   beliefs and not "a philosophy or a way of life." *Werner v. McCotter,* 49 F.3d 1476, 1480 n.1

4   (10th Cir. 1995).  The action must "'significantly inhibit or constrain conduct or expression that

5   manifests some central tenet of a [person's] individual [religious] beliefs; must meaningfully

6   curtail a [person's] ability to express adherence to his or her faith; or must deny a [person]

7   reasonable opportunities to engage in those activities that are fundamental to a [person's]

8   religion.'"  *In re Young,* 82 F.3d 1407, 1418 (8th Cir. 1996) (*"Young I"*) (citation and internal

9   punctuation omitted).[3]  The Eighth Circuit restated and reemphasized its conclusions in

10  *Christians v. Crystal Evangelical Free Church (In re Young),* 141 F.3d 854 (8th Cir.), *cert.*

11  *denied,* 119 S. Ct. 43 (1998) ("*Young II*").  *Young II* was subsequently cited with approval by the

12  Ninth Circuit.  *Guam v. Guerrero,* 290 F. 3d 1210, 1220-21 (9th Cir. 2002).[4]

13      In *Young,* prior to the petition date, the debtors made $13,450 in donations to their local

14  church.  The trustee sought to recover these contributions pursuant to Section 548 of the

15  Bankruptcy Code.  The Eighth Circuit concluded that avoidance of the debtors' religious

16  contributions would substantially burden their religious practice.

17

18  _____

19  [2] While the Supreme Court declared RFRA unconstitutional as applied to the States, *see City of Boerne v. Flores,* 521 U.S. 507, 513, 117 S.Ct. 2157 (1997), it left open the question of its

20  constitutionality as against the federal government.  The Ninth Circuit subsequently examined this question and ruled, consistent with other federal circuit courts, that RFRA is, in fact, valid and constitutional with respect to actions of the federal government.  *Guam v. Guerrero,* 290 F. 3d 1210,

21  1220-21 (2002).

22  [3] *In re Young,* 82 F.3d 1407 (8th Cir.), *reh'g denied,* 89 F.3d 494 (8th Cir. 1996), *vacated and remanded,* 117 S. Ct. 2502 (1997), *on remand sub nom. Christians v. Crystal Evangelical Free Church

23  (In re Young),* 141 F.3d 854 (8th Cir.), *cert. denied,* 119 S. Ct. 43 (1998).

24  [4] In *In re Gomes,* 219 B.R. 286 (Bankr. D. Or. 1998) (J. Dunn), the court concluded that RFRA

25  did not prevent the avoidance as fraudulent transfers of the debtors' prepetition religious contributions because their avoidance did not substantially burden the religious practices of either the church or the

26  debtors.  That decision, however, predated the decision in both *Young* and, more importantly, the Ninth Circuit's approval of *Young* in *Guererro.*

PAGE  8-   PARISH AND PARISHIONERS' CLASS AND PARISH
          COMMITTEE MEMORANDUM IN OPPOSITION TO
          PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
          SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

Even though the church encourages but does not compel tithing, the debtors consider tithing to be an important expression of their sincerely held religious beliefs. In other words, in the present case, tithing is religiously motivated, but not religiously compelled, practice. Permitting the government to recover these contributions would effectively prevent the debtors from tithing, at least for the year immediately preceding the filing of the bankruptcy petitions. We do not think it is relevant that the debtors can continue to tithe or that there are other ways in which the debtors can express their religious beliefs that are not affected by the governmental action. It is sufficient that the governmental action in question meaningfully curtails, albeit retroactively, a religious practice of more than minimal significance in a way that is not merely incidental.

*Young I,* 82 F.3d at 1418-19.

In *Young,* these considerations led the Eighth Circuit to conclude that the religious contributions were not avoidable, and to hold that Congress effectively amended the Bankruptcy Code when it enacted RFRA.

We conclude that RFRA is an appropriate means by Congress to modify the United States bankruptcy laws. In attempting to avoid the Youngs' tithes to the church, the Trustee relied on an affirmative act of Congress defining which transactions of debtors in bankruptcy may be avoided. *See* 11 U.S.C. § 548(A)2)(A). RFRA, however, has effectively amended the Bankruptcy Code, and has engrafted the additional clause to §548(a)(2)(A) that a recovery that places a substantial burden on a debtor's exercise of religion will not be allowed unless it is the least restrictive means to satisfy a compelling governmental interest.

*Young II,* 141 F.3d at 861.

