**Brad T. Summers, OSB #91111**
tsummers@bjllp.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Telephone: (503) 228-2525
Facsimile: (503) 226-3910

CLERK US BANKRUPTCY COURT
DISTRICT OF OREGON

'05 OCT 19 P3 :40

LODGED_____REC'D_____
PAID_____DOCKETED_____

Attorneys for Friends of Regis High School and Regis High School Foundation

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 04-37154-elp11 |
| ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, AND SUCCESSORS, A CORPORATION SOLE, d/b/a the ARCHDIOCESE OF PORTLAND IN OREGON, | |
| Debtor. | |
| TORT CLAIMANTS COMMITTEE, | Adv. Pro. No. 04-03292-elp |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF OPPOSITION OF FRIENDS OF REGIS HIGH SCHOOL AND REGIS HIGH SCHOOL FOUNDATION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, AND SUCCESSORS, A CORPORATION SOLE, dba the ARCHDIOCESE OF PORTLAND IN OREGON, et al., | |
| Defendants. | |



# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ II

I.    SUMMARY OF BACKGROUND FACTS ...................................................................... 1

II.   THE REGIS PROPERTY IS HELD IN CHARITABLE TRUST ...................................... 4

   A.    A Charitable Trust is Created by a Gift or Bequest for Which the Settlor
         Expresses a Charitable Purpose; Identifiable Beneficiaries and a
         Designated Trustee are Not Required ...................................................................... 4

   B.    The Advancement of Education and Religion are Recognized Charitable
         Purposes ...................................................................................................................... 6

   C.    When Catholic Educational Corporation Transferred the Regis Property to
         the Archdiocese, the Property Was Held in Charitable Trust to Establish
         and Maintain a Catholic High School ...................................................................... 7

   D.    To the Extent that the Statute of Frauds Applies, it is Satisfied as to the
         Regis Property ........................................................................................................... 12

III.  TO THE EXTENT THAT THE REGIS PROPERTY IS NOT HELD IN AN
      EXPRESS CHARITABLE TRUST, IT IS HELD IN A RESULTING TRUST .............. 15

IV.   THE ARCHDIOCESE DOES NOT TAKE FREE OF THE TRUST INTEREST
      IN THE REGIS PROPERTY BY VIRTUE OF § 544(a)(3) .......................................... 17

V.    CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

Page

**CASES**

*Akins v. Vermast,* 150 Or. App. 236, 945 P.2d 640 (1997) ................................................. 17, 18, 19

*Belton v. Buesing,* 240 Or. 399, 402 P.2d 98 (1965) ....................................................... 15

*Bowditch v. Attorney General,* 241 Mass. 168, 134 N.E. 796 (1922) .............................................. 5

*Bowman v. Metzger,* 27 Or. 23, 39 P. 3 (1895) .............................................................. 18

*Brender v. Stratton,* 216 Mich. 166, 184 N.W. 486 (1921) ............................................... 15

*Certified Mortg. Co. v. Shepherd,* 115 Or. App. 228, 838 P.2d 1082 (1992) .............................. 16

*Good Samaritan Hospital and Medical Center v. U.S. National Bank,* 246 Or. 478, 425 P.2d 541 (1967) ....................................................................................................... 5

*Gorzeman v. Thompson,* 162 Or. App. 84, 986 P.2d 29 (1999) ....................................... 17, 18, 19

*Gray v. Beard,* 66 Or. 59, 133 P. 791 (1913) ................................................................ 15

*Hall v. World Savings and Loan Association,* 189 Ariz. 495, 943 P.2d 855 (Ariz. App. 1997) ... 14

*Hickman v. Heath, House and Broyles,* 310 Ark. 333, 835 S.W. 2d 880 (1992) ........................ 14

*High v. Davis,* 283 Or. 315, 584 P.2d 725 (1978) ........................................................ 14, 18

*Hungerford v. Portland Sanitarium & Benev Ass'n,* 235 Or. 412, 384 P.2d 1009 (1963) ............. 5

*In re Bishop College,* 151 B.R. 394 (Bankr. N.D. Tex. 1993) ......................................... 4

*In re Gold Key Properties, Inc.,* 119 B.R. 787 (Bankr. D. Or. 1990) .............................. 17

*In re Golden Triangle Capital, Inc.,* 171 B.R. 79 (9th Cir. BAP 1994) ........................... 16

*In re John's Will,* 30 Or. 494, 50 P. 226 (1897) .......................................................... 5, 7

*In re Markair, Inc.,* 172 B.R. 638 (9th Cir. BAP 1994) ................................................ 16

*In re Parkview Hospital,* 211 B.R. 619 (Bankr. N.D. Ohio 1997) ..................................... 4

*In re Prickett's Estate,* 128 Or. 591, 275 P. 605 (1929) ................................................ 5

*In re Sale Guar Corp.,* 220 B.R. 660 (9th Cir. BAP 1998) *aff'd* 199 F.3d 1375 (9th Cir. 2000) .... 16

*In re Seaway Exp. Corp.,* 912 F.2d 1125 (9th Cir. 1990) ............................................... 17

*In re Wilder,* 42 B.R. 6 (Bankr. D. Or. 1983) ............................................................. 15

*Klamath Falls Assembly of God v. State Highway Com.,* 255 Or. 211, 465 P.2d 697 (1970) 18, 19

*Neppach v. Norval,* 116 Or. 593, 242 P. 605 (1926) .................................................... 15

*Pennoyer v. Wadhams,* 20 Or. 274, 25 P. 720 (1891) .................................................... 5

*Petrain v. Kiernan,* 23 Or. 455, 32 P. 158 (1893) ....................................................... 18

*Raley v. Umatilla County,* 15 Or. 172, 13 P. 890 (1887) ............................................... 5

*Raymond v. Flavel,* 27 Or. 219, 40 P. 158 (1895)..........................................................................18

*Reagh v. Kelley,* 10 Cal. App. 3d 1082, 89 Cal. Rptr. 425 (Cal. App. 1970) ...............................14

*Schaneman v. Wright,* 238 Neb. 309, 470 N.W. 2d 566 (1991)....................................................15

*Spady v. Graves,* 307 Or. 483, 770 P.2d 53 (1989)........................................................................17

*Trustees of Presbytery of Willamette v. Hammer,* 235 Or. 564, 385 P.2d 1013 (1963) ........passim

*Walker v. Central Trust & Savings Bank of Geneseo,* 318 Ill. 253, 149 N.E. 234 (1925)..............5

*Webb v. Stewart,* 255 Or. 523, 469 P.2d 609 (1970).....................................................................18

*Wemme v. First Church of Christ, Scientist, of Portland,* 110 Or. 179, 219 P. 618 (1924)........5, 6


**STATUTES**

Bankruptcy Code § 541 .....................................................................................................................4

ORS 128.610, the Charitable Trust and Corporation Act ..................................................................9

ORS 128.620(2)(b).............................................................................................................................9

ORS 128.630(1) .................................................................................................................................9

ORS 128.735(1) .................................................................................................................................9

ORS 93.020(2), Oregon Statute of Frauds ......................................................................................16

ORS 93.643 ......................................................................................................................................17


**TREATISES**

3 Pomeroy's Equity (3d ed.) ..............................................................................................................6

G. Bogert, *The Law of Trusts and Trustees* (rev. 2d ed. 1992)...................................................6, 7

*Restatement (First) of Trusts* ...............................................................................................9, 12, 14

*Restatement (Second) of Trusts* ..................................................................................................4, 7

*Restatement (Third) of Trusts* ......................................................................................................8, 13

*Scott on Trusts* (4th ed. 1987).......................................................................................................13

Friends of Regis High School and Regis High School Foundation oppose the Tort

Claimants Committee's motion for partial summary judgment insofar as it relates to the real

property associated with Regis High School ("Regis") located at 550 West Regis Street, Stayton,

Oregon. The motion should be denied as to the Regis property because the property is held in

trust. The Archdiocese does not take free of that trust by virtue of Bankruptcy Code § 544(a)(3),

because a prospective purchaser under Oregon law would be on inquiry notice of the trust

interest. At a minimum, there is a genuine issue of material fact as to whether a purchaser would

have inquiry notice of the trust interest.

## I.    SUMMARY OF BACKGROUND FACTS

Catholic Educational Corporation acquired the Regis property for use as a

Catholic high school. A group of Santiam area laymen formed Catholic Educational Corporation

for the purpose of promoting education and acquiring property for a school in the 1950s.

(Saalfeld, ¶¶ 2-3, Exs. 1, 3, 5; Campbell, Exs. 23, 25; Christiansen, ¶ 3; Summers, Exs. 33-34.)

These men, along with Reverend Lawrence Saalfeld, the Pastor of Immaculate Conception parish

in Stayton, were the driving force behind the founding of a Catholic high school to serve the

Santiam area. (Saalfeld, ¶¶ 2-16; Campbell, ¶ 4; Christiansen, ¶¶ 2-3.)

The men who formed Catholic Educational Corporation acquired the Regis

property – a 35 acre tract which had previously been used as an orchard – for the express purpose

of founding a school. (Saalfeld, ¶¶ 2-4, Ex. 1; Summers, Ex. 33.) This purpose was evidenced

in the Articles of Incorporation of the Catholic Educational Corporation at the time of its

formation in 1957. (Summers, Ex. 33) After acquiring the Regis property and transferring it to

the Archdiocese, the corporation was promptly dissolved. (*Id.,* Exs. 34-36.)

In addition to the land contributed by Catholic Educational Corporation, the funds

necessary to construct Regis were also contributed by members of the Santiam area Catholic

community with the express purpose of founding a Catholic high school. (Saalfeld, ¶¶ 11-30,

Page 1 – **MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

::ODMA\PCDOCS\PORTLAND\499723\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

Exs. 6-20; Campbell, ¶¶ 6-15, 18, Exs. 23-25; Christiansen, ¶¶ 4-8, Exs. 26-28; Lulay, ¶ 9.)

Those funds were used to pay the cost of constructing the school and to repay a $400,000 loan

from the Archdiocese that financed a portion of the construction costs.  (Saalfeld, ¶ 29; Campbell

¶ 15.)

　　　　This fundraising commenced after a "kick-off" dinner at Immaculate Conception

Church on June 7, 1962.  (Saalfeld, ¶ 17, Ex. 10; Christiansen, ¶ 7, Ex. 28.)  The immediate goal

of the fundraising sought to raise $350,000 to construct an educational and administration

building on the land acquired by Catholic Educational Corporation.  The long range goal sought

to raise a total of $550,000, which would allow for the addition of a gymnasium.  (Saalfeld,

¶¶ 17-18.)  One hundred men canvassed all of the Santiam-area parishioners in the fundraising.

(Saalfeld, ¶ 17, Ex. 10; Christiansen, ¶ 4)  Donors and fundraisers alike were told that the funds

being raised would be used to construct a new Catholic high school to serve the Santiam area.

(Christiansen, ¶¶ 5-8, Exs. 26-28; Lulay ¶ 9.)

　　　　The fundraising was a huge success.  In less than two weeks, parishioners pledged

a total of about $440,000 for the school.  (Saalfeld, ¶¶ 16-18, Exs. 11-12.)  As a result, the

school's construction plans were revised to include a gymnasium and physical education center.

(*Id.,* ¶ 18.)  Moreover, based on the success of the fundraising effort the Archdiocese agreed to

provide $400,000 in a construction loan for the school.  (*Id.,* ¶ 19.)  The parishioners of the

Santiam-area parishes assumed the obligation to repay this loan in proportion to the number of

families in each parish.  (*Id.,* ¶¶ 11-15, 20, Exs. 6-9, 13; Campbell, ¶¶ 8-9, Exs. 23-24;

Christiansen, ¶ 6, Ex. 28.)

　　　　Construction of the school began after groundbreaking ceremonies on

December 8, 1962, on the land donated by Catholic Educational Corporation.  (Saalfeld, ¶ 21.)

An architect selected by a Building Committee comprised of local parishioners designed the

school.  (Lulay, ¶¶ 1-4.)  The Building Committee also selected the contractor, approved the

construction plans, and decided the layout of the buildings on the property.  (Lulay, ¶¶ 4-7.)  The

Page 2 – **MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS
COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

Archdiocese had no role or input in the school construction project other than its loan. (Lulay, ¶ 8.)

Construction costs owing to the contractor and architect were paid by Regis directly, using the funds that had been specifically donated for that purpose. (Saalfeld, ¶ 24; Campbell, ¶ 7; Lulay, ¶ 8.) Donated labor and materials also contributed to the construction effort. (Campbell, ¶ 9, Ex. 24; Lulay, ¶ 8.)

The construction was completed and Regis opened its doors for its first school year in September 1963. (Saalfeld, ¶¶ 24-25.) The total construction cost for the school through March 31, 1964 was $640,377.94. (Saalfeld, ¶¶ 26-27, Ex. 18; Campbell, ¶ 8, Ex. 23.) Ultimately, through the fulfillment of pledges, the entire cost of erecting the school was paid and the Archdiocese's construction loan was also paid in full. (Saalfeld, ¶¶ 26-29, Ex. 18; Campbell, ¶¶ 8-11, 15, Exs. 23-24.)

After the school opened, all operating costs of the school not paid through tuition or through other donations were funded by the Santiam area parishes using the same sharing formula as applied to the obligation to repay the Archdiocese loan. (Saalfeld, ¶ 13, Ex. 7; Campbell, ¶¶ 9-11, 15, Ex. 24.)

After the initial fundraising drive, the next major fundraising drive for Regis occurred in 2002. (Christiansen, ¶¶ 9-11, Ex. 29; Coleman, ¶¶ 1-2; Bochsler, ¶¶ 3-4.) This drive – called the Santiam Catholic Schools Campaign – also raised funds for improvements to St. Mary Catholic School, an elementary school in Stayton, and for Immaculate Conception parish. (*Id.*) The entire cost of the Regis portion of this renovation was also funded through donations or through a loan from the Archdiocese repaid through donations. (Christiansen, ¶ 11, Exs. 30; Coleman, ¶ 3, Ex. 31; Bochsler, ¶¶ 5-8, Ex. 32) These funds were, without exception, from local school and parish supporters – from grandparents, parents and alumni plus a few local and other philanthropic foundations. (Coleman, ¶ 3.)

**Page 3 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

::ODMA\PCDOCS\PORTLAND\499723\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

In addition to these major fundraisers, to this day financial support for Regis continues to come from the local community that it serves. (Bochsler, ¶¶ 9-10; Lulay, ¶ 10; Schumacher, ¶¶ 1-7.) That support comes in part from tuition paid for by the families who attend the school. (Schumacher, ¶¶ 2-4.) Additional monies are raised by other fundraisers, such as Regis' annual Green and Gold Dinner/Auction, and other events. (Bochsler, ¶ 9, Schumacher, ¶ 1.) Likewise, funds and materials for recent improvements to Regis' athletics facilities also were obtained through donations. (Lulay, ¶ 10, Heuberger, ¶¶ 1-6.) The Archdiocese did not contribute the funds necessary to found Regis or to sustain its activities. Rather, Regis was founded through and is funded by donations made by the community Regis serves. (Saalfeld, ¶ 30; Campbell, ¶ 18; Bochsler, ¶¶ 9-10; Schumacher, ¶ 7.)

## II.    THE REGIS PROPERTY IS HELD IN CHARITABLE TRUST

The Archdiocese holds legal title to the Regis property but it does not hold equitable title. The property is held in charitable trust for the benefit of present and prospective students and parents of students who wish to have their children attend a Catholic high school in the Santiam area. This equitable interest is excluded from property of the Archdiocese's estate under Section 541(d) of the Bankruptcy Code. *See In re Parkview Hospital*, 211 B.R. 619 (Bankr. N.D. Ohio 1997); *In re Bishop College*, 151 B.R. 394 (Bankr. N.D. Tex. 1993).

### A.    A Charitable Trust is Created by a Gift or Bequest for Which the Settlor Expresses a Charitable Purpose; Identifiable Beneficiaries and a Designated Trustee are Not Required

"A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intent to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." *Restatement (Second) of Trusts,* § 348. No particular words are needed to create a charitable trust. *Id.,* § 351. It is not even necessary to use the word "trust" to create a charitable trust. *Id.*

::ODMA\PCDOCS\PORTLAND\499723\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

The Oregon Supreme Court has long-recognized the inherent power of equity to enforce charitable trusts. *See In re Prickett's Estate*, 128 Or. 591, 599, 275 P. 605 (1929) ("But if a gift is made for a public charitable purpose, it is immaterial that the trustee is uncertain or incapable of taking, or that the objects of the charity are uncertain or indefinite. Indeed, it is said that vagueness is in some respects essential to a good gift for a public charity, and that a public charity begins where uncertainty in the recipient begins."); *Wemme v. First Church of Christ, Scientist, of Portland*, 110 Or. 179, 219 P. 618 (1924) (will couched in terms of recommendation to use bequest for charitable purpose would be interpreted to impose obligation to use for such purpose); *In re John's Will*, 30 Or. 494, 50 P. 226 (1897); *Pennoyer v. Wadhams*, 20 Or. 274, 25 P. 720 (1891).[1]

The courts favor charitable trusts. "Trusts of this character have been generally favored and liberally construed by the courts. Such benefactions will not be defeated or overthrown on slight or trivial grounds." *Raley v. Umatilla County,* 15 Or. 172, 183, 13 P. 890 (1887). "Charitable uses are favorites with courts of equity. The construction of all instruments where they are concerned is liberal in their behalf." *Bowditch v. Attorney General,* 241 Mass. 168, 176, 134 N.E. 796 (1922). "In constructing such gifts, if there are two possible methods of construction, one of which will render the gift valid and the other invalid, courts will adopt the construction which will sustain the gift." *Walker v. Central Trust & Savings Bank of Geneseo,* 318 Ill. 253, 256, 149 N.E. 234 (1925).

> The courts have manifested a sympathetic attitude toward instruments alleged to create charitable trusts. They wish to find charitable intent and to carry it out, if at all possible. They will examine a will or deed and the attendant circumstances with the

---

[1] Even after it overturned the doctrine of charitable immunity from tort claims by its decision in *Hungerford v. Portland Sanitarium & Benev. Ass'n*, 235 Or. 412, 384 P.2d 1009 (1963), the Oregon Supreme Court has recognized and accepted the continuing validity of the charitable trust doctrine. *See Good Samaritan Hospital and Medical Center v. U.S. National Bank*, 246 Or. 478, 425 P.2d 541 (1967).

**Page 5 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

::ODMA\PCDOCS\PORTLAND\499723\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

utmost care in an effort to find grounds for decreeing the existence
of a charitable trust.

G. Bogert, *The Law of Trusts and Trustees,* § 368 at p. 76 (rev. 2d ed. 1992).

A necessary feature of private trusts is the description of identifiable beneficiaries.
This is not required for charitable trusts. "In order that a trust may be charitable, the gift must be
for the benefit of such an indefinite class of persons that the charity is really a public and not a
mere private benefaction." 3 Pomeroy's Equity (3d Ed.) § 1019, *quoted with approval in
Wemme,* 110 Or. at 192. ("It is therefore essential to the creation of a charity that the
beneficiaries should be uncertain, for they consist of a class of persons described in some general
language, often fluctuating, changing in their individual members and partaking of a quasi-public
character.") *Id.* (internal citations omitted).

The designation of a trustee is likewise unnecessary to the creation of a charitable
trust. *See Wemme,* 110 Or. at 191-92: "In the case of a charitable bequest or devise, it matters
not that the trustees are uncertain or incapable of taking or that the objects of the charity are
indefinite and uncertain."

> It is well settled that the failure to name any trustee for the
> charitable trust, or the naming of a deceased person or other non-
> existent legal entity, will not prevent the trust from arising if the
> other requisite acts of creation have been performed. The court
> regards the expression of a charitable trust intent and the indication
> of a class of beneficiaries as the important factors in creation. The
> personality of the trustee is not vital.

Bogert, § 328, at p. 438.

**B.    The Advancement of Education and Religion are Recognized Charitable
Purposes**

As stated, effective creation of a charitable trust requires the settlor's
manifestation of an intent to fulfill a charitable purpose. The Restatement of Trusts does not
attempt to define "charitable purposes." Rather, it states that charitable purposes include five
specific purposes: the relief of poverty, the advancement of education, the advancement of

**Page 6 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS
COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

religion, the promotion of health, governmental and municipal purposes, and "other purposes the accomplishment of which is beneficial to the community." *Restatement (Second) of Trusts,* § 368.

Promotion of education has been a recognized charitable purpose since the enactment of the Statute of Charitable Uses in England in 1601. 43 Eliz. c. 4. Among the purposes it mentioned as charitable were the maintenance of "schools of learning, preschools, and scholars and universities" and the "education and preferment of orphans." As stated in Bogert,

> The methods which the settlor may specify for accomplishing his educational objects are very numerous. He may specify education in one field, for example, music, the arts, manual training or a trade, or religion. He may direct the establishment of a school, college, or university, or the support in whole or in part of an existing institution of learning, for example, a common school, a kindergarten, or a church school.

Bogert, § 375 at pp. 141-143 (citations omitted); *see also John's Will*, 30 Or. at 507 ("The purpose of the testator was to establish and maintain a school or schools within the town of St. Johns, which should be free and public, and at all times open to the children of the school district which shall embrace such town. That a bounty in support of such a school or schools would be a public charity needs no argument or authority to demonstrate or establish.")

**C.    When Catholic Educational Corporation Transferred the Regis Property to the Archdiocese, the Property Was Held in Charitable Trust to Establish and Maintain a Catholic High School**

When Catholic Educational Corporation transferred the Regis property to the Archdiocese in 1962, the corporation manifested an intention that the property would be used for a specific charitable purpose – to establish and maintain a Catholic high school to serve the needs of the Santiam region. This alone resulted in the creation of a charitable trust:

> An outright devisee or donation to a nonproprietary hospital or university or other charitable institution, expressly or impliedly to be used for its general purposes, is charitable but does not create a trust as that term is used in this Restatement. A disposition to such

**Page 7 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

an institution for a specific purpose, however, such as to support
medical research, perhaps on a particular disease, or to establish a
scholarship fund in a certain field of study, creates a charitable
trust of which the institution is the trustee for purposes of the
terminology and rules of this Restatement.

*Restatement (Third) of Trusts*, § 28, comment A, p. 11.

Oregon has adopted this distinction between property transferred to a charitable

institution expressly or impliedly for general purposes, on the one hand, and property transferred

for specific charitable purpose, on the other hand. In *Trustees of Presbytery of Willamette v.

Hammer,* 235 Or. 564, 385 P.2d 1013 (1963), the defendants asserted that title to real property

held by a church organization was subject to a trust for the maintenance and upkeep of the

Pleasant Growth Presbyterian Church and a contiguous cemetery. The land had been conveyed

to the trustees of the Pleasant Growth Presbyterian Church, their successors and assigns forever.

The deed contained no statement of trust purposes. In ruling against the defendants, the court

held as follows:

> [D]efendants must show that at the time the land was conveyed to
> the Trustees of the Pleasant Grove Presbyterian Church the
> grantors intended to create the trust which they now assert was
> created, *i.e.*, a trust for the maintenance and upkeep of the church
> and cemetery.
>
> The conveyance to the "trustees" of the church in this case clearly
> shows that the trustees were not intended to have a beneficial
> interest in the property. Although not expressly recited in the
> deed, the transfer was made for the benefit of the church. In that
> sense a trust was created. However, a trust in this sense would not
> require the trustees of the church or their successors to hold the
> property for specific uses (*e.g.*, cemetery uses) or to use the
> proceeds for the specific purpose of maintaining the Pleasant
> Grove Church or the cemetery; the church would be free to sell the
> property if it chose to do so, using the proceeds for any church
> purpose it saw fit.

235 Or. at 565-567 (footnotes omitted).

**Page 8 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS
COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

Thus, *Presbytery of Willamette* indicates that a transfer of property to the Archdiocese for its general purposes would not prohibit the Archdiocese from selling the property and using the proceeds for any church purposes. But where a property is transferred to the Archdiocese for a specific charitable purpose, and that is properly established by competent evidence, the transfer is in trust for the specified purpose.[2]

*Presbytery of Willamette* also holds that the grantor's charitable purpose may be established by extrinsic evidence. It quotes *Restatement (First) of Trusts,* § 38(3) (1935) as follows:

> If the owner of property transfers it inter vivos to another person by a written instrument in which it is not declared that the transferee is to take the property for his own benefit or that he is to hold it in trust, extrinsic evidence may be admitted to show that he was intended to hold the property in trust either for the transferor or for a third party.

*Presbytery of Willamette,* 235 Or. at 566, n.1.

Finally, *Presbytery of Willamette* requires that the grantor's intent that the property be used for a specific charitable purpose must have been manifested at or prior to the time of the conveyance: "A trust can only be created by the grantors and their intent to do so must be manifested by them prior to or contemporaneously with the conveyance." 235 Or. at 567.

In the case of the Regis property, the evidence is overwhelming that at the time the property was transferred to the Archdiocese, the intention was that the property would be

---

[2] The Oregon statutes adopt the same distinction. ORS 128.610 (the Charitable Trust and Corporation Act) applies to all charitable corporations and trustees holding property for charitable purposes over which the state or the Oregon Attorney General has enforcement or supervisory powers. ORS 128.630(1). Under the Act, the Attorney General has the authority "to enforce any fiduciary or other duty arising under [the Act] or to enforce any fiduciary duty arising under the common law." ORS 128.735(1). The Act defines a "trustee" as including "[a]ny corporation which has accepted property to be used for a particular charitable corporate purpose as distinguished from the general purposes of the corporation." ORS 128.620(2)(b).

**Page 9 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

used for a specific charitable purpose – to establish and maintain a Catholic high school for the Santiam area. This intention was manifested by the grantor of the Regis property prior to and contemporaneously with the conveyance of the property.

The property for the school was acquired by a group of Catholic laymen from the Santiam area. (Saalfeld, ¶¶ 2-3, Exs. 1, 3, 10; Campbell, Exs. 23, 25; Christiansen, ¶ 3.) These men had formed Catholic Educational Corporation in 1957 to further their desire for the establishment of a Catholic high school in the Stayton area. (Summers, Ex. 33.) The Articles of Incorporation of Catholic Educational Corporation indicate that it was a charitable corporation and that its charitable purpose was to acquire and dispose of real property for a school. (*Id.*) This corporation took the initial step towards the establishment of a regional Catholic high school by purchasing two parcels of real property within the city limits of Stayton. (Saalfeld, ¶¶ 2-3, Exs. 1, 3, 5; Christiansen, ¶ 3.) That property was about 35 acres in total and it was suitable for a school. (Saalfeld, ¶ 4.)

Construction of a school on the property required about $350,000 for construction costs. (Saalfeld, ¶¶ 5, 12, 17, Exs. 2, 6, 10.) Prior to the commencement of fundraising efforts, Rev. Saalfeld of the Immaculate Conception parish in Stayton conducted a series of meetings with parents and other parishioners in the three surrounding parishes – Immaculate Conception in Stayton, St. Boniface in Sublimity, and Our Lady of Lourdes in Jordan (with missions in Lyons, Jefferson and Scio) – to gauge the financial support for the project. (*Id.*, ¶¶ 6-8, 11.) Rev. Saalfeld told the parents and other parishioners who attended these meetings that Catholic Educational Corporation had acquired the land for the school, but the construction cost would have to be financed through debt assumed by the parishes. (Saalfeld, ¶¶ 6-7, 10, Exs. 3, 5.) The laymen who were behind the formation of Catholic Educational Corporation also attended these meetings in support of the school. (Saalfeld, Ex. 5.)

The proposal to construct a school met with considerable support from the community. (Saalfeld, ¶ 8; Christiansen, ¶ 2.) After concluding the series of meetings, the three

**Page 10 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

Santiam area parishes entered an agreement to construct the high school on the 35-acre tract acquired by Catholic Educational Corporation. (Saalfeld, ¶ 11.) The parishes accepted full responsibility to fund and maintain the new high school with proportions assigned based on the number of families in each parish. (*Id.*) This arrangement has prevailed to this day without any funding from the Archdiocese or other external church sources. (*Id.*)

Plans for financing the school were developed by a Finance Committee comprised of 15 area laymen and chaired by A.J. Frank, who was also the driving force behind Catholic Educational Corporation. (Saalfeld, ¶ 14, Ex. 8; Campbell, ¶¶ 12-14, Ex. 25; Christiansen, ¶ 3.) A Building Committee of 12 laymen was appointed to study the design of the school. (Saalfeld, ¶ 14, Ex. 8.) Several of the men on these committees were also behind the acquisition of the land for the school. (*Id.*)

The fundraising drive for the school commenced in the spring of 1962. (Saalfeld, Ex. 10.) It was an overwhelming success. In a very short time 552 area parish families had committed over $400,000 in pledges for the school. (*Id.*, ¶ 16.) When the pledges were being solicited, these families were told to give their money to Regis High School, or to their parish building fund, to be credited for Regis High School. (Christiansen, ¶ 6, Ex. 28.) The campaign brochure that was handed out by the fundraisers states: "Our legal title is: Regis High School, Archdiocese of Portland in Oregon." (Christiansen, ¶ 5, Ex. 27) The families of the men behind Catholic Educational Corporation – the Frank, Freres, Kirsch, Ditter, Lulay and Bell families – contributed over $150,000 to the fundraising effort. (Saalfeld, Ex. 18.)

Based on the success of the fundraising, the Archdiocese provided a $400,000 construction loan, payable within five years after the completion of construction. (Saalfeld, ¶ 19.) The three parishes signed an agreement to share the obligation to repay that loan. (*Id.*, ¶ 20, Ex. 13.) That agreement was also approved by the Archdiocese. It provided that St. Boniface would assume 33% of the construction costs, Our Lady of Lourdes would assume 12%, and Immaculate Conception would assume 55%. It further provided that any deficits in

**Page 11 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

operating the school would be shared according to the same formula. It further provided: "All buildings and property of Regis High School shall be in the name of Regis High School, Archdiocese of Portland in Oregon." (*Id.*)

After the conclusion of the fundraising effort, Catholic Educational Corporation conveyed the real property for the school to the Archdiocese. (Summers, Exs. 34-35.) It executed its own deed for about one-half of the 35-acre tract. (Summers, Ex. 34.) The remainder was conveyed directly from Mr. and Mrs. Keach, from whom the corporation had acquired the entire property. (Saalfeld, ¶ 2; Summers, Ex. 35.)

Construction of the school commenced after groundbreaking ceremonies on December 8, 1962. (Saalfeld, ¶ 21.) The project was completed in September 1963, which is when the school opened its doors. (*Id.*, ¶¶ 24-25.) All construction bills were received by Regis High School and were paid directly by Regis to the building contractor and the architect. (*Id.*, ¶ 24; Campbell, ¶ 7.) The Santiam area parishes fulfilled their pledges for the construction of the school and paid the construction cost in its entirety. (Saalfeld, ¶¶ 26-29, Ex. 18; Campbell, ¶¶ 6-11, 15, 18, Exs. 23-24.) Through the fulfillment of their pledges, they also repaid the full amount of the Archdiocese loan on a timely basis. (*Id.*)

It is clear from these facts that the laymen behind Catholic Educational Corporation acquired the property for the school, and conveyed it to the Archdiocese, with the express charitable purpose of establishing and maintaining a Catholic high school for the Santiam area. As a result, the property is held in charitable trust.

### D.    To the Extent that the Statute of Frauds Applies, it is Satisfied as to the Regis Property

*Presbytery of Willamette* states that, in the case of an express trust governed by the Statute of Frauds, the grantor's intention that the property be used for a specific charitable purpose must be evidenced by a writing signed by the grantor. In support of this rule, the court relies on *Restatement (First) of Trusts*, § 42 (1935), which provides:

Page 12 – **MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

> Where the owner of an interest in land transfers it inter vivos to
> another person in trust, a memorandum properly evidencing the
> trust is sufficient to satisfy the requirements of the Statute of
> Frauds, if it is signed
>
>> (a) by the transferor prior to or at the time of the transfer; or
>>
>> (b) by the transferee
>>
>>> (i) prior to or at the time of the transfer; or
>>>
>>> (ii) subsequent to the transfer but before he has
>>> transferred the interest.

235 Or. at 567, n. 3.

A memorandum signed by the grantor will satisfy the Statute of Frauds if it shows

with reasonable definiteness the trust property, the beneficiaries, and the extent of the interests of

the beneficiaries or the purposes of the trust. *Scott on Trusts*, § 46 at p. 488 (4th ed. 1987). The

writing need not have been intended to create the trust itself. *Scott on Trusts*, § 47 at p. 491; *see*

*also Restatement (Third) of Trusts*, § 322 and comment d. The memorandum can also consist of

several writings. *Scott on Trusts*, § 48 at p. 493; *see also Restatement (Third) of Trusts*, § 22 and

comment c.

To the extent that the requirements of the Statute of Frauds apply to a charitable

trust, they are satisfied as to the Regis property. Catholic Educational Corporation manifested in

a signed writing its intention that the property it acquired and transferred to the Archdiocese be

used to establish and maintain a school. Specifically, Article II of the Articles of Incorporation

of Catholic Educational Corporation states that the purposes of the corporation were as follows:

> This corporation shall not engage in any form of trade or
> commerce, or carry on any activity which will result in a
> remunerative profit to the corporation or to its members. Subject
> to the foregoing limitations, the object, business, or pursuit of this
> corporation shall be as follows:
>
> To aid in the establishment and maintenance of schools.

**Page 13 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS
COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

::ODMA\PCDOCS\PORTLAND\499723\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

> To cultivate and extend the social and fraternal relations of life among students.
>
> To purchase, sell, own, mortgage or otherwise make disposition of real property for the purpose of having a meeting place and/or operate a school.

(Summers, Ex. 33.) The Articles are signed by all of the founders of the corporation, prior to the conveyance of the Regis property. The Articles describe with reasonable definiteness the beneficiaries – "students" – and the charitable trust purposes – "[t]o aid in the establishment and maintenance of schools"; "[t]o cultivate and extend the social and fraternal relations of life among students." The Articles also describe the trust property – "real property for the purpose of having a meeting place and/or operate a school." That description, combined with the deed conveying the Regis property, satisfies any requirement that the trust property be reasonably identified. *See High v. Davis,* 283 Or. 315, 329, 584 P.2d 725 (1978) (when all evidence considered together established with reasonable certainty that a specific piece of property described in land sale contract was the only property to which other agreements could apply, Statute of Frauds was satisfied and agreements were enforceable).[3]

In addition, the Statute of Frauds is also satisfied as to the Regis property by writings signed by the transferee of the property – the Archdiocese. Section 42 of the *Restatement (First) of Trusts*, quoted with approval in *Presbytery of the Willamette*, states that a memorandum evidencing the trust is sufficient to satisfy the requirements of the Statute of Frauds if it is signed by the transferee subsequent to the transfer but before he has transferred his

---

[3] *See also Hall v. World Savings and Loan Association,* 189 Ariz. 495, 943 P.2d 855 (Ariz. App. 1997) (even without executed trust agreement, quitclaim deed combined with trust certificate described subject matter and identified beneficiaries and property in the trust and were therefore sufficient to satisfy Statute of Frauds); *Reagh v. Kelley,* 10 Cal. App. 3d 1082, 89 Cal. Rptr. 425 (Cal. App. 1970) (signed deed combined with unsigned declaration of trust satisfied Statute of Frauds); *compare Hickman v. Heath, House and Broyles,* 310 Ark. 333, 835 S.W. 2d 880 (1992) (corporate minutes signed by three shareholder-directors providing for transfer to trust could not, for purposes of satisfying Statute of Frauds, be read together with trust agreement, where one of the three refused to sign trust agreement).

**Page 14 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

interest. In the present case, in a signed letter dated December 23, 1981, Archbishop Power

stated as follows:

> The title to all property belonging to the Catholic Church in
> western Oregon, with some notable exceptions such as hospitals,
> nursing homes, private educational institutions, etc., is vested in
> the Archdiocese. Such properties, as for example parish plants,
> though listed under the Archdiocesan corporate title, are really held
> in trust for the individual parishes.

(Forbes, Ex. 13.) This letter, written nearly twenty-five years ago, in and of itself satisfies any

requirements of the Statute of Frauds.[4]

## III.    TO THE EXTENT THAT THE REGIS PROPERTY IS NOT HELD IN AN EXPRESS CHARITABLE TRUST, IT IS HELD IN A RESULTING TRUST

Even if the Court were to find the evidence insufficient to support an express

charitable trust, that would not prevent the existence of a resulting trust. *See, e.g., Neppach v.

Norval,* 116 Or. 593, 242 P. 605 (1926) (parol trust unenforceable under Statute of Frauds, held

not to prevent resulting trust). A resulting trust occurs whenever circumstances surrounding the

disposition of property raise an inference that the transferor did not intend that the transferee

would take a beneficial interest in the property. *See Belton v. Buesing,* 240 Or. 399, 402 P.2d 98

(1965); *Gray v. Beard,* 66 Or. 59, 133 P. 791 (1913); *see also In re Wilder,* 42 B.R. 6 (Bankr. D.

Or. 1983). A resulting trust "may arise out of conduct alone, that is, where there is no expression

of intent and the inferences leading to the conclusion that a trust was or would have been

intended by the grantor if he had thought about it, are drawn entirely from circumstantial

evidence." *Belton,* 240 Or. at 406.

---

[4] It is also worth noting that the Amended Statement of Financial Affairs filed by the
Archdiocese itself satisfies the Statute of Frauds. It is signed under penalty of perjury by the
Archdiocese. It states that the Archdiocese holds the Regis property in trust. An alleged
trustee's affidavit in litigation satisfies the requirements of the Statute of Frauds, *Schaneman v.
Wright,* 238 Neb. 309, 470 N.W. 2d 566 (1991), as does the trustee's oral admission in open
court. *Brender v. Stratton,* 216 Mich. 166, 184 N.W. 486 (1921).

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

::ODMA\PCDOCS\PORTLAND\499723\1

A resulting trust is not subject to the Oregon Statute of Frauds. ORS 93.020(2); *Certified Mortg. Co. v. Shepherd*, 115 Or. App. 228, 838 P.2d 1082 (1992); *Wilder*, 42 B.R. at 8. And a resulting trust is in all instances excluded from property of the bankruptcy estate:

> A resulting trust is a trust implied by operation of law to enforce the inferred intent of the parties to carry out a trust. A transaction that has failed to carry out the parties' intent becomes a resulting trust, and a resulting trust cannot be part of the debtor's estate.

*In re Golden Triangle Capital, Inc.*, 171 B.R. 79, 82 (9th Cir. BAP 1994); *see also In re Sale Guar Corp.*, 220 B.R. 660, 667-68 (9th Cir. BAP 1998) *aff'd* 199 F.3d 1375 (9th Cir. 2000); *In re Markair, Inc.*, 172 B.R. 638, 642 (9th Cir. BAP 1994).

The evidence recited above demonstrates that, when Catholic Educational Corporation transferred the Regis property, it intended that the property must be used for a Catholic high school. That same evidence also establishes the basis for a resulting trust. The surrounding circumstances and the statements made in the course of the initial fundraising drive raise the clear inference that the corporation and the men behind it intended that the Regis property would be held in trust.

The men behind Catholic Educational Corporation, including specifically A.J. Frank, were also the driving force behind the efforts to found the school. (Saalfeld, ¶ 14, Ex. 8; Campbell, ¶¶ 12-14; Christiansen, ¶ 3.) In addition to contributing the land for the school, they were also intimately involved in the drive to raise funds to construct the school. They were on the Finance Committee that designed and implemented the fundraising drive. (Saalfeld, ¶ 14, Ex. 8.) Their families contributed more than $150,000 to the fundraising effort. (Saalfeld, Ex. 18.) During the fundraising, donors were told that their contributions would be used to build a Catholic high school "for your lasting benefit" (Christiansen, Ex. 27, p. 3), "adequate for the education of tomorrow's citizens" (*Id.*, p. 4), that the school would "stand as a living testimony of the good work you have done – a memorial to your generosity" (*Id.*, p. 11), and that the school would "be a real partnership ... in all the good work and achievement of boys and girls for years

**Page 16 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

::ODMA\PCDOCS\PORTLAND\499723\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

to come" (*Id.*, p. 11).  They were also advised that title would be in the name of "Regis High School, Archdiocese of Portland in Oregon."  (Saalfeld, Ex. 13; Christiansen, Ex. 27.)

Shortly after participating in and contributing generously to a fundraising effort in which such statements were made, the men behind Catholic Educational Corporation caused the corporation to transfer the land for the school to the Archdiocese.  In the circumstances, they could not have intended that the property would be available to the Archdiocese for its general purposes.  Rather, they clearly intended that it would be used only as a Catholic high school to serve the Santiam community.  They may not have used the words "in trust" but, as indicated, that is not necessary to the creation of a charitable trust.  Given all the surrounding circumstances, there should be little doubt that "a trust was or would have been intended by the grantor if he had thought about it[.]"  *Belton*, 240 Or. at 406-407.  Accordingly, the Regis property is also held in a resulting trust.

## IV.    THE ARCHDIOCESE DOES NOT TAKE FREE OF THE TRUST INTEREST IN THE REGIS PROPERTY BY VIRTUE OF § 544(a)(3)

The Tort Claimants Committee argues that the Archdiocese takes free of any trust interest in the Regis property by operation of § 544(a)(3).  State law defines the powers of a BFP of real property for purposes of § 544(a)(3).  *In re Seaway Exp. Corp.*, 912 F.2d 1125 (9th Cir. 1990); *In re Gold Key Properties, Inc.*, 119 B.R. 787 (Bankr. D. Or. 1990).  Under Oregon law, a prospective purchaser takes subject to inquiry notice.[5]

Inquiry notice "arises when the existence of a claimed interest in real property may be determined through investigation based on facts available to the claimant that would

---

[5] The Tort Claimants Committee argues that ORS 93.643, enacted in 1987, abolishes inquiry notice.  That is not correct.  There are two species of constructive notice under Oregon law – record notice and inquiry notice.  *Spady v. Graves,* 307 Or. 483, 488 n. 3, 770 P.2d 53 (1989).  ORS 93.643 refers only to the record notice aspect of constructive notice, and requires that the record must be on file with the applicable county recorder to give that form of constructive notice.  It does not abolish inquiry notice.  Several cases decided after the enactment of ORS 93.643 have continued to endorse inquiry notice as an alternative species of constructive notice.  *See Spady, supra; see also Gorzeman,* 162 Or. App. 84; *Akins,* 150 Or. App. at 244.

Page 17 – **MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**
::ODMA\PCDOCS\PORTLAND\499723\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

cause a reasonable person to make such inquiry." *Gorzeman v. Thompson,* 162 Or. App. 84, 93, 986 P.2d 29 (1999); *High,* 283 Or. at 333-34. Under Oregon law, a prospective purchaser is not permitted to make assumptions regarding facts about which they should have inquired. *Klamath Falls Assembly of God v. State Highway Com.,* 255 Or. 211, 214-15, 465 P.2d 697 (1970); *Akins v. Vermast,* 150 Or. App. 236, 244, 945 P.2d 640 (1997).

Whether a prospective purchaser is on inquiry notice is an inherently factual question based on all the surrounding circumstances. *Raymond v. Flavel,* 27 Or. 219, 40 P. 158 (1895); *Bowman v. Metzger,* 27 Or. 23, 39 P. 3 (1895). Likewise, "[i]t is well established that the possession of persons other than the grantor will put a purchaser upon inquiry as to the possessor's interest." *Webb v. Stewart,* 255 Or. 523, 536, 469 P.2d 609 (1970); *see also Petrain v. Kiernan,* 23 Or. 455, 32 P. 158 (1893) (inquiry notice of trust where beneficiary is in possession of property).

In the present case, there can be no question that a prospective purchaser as of the commencement of the Archdiocese's bankruptcy case who made inquiry would have learned of the trust interest in the Regis property. Any purchaser who inquired of the record titleholder would have learned from the Archdiocese that the property was held in trust, as indicated by the Amended Statement of Financial Affairs filed by the Archdiocese. The only question is whether the surrounding circumstances were sufficient to place a purchaser under a duty to inquire. The answer to that question should clearly be in the affirmative.

A prospective purchaser who inspected the Regis property on the petition date would quite obviously have seen that it has classrooms, administrative offices, a cafeteria, a gymnasium and athletic fields. He/she would also have seen the sign at the front of the property, which says, "Regis Catholic High School – Welcome to Stayton." (Bachman, Ex. 1.) Having seen these things, the purchaser would obviously have known that, when school is in session, the Regis property is occupied by students, teachers, administrators and other persons necessary to the operation of a Catholic high school. Knowing that the Regis property is occupied by others

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

for such a purpose should put a purchaser on inquiry notice that its use might be restricted to that purpose.

A prospective purchaser would also have known from deed records that the Regis property was conveyed to the Archdiocese by an entity called "Catholic Educational Corporation."[6] It should occur to a purchaser that an entity by the name of Catholic Educational Corporation would probably have the purpose of promoting religious education. It should also occur to a purchaser that such entity could have intended to fulfill that purpose by transferring a large tract of land to a charitable institution such as the Archdiocese. As shown above, where a grantor transfers property to a charitable institution with the intent that the property be used for a specific charitable purpose – establishing and maintaining a high school – a charitable trust arises. Given that, a purchaser who sees a Catholic high school on property conveyed to a charitable institution by an entity called Catholic Educational Corporation, should be on a duty to inquire whether the property was in fact held in trust.[7]

The Tort Claimants Committee argues that the existence of a Catholic high school on property titled in the Archdiocese is entirely consistent with the absence of any trust. That is, of course, one possibility. But a purchaser who leapt to such a conclusion would necessarily be making an assumption concerning facts about which it should have inquired – and that is something that Oregon law specifically will not permit a purchaser to do. *Klamath Falls Assembly of God*, 255 Or. at 214-15; *Akins*, 150 Or. App. at 244.

---

[6] Recorded documents may themselves provide inquiry notice. *Gorzeman,* 162 Or. App. at 93.

[7] A purchaser would also have known from the deed records that there was a recorded Memorandum of Agreement Affecting Real Property indicating that Regis High School was the Borrower under an Energy Services Agreement relating to the Regis property. (Chisholm, Ex. 22, p. 8.) The fact that the Archdiocese was not indicated to be a named party to that agreement should also have placed on a purchaser a duty to inquire as to the extent of the Archdiocese's interest.

**Page 19 – MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

V.        **CONCLUSION**

The Regis property is held in trust.  It is either held in an express charitable trust, or in a resulting trust.  A prospective purchaser of the property would be on inquiry notice of the trust interest.  Accordingly, the Regis property is not property of the estate.

DATED:  October 19, 2005

BALL JANIK LLP

By: _____

Brad T. Summers, OSB #91111
Attorneys for Friends of Regis High
School and Regis High School
Foundation

Page 20 – **MEMORANDUM IN SUPPORT OF OPPOSITION TO TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

::ODMA\PCDOCS\PORTLAND\499723\1

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525