

1  **Albert N. Kennedy**, OSB No. 82142
       Direct Dial: (503) 802 -2013
2      Facsimile:    (503) 972-3713
       E-Mail:       al@tonkon.com
3  **Timothy J. Conway**, OSB No. 85175
       Direct Dial: (503) 802 -2027
4      Facsimile:    (503) 972-3727
       E-Mail:       tim@tonkon.com
5  **Michael W. Fletcher**, OSB No. 01044
       Direct Dial: (503) 802 -2169
6      Facsimile:    (503) 972-3869
       E-Mail:       michaelf@tonkon.com
7  **TONKON TORP LLP**
   1600 Pioneer Tower
8  888 S.W. Fifth Avenue
   Portland, OR  97204
9
       Attorneys for Tort Claimants Committee
10

11              IN THE UNITED STATES BANKRUPTCY COURT

12                 FOR THE DISTRICT OF OREGON

13  In re                                          )
                                                   )
14  ROMAN CATHOLIC ARCHBISHOP OF                   )  Case No. 04-37154-elp11
    PORTLAND IN OREGON, AND SUCCESSORS, A          )
15  CORPORATION SOLE, DBA THE ARCHDIOCESE          )  Adv. Proc. No. 04-03292-elp
    OF PORTLAND IN OREGON,                         )
16                                                 )  **TORT CLAIMANTS**
                                  Debtor.          )  **COMMITTEE'S RESPONSE**
17  _____       )  **TO (1) DEBTOR'S CONCISE**
                                                   )  **STATEMENT OF**
18  TORT CLAIMANTS COMMITTEE,                      )  **MATERIAL FACTS IN**
                                                   )  **CONNECTION WITH ITS**
19                                Plaintiff,       )  **CROSS MOTION FOR**
                                                   )  **PARTIAL SUMMARY**
20       v.                                        )  **JUDGMENT; AND**
                                                   )  **(2) DEBTOR'S**
21  ROMAN CATHOLIC ARCHBISHOP OF                   )  **ADDITIONAL FACTS**
    PORTLAND IN OREGON, AND SUCCESSORS, A          )  **SUBMITTED IN DEBTOR'S**
22  CORPORATION SOLE, dba THE ARCHDIOCESE          )  **RESPONSE TO AMENDED**
    OF PORTLAND IN OREGON; JOHN RICKMAN,           )  **CONCISE STATEMENT OF**
23  GLENN PELIKAN and JOHNSTON MITCHELL,           )  **MATERIAL FACTS IN**
    individually and on behalf of all others similarly )  **SUPPORT OF TORT**
24  situated; ST. ANDREWS CHURCH (PORTLAND),       )  **CLAIMANTS**
    as represented by its pastor, REV. CHARLES     )  **COMMITTEE'S RESTATED**
25  LIENERT, ST. ANTHONY CHURCH (TIGARD), as       )  **SECOND MOTION FOR**
    represented by its pastor, REV. LESLIE M. SIEG, and )  **PARTIAL SUMMARY**
26  ST. JUAN DIEGO CHURCH, as represented by its   )  **JUDGMENT**

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

CLERK US BANKRUPTCY COURT
DISTRICT OF OREGON

'05  OCT 26  P4 :18

LODGED_____ REC'D CR
PAID_____DOCKETED_____

pastor, REV. JOHN KERNS, individually and on )
behalf of all parishes; COMMITTEE OF CATHOLIC )
PARISHES, PARISHIONERS AND INTERESTED )
PARTIES; CENTRAL CATHOLIC HIGH SCHOOL )
PARENTS' ASSOCIATION; CENTRAL CATHOLIC )
HIGH SCHOOL ALUMNI ASSOCIATION; )
PHOEBE JOAN O'NEILL; MARIST HIGH SCHOOL )
PARENTS AND ALUMNI SERVICE CLUB; )
FRIENDS OF REGIS HIGH SCHOOL; MARIST )
HIGH SCHOOL FOUNDATION, an Oregon non- )
profit corporation; CATHOLIC YOUTH )
ORGANIZATION/CAMP HOWARD, an Oregon )
non-profit corporation; the ST. ELIZABETH PARISH )
OF PORTLAND, OREGON, an Oregon non-profit )
corporation; MISSIONARIES OF THE HOLY )
SPIRIT, a California corporation; REGIS HIGH )
SCHOOL FOUNDATION, an Oregon non-profit )
corporation, )
)
                    Defendants. )
_____ )

The Tort Claimants Committee ("Committee") hereby submits its Response to (1) Debtor's Concise Statement of Material Facts in Connection With Its Cross Motion for Partial Summary Judgment; and (2) Debtor's additional facts submitted in Debtor's Response to Amended Concise Statement of Materials Facts in Support of Tort Claimants Committee's Restated Second Motion For Partial Summary Judgment. All of the additional facts submitted by Debtor in its Response are included in Debtor's Concise Statement of Material Facts Filed in Connection With its Cross Motion for Partial Summary Judgment. Therefore, this Response will be organized solely in response to Debtor's Concise Statement of Material Facts. The Committee's Response is incorporated into the chart attached hereto and incorporated herein as Exhibit 1.

The following additional facts may be necessary for the Court to determine the Committee's Restated Motion for Partial Summary Judgment and Debtor's Cross Motion for Partial Summary Judgment:

1.      Debtor's expert, Dean Nicholas Cafardi, and co-author Cardinal Adam Maida, state in their book entitled Church Property, Church Finances and Church-Related

1    Corporations that "Basically, there is no need for the canonical public juridic person to have

2    a civil law identity.  Only its activities need to have this identity, and these civil law

3    identities, which are normally nonprofit corporations, should be structured in accordance

4    with the legal exposure each activity creates."  Declaration of Albert N. Kennedy in Support

5    of Plaintiff's Reply to Responses to Tort Claimants Committee's Restated Second Motion for

6    Partial Summary Judgment and Debtor's Cross Motion for Partial Summary Judgment

7    ("Kennedy Decl."), Ex. 15 at 13; Ex. 14 at 22, 23.

8              2.      The civil law structure of the Archdiocese is the Archbishop's

9    decision.  Kennedy Decl., Ex. 14 at 12, 13.

10             3.      Debtor's civil law structure is the result of decisions made after

11   consultation with secular legal counsel.  Debtor sought and obtained advice from legal

12   counsel with respect to its corporate structure, the corporate structure of its parishes, and the

13   manner in which its real property is held.  Declaration of Michael W. Fletcher in Support of

14   Plaintiff's Reply to Responses to Tort Claimants Committee's Restated Second Motion for

15   Partial Summary Judgment and Debtor's Cross Motion for Partial Summary Judgment

16   ("Fletcher Decl."), Ex. 10 at 10-12; Kennedy Decl., Ex. 17 at 4, 7-8; Ex. 13 at 16, 17, 20.

17             4.      The Archdiocese of Portland in Oregon has used several civil law

18   structures for the purpose of conducting its secular affairs.  Debtor is an Oregon non-profit

19   corporation that was organized using the "corporation sole" structure allowed by Oregon's

20   Non-Profit Corporation Act.  Debtor is also the surviving corporation of the 1991 merger

21   with the Archdiocese of Portland in Oregon (formerly known as Archdiocese of Oregon

22   City), an Oregon non-profit corporation.  The Archdiocese of Portland in Oregon was not a

23   corporation sole and was the grantee of a significant portion of the real estate now owned by

24   Debtor.  Declaration of Timothy J. Conway in Support of Tort Claimants Committee's

25   Second Motion for Partial Summary Judgment ("Conway Decl."), Ex. 1; Kennedy

26   Declaration in Support of Tort Claimants Committee's Third Motion for Partial Summary

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    Judgment (11 U.S.C. § 544(a)(3)), Ex. 6 at 39-41, 45, 47, 49, 55, 56, 60, 83-86, 91-96, 120-

2    126.

3             5.       At least four of Debtor's parishes have been incorporated.  The

4    St. Elizabeth Parish of Portland, Oregon is an Oregon non-profit corporation and holds title

5    to its real property.  Kennedy Decl., Ex. 4 at 6, 11, 12; Ex. 6; Ex. 13 at 18.  Immaculate

6    Conception Parish of Stayton, Oregon was an Oregon non-profit corporation until it was

7    administratively dissolved on November 27, 1997.  After dissolution, Immaculate

8    Conception Parish of Stayton, Oregon transferred its real property to Debtor.  Kennedy Decl.,

9    Ex. 4 at 8, 9, 13-27; Exs. 5, 7, 8.  All Saints Parish of Portland, Oregon was an Oregon non-

10   profit corporation until it was administratively dissolved on February 1, 1996.  After its

11   dissolution, All Saints Parish of Portland, Oregon transferred its real property to Debtor.

12   Kennedy Decl., Ex. 4 at 4, 5; Exs. 11, 12.  St. Rita's Parish of Portland, Oregon was an

13   Oregon non-profit corporation until its administrative dissolution on December 13, 1991.

14   Kennedy Decl., Ex. 4 at 7; Exs. 9, 10.

15            6.       The Diocese of Pittsburgh is a charitable trust.  Each parish within the

16   Diocese of Pittsburgh is a separate charitable trust.  The Diocese has a non-profit corporation

17   that was organized for the purpose of holding legal title to the real property of the Diocese.

18   Deeds to real property associated with parishes explicitly recite that title is held by the

19   Bishop as trustee for the parish.  Kennedy Decl., Ex. 14 at 7-10.

20            7.       The Diocese of Baker (the Roman Catholic Diocese for the territory

21   east of the crest of the Cascades in Oregon) is organized as an Oregon non-profit corporation.

22   It is not a corporation sole.  Each of its parishes is also organized as an Oregon non-profit

23   corporation.  Real property associated with each parish is titled in the name of the parish

24   corporation.  Kennedy Decl., Ex. 2 at 4-6; Fletcher Decl., Exs. 6, 7, 8.

25            8.       Numerous authoritative and reliable treatises are available to dioceses

26   that explain alternative civil law structures that can be used to conduct their secular activities,

**Page 4 of 7** -   COMMITTEE'S RSP TO (1) DEBTOR'S CONCISE STMT OF MATERIAL FACTS IN CONNECTION
WITH ITS CROSS MPSJ; AND (2) DEBTOR'S ADDT'L FACTS SUBMITTED IN DEBTOR'S RSP TO
AMENDED CONCISE STMT OF MATERIAL FACTS IN SUPPORT OF COMMITTEE'S RESTATED
SECOND MPSJ

1   including <u>Church Property, Church Finances, and Church-Related Corporations</u> by Dean

2   Cafardi and Cardinal Maida, and Robert T. Kennedy's commentary to Book V contained in

3   the <u>New Commentary on the Code of Canon Law</u> commissioned by the Canon Law Society

4   of America and published in 2000. Kennedy Decl., Ex. 14 at 5-6, 14-15, 32-33; Exs. 15, 16.

5           9.    Under Oregon law, a corporation sole must include the words

6   "corporation sole" in its name. ORS 65.067(2). A search of the Business Registry database

7   of the Oregon Secretary of State, Corporation Division (located on the Oregon Secretary of

8   State's official web site) for corporations registered in Oregon that include the words

9   "corporation sole" in their name discloses 304 such corporations. Fletcher Decl., ¶ 2, Ex. 1.

10          10.   Several of the Articles of Incorporation of corporations sole filed with

11  the Corporation Division of the Oregon Secretary of State reject manmade law and deny the

12  authority of civil courts to adjudicate their disputes with third parties. Fletcher Decl., Exs. 2,

13  3, 4.

14          11.   In their book, Dean Cafardi and Cardinal Maida acknowledge: "The

15  civil law status of dioceses and parishes depends on what legal structure is assigned to them

16  by action of the church acting in accordance with the applicable civil law." Kennedy Decl.,

17  Ex. 15 at 11. In his deposition, Dean Cafardi explains that "the public juridic person is not a

18  civil law entity, but it can choose to have different civil law structures to carry out different

19  parts of its mission." Kennedy Decl., Ex. 14 at 18.

20          12.   All of Debtor's parishes are required to participate in Debtor's

21  Archdiocesan Loan and Investment Program ("ALIP"). All parishes are required to invest

22  any financial resources in excess of three months' operating requirements into Debtor's

23  ALIP. Parishes are not allowed to borrow funds from any source other than the ALIP

24  without the prior approval of the Archbishop. All withdrawals (or cumulative withdrawals

25  within a short period of time) from the ALIP in excess of $10,000 require the prior approval

26  of the Archbishop. Kennedy Decl., Ex. 3 at 3, 4, 13; Fletcher Decl., Ex. 14 at 8, 15, 16.

**Page 5 of 7 -**   COMMITTEE'S RSP TO (1) DEBTOR'S CONCISE STMT OF MATERIAL FACTS IN CONNECTION
WITH ITS CROSS MPSJ; AND (2) DEBTOR'S ADDT'L FACTS SUBMITTED IN DEBTOR'S RSP TO
AMENDED CONCISE STMT OF MATERIAL FACTS IN SUPPORT OF COMMITTEE'S RESTATED
SECOND MPSJ

1    13.    Each parish must pay assessments to Debtor.  The assessments are

2  established by the Archbishop.  Levine Decl., Ex. 4 at 2, 4; Kennedy Decl., Ex. 13 at 21-24;

3  Fletcher Decl., Ex. 14 at 17.

4    14.    Debtor establishes the policies and procedures to be followed by its

5  parishes with respect to financial and accounting matters.  Fletcher Decl., Ex. 14 at 1, 6-9,

6  13, 15-16, 18-20 and 31.

7    15.    Each parish must annually submit to Debtor (on standard forms

8  provided by Debtor) a parish balance sheet, statement of revenues and expenditures, budget

9  versus actual comparison, financial forecast and budget.  Each year each parish and school

10  must complete and submit to Debtor a "Parish Annual Report" or "School Annual Report."

11  Fletcher Decl., Ex. 14 at 31.

12    16.    Parishes have no authority to hire, supervise or terminate their pastors,

13  yet pastors are "empowered to act on behalf of the parish in external and internal form."

14  Kennedy Decl., Ex. 13 at 10-15; Conway Decl., Ex. 21 at 6.

15    17.    The Archbishop appoints assistant pastors, deacons and lay

16  administrators.  Levine Decl., Ex. 4 at 4.

17    18.    Dean Cafardi testified that over 100 parishes in the Diocese of

18  Pittsburgh were suppressed by the Bishop of that diocese in the late 1980's.  Kennedy Decl.,

19  Ex. 14 at 43, 44.

20    19.    In its Answer filed in *D.J., R.H., T.J. and S.S. v. The Archdiocese of*

21  *Portland in Oregon, et al.*, Case No. 0008-07885 (Multnomah Cty. Cir. Ct. 2001), Debtor

22  stated:

23    "The Archdiocese admits that the Roman Catholic Archbishop
   of Portland in Oregon and successors, a corporation sole, is a
24    corporation.  The Archdiocese further admits that the Church
   of St. Michael The Archangel is a parish of the Archdiocese
25    under the Canon Law of the Roman Catholic Church, which
   Canon Law (church law) governs the duties, and obligations
26

**Page 6 of 7 -**  COMMITTEE'S RSP TO (1) DEBTOR'S CONCISE STMT OF MATERIAL FACTS IN CONNECTION WITH ITS CROSS MPSJ; AND (2) DEBTOR'S ADDT'L FACTS SUBMITTED IN DEBTOR'S RSP TO AMENDED CONCISE STMT OF MATERIAL FACTS IN SUPPORT OF COMMITTEE'S RESTATED SECOND MPSJ

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    and relationships within the Archdiocese of Portland, but that
2    the parish is not a separate secular legal entity."

3    Fletcher Decl., Ex. 12 at 1.

4    20.    In *Phelan v. Roman Catholic Archbishop of Portland in Oregon and*

5    *Successors, et al.*, Case No. 02 CV 0191 (Josephine Cty. Cir. Ct. 2003), Debtor stated:

6    "In its answer to plaintiff's Second Amended Complaint,
     defendants the Roman Catholic Archbishop of Portland in
7    Oregon and Successors, a corporation sole, dba Archdiocese of
     Portland in Oregon and also dba St. Anne's Catholic
8    Church/School, hereafter referred to as the 'Archdiocese'
     admits, denies and alleges as follows:
9
     "1.  The Archdiocese admits to employing plaintiff as an
10   administrative secretary at St. Anne's Catholic School that
     operates in Josephine County, Oregon . . ."
11

12   Fletcher Decl., Ex. 13 (emphasis added).

13        DATED this 26th day of October, 2005.

14                              TONKON TORP LLP

15

16                              By _____
                                   ALBERT N. KENNEDY, OSB No. 82142
17                                 Attorneys for Tort Claimants Committee

18   032545\00001\657698 V001

19

20

21

22

23

24

25

26

**Page 7 of 7 -**    COMMITTEE'S RSP TO (1) DEBTOR'S CONCISE STMT OF MATERIAL FACTS IN CONNECTION
                      WITH ITS CROSS MPSJ; AND (2) DEBTOR'S ADDT'L FACTS SUBMITTED IN DEBTOR'S RSP TO
                      AMENDED CONCISE STMT OF MATERIAL FACTS IN SUPPORT OF COMMITTEE'S RESTATED
                      SECOND MPSJ

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

## EXHIBIT 1

**TORT CLAIMANTS COMMITTEE'S RESPONSE TO DEBTOR'S CONCISE
STATEMENT OF MATERIAL FACTS IN CONNECTION WITH ITS CROSS MOTION
FOR PARTIAL SUMMARY JUDGMENT**

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| 1.    On October 23, 1874 Debtor was incorporated as a non-profit religious corporation sole in accordance with the following Oregon statutes:<br><br>    (a)    An Act providing for the incorporation of churches, and religious, benevolent, and charitable societies enacted by the Oregon Legislature on October 24, 1864, Or Gen Laws, Chap. 4 at 632;  Declaration of Howard M. Levine, Ex 2 of Ex 1 (hereinafter "Levine Declar.")<br><br>    (b)    An amendment enacted on October 28, 1872 to the Act providing for the incorporation of churches, and religious, benevolent, and charitable societies to further provide for the formation of a "corporation sole", which provides among other things, the following:<br><br>        [A]ny person being the bishop, overseer, or presiding elder of any church, or religious denomination of this State, may, in conformity with the constitutions, canons, rules, regulations, and discipline of such church or denomination, become a corporation sole for religious and educational purposes.<br><br>        Or Gen'l Laws at 127, Levine Declar., Ex. 3. of Ex 1. | (a)  The Committee accepts statement 1(a).  However, Debtor has neglected to point out that the Act referenced in statement 1(a) provides in Section 5 that:<br><br>        "Upon the making and filing of Articles of Incorporation, as herein provided, the persons subscribing the same, and their successors in office, associates and assigns, by the name assumed in such Articles, shall thereafter be deemed to be a body corporate with power:  . . .<br><br>        4.  To purchase, receive, possess and dispose of such real and personal property as may be necessary or convenient to carry out the object of said corporation . . .."<br><br>(b)  The Committee accepts statement 1(b).<br><br>(c)  The Committee accepts statement 1(c).  However, Debtor neglected to point out that the Act referenced by Debtor in statement 1(c) provides in Section 4, among other things, the following:<br><br>        "Upon the making and filing for record Articles of Incorporation, as herein provided, the person or persons subscribing the same, and his or their successor or successors in |

Exhibit 1
Page 1 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| (c) An Act providing for the formation of ecclesiastical corporations for the holding of church property enacted by the Oregon Legislature on October 28, 1872, which provides among other things, the following:<br><br>. . .who shall have been duly chosen, elected, or appointed, in accordance with the usages and regulations of such church, and authorized to act for the church and who (in whom) shall be vested, at the time, the legal title of the church property . . .<br><br>Or. Gen'l Laws at 135-36, Levine Declar., Ex 4 of Ex 1. | office, by the name or title specified in the Articles, shall thereafter be deemed a body corporate with continual, perpetual succession, and shall have power to acquire and possess by donation, gift, or purchase, and to retain and enjoy property, real, personal and mixed, and the same to sell, grant, convey or rent, or otherwise dispose of at pleasure . . . ." |
| 2.  On September 23, 1874, Debtor filed its original Articles of Incorporation with the Oregon Secretary of State.  Those Articles provide among other things, the following:<br><br>• That the incorporator Archbishop Blanchet, was "duly appointed . . . in conformity with the Constitution, canons, rules, usages and regulations of said Church . . .;"<br><br>• That Archbishop Blanchet, "together with [his] successors in office [who have been] duly appointed, authorized and empowered as such, according to the canons, usages and regulations of the [Roman Catholic] Church" will serve as the corporation sole;<br><br>• That "the object and purposes of this corporation is to provide for and maintain the worship of Almighty God, | The Committee accepts statement 2. |

Exhibit 1
Page 2 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| and the preaching of the gospel of our Lord Jesus Christ, according to the doctrine, canons, rules and usages of the Roman Catholic Church," to advance education, charity, piety, and learning; and "for acquiring, holding and disposing of church property for the benefit of the Roman Catholic Church for works of charity and for public worship;" <br><br> • That the Archbishop and his successors "will hold said office or position, in said Diocese, under the canons, rules and usages of the Roman Catholic Church . . .;" and <br><br> • That the Archbishop's "successor[s] shall and will be chosen or appointed, under and in accordance with the canons, rules and regulations of said church . . . ." <br><br> Conway Declar. Ex 1 at 1-6; Levine Declar. Ex 1 of Ex 1. | |
| 3.    The 1983 Code of Canon Law is the universal law for the entire western or Latin Roman Catholic Church, and is now in force for all dioceses and parishes in the United States. Bishops must conduct their ministry and administrations in accordance with Canon Law. Levine Declar., Ex 2 ¶ 10. | The first sentence of statement 3 is denied for the reason that the Pope has amended the Code of Canon Law on at least two occasions since 1983. Kennedy Decl., Ex. 14 at 46. The Committee objects to this statement on the grounds that it is wholly irrelevant to the issues of federal and state law before this Court. Fed. R. Evid. 401 and 402. |
| 4.    The Code of Canon Law is a public document, readily available in larger law libraries and accessible on the internet at a number of sites. Levine Declar., Ex 2 ¶ 17. | The Committee objects to statement 4 for lack of foundation and relevance. The only authoritative text of the Canons of the Catholic Church is the Latin text. Kennedy Decl., Ex. 14 at 47. There is no showing that the Latin text |

Exhibit 1
Page 3 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| | of the canons is a public document readily available at larger law libraries. The availability of the Catholic canons is irrelevant to any issue of state or federal law before this Court. |
| 5.    The Catholic Church is hierarchical. The universal Church is headed by the Pope, referred to in the Code of Canon Law as the Roman Pontiff, who has "supreme, full, immediate, and universal ordinary power in the Church." Levine Declar., Ex 2 ¶ 20. | Accept as a statement of fact. The Committee objects to the reference to the canons as wholly irrelevant to any issue of state or federal law before this Court. |
| 6.    Assisting the Pope in his universal ministry are the bishops. Canon Law entrusts the legislative, executive, and judicial powers of a diocese to bishops in their respective dioceses. Accordingly, the Archbishop of Portland is the highest legislative, executive, and judicial authority of his Archdiocese. Dioceses, often referred to in the Code of Canon Law as "particular churches" are "portions of the people of God entrusted to a diocesan bishop for him to shepherd." In the diocese, the diocesan bishop is the principal teacher, sanctifier and governor. As the fosteror of common discipline and as the judge of first instance in the diocese, the bishop is also the principal interpreter of canon law for the diocese. Levine Declar., Ex 2 ¶ 21. | Accept that bishops have all legislative, executive and judicial powers within their dioceses. The Committee objects to the remaining portions of statement 6 because they are wholly irrelevant to the issues of federal and state law before the Court. Fed. R. Evid. 401 and 402. |
| 7.    The Catholic Church in the United States is organized into ecclesiastical provinces. Each province is territorial, and is composed of several suffragan dioceses and an archdiocese. At the head of every province is a metropolitan, who is the archbishop of the archdiocese of the province. An archdiocese is the functional equivalent | Accept that an archdiocese is the functional equivalent of a diocese and that the head of an archdiocese is referred to as an archbishop, but he is the equivalent of the bishop of a diocese. The Committee objects to all references to substantive provisions of the "Canon Law" for the reason that "Canon Law" is wholly irrelevant to the |

Exhibit 1
Page 4 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| of a diocese, however, and all references in the Code of Canon Law to "particular churches" or to dioceses" are equally applicable to archdioceses. Dioceses are also territorial. The head of an archdiocese is referred to as an archbishop, but he is the equivalent of the bishop of a diocese and all references in the Code of Canon Law to a diocesan bishop are equally applicable to an archbishop who is the head of an archdiocese. Since the Code of Canon Law refers primarily to diocesan bishops, that is the term I will use in this Declaration except for specific references to the Archbishop of Portland. Levine Declar., Ex 2 ¶ 22. | issues of state and federal law before the Court. |
| 8.   The Code of Canon Law acknowledges the existence of certain legal, as opposed to natural persons, which the Code refers to as public juridic persons. Public juridic persons are either aggregates of persons or aggregates of things, constituted by operation of law or by an act of competent ecclesiastical authority as its own legal person, existing independently of other public juridic persons, and endowed with its own rights and duties, and owning its own property, apart from the property of other public juridic persons. Levine Declar., Ex 2 ¶ 24. | The Committee objects to statement 8 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 9.   Under the Code of Canon Law, the administration of the property of a public juridic person is the competency of the individual who immediately governs the juridic person to whom the property belongs. Levine Declar., Ex 2 ¶ 25. | The Committee objects to statement 9 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 10.   Under the Code of Canon Law, each diocese is its own legal or public juridic | The Committee objects to statement 10 and all references to the rules or norms |

Exhibit 1
Page 5 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| person. The diocesan bishop is to represent the public juridic person of the diocese in all of its juridic affairs and is the exclusive administrator of all property belonging to the diocese. Levine Declar., Ex 2 ¶ 26. | of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 11. Within each diocese, there are established stable communities of the Christian faithful, called "parishes," whose pastoral care is entrusted by the diocesan bishop to its proper pastor. Although appointed by the diocesan bishop, a pastor does not receive his power from the diocesan bishop, but rather from his office as pastor. The pastor of a parish is not the representative or delegate of the diocesan bishop. The power of a pastor is proper, ordinary power, i.e., stemming from his office. Levine Declar., Ex 2 ¶ 27. | The Committee objects to statement 11 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 12. A parish is a group of Christian faithful, organized on a stable basis, under the Code of Canon Law, for purposes of religious instruction, namely proclaiming the Gospel and educating persons in the Catholic faith, for purposes of divine worship, namely celebrating the Sacraments, especially the Eucharist, and for purposes of performing works of charity and social justice toward those in need. Levine Declar., Ex 2 ¶ 28. | The Committee objects to statement 12 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 13. Each parish is its own legal or public juridic person in the Code of Canon Law. It is represented in its juridic affairs by its pastor, who is also the exclusive administrator of all property belonging to the parish. In particular, the pastor of a parish is charged by the Code of Canon Law to see that the | The Committee objects to statement 13 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |

Exhibit 1
Page 6 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| property of the parish is properly protected.  Levine Declar., Ex 2 ¶ 29. | |
| 14.  Every administrator of the property of a public juridic person, including the bishop of a diocese and the pastor of a parish, is bound to acquire, hold, administer and alienate such property in accordance with the Code of Canon Law.  Levine Declar., Ex 2 ¶ 30. | The Committee objects to statement 14 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 15.  Each public juridic person in the Code of Canon Law is the subject of its own rights and its own property.  The property of one public juridic person is not to be commingled with the property of another public juridic person in such a way that the proper owner loses its rights in its property.  Levine Declar., Ex 2 ¶ 31. | The Committee objects to statement 15 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 16.  Each public juridic person in the Code of Canon Law is the subject of its own rights.  Levine Declar., Ex 2 ¶ 32. | The Committee objects to statement 16 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 17.  Parish property is, almost entirely, the result of offerings of the faithful for the use of the parish.  Under the Code of Canon Law, gifts made for a particular purpose must be used only for that purpose.  Levine Declar., Ex 2 ¶ 33. | The Committee accepts that much of Debtor's property is the result of gifts, contributions and offerings.  The Committee objects to the remaining portions of statement 17 and to all references to the rules and norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of state and local law before the Court.  Fed. R. Evid. 401 and 402. |
| 18.  Property given to the pastor of a parish is presumed by the Code of Canon Law to be property given to the parish itself.  Levine Declar., Ex 2 ¶ 34. | The Committee objects to statement 18 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law |

Exhibit 1
Page 7 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| | before this Court. |
| 19.  Under the Code of Canon Law, the pastor of a parish, and not the diocesan bishop, is the administrator of all parish property. The diocesan bishop is neither the owner nor the administrator of parish property. Levine Declar., Ex 2 ¶ 35. | The Committee objects to statement 19 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 20.  Under the Code of Canon Law, the property of a parish is not the property of the diocese nor of the diocesan bishop. Levine Declar., Ex 2 ¶ 36. | The Committee objects to statement 20 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 21.  The fact that the Code of Canon Law subjects parishes within a diocese to the jurisdiction of the diocesan bishop does not destroy the parish's legal autonomy as a separate public juridic person, with its own rights, duties and property apart from the diocese.  It would be a complete mischaracterization of a bishop's jurisdictional authority over parishes to say that it simply makes the parishes the alter ego of the bishop or the operating divisions of a diocese or that it makes the separate property of the parishes into the property of the diocese.  Such a conclusion would create an ecclesial system which is out of conformity with the Code of Canon Law.  Were a civil court to attempt to impose such a polity on the Catholic Church, the result would be a complete distortion of Catholic doctrine, polity and governance. Levine Declar., Ex 2 ¶ 39. | The Committee objects to statement 21 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 22.  One acceptable choice of civil law entity in the United States for | The Committee accepts that many dioceses in the United States have |

Exhibit 1
Page 8 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| conducting diocesan temporal affairs is either the common law or the statutory corporation sole. As the sole director of the corporation sole, the diocesan bishop has the ability in civil law to act according to his obligations under the Code of Canon Law. This structure allows him to treat the assets and real property of individual parishes within the diocese as separate from the assets and real property of the diocese and as separate from the assets and real property of other parishes as required by Canon Law. This is the case because, as the sole director of the corporation sole, he acts as a canonical steward for all of these properties. As a canonical steward, acting in accordance with the Code of Canon Law, he must, as the sole director of a corporation sole, hold parish assets separate from diocesan assets. Any determination by a civil court that, because all parish and diocesan property is titled in the diocesan corporation sole, all parish assets and real property are indistinguishable from the assets and real property of the diocese or of other parishes, would ignore this reality. Such a determination would over-ride the bishop's obligations as the sole director of the corporation sole to act according to the Code of Canon Law and to treat these assets as separate, which the Code requires. It would impose on the Catholic Church a doctrine, polity and governance vastly at odds with the ecclesial reality of the Catholic Church. Levine Declar., Ex 2 ¶ 42. | chosen to use the corporation sole structure as the civil law structure under which they conduct their secular affairs. The Committee objects to the remainder of statement 21 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 23.   Bishops solemnly vow during their ordinations to conduct their ministries | The Committee objects to statement 23 and all references to the rules or norms |

Exhibit 1
Page 9 of 16

| | DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|---|
| | and affairs of the diocese in accordance with Scripture, the magisterial teaching and doctrine of the Catholic Church, and the canon law and practice of the Catholic Church. Levine Declar., Ex 3 ¶ 4. | of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 24. | The Archdiocese of Portland in Oregon is an ecclesial entity which conducts its temporal affairs through a statutory corporation sole. Levine Declar., ¶ 5. | The Committee accepts that the Archdiocese of Portland in Oregon has chosen to use the civil law structure of a corporation sole within the Oregon nonprofit corporations statute for the purpose of conducting its secular affairs. |
| 25. | Under Canon Law, each parish is a special type of ecclesiastical entity known as a public juridic person. The Archdiocese is itself a public juridic person. Public juridic persons are separate and distinct from each other. Each has its own property and is own administrator. The Archbishop is the administrator for the Archdiocese. Each separate parish has its own pastor or pastoral administrator who administrates his particular parish. The pastor has final authority in the ordinary administration of parish affairs, subject to and limited by Canon Law, the doctrine and practice of the Roman Catholic Church, and the policies of the Archdiocese. The parishes have conducted their temporal affairs distinct from the Archdiocese, each with its own pastor-administrator. Levine Declar., Ex 3 ¶ 8. | The Committee objects to statement 25 and all references to the rules or norms of the "Code of Canon Law" for the reason that they are wholly irrelevant to the issues of federal and state law before this Court. |
| 26. | Parishes were named as defendants in 25 or more lawsuits pending against the debtor during the year immediately prior to the Debtor's bankruptcy filing. Several members of the Tort Claimants Committee were plaintiffs in those | The Committee has filed a separate motion to strike the Declaration of Thomas W. Stilley as it relates to the use of Ex. 5 as anything more than a copy of certain pages from Debtor's Statement of Affairs. Mr. Stilley does |

Exhibit 1
Page 10 of 16

| DEBTOR'S CONCISE<br>STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| lawsuits.  Levine Declar., Ex. 5 of Ex 1. | not testify that he has personal knowledge of each or any of the cases identified on Ex. 5, nor is there any evidence with respect to the manner in which Ex. 5 was assembled.  The Committee objects to statement 26 because it lacks foundation and the underlying pleadings are not submitted into evidence as required by Fed. R. Evid. 1002.  Further, the Committee would point out that, in many instances, parishes were identified as an assumed business name of Debtor.  Finally, the statement is irrelevant. |
| 27.  Blanchet Catholic School, St. Josephs School, Queen of Peach School and St. Vincent DePaul School, each parish schools within the Archdiocese, are registered with the Oregon Secretary of State as "authorized representatives" of the Oregon Wine and Food Festival, an assumed business name.  Levine Declar., Ex 6 of Ex 1. | The Committee objects to statement 27 because it lacks foundation.  In his declaration, Mr. Stilley does not state from personal knowledge that Blanchet Catholic School, St. Josephs School, Queen of Peace School or St. Vincent de Paul School is a parish school within the archdiocese.  Further, Ex. 14b to Debtor's Statement of Financial Affairs does not list any schools by those names.  The remaining statements contained in statement 27 are denied because they are simply untrue.  There is no showing that any of the schools identified in statement 27 have registered an assumed business name with the Oregon Secretary of State.  The only assumed business name registered with the Oregon Secretary of State is the Oregon Wine and Food Festival. |
| 28.  It has long been the practice of both the Debtor and the Parishes for each individual parish to be financially self-sufficient and operate with significant autonomy from the Debtor.  Each parish manages its own business and | The Committee accepts that Debtor's parishes operate with some autonomy.  However, Debtor has failed to disclose that Debtor establishes the policies and procedures to be followed by its parishes with respect to financial and |

Exhibit 1
Page 11 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| financial affairs, including planning for building and maintaining its buildings. The individual parishes collect funds in the name of the parish, not in the name of the Debtor. Each parish deposits the funds collected in individual parish bank accounts, and uses the funds in those accounts to pay parish expenses, including upkeep of the parish real property. Levine Declar., Ex 4 ¶ 5. | accounting matters. Fletcher Decl., Ex. 14 at 1, 6-9, 13, 15-16, 18-20 and 31. |
| 29.  The Debtor depends to some extent on contributions from the parishes to fund the Debtor's operating expenses. Parishes pay to the Debtor regular assessments based on a percentage of offertory donated to the parish by the parishioners. This amount is individually calculated for each parish based on the parish's prior collections and is billed by the Debtor to the parish as an accounts receivable. Levine Declar., Ex 4 ¶ 6. | Accepted. |
| 30.  Each parish has advisory groups to the pastor. The pastor has an administrative council of competent lay persons to advise him in the proper stewardship of parish assets. Each pastor, with lay advice, establishes financial plans for the parish, budgets, receives the offerings on behalf of the parish, and oversees accounting for the offertory and other gifts. Levine Declar., Ex 4 ¶ 7. | Accepted. However, the Committee denies any implication that any parish has any authority to supervise its pastor. |
| 31.  On the spiritual side, each parish has a pastoral council of lay persons to advise the pastor in pastoral planning and pastoral outreach for the parish. Each parish is expected to have, and to operate in accordance with, its own pastoral plan. Each parish sets its own times for liturgical and other services, | The Committee objects to statement 31 for the reason that it is wholly irrelevant to the issues of federal and state law before this Court. Fed. R. Evid. 401 and 402. |

Exhibit 1
Page 12 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| and maintains its own sacramental records. Levine Declar., Ex 4 ¶ 8. | |
| 32. Each parish applies for and has its own tax identification number (TIN), which is different from the TIN of the Debtor. Levine Declar., Ex 4 ¶ 9. | Accepted. However, all parish administrative matters are subject to the policies and procedures established by Debtor. Fletcher Decl., Ex. 14. |
| 33. Most monetary contributions are made by check payable to the individual parish, parish church, or parish school. These contributions are made by parishioners and others and given to the parish and are to be deposited by the parish into the parish's separate bank account. The parish is to issue acknowledgements and tax receipts to donors for such contributions. If any contributions are to be given at the parish for the Debtor or for any other non-parish entity, or are to be used for any purpose other than for the parish, the solicitation for the donation is separately identified (i.e., advertisement or envelope) and the donation itself identified by the donor for that specific purpose or donee. For example, contributions for the Annual Catholic Appeal and the Campaign for Human Development are received at the parishes in separate envelopes and are to be used only for the purpose designated. Levine Declar., Ex 4 ¶ 10. | Accepted. However, all parish administrative matters are subject to the policies and procedures established by Debtor. Fletcher Decl., Ex. 14. |
| 34. The parish selects its own local bank for the deposit of parish donations. This account is established by the parish. Signatures on the account for purposes of withdrawals and other bank transactions are those of the pastor and others at the parish level. The signature of the Debtor's Director of Financial Services is also on each parish's bank signature card, but for | Accepted. However, all banking arrangements of parishes are subject to the policies and procedures established by Debtor with respect to financial and accounting matters. Fletcher Decl., Ex. 14 at 1, 6-9, 13, 15-16, 18-20 and 31. |

Exhibit 1
Page 13 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| emergency purposes only, e.g., parish without a pastor or business manager. This authority is very rarely exercised. Levine Declar., Ex 4 ¶ 11. | |
| 35. Each parish does its own long range financial planning and budgeting. Each parish determines its own financial priorities in accordance with the pastoral needs and priorities of the parish. Levine Declar., Ex 4 ¶ 12. | Accepted. However, all parish administrative matters are subject to the policies and procedures established by Debtor. Fletcher Decl., Ex. 14. |
| 36. Each parish is expected to file its own tax returns (if required) and pay its own taxes from funds collected. This includes taxes on property (if applicable), unrelated business income, etc. Each parish is expected to be financially self-sustaining. If a parish is unable to meet its financial obligations, it must apply for a grant or a loan, or make other special arrangements for financial assistance. Levine Declar., Ex 4 ¶ 13. | Accepted, subject to the qualification stated in response to statement 35. |
| 37. Each parish is also responsible for its own record keeping. For example, each parish must pay the Debtor for: (1) priest retirement for the Archdiocesan priests who serve at the parish, (2) the parish's insurance premium as billed under the Archdiocesan Insurance Program, (3) the parish's assessment on offertory, and (4) other miscellaneous expenses. Levine Declar., Ex 4 ¶ 14. | Accepted, subject to the qualification stated in response to statement 35. |
| 38. Each parish hires, supervises, and fires its own staff (with the exception of the pastor, assistant pastors, deacons, and lay administrators who are appointed by the Archbishop as required by canon law, though compensated by the parish). Levine Declar., Ex 4 ¶ 15. | Accepted as a statement of fact. Pastors, deacons and lay administrators are, in fact, appointed by the Archbishop. The Committee objects to Debtor's citation to canon law because it is wholly irrelevant to the issues of federal and state law before |

Exhibit 1
Page 14 of 16

| DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|
| | this Court. |
| 39.   Each parish administers its own payroll through ADP. Each parish supplies ADP directly with individual employee payroll data: rate of compensation, hours worked, vacation leave, deductions, etc. The employer name on the employee's paycheck is that of the parish (e.g., "St. John's Church"). Levine Declar., Ex 4 ¶ 16. | Accepted, subject to the qualification stated in response to statement 35. |
| 40.   Each parish is to pay from its own funds its payroll taxes and issues year-end tax forms to employees (Form W-2) and independent contractors (Form 1099). Tax matters are to be conducted under the parish's own TIN. Levine Declar., Ex 4 ¶ 17. | Denied that any parish has its "own" funds. All financial and accounting matters of parishes are subject to the accounting policies and procedures established by Debtor. Further, Debtor has control of all funds held in any parish account. Fletcher Decl., Ex. 14; Conway Decl., Ex. 4 at 14-15. |
| 41.   Parishes participate in the lay employee benefits program administered by the Debtor for the parishes and other entities. Parishes also fund benefits for their own priests. Each parish is responsible for funding and administering benefits for its own staff as follows:<br><br>    (a)   The health care component is a cafeteria plan including health care, disability, and life insurance, dependent care, and health care spending options. Employees notify directly the third party benefits administrator (TPA) of benefits/levels chosen and other data. The parish is then billed directly by the TPA and pays the TPA for amounts due for benefits of its lay employees. Penalties at the rate of 7% per month are assessed to parishes by the TPA for late payments; and<br><br>    (b) The parishes offer their lay | Accepted, subject to the qualification stated in response to statement 35. |

Exhibit 1
Page 15 of 16

| | DEBTOR'S CONCISE STATEMENT OF MATERIAL FACTS | COMMITTEE'S RESPONSE |
|---|---|---|
| | employees retirement benefits through 403(b) Tax-Sheltered Annuities (TSA). Each parish funds its own TSA contribution for employee benefits. The parish pays a percentage of the employee's compensation directly to the appropriate TSA vendor (VALIC, TIAA-CREF, Equitable, ING) as the employer contribution to the employee's TSA account. By contrast, employees of the Debtor are under different retirement benefit arrangements. Levine Declar., Ex 4 ¶ 18. | |
| 42. | Each parish is to have its own letterhead, own check stock, and seal, and other public statements of unique identity. Each parish has a separate name that does not include the word "Archdiocese"). Parish checks and letterhead are imprinted with the name of the parish and make no reference to "Archdiocese". Levine Declar., Ex 4 ¶ 19. | Accepted, subject to the qualification stated in response to statement 35. |

032545\00001\656015 V001

Exhibit 1
Page 16 of 16