As applied to this case, the property of the estate provisions of the Bankruptcy Code would substantially burden the parishioners' exercise of religion. Notably, the risk to free exercise principles is even greater here than was true in *Young.*[5] There, the issue was the

---

[5] Notably, the First Amendment's Religion Clauses were prompted in part by the colonists' rejection of the English practice of taxing the individual for religious purposes – of forcing them, in effect, to tithe to a government-approved church. From the beginning, then, the Constitution has recognized the important connection between individual giving and religious beliefs. *County of Allegheny v. ACLU,* 492 U.S. 573, 649 & n. 3, 109 S.Ct. 3086 (1989) (Stevens, J., concurring in part & dissenting in part). *See also* Richard C. Mangrum, "Tithing, Bankruptcy and the Conflict Between

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1    Bankruptcy Code's interference with a single parishioner's right to tithe to the Church over a

2    relatively brief period of time.  That issue is present here, but vastly expanded in scope, since this

3    case involves not merely the tithing over the last 90 days prior to the bankruptcy, but the fruits of

4    tithes given by *generations* of parishioners, which currently number thousands of individuals

5    throughout western Oregon.  See Rickman Decl. at ¶¶ 7-13.

6         The magnitude of interference, then, is vast.  To justify this interference with the

7    parishioners' exercise of their religion, the TCC must demonstrate that, as applied here, the

8    bankruptcy code would be 1) "in furtherance of a compelling governmental interest," and 2) the

9    relevant law is "the least restrictive means of furthering that compelling governmental interest."

10   42 U.S.C. § 2000bb-1(b).

11        In this case, the governmental interest – maximizing property of the estate – is not

12   narrowly tailored.  The application of the Bankruptcy Code would bring far more property into

13   the control of the Debtor than is allowed under Canon Law, more than is permitted by the

14   religious beliefs or donative intentions of parishioners, and more than can be reasonably reached

15   (in most cases) by the application of reasonable principles of civil liability.  There is no

16   compelling reason to ignore these aspects of religious practice in a generalized effort to broaden

17   the scope of the estate.  That is precisely the conclusion reached by the Eighth Circuit in *Young,*

18   cited with approval by the Ninth Circuit in *Guerrero.*  And it is, respectfully, the result that this

19   Court should reach here.

20        **2. The Religion Clauses of the First Amendment.**

21        Religious freedom issues identified in the fifth affirmative defense may also arise under

22   the United States Constitution.[6]  The First Amendment provides that "Congress shall make no

23

24   Religious Freedom and Creditor's Interests," 32 Creighton L. Rev. 815, 839-46 (1999) (discussing
     religious importance of tithing).

25        [6] The Parish Defendants concur with the basic substance of the Archdiocese's arguments

26   regarding the applicability of the church autonomy and neutral principles cases from the U.S. Supreme
     Court.

PAGE   10-  PARISH AND PARISHIONERS' CLASS AND PARISH
            COMMITTEE MEMORANDUM IN OPPOSITION TO
            PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
            SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

1   law respecting an establishment of religion, or prohibiting the free exercise thereof." Courts are

2   similarly restricted in their consideration of issues involving religious organizations or doctrine.

3   Generally, courts may not interpret church laws, policies or practices in a manner that will limit a

4   church's ability to fully practice its religion or be guided by its religious principles. *Cantwell v.*

5   *Connecticut,* 310 U.S. 296, 303 (1940). However, courts are not prevented from addressing

6   church-related disputes, provided they refrain from considering doctrinal matters and resolve the

7   dispute solely on neutral principles.

8       In *Watson v. Jones*, 80 U.S. 679 (1871), a case involving disputing factions of a

9   Kentucky Presbyterian church, the Supreme Court adopted a rule of deference. In property

10  disputes involving hierarchical churches, the decision of the highest church authority is binding

11  and final in "questions of discipline, or of faith, or ecclesiastical rule, custom, or law." *Id.* at

12  727. In *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial*

13  *Presbyterian Church,* 393 U.S. 440 (1969), where the national church sought to take possession

14  of the local parish's property, the state court jury was instructed to consider "whether the actions

15  of the [national] church 'amount to a fundamental or substantial abandonment of the original

16  tenants and doctrines of the [general church].'" *Id.* at 443-44 (brackets in original). The

17  Supreme Court reversed, concluding that: "If civil courts undertake to resolve such controversies

18  in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free

19  development of religious doctrine and implicating secular interests in matters of purely

20  ecclesiastical concern." *Id.* at 449. "[T]he First Amendment forbids civil courts from playing

21  such a role." *Id.*[7]

22

23  _____

24      [7] The TCC argues that these "ecclesiastical abstention" cases are not applicable here because this
    case involves "third parties" and a "purely secular dispute." See Memo in Support at 8. The TCC
    misapprehends the nature of the dispute at issue by insisting that it is a dispute between the church and

25  third parties. The issue here is not *liability.* In this case, the Court is effectively resolving a hypothetical
    future dispute between a (religious) debtor in possession and another member of that religion that disputes

26  whether certain property is available to the estate in order to pay creditors. Consider, for example, that
    the Archdiocese decided to oppose the parishes' position, and to include the subject property in the estate.

PAGE  11-  PARISH AND PARISHIONERS' CLASS AND PARISH
          COMMITTEE MEMORANDUM IN OPPOSITION TO
          PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
          SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1    The *Hull* Court observed that "there are neutral principles of law, developed for use in all

2    property disputes, which can be applied without 'establishing' churches to which property is

3    awarded." *Id.* The neutral-principles approach had been approved in *Maryland & Va. Churches*

4    *v. Sharpsburg Church,* 396 U.S. 367, 368, 90 S.Ct. 499, 500 (1970), a case "settling a local

5    church property dispute on the basis of the language of the deeds, the terms of the local church

6    charters, the state statutes governing the holding of church property, and the provisions in the

7    *constitution of the general church* concerning the ownership and control of church property."

8    *Jones v. Wolf,* 443 U.S. 595, 602-03 (1979) (emphasis added).

9    In *Jones v. Wolf,* 443 U.S. 595 (1979), the Court further described the neutral principles

10    approach, concluding that "a State may adopt any one of various approaches for settling church

11    property disputes so long as it involves no consideration of doctrinal matters." *Id.* at 602.  Such

12    principles must be "secular in operation, and yet flexible enough to accommodate all forms of

13    religious organization and polity." *Id.* at 603.  The Court provided the following additional

14    guidance for courts reviewing religious documents pursuant to neutral principles:

15          In undertaking such an examination, a civil court must take special care to
            scrutinize the document in purely secular terms, and not to rely on
16          religious precepts in determining whether the document indicates that the
            parties have intended to create a trust.  In addition, *there may be cases*
17          *where the deed, the corporate charter, or the constitution of the general*
            *church incorporates religious concepts in the provisions relating to the*
18          *ownership of property*.  If in such a case the interpretation of the
            instruments of ownership would require the civil court to resolve a
19          religious controversy, then the court must defer to the resolution of the
            doctrinal issue by the authoritative ecclesiastical body.
20

21

22    In that circumstance, the issues presented in the church autonomy / ecclesiastical abstention cases would
23    be squarely presented, and the Court would be bound to defer to the decision of a higher authority within
      the Church to resolve the dispute.  Conversely, imagine in *Watson* that the party seeking review had been
24    a third party creditor of one of the two religious entities disputing the case.  There is little reason to
      believe that the Court would, suddenly, be able to claim jurisdiction and resolve the question of
25    ownership.  The fundamental question – the terms of property ownership under the religion at issue –
      should not be any different just because the parties change.  The concerns, the effect of a decision by the
26    Court on the Church's ability to define its own structure, and the implications under the First Amendment,
      are identical under each circumstance.  The TCC's effort to distinguish this case should be rejected.

PAGE  12-  PARISH AND PARISHIONERS' CLASS AND PARISH
           COMMITTEE MEMORANDUM IN OPPOSITION TO
           PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
           SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1    *Id.* at 604 (citation omitted) (emphasis added).

2    **3. Neutral Principles of Law Requires Consideration of Canon Law.**

3    The safe pathway through this proceeding will require this Court to proceed under the

4    neutral principles doctrine, applying state law and recognizing the substance of Canon Law and

5    the central role it plays in church property matters.  This approach will require precision and

6    delicacy, but provides the best option for the Court to avoid entanglements prohibited by

7    applicable precedents.

8    Under neutral principles, a court should review the deeds to the church property and the

9    state statutes governing the holding of church property.  The TCC would have the Court end its

10   inquiry there, affirmatively ignoring Canon Law and its fundamental relationship to the authority

11   of the corporation sole in relation to parish property.  The TCC's constrained view invites

12   numerous religious freedom objections and ignores the teachings of *Jones*, which makes clear

13   that courts may engage in a limited review of religious documents and practices, including

14   church charters, books of order or discipline of the general church organization.  *Id.* at 602-04,

15   99 S.Ct. at 3026.

16   Instead, the *Jones* Court explicitly approved of Georgia's reference to church teachings.

17   It also specifically notes that *either* a secular *or* a religious route to avoid uncertainty regarding

18   the disposition of property:

19       At any time before the dispute erupts, the parties can ensure, if they so
         desire, that the faction loyal to the hierarchical church will retain the
20       church property.  They can modify the deeds or the corporate charter to
         include a right of reversion to in favor of the general church.
21       Alternatively, the constitution of the general church can be made to recite
22       an express trust in favor of the denominational church.

23   443 U.S. at 606.  See Canon 1267, Paragraph 1 (contributions made to a juridic person are

24   presumed to be the property of that juridic person).

25   Oregon law conforms nicely to *Jones*.  From multiple vantage points, neutral principles

26   of Oregon law require this Court to refer to Canon Law and the practices of the Roman Catholic

PAGE  13-  PARISH AND PARISHIONERS' CLASS AND PARISH
           COMMITTEE MEMORANDUM IN OPPOSITION TO
           PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
           SUMMARY JUDGMENT

1  Church in order to assess the ownership of the Disputed Property. For instance, the Debtor was

2  incorporated under Oregon's original corporation sole statute, which provided that:

3        [A]ny person being the bishop, overseer, or presiding elder of any church,
         or religious denomination of this State, may, *in conformity with the*
4        *constitutions, canons, rules, regulations, and discipline of such church or*
         *denomination*, become a corporation sole for religious and educational
5        purposes.

6  Or. Gen'l Laws at 127 § 9 (emphasis added). The placement of the "in conformity with" clause

7  squarely in the middle of the "may .... become a corporation sole" strongly suggests that the

8  clause referencing church canons applies primarily not to the appointment of the representative,

9  but instead to the resulting corporation sole itself. Properly interpreted, and interpreted in a

10  manner that avoids constitutional difficulties, see *NLRB v. Catholic Bishop of Chicago*, 440 US

11  490, 502 (1979), the statute explicitly recognized, as a matter of state law, that Canon Law must

12  be referenced in understanding the structure and authority of the corporation sole.

13        References to religious canons continue in Oregon's modern corporation sole statute.

14  ORS 65.067 ("in conformity with the constitution, canons, rules, regulations and disciplines of

15  any church"). More strikingly, in ORS 65.042, the Oregon Legislature explicitly recognized that

16  religious "doctrine or practice governing the affairs of a religious corporation" may, in

17  appropriate circumstances, trump contrary provisions of the state nonprofit corporations law.

18  Provisions that are subject to being trumped by ORS 65.042 include the corporation sole's

19  powers to: "acquire and own, hold, improve, use and otherwise deal with real or personal

20  property or any interest in property"; "[s]ell, convey, mortgage, pledge, lease, exchange, transfer

21  and otherwise dispose of" property"; "[m]ake contracts and guarantees, incur liabilities . . . and

22  secure any of its obligations by mortgage or pledge of any of its property"; "[l]end money, invest

23  and reinvest its funds"; [b]e a promoter. . . or manager of any . . . trust or other entity";

24  "[c]onduct its activities, locate its offices and exercise the powers granted by this chapter";

25  "[e]lect or appoint directors . . . [and] define their duties"; "[d]o any other act, not inconsistent

26  with law, that furthers the activities and affairs of the corporation"; and "[d]issolve, merge or

PAGE  14-  PARISH AND PARISHIONERS' CLASS AND PARISH
            COMMITTEE MEMORANDUM IN OPPOSITION TO
            PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
            SUMMARY JUDGMENT

1    reorganize . . . ."  ORS 65.077 (4-5), (7-11), (17-18).  Thus, the above powers of the corporation

2    sole are limited by and must be read in conjunction with Canon Law, the "doctrine or practice

3    governing the affairs of a religious corporation."  ORS 65.042.

4         Anyone reading the Debtor's Articles of Incorporation cannot overlook the central role

5    that Canon Law plays in the corporation sole, for the Articles repeatedly reference Canon Law.

6    For example:

7              [T]he object and purposes of this corporation is to provide for and
              maintain the worship of Almighty God, and the preaching of the gospel of
8              our Lord Jesus Christ, according to the doctrine, canons, rules and usages
              of the Roman Catholic Church, ... [and] ... for acquiring, holding and
9              disposing of church property for the benefit of the Roman Catholic Church
10             for works of charity and for public worship.

11        In addition, the Articles provide that the Archbishop and his successors "will hold said

12   office or position, in said Diocese, *under the canons, rules and usages of the Roman Catholic*

13   *Church*."  The Articles make clear that the Archbishop, as the sole member of the corporation

14   sole, is bound by his obligations under Canon Law.  In addition, the under Oregon law, in

15   carrying out his duties, the Archbishop "entitled to rely on information, opinions, reports or

16   statements . . . prepared or presented by * * * religious authorities and ministers, priests, rabbis

17   or other persons whose position or duties in the religious organization the director believes

18   justify reliance . . . ."  ORS 65.357(2)(d).

19        Finally, contrary to the TCC's characterization of Canon Law as interesting but irrelevant

20   to this proceeding, numerous decisions by the District of Oregon have expressly considered

21   Canon Law.  *See, e.g., G.B. v. Archdiocese of Portland in Oregon,* 2002 WL 31441220 (D.Or.

22   2002) (Jones, J.) ("While this will require the court to consider a number of Defendants' canons

23   delineating the duties of a priest, the court will not need to make any judgment on

24   appropriateness, correctness or validity of any of the canons"); *M.K. v. Archdiocese of Portland*

25   *in Oregon,* 228 F.Supp. 1168, 1172 (D.Or. 2002) (same).

26

PAGE  15-  PARISH AND PARISHIONERS' CLASS AND PARISH
           COMMITTEE MEMORANDUM IN OPPOSITION TO
           PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
           SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1    Some of the TCC's confusion may arise out of its effort to apply *Employment Division v.*

2    *Smith*, 494 U.S. 872, 110 S.Ct. 1595 (1990), to an improperly broad range of circumstances.

3    *Smith,* however, is not a case about the polity of the church.  Rather, it addresses the specific

4    behavior of *individuals*, and indicates that in some cases, at least, that behavior can be restrained

5    by laws of neutral application.  *Smith* does not preclude states from referencing religious doctrine

6    in defining neutrally-applicable laws.  The Court makes clear in *Jones* that a "neutral principles"

7    approach referencing religious doctrine is one of several decision rules that the States may adopt

8    in resolving a conflict between parties that has a religious component.  443 U.S. at 602.

9    In the end, then, it is not the *application* of religious doctrine that must be avoided under

10    *Watson*, *Jones*, and related cases, but the *resolution of religious disputes*.  If there is no dispute

11    regarding the teachings of Canon Law, the Court may (and should) examine Canon Law in

12    considering whether the property is within the estate or not.

13    It is the TCC's approach – the improper refusal to *consider* religious principles – that

14    would threaten a constitutional violation by refusing to give effect to religious convictions and

15    the accompanying religious political structures relied upon to support religious communities like

16    the parishes at issue in this case.  This is not giving religious communities *preference* in applying

17    trust and bankruptcy law.  It is simply ensuring that religious considerations are as valuable as

18    any other consideration in determining whether a trust has been created.

19    **4. Neutral Principles of Law, Including Consideration of Canon Law,**

20    **Support the Finding of Trusts in Relation to the Parish Property.**

21    In this adversary proceeding, the fundamental question is simply whether the property

22    listed by the Debtor is "property of the estate" within 11 U.S.C. § 541, or whether it is instead

23    property of others held by the debtor in trust at the time of the filing of the petition.  *United*

24    *States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 10 (1983).  That question is resolved by

25    reference to state law, see *id. (citing Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918

26    (1979)).  In Oregon, the "guiding principle" for assessing whether property amounts to a trust is

PAGE  16- PARISH AND PARISHIONERS' CLASS AND PARISH
COMMITTEE MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1  the "intent of the person creating" the trust.  *Beach v. Holland,* 172 Or. 396, 142 P.2d 990

2  (1943).  All surrounding circumstances should be examined to assess whether a trust exists.

3  *Allen v. Hendrick,* 104 Or. 202, 206 P.2d 733 (1922).

4        The donative intent of the parties supports the conclusion that the property is held in trust

5  for the benefit of Parishes.  While questions of donative intent and the facts to support the

6  existence of a trust will be developed far more substantially in the Parish Defendants' response to

7  the TCC's third motion for partial summary judgment, a basic outline of the relevant facts is

8  found in the accompanying declarations of Father John Kerns and John Rickman.  According to

9  Mr. Rickman, speaking for members of Subclass Two, parishioners give to their local parishes as

10  a fundamental component of the exercise of their Catholic faith and beliefs.  Parishioners intend

11  and understand that their contributions will be held for the benefit of their Parish, which includes

12  not only those individuals but the community of individuals who worship with them.  Decl. of

13  Rickman at ¶ 8-13; Kerns at ¶ 6.  The religious contributions so generated are held and put to for

14  the sole benefit of the Parish Community.  Indeed, it is the Parish and parish priest that control

15  the daily management of these resources.  See Decl. of Kerns at ¶ 7-14.

16        An application of state trust law to these facts could (and should) conclude, even without

17  reference to Canon Law, that the property at issue in this case is held in trust by the Debtor for

18  the benefit of the parishes.  If that is the case, of course, the Court need not address *any* of the

19  complex constitutional issues presented in the motion for summary judgment or the responses of

20  the parties.

21        If there were any question of intent, however, Canon Law of course offers substantial

22  support for the conclusion that this property is held not by the Archdiocese for itself, but rather in

23  trust for the benefit of the Parishes.[8]  The TCC cannot reasonably contend that Canon Law does

---

[8] The structure of the Church imposed by Canon Law, and the authority of actors within that structure as defined by Canon Law, helps explain *why* parishioners and priests believe that their donations are held in trust by the Archdiocese.

PAGE  17- PARISH AND PARISHIONERS' CLASS AND PARISH COMMITTEE MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1   not limit the authority of the Debtor, establish the laws and structures that apply to the

2   Archdiocese and inform the intentions of parishioners.  Parishes and the Archdiocese are

3   separate juridic persons.  Contributions made to a public juridic person are presumed to be the

4   property of that public juridic person.  Canon 1267, Paragraph 1.  Church administrators are

5   duty-bound to honor the intentions of donors and founders.

6       Canon Law guides the Court to a straightforward finding that these properties were given

7   and are held in trust for the benefit of the Parishes.  They are, therefore, not property of the

8   Debtor's estate.

9   **C. The Court Should Reject the TCC's Invitation to Rule that Parishes are not
       Separate Entities, and to Opine on Whether Parishes May "Sue or Be Sued"**

10

11      The final piece of the TCC's request for partial summary judgment is a vestigial branch of

12  its initial second motion for partial summary judgment.  In that original "second motion," the

13  TCC sought summary judgment on the Debtor's affirmative defense that all necessary parties had

14  not been joined in the suit.  The TCC argued (as it still does in its unrevised memorandum of

15  law) that the parishes were not separate legal entities, that they did not have the capacity to sue

16  or be sued, and that as a result, they were not "necessary parties" separate from the Debtor.

17  Apparently recognizing that this issue had been thoroughly discussed in the creation of the Parish

18  Defendants' class, the TCC revised its motion for judgment on the Debtor's affirmative defense,

19  and instead interposed a request for declaratory judgment along the same lines.

20      The request, however, does not have an obvious bearing on this case.  The TCC does not

21  seek to challenge the standing of the Parish Defendants, and it does not directly argue what

22  relevance the Parish separateness or their capacity to sue or be sued has in evaluating whether

23  this property is held in trust for the parishes or not.  The lack of clarity alone should be sufficient

24  to reject the TCC's request.

25      We assume, however (as has the Debtor), that the TCC's largely unstated point is that if

26  the parishes are not separate legal entities, they cannot have a separate beneficial interest in the

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1    property.  The Court should reject both the premise and the conclusion.  The premise – that the

2    Parishes have no separate legal status – rests on the TCC's argument that "neutral principles"

3    require the Court to ignore Canon Law.  As discussed above, however, the TCC's argument

4    vastly over reads the "neutral principles" doctrine, and improperly seeks to exclude references to

5    Canon Law that are entirely appropriate under the Constitution.  Under Canon Law, which is

6    properly referenced as a matter of state corporation law and under the Debtor's Articles of

7    Incorporation, the parishes *are* separate entities.

8         Furthermore, just because the Parish Defendants are not separately incorporated, that

9    does not prevent the Parishes (or, for that matter, the community of parishioners that make up

10   each parish) from being the beneficiary of a trust under Oregon law.  The Parishes have a

11   sufficiently separate status from the Debtor as a factual matter, see, e.g., Decl. of Father John

12   Kerns, that they *can* be beneficiaries of a trust under Oregon law, whether the trust is a general

13   trust (which requires a definable beneficiary) or a charitable one (which does not).[9]  Even if this

14   rationale did not apply to the Parishes themselves, it would not foreclose the community of

15   parishioners from being the beneficiary of these trusts on a similar theory.

16                                    **CONCLUSION**

17        The TCC asks this Court, in the name of avoiding religious entanglement, to ignore the

18   very "neutral principles" of state law that they so vigorously advocate.  As *Jones v. Wolf* and the

19   other "neutral principles" cases teach, however, the only "religious issues" to be avoided are

20   those that require the federal courts to resolve disputed issues of religious doctrine; absent

21   _____

22        [9] *Cf. Berean Fundamental Church Council, Inc. v. Braun*, 281 Or. 661, 576 P.2d 361 (1978) (in
23   constructive trust context, finding that beneficiary was the "pastor, local council, and congregation" of
     worshipers at a particular church).  *See also Good Samaritan Hospital and Medical Center v. U. S. Nat.*
24   *Bank*, 246 Or. 478, 482, 425 P.2d 541, 543 (Or. 1967); Restatement (3rd) of Trusts, sec. 28, cmt. c
     (noting that beneficiaries of charitable trusts need not be definitely ascertainable).  Cf. Restatement (3rd)
25   of Trusts, sec. 43, cmt. a; *Central Alabama Conference of the African Methodist Episcopal Zion Church*
     *in America v. Crum*, 746 So.2d 1013, 1017 (Ala. Civ. App. 1999); *Good Samaritan*, 246 Or. at 481 n.1.
26   *See also In re Parkview Hospital,* 211 B.R. 619 (Bankr. N.D. Ohio 1997) (charitable trust found; not
     property of the estate).

PAGE  19-  PARISH AND PARISHIONERS' CLASS AND PARISH
           COMMITTEE MEMORANDUM IN OPPOSITION TO
           PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
           SUMMARY JUDGMENT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

1    dispute, it is perfectly appropriate to examine religious doctrine in resolving property disputes

2    like this one.

3          In this case, then, state corporation law, the articles of incorporation, and state trust law

4    all point the Court to examine Canon Law in evaluating the status of this property.  And there

5    can be no legitimate dispute (despite the TCC's insistence that Canon Law should be ignored)

6    that under Canon Law, Parishes are separate juridic persons, and the Debtor holds the disputed

7    properties in trust for those Parishes.  Even if there were a dispute on this point, the Court would

8    simply be obligated, under *Watson* and its progeny, to either abstain from resolving the dispute,

9    or to defer to the determination of the highest Church authority with respect to this matter.  In

10   neither case would the TCC be entitled to summary judgment.

11          Finally, even if the Court were to rule, contrary to *Jones v. Wolf* and other decisions, that

12   it should ignore clearly-stated religious principles governing the status of the disputed property,

13   and even if the Court were to conclude that it could brush aside the political structure of the

14   Catholic Church, such a decision would so substantially interfere with the free exercise rights of

15   parishioners in the Archdiocese that RFRA, at least, would prohibit the application of the

16   bankruptcy code sought by the TCC.

17          For all the above reasons, the TCC's restated second motion for partial summary

18   judgment should be denied.

19          Dated this 19th day of September, 2005

20                              **PERKINS COIE LLP**

21

22                          By _____

23                              Steven M. Hedberg, OSB No. 84244
                                Douglas R. Pahl, OSB No. 95047
                                Jeffrey C. Dobbins , OSB No. 02042
24                              Of Attorneys for the Defendant Class and the
                                Committee of Parishioners
25

26

PAGE  20-  PARISH AND PARISHIONERS' CLASS AND PARISH
           COMMITTEE MEMORANDUM IN OPPOSITION TO
           PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL
           SUMMARY JUDGMENT

                                        **Perkins Coie** LLP
                                 1120 N.W. Couch Street, Tenth Floor
                                      Portland, OR  97209-4128
                                      Phone:  (503) 727-2000
                                       Fax:  (503) 727-2222

1    Steven M. Hedberg, OSB No. 84244 (shedberg@perkinscoie.com)
     Douglas R. Pahl, OSB No. 95047 (dpahl@perkinscoie.com)
2    PERKINS COIE LLP
     1120 N.W. Couch Street, Tenth Floor
3    Portland, OR 97209-4128
4    Telephone: (503) 727-2000

5       Of Attorneys for Committee of Parishes and Parishioners

CLERK U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

SEP 19 2005

LODGED_____ REC'D____ EB
PAID_____ DOCKETED____
AFTER 4:30 P.M.

6

7

8

9           UNITED STATES BANKRUPTCY COURT

10           FOR THE DISTRICT OF OREGON

| | |
|---|---|
| 11  In re | NO. 04-37154-elp11 |
| 12  ROMAN CATHOLIC ARCHBISHOP OF | |
| 13  PORTLAND IN OREGON, and successors, a corporation sole, dba the ARCHDIOCESE OF | |
| 14  PORTLAND IN OREGON | |
| 15         Debtor. | |
| 16  TORT CLAIMANTS COMMITTEE, | Adversary Proceeding NO. 04-3292-elp |
| 17        Plaintiff, | |
| 18 | **CERTIFICATE OF SERVICE** |
|     v. | |
| 19 | |
| 20  ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, and successors, a | |
| 21  corporation sole, dba the ARCHDIOCESE OF PORTLAND IN OREGON, | |
| 22        Defendant. | |
| 23 | |

24

25       I hereby certify that I served the following documents:

26

PAGE 1-  **CERTIFICATE OF SERVICE**

[54319-0001/PA052620.022]

1.    **PARISH AND PARISHONERS' CLASS AND PARISH COMMITTEE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT;**

2.    **DECLARATION OF JOHN RICKMAN;**

3.    **DECLARATION OF FATHER JOHN KERNS IN SUPPORT OF MEMORANDUM IN RESPONSE TO PLAINTIFF'S REVISED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; and**

4.    **PARISH AND PARISHIONERS' CLASS AND PARISH COMMITTEE'S RESPONSE TO PLAINTIFFS' AMENDED CONCISE STATEMENT OF MATERIAL FACTS**

by causing a full, true, and correct copy thereof, addressed to the last-known office address of the individuals, except when served by fax, pursuant to the attached Service List to be sent by the following indicated method or methods, on the date set forth below:

☐    by **electronically** serving via U. S. District Court's CM/ECF system.

☐    by **hand delivery** to those attorneys unable to receive electronic transmissions.

☐    by **mailing** in a sealed, first-class postage-prepaid envelope and deposited with the United States Postal Service at Portland, Oregon.

☐    by sending via **overnight courier** in a sealed prepaid envelope.

☒    by **faxing** to the attorney at the fax number shown on the attached Service List, which is the last-known fax number for the individual's office.

DATED:  September 19, 2005.

PERKINS COIE LLP

By _____
     Douglas R. Pahl, OSB No. 95047
     Of Attorneys for Committee of Parishes and
     Parishioners

PAGE  2-   **CERTIFICATE OF SERVICE**

[54319-0001/PA052620.022]

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

**Tort Claimants Committee v.
Roman Catholic Archbishop of Portland
in Oregon, and Successors, a corporation sole dba
the Archdiocese of Portland in Oregon
Adversary Proceeding No. 04-03292-elp**

**List of Interested Parties**

James M. Finn
Schwabe, Williamson & Wyatt P.C.
Suite 1600-1900
1211 SW Fifth Avenue
Portland, OR 97204-3795
Fax: (503) 796-2900

Albert N. Kennedy
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204-2099
Fax: (503) 274-8779

Howard M. Levine
Thomas W. Stilley
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089
Fax: (503) 248-0130

L. Martin Nussbaum
Rothgerber Johnson & Lyons LLP
Wells Fargo Tower, Suite 1100
90 South Cascade Avenue
Colorado Springs, CO 80903
Fax: (719) 386-3070

Paul E. DuFresne
5135 SW 85th Avenue
Portland, OR 97225
Fax: (503) 297-9933

Pamela J. Griffith
Office of the U.S. Trustee
620 SW Main Street, Room 213
Portland, OR 97205
Fax: (503) 326-7658

Michael J. Farrell
Martin, Bischoff, Templeton
  Langslet & Hoffman, LLP
888 SW 5th Avenue, #900
Portland, OR 97204
Fax: (503) 224-9471

Erin K. Olson
Law Office of Erin Olson, P.C.
806 SW Broadway, Suite 800
Portland, OR 97205-3310
Fax: (503) 546-2200

David A. Foraker
Greene & Markley, P.C.
Suite 600
1515 SW Fifth Avenue
Portland, OR 97201-5492
Fax: (503) 224-8434

Joseph E. Deems
Deems Law Offices
15260 Ventura Blvd., Ste. 1810
Sherman Oaks, CA 91403
Fax: (818) 995-6496

Joseph A. Field
Field & Associates
610 SW Alder Street, Suite 910
Portland, OR 97205
Fax: (503) 225-0276

Bradley S. Copeland
Arnold Gallagher Saydack
  Percell Roberts & Potter PC
P.O. Box 1758
Eugene, OR 97440-1758
Fax: (541) 484-0536

Brad T. Summers
Ball Janik LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Fax: (503) 226-3910

James Ray Streinz
McEwen Gisvold LLP
1600 Standard Plaza
1100 SW Sixth Avenue
Portland, OR 97204
Fax: (503) 243-2687