1 | **Albert N. Kennedy**, OSB No. 82142
    Direct Dial: (503) 802-2013
2 |     Facsimile: (503) 972-3713
    E-Mail:al@tonkon.com
3 | **Timothy J. Conway**, OSB No. 85175
    Direct Dial: (503) 802-2027
4 |     Facsimile: (503) 972-3727
    E-Mail:tim@tonkon.com
5 | **Michael W. Fletcher**, OSB No. 01044
    Direct Dial:(503) 802-2169
6 |     Facsimile:(503) 972-3869
    E-Mail:michaelf@tonkon.com
7 | **TONKON TORP LLP**
1600 Pioneer Tower
8 | 888 S.W. Fifth Avenue
Portland, OR  97204
9 |
10 | **Marci A. Hamilton**, *Pro Hac Vice*
36 Timber Knoll Drive
11 | Washington Crossing, PA  18977
    Telephone: (215) 353-8984
12 |     Facsimile: (215) 493-1094 (fax)
    E-Mail: hamilton02@aol.com
13 |     Attorneys for Tort Claimants Committee

CLERK US BANKRUPTCY COURT
DISTRICT OF OREGON

'05 OCT 26 P4:20

LODGED_____RECD CL
PAID_____DOCKETED____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re )
)
ROMAN CATHOLIC ARCHBISHOP OF ) Case No. 04-37154-elp11
PORTLAND IN OREGON, AND SUCCESSORS, A )
CORPORATION SOLE, DBA THE ARCHDIOCESE )
OF PORTLAND IN OREGON, )
)
Debtor. )
_____ )
)
TORT CLAIMANTS COMMITTEE, ) Adv. Proc. No. 04-03292-elp
)
Plaintiff, ) **PLAINTIFF'S REPLY TO**
) **RESPONSES TO TORT**
v. ) **CLAIMANTS**
) **COMMITTEE'S RESTATED**
ROMAN CATHOLIC ARCHBISHOP OF ) **SECOND MOTION FOR**
PORTLAND IN OREGON, AND SUCCESSORS, A ) **PARTIAL SUMMARY**
CORPORATION SOLE, dba THE ARCHDIOCESE ) **JUDGMENT AND**
OF PORTLAND IN OREGON; JOHN RICKMAN, ) **DEBTOR'S CROSS**

| | | |
|---|---|---|
| 1 | GLENN PELIKAN and JOHNSTON MITCHELL, individually and on behalf of all others similarly | ) **MOTION FOR PARTIAL**<br>) **SUMMARY JUDGMENT** |
| 2 | situated; ST. ANDREWS CHURCH (PORTLAND), as represented by its pastor, REV. CHARLES | ) |
| 3 | LIENERT, ST. ANTHONY CHURCH (TIGARD), as represented by its pastor, REV. LESLIE M. SIEG, and | ) |
| 4 | ST. JUAN DIEGO CHURCH, as represented by its pastor, REV. JOHN KERNS, individually and on | ) |
| 5 | behalf of all parishes; COMMITTEE OF CATHOLIC PARISHES, PARISHIONERS AND INTERESTED | ) |
| 6 | PARTIES; CENTRAL CATHOLIC HIGH SCHOOL PARENTS' ASSOCIATION; CENTRAL CATHOLIC | ) |
| 7 | HIGH SCHOOL ALUMNI ASSOCIATION; PHOEBE JOAN O'NEILL; MARIST HIGH SCHOOL | ) |
| 8 | PARENTS AND ALUMNI SERVICE CLUB; FRIENDS OF REGIS HIGH SCHOOL; MARIST | ) |
| 9 | HIGH SCHOOL FOUNDATION, an Oregon nonprofit corporation; CATHOLIC YOUTH | ) |
| 10 | ORGANIZATION/CAMP HOWARD, an Oregon nonprofit corporation; The St. Elizabeth Parish OF | ) |
| 11 | PORTLAND, OREGON, an Oregon nonprofit corporation; MISSIONARIES OF THE HOLY | ) |
| 12 | SPIRIT, a California corporation; REGIS HIGH SCHOOL FOUNDATION, an Oregon nonprofit | ) |
| 13 | corporation, | ) |
| 14 | Defendants. | ) |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................1

II. FACTUAL SUPPLEMENT ....................................................................2

   A. DEBTOR CHOSE THE CIVIL LAW STRUCTURE THAT IT USES TO CONDUCT ITS SECULAR AFFAIRS ......................................................2

   B. THE OREGON SECRETARY OF STATE, CORPORATION DIVISION, LISTS 304 CORPORATIONS SOLE ...........................................5

   C. DEBTOR'S PARISHES HAVE NO CIVIL LAW EXISTENCE INDEPENDENT FROM DEBTOR ................................................................5

III. ARGUMENT.........................................................................................8

   A. DEBTOR, INCLUDING ITS PARISHES AND SCHOOLS, ARE ONE CIVIL LAW ENTITY .......................................................................8

      1. There is No Material Fact in Dispute and, Therefore, Summary Judgment is Appropriate ....................................................... 8

      2. Debtor's Election of a Corporation Sole Organizational Structure and Its Decision Not to Separately Incorporate the Parishes Led to the Creation of a Unitary Property Holder In the Archdiocese................................................................... 9

         a. The Parishes and Schools Do Not Operate as Separate Legal Entities From Debtor ................................. 10

         b. Debtor Has Admitted Its Parishes Cannot be Separately Sued................................................................... 12

   B. JUDICIAL ESTOPPEL APPLIES ................................................13

      1. This Court's Powers Are Not Expanded by Application of Judicial Estoppel ...................................................... 14

      2. Debtor Misconstrues the Elements of Judicial Estoppel.................... 14

      3. Debtor's Prior Civil Law Positions Are Binding In This Case........... 14

         a. *Thorne* ............................................................... 15

         b. *Mattson* ............................................................. 16

i

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

        c.    *Central Catholic*.................................................................. 17

C.    THE COMMITTEE IS NOT SEEKING TO CHANGE CHURCH
       POLITY ...............................................................................................17

D.    CANON LAW IS NOT THE LAW OF OREGON.........................................18

    1.    ORS 65.067 Authorizes the Formation of a Corporation Sole,
         But Does Not Mandate Its Internal Governance or its
         Relationship With Other Entities......................................... 19

    2.    Other Provisions of Oregon Law Provide Religious
         Corporations With the Freedom to Govern Their Internal
         Affairs in Accordance With Doctrine, But They Do Not Grant
         Civil Law Status to Religious Doctrine ............................. 20

    3.    Debtor's Interpretation of ORS 65.067 Violates the United
         States and Oregon Constitutions.......................................... 22

        a.    Establishment Clause............................................... 22

        b.    Equal Protection....................................................... 23

E.    DEBTOR'S ARTICLES OF INCORPORATION DO NOT
       "IMPORT" CANON LAW INTO CORPORATE GOVERNANCE,
       AND THEY CAN NOT MAKE CANON LAW APPLICABLE IN A
       DISPUTE WITH THIRD PARTIES ....................................................25

F.    THE FIRST AMENDMENT HAS NO BEARING ON THE ISSUES
       IN THIS ADVERSARY PROCEEDING.......................................................27

    1.    The First Amendment Provides No Refuge for Religious
         Organizations Seeking Special Treatment Under Neutral,
         Generally Applicable Property and Bankruptcy Laws ....................... 28

        a.    A Church's Secular Decisions and Conduct are Subject
             to Ordinary Principles of Law................................. 29

        b.    This Case Only Implicates Debtor's Secular Conduct
             and Decisions ......................................................... 31

    2.    The Limitation on Courts Determining Intrachurch, Solely
         Ecclesiastical Disputes Has no Application to a Third-Party
         Dispute ............................................................................... 32

G.    RFRA IS INAPPLICABLE HERE................................................................35

    1.    Substantial Burden .............................................................. 36

ii

2.  Compelling Governmental Interest ..................................................... 38

3.  Least Restrictive Means .................................................................... 40

IV.  DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT
SHOULD BE DENIED .............................................................................................. 41

V.  CONCLUSION ........................................................................................................... 42

iii

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1

**TABLE OF AUTHORITIES**

2

<u>Page</u>

3

**Cases**

4 A.K.H. v. R.C.T., 312 Or. 497 (1992) .................................................................. 40

5 Adams v. C.I.R., 170 F.3d 173 (3d Cir. 1999).......................................................... 41

6 Adarand Constructors v. Pena, 515 U.S. 200 (1995)........................................ 24, 25

7 American Life League, Inc. v. Reno, 47 F.3d 642 (4th Cir. 1995).......................... 36

8 Bd. of Educ. of Kiryas Joel v. Grumet, 512 U.S. 687 (1994).................................. 23

9 Bell v. Presbyterian Church (U.S.A.), 126 F.3d 328 (4th Cir. 1997) ...................... 30

10 Bollard v. California Province of the Soc'y of Jesus, 196 F.3d 940 (9th Cir. 1999)........ 30, 31

11 Braunfeld v. Brown, 366 U.S. 599 (1961).............................................................. 37

12 Brown v. Webb, 60 Or. 526 (1912) ........................................................................ 10

13 Bryant v. Gomez, 46 F.3d 948 (9th Cir. 1995).................................................. 36, 38

14 Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648
     (10th Cir. 2002)................................................................ 28, 30, 33, 34

15 Cantwell v. Connecticut, 310 U.S. 296 (1940) ................................................. 1, 28

16 Central Catholic Educ. Ass'n v. Archdiocese of Portland, 323 Or. 238 (1996) .................. 17

17 Christian Science Reading Room Jointly Maintained v. City and County of
18   San Francisco, 784 F.2d 1010 (9th Cir. 1986)................................................. 22

19 Church of Lukumi Babalu Aye v. City of Hialeah, 508 U.S. 520 (1993) .............. 24

20 Cimijotti v. Paulsen, 230 F.Supp. 39 (N.D. Iowa 1964)................................... 33, 34

21 Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752 (7th Cir. 2003).......... 37

22 County of Allegheny v. Greater Pittsburgh ACLU, 492 U.S. 573 (1989)............. 22

23 Crawford v. Lungren, 96 F.3d 380 (9th Cir. 1996), cert. denied,
24   520 U.S. 1117 (1997)....................................................................... 40

25 D.J., R.H., T.J. and S.S. v. The Archdiocese of Portland in Oregon, et al.,
     Case No. 0008-07885 (Multnomah Cty. Cir. Ct. 2001) ...................... 7

26 Droz v. C.I.R., 48 F.3d 1120 (9th Cir. 1995)......................................................... 40

iv

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

EEOC v. Southwestern Baptist Theological Seminary, 651 F.2d 277 (5th Cir. 1981) .......... 33

EEOC v. St. Francis Xavier Parochial School, 254 F.3d 315
    (2000 WL 1584578) (D.C. Cir. 2000). ................................................................. 9

EEOC v. St. Francis Xavier Parochial School, 77 F.Supp. 2d 71 (D.D.C. 1999),
    aff'd, 254 F.3d 315 (2000 WL 1584578) ....................................................... 9, 12

Elvig v. Calvin Presbyterian Church, 375 F.3d 951 (9th Cir. 2004),
    petition for rehearing en banc denied, 397 F.3d 790 (9th Cir. 2005) ................................ 31

Employment Div. v. Smith, 494 U.S. 872 (1990)........................................................... passim

Episcopal Student Found. v. City of Ann Arbor, 341 F.Supp. 2d 691
    (E.D. Mich. 2004) ............................................................................................. 37

Everson v. Bd. of Educ., 330 U.S. 1 (1947) .................................................................. 22, 25

F.E.L. Publications, Ltd. v. Catholic Bishop of Chicago, 754 F.2d 216
    (7th Cir. 1985)................................................................................................... 9, 12

F.G. v. MacDonell, 696 A.2d 697 (N.J. 1997) ..................................................................... 33

Fortin v. Roman Catholic Bishop of Portland, 871 A.2d 1208 (Me. 2005).......................... 34

Gillette v. United States, 401 U.S. 437 (1971) ..................................................................... 28

Goehring v. Brophy, 94 F.3d 1294 (9th Cir. 1996) .............................................................. 40

Gonzalez v. Roman Catholic Archbishop of Manila, 280 U.S. 1 (1929) .............................. 35

Goodall by Goodall v. Stafford County School Bd., 60 F.3d 168 (4th Cir. 1995)................. 37

Guam v. Guerrero, 290 F.3d 1210 (9th Cir. 2002) .......................................................... 30, 37

Hamilton v. State Farm Fire & Casualty, 270 F.3d 778 (9th Cir. 2001) ......................... 13, 17

Henderson v. Kennedy, 253 F.3d 12 (D.C. Cir. 2001) ......................................................... 36

Hewitt v. State Accident Ins. Fund Corp. (In re Williams), 294 Or. 33 (1982) .................... 24

Hiles v. Episcopal Diocese of Massachusetts, 773 N.E.2d 929 (Mass. 2002)................. 33, 34

Hutchinson v. Thomas, 789 F.2d 392 (6th Cir. 1986) .......................................................... 33

In re Bloch, 207 B.R. 944 (D. Colo. 1997)........................................................................... 39

In re Convertible Rowing Exerciser Patent Litigation, 817 F.Supp. 434
    (D. Del. 1993), ...................................................................................................... 11

In re Gomes, 219 B.R. 286 (Bankr. D. Or. 1998).................................................................. 38

v

In re Hodge, 220 B.R. 386 (D. Idaho 1998) ..................................................... 39, 40

In re Navarro, 83 B.R. 348 (Bankr. E.D. Pa. 1988)............................................... 39

In re Newman, 203 B.R. 468 (D. Kan. 1996) ........................................................ 39

In re The Catholic Bishop of Spokane, 329 B.R. 304 (Bankr. E.D. Wash. 2005)........... passim

In re Young, 82 F.3d 1407 (8th Cir. 1996) ................................................. 36, 37, 39

Jimmy Swaggart Ministries v. Board of Equalization, 493 U.S. 378 (1990) ........................ 40

Johnson v. Robison, 415 U.S. 361 (1974) ............................................................ 24

Jones v. Wolf, 443 U.S. 595 (U.S. 1979)............................................................ 28

Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church, 344 U.S. 94 (1952)........... 28

Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v.
    City of Lakewood, Ohio, 699 F.2d 303 (6th Cir. 1983) ...................................... 37

Lemon v. Kurtzman, 403 U.S. 602 (1971) ...................................................... 22, 23

Mabus v. St. James Episcopal Church, 884 So.2d 747 (Miss. 2004) .................................. 34

McKelvey v. Pierce, 173 N.J. 26 (2002)......................................................... 30, 34

Meltebeke v. Bureau of Labor & Indus., 322 Or. 132 (1995) ................................. 23

Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214 (11th Cir. 2004)..................... 37

New Hampshire v. Maine, 532 U.S. 742 (2001) ..................................... 14, 15, 17

NLRB v. Catholic Bishop of Chicago, 440 U.S. 490 (1979).................................. 33

O'Connor v. Diocese of Hawaii, 885 P.2d 261 (Hawaii 1994).............................. 33

OHSU, 157 Or. App. 502 (1998)................................................................ 24

Parish of the Advent v. Protestant Episcopal Diocese of Massachusetts,
    688 N.E.2d 923 (Mass. 1997)................................................................ 33

Pelster v. Walker, 185 F. Supp. 2d 1185 (D. Or. 2001)....................................... 40

PGE v. Bureau of Labor & Industries, 317 Or. 606 (1993)............................... 18, 20

Phelan v. Roman Catholic Archbishop of Portland in Oregon and Successors,
    et al., Case No. 02 CV 0191 (Josephine Cty. Cir. Ct. 2003) ................................ 7

Presbyterian Church in United States v. Mary Elizabeth Blue Hull
    Memorial Presbyterian Church, 393 U.S. 440 (1969)....................................... 28

vi

1   Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)................................................................. 20

2   Reynolds v. United States, 98 U.S. 145 (1879) ............................................................. passim

3   Roman Catholic Diocese of Jackson v. Morrison, 905 So.2d 1213 (Miss. 2005)................. 30

4   Salem College & Academy, Inc. v. Employment Div., 298 Or. 471 (1985)......................... 23

5   San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024 (9th Cir. 2004) ........ 30, 37

6   Schiavone v. Fortune, aka Time Incorporated, 477 U.S. 21 (1986) ...................................... 11

7   School Dist. of Abington Twp., Pa. v. Schempp, 374 U.S. 203 (1963) ................................. 22

8   Separation of Church & State Comm. v. City of Eugene, 93 F.3d 617 (9th Cir. 1996)......... 23

9   Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696 (1976) .................................... 28

10  Shelley v. Kraemer, 334 U.S. 1 (1948).................................................................................. 25

11  Sokoloff v. National City Bank of New York, 130 Misc. 66
      (Sup. Ct. N.Y. Cty. 1927) ................................................................................................ 11
12

13  State v. Kitzman, 323 Or. 589 (1996).................................................................................... 18

    Texas Monthly, Inc. v. Bullock, 489 U.S. 1 (1989)......................................................... 23, 41
14

15  Thomas v. Review Bd. of Indiana Employment Security Div., 450 U.S. 707 (1981)............ 33

    Tilton v. Marshall, 925 S.W.2d 672 (Tex. 1996)................................................................... 33
16

17  Timberline Equipment Co., Inc. v. Davenport, 267 Or. 64 (1973)........................................ 10

18  Turner v. Church of Jesus Christ of Latter-Day Saints, 18 S.W. 3d. 877
      (Texas App. 2000) ............................................................................................................ 33

19  United States of America v. BCCI Holdings, 833 F.Supp. 32 (1993)................................... 11

20  United States v. Lee, 455 U.S. 252 (1982) ............................................................................ 40

21  United States v. Philadelphia Yearly Meeting of the Religious Society of Friends, 322
      F.Supp. 2d 603 (E.D. Pa. 2004)........................................................................................ 40
22

23  Wallace v. Jaffree, 472 U.S. 38 (1985).................................................................................. 23

    Watson v. Jones, 80 U.S. 679 (1871)............................................................................... 28, 35
24

25  Weinberger v. Wiesenfeld, 420 U.S. 636 (1975)................................................................... 24

26

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

**Statutes**

11 U.S.C. § 548(a)(2)(A) ........................................................................................... 41

Or. Gen'l Laws at 135-36 §§ 2-4 ................................................................................ 21

Or. Gen'l Laws at 127 § 9 .......................................................................................... 19

ORS 174.010 .............................................................................................................. 18

ORS 65.042 ................................................................................................................ 20

ORS 65.067 ................................................................................................................ 19

ORS 65.067(2) ............................................................................................................. 5

ORS 65.357 ................................................................................................................ 21

ORS 65.377 ................................................................................................................ 21

R.C.W. 24.12.010 ...................................................................................................... 19

**Other Authorities**

Marci A. Hamilton, *Religion, the Rule of Law, and the Good of the Whole:
A View From the Clergy*, 18 J.L. & Politics 387 (2002) ..................................... 41

Robert W. Murphy, *Corporate Divisions v. Subsidiaries*, 34 Harvard Business
Review 83 (1956) ................................................................................................. 11

**Constitutional Provisions**

U.S. Const. Art. 1, § 8, cl. 4 ...................................................................................... 39

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

## I.    INTRODUCTION

Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code in July 6, 2004. On August 12, 2004, the Tort Claimants Committee (the "Committee") commenced this Adversary Proceeding seeking a determination of the assets of the estate. The primary issue framed by the Tort Claimants Committee's Restated Second Motion for Partial Summary Judgment and Debtor's Cross-Motion for Partial Summary Judgment is whether Debtor can avoid the application of neutral, generally applicable law to determine property ownership.

Contrary to Debtor's assertion that its beliefs determine the contours of legal property ownership, this case actually has nothing to do with religious doctrine. Debtor has every right to believe whatever it chooses. *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990); *Cantwell v. Connecticut*, 310 U.S. 296, 303-304 (1940); *Reynolds v. United States*, 98 U.S. 145, 166-67 (1879). But its religious beliefs do not determine the operation of Oregon and federal law regarding property within a bankruptcy proceeding. There is no need to inquire into the bona fides of Debtor's beliefs, because they are simply irrelevant in "a purely secular dispute between creditors and a bankruptcy debtor, albeit one which is a religious organization." *In re The Catholic Bishop of Spokane*, 329 B.R. 304, 323 (Bankr. E.D. Wash. 2005). The Committee is simply asking this Court to apply neutral, generally applicable civil law to Debtor's civil law structures.

Debtor argues that it is exempt from ordinary principles of property, bankruptcy and corporate law because an adverse ruling in this case purportedly would violate state law and the First Amendment by altering its internal polity. But this case is not about Debtor's internal organizational structure, relations or ecclesiology. Instead, this case only concerns the secular actions that Debtor took under civil law. For over a century, Debtor has been free under Oregon law and the First Amendment to the United States Constitution to obtain civil law recognition for whatever organizational form and property-

**Page 1 of 42 -**    PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    holding arrangements it desires. Debtor exercised that freedom by choosing not to

2    incorporate its parishes or hold its real property for the benefit of any other party. Within

3    recent memory, Debtor dissolved all but one of the parish corporations it had previously

4    allowed to exist and took unfettered fee title to their properties. What's more, Debtor has

5    been quite persistent in taking the position in prior litigation that it is a single corporate

6    entity. Now, like any other corporation in a voluntary bankruptcy proceeding, Debtor must

7    accept the generally applicable civil law consequences of its own decisions. Debtor's

8    religious beliefs are no more relevant to this case than the internal policies of any other

9    corporation in bankruptcy. It is simply too late for Debtor to alter the legal arrangements it

10    put into place well before and leading up to its decision to file for bankruptcy. [1]

11    **II.    FACTUAL SUPPLEMENT**

12           The facts at issue in this case are now beyond dispute.

13

14        **A.    DEBTOR CHOSE THE CIVIL LAW STRUCTURE THAT IT USES TO
CONDUCT ITS SECULAR AFFAIRS**

15           1.    Debtor's expert, Dean Nicholas Cafardi, and co-author Cardinal Adam

16    Maida, state in their book entitled <u>Church Property, Church Finances and Church-Related</u>

17    <u>Corporations</u> that "Basically, there is no need for the canonical public juridic person to have

18    a civil law identity. Only its activities need to have this identity, and these civil law

19    identities, which are normally nonprofit corporations, should be structured in accordance

20    with the legal exposure each activity creates." Declaration of Albert N. Kennedy in Support

21    of Plaintiff's Reply to Responses to Tort Claimants Committee's Restated Second Motion for

22    Partial Summary Judgment and Debtor's Cross Motion for Partial Summary Judgment

23    ("Kennedy Decl."), Ex. 15 at 13; Ex. 14 at 22, 23.

24    _____

[1] Other parties have also opposed the Committee's Restated Second Motion for Partial

25    Summary Judgment. The legal arguments they made are duplicative of those made by
Debtor. For ease throughout this brief, we refer to Debtor alone. Our responses are equally

26    applicable to the arguments made by others.

**Page 2 of 42 -**    PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    2.    The civil law structure of the Archdiocese is the Archbishop's

2    decision. Kennedy Decl., Ex. 14 at 12, 13.

3    3.    Debtor's civil law structure is the result of decisions made after

4    consultation with secular legal counsel.  Debtor sought and obtained advice from legal

5    counsel with respect to its corporate structure, the corporate structure of its parishes, and the

6    manner in which its real property is held.  Declaration of Michael W. Fletcher in Support of

7    Plaintiff's Reply to Responses to Tort Claimants Committee's Restated Second Motion for

8    Partial Summary Judgment and Debtor's Cross Motion for Partial Summary Judgment

9    ("Fletcher Decl."), Ex. 10 at 10-12; Kennedy Decl., Ex. 17 at 4, 7-8; Ex. 13 at 16, 17, 20.

10    4.    The Archdiocese of Portland in Oregon has used several civil law

11    structures for the purpose of conducting its secular affairs.  Debtor is an Oregon nonprofit

12    corporation that was organized using the "corporation sole" structure allowed by Oregon's

13    Nonprofit Corporation Act.  However, Debtor is also the surviving corporation of the 1991

14    merger with the Archdiocese of Portland in Oregon (formerly known as Archdiocese of

15    Oregon City), an Oregon nonprofit corporation.  The Archdiocese of Portland in Oregon was

16    not a corporation sole and was the grantee of a significant portion of the real estate now

17    owned by Debtor.  Declaration of Timothy J. Conway in Support of Tort Claimants

18    Committee's Second Motion for Partial Summary Judgment ("Conway Decl."), Ex. 1;

19    Kennedy Declaration in Support of Tort Claimants Committee's Third Motion for Partial

20    Summary Judgment (11 U.S.C. § 544(a)(3)), Ex. 6 at 39-41, 45, 47, 49, 55, 56, 60, 83-86, 91-

21    96, 120-126.  Further, Debtor has incorporated a small number of parishes and titled property

22    in the name of parish corporations.  At least four of Debtor's parishes have been

23    incorporated.  The St. Elizabeth Parish of Portland, Oregon is an Oregon nonprofit

24    corporation and holds title to its real property.  Kennedy Decl., Ex. 4, at 6, 11, 12; Ex. 6; Ex.

25    13 at 18.  Immaculate Conception Parish of Stayton, Oregon was an Oregon nonprofit

26    corporation until it was administratively dissolved on November 27, 1997.  After dissolution,

**Page 3 of 42 -**    PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    Immaculate Conception Parish of Stayton, Oregon transferred its real property to Debtor.

2    Kennedy Decl., Ex. 4 at 8, 9, 13-27; Exs. 5, 7, 8. All Saints Parish of Portland, Oregon was

3    an Oregon nonprofit corporation until it was administratively dissolved on February 1, 1996.

4    After its dissolution, All Saints Parish of Portland, Oregon transferred its real property to

5    Debtor. Kennedy Decl., Ex. 4 at 4, 5; Exs. 11, 12. St. Rita's Parish of Portland, Oregon was

6    an Oregon nonprofit corporation until its administrative dissolution on December 13, 1991.

7    Kennedy Decl., Ex. 4 at 7; Exs. 9, 10.

8             5.    Roman Catholic dioceses located in the United States have made a

9    variety of choices with respect to the civil law structure used to conduct their secular affairs.

10   Two examples are illustrative:

11            a.    The Diocese of Pittsburgh is a charitable trust. Each parish

12   within the Diocese of Pittsburgh is a separate charitable trust. The Diocese has a nonprofit

13   corporation that was organized for the purpose of holding legal title to the real property of the

14   Diocese. Deeds to real property associated with parishes explicitly recite that title is held by

15   the Bishop as trustee for the parish. Kennedy Decl., Ex. 14 at 7-10.

16            b.    The Diocese of Baker (the Roman Catholic Diocese for the

17   territory east of the crest of the Cascades in Oregon) is organized as an Oregon nonprofit

18   corporation. It is not a corporation sole. Each of its parishes is also organized as an Oregon

19   nonprofit corporation. Real property associated with each parish is titled in the name of the

20   parish corporation. Kennedy Decl., Ex. 2 at 4-6; Fletcher Decl., Exs. 6, 7, 8.

21            6.    Numerous authoritative and reliable treatises are available to dioceses

22   that explain alternative civil law structures that can be used to conduct their secular activities,

23   including Church Property, Church Finances, and Church-Related Corporations by Dean

24   Cafardi and Cardinal Maida, and Robert T. Kennedy's commentary to Book V contained in

25   the New Commentary on the Code of Canon Law commissioned by the Canon Law Society

26   of America and published in 2000. Kennedy Decl., Ex. 14 at 5-6, 14-15, 32-33; Exs. 15, 16.

**Page 4 of 42 -**   PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
           RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
           DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1

**B.    THE OREGON SECRETARY OF STATE, CORPORATION
DIVISION, LISTS 304 CORPORATIONS SOLE**

2

3          7.     Under Oregon law, a corporation sole must include the words

4    "corporation sole" in its name. ORS 65.067(2). A search of the Business Registry database

5    of the Oregon Secretary of State, Corporation Division (located on the Oregon Secretary of

6    State's official web site) for corporations registered in Oregon that include the words

7    "corporation sole" in their name discloses 304 such corporations. Fletcher Decl., ¶ 2, Ex. 1.

8          8.     Several of the Articles of Incorporation of corporations sole filed with

9    the Corporation Division of the Oregon Secretary of State reject manmade law and deny the

10   authority of civil courts to adjudicate their disputes with third parties. Fletcher Decl., Exs. 2,

11   3, 4.

12

**C.    DEBTOR'S PARISHES HAVE NO CIVIL LAW EXISTENCE
INDEPENDENT FROM DEBTOR**

13

14         9.     In their book, Dean Cafardi and Cardinal Maida acknowledge: "The

15   civil law status of dioceses and parishes depends on what legal structure is assigned to them

16   by action of the church acting in accordance with the applicable civil law." Kennedy Decl.,

17   Ex. 15 at 11. In his deposition, Dean Cafardi explains that "the public juridic person is not a

18   civil law entity, but it can choose to have different civil law structures to carry out different

19   parts of its mission." Kennedy Decl., Ex. 14 at 18.

20         10.    With the exception of The St. Elizabeth Parish of Portland, Oregon,

21   none of Debtor's parishes are incorporated. Kennedy Decl., Ex. 13 at 18, 19; Declaration of

22   Patricia L. Miller in Support of Plaintiff's Reply to Responses to Tort Claimants Committee's

23   Restated Second Motion For Partial Summary Judgment And Debtor's Cross Motion For

24   Partial Summary Judgment, ¶ 3.

25         11.    Debtor holds title to all parish real property, except the real property

26   owned by The St. Elizabeth Parish of Portland, Oregon. Kennedy Decl., Ex. 1 at 2; Conway

**Page 5 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Decl., Ex. 2 at 1, Ex. 3 at 5.

2            12.    Debtor's Director of Financial Services is a signatory on all parish

3    bank accounts. Conway Decl., Ex. 4 at 14-15; Declaration of Howard M. Levine dated

4    October 19, 2005 ("Levine Decl."), Ex. 4 at 5.

5            13.    All of Debtor's parishes are required to participate in Debtor's

6    Archdiocesan Loan and Investment Program ("ALIP"). All parishes are required to invest

7    any financial resources in excess of three months' operating requirements into Debtor's

8    ALIP. Parishes are not allowed to borrow funds from any source other than the ALIP

9    without the prior approval of the Archbishop. All withdrawals (or cumulative withdrawals

10    within a short period of time) from the ALIP in excess of $10,000 require the prior approval

11    of the Archbishop. Kennedy Decl., Ex. 3 at 3, 4, 13; Fletcher Decl., Ex. 14 at 8, 15, 16.

12            14.    Each parish must pay assessments to Debtor. The assessments are

13    established by the Archbishop. Levine Decl., Ex. 4 at 2, 4; Kennedy Decl., Ex. 13 at 21-24;

14    Fletcher Decl., Ex. 14 at 17.

15            15.    Debtor establishes the policies and procedures to be followed by its

16    parishes with respect to financial and accounting matters. Fletcher Decl., Ex. 14 at 1, 6-9,

17    13, 15-16, 18-20 and 31.

18            16.    Each parish must annually submit to Debtor (on standard forms

19    provided by Debtor) a parish balance sheet, statement of revenues and expenditures, budget

20    versus actual comparison, financial forecast and budget. Each year each parish and school

21    must complete and submit to Debtor a "Parish Annual Report" or "School Annual Report."

22    Fletcher Decl., Ex. 14 at 31.

23            17.    Parishes have no authority to hire, supervise or terminate their pastors,

24    yet pastors are "empowered to act on behalf of the parish in external and internal form."

25    Kennedy Decl., Ex. 13 at 10-15; Conway Decl., Ex. 21 at 6. The Archbishop is responsible

26    for the placement, transfer and supervision of pastors. Conway Decl., Ex. 4 at 3, 4; Ex. 5 at

**Page 6 of 42 -**    PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
                RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
                DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    4-9; Ex. 21 at 6.  The Archbishop also appoints assistant pastors, deacons and lay

2    administrators.  Levine Decl., Ex. 4 at 4.

3            18.    The Archbishop has final authority to suppress, merge or erect

4    parishes.  Conway Decl., Ex. 4 at 10, 11; Ex. 19 at 2.  Dean Cafardi testified that over 100

5    parishes in the Diocese of Pittsburgh were suppressed by the Bishop of that diocese in the

6    late 1980's.  Kennedy Decl., Ex. 14 at 43, 44.

7            19.    In recent pleadings, counsel for Debtor have admitted that parishes are

8    not separate secular legal entities.  Fletcher Decl., Exs. 12, 13.

9            20.    For example, in its Answer filed in *D.J., R.H., T.J. and S.S. v. The*

10    *Archdiocese of Portland in Oregon, et al.*, Case No. 0008-07885 (Multnomah Cty. Cir. Ct.

11    2001), Debtor stated:

12        "The Archdiocese admits that the Roman Catholic Archbishop
         of Portland in Oregon and successors, a corporation sole, is a
13       corporation.  The Archdiocese further admits that the Church
         of St. Michael The Archangel is a parish of the Archdiocese
14       under the Canon Law of the Roman Catholic Church, which
         Canon Law (church law) governs the duties, and obligations
15       and relationships within the Archdiocese of Portland, but that
         the parish is not a separate secular legal entity."

16

17    Fletcher Decl., Ex. 12 at 1.

18            21.    In *Phelan v. Roman Catholic Archbishop of Portland in Oregon and*

19    *Successors, et al.*, Case No. 02 CV 0191 (Josephine Cty. Cir. Ct. 2003), Debtor stated:

20        "In its answer to plaintiff's Second Amended Complaint,
         defendants the Roman Catholic Archbishop of Portland in
21       Oregon and Successors, a corporation sole, dba Archdiocese of
         Portland in Oregon and <u>also dba St. Anne's Catholic</u>
22       <u>Church/School</u>, hereafter referred to as the 'Archdiocese'
         admits, denies and alleges as follows:

23
       "1. The Archdiocese admits to employing plaintiff as an
24       administrative secretary at St. Anne's Catholic School that
         operates in Josephine County, Oregon . . . ."

25

26    Fletcher Decl., Ex. 13 (emphasis added).

**Page 7 of 42 -**    PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
                 RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
                 DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    **III.    ARGUMENT**

2              Debtor claims this Court must defer to the internal regulations of the Roman

3    Catholic Church in deciding this adversary proceeding.  For the reasons detailed below,

4    Debtor has built its theory on a strained and illogical reading of Oregon law, an overly

5    expansive reading of First Amendment cases, and a single, unpersuasive case involving the

6    Religious Freedom Restoration Act ("RFRA"), which is not controlling in this Circuit.

7              The central fallacy in Debtor's argument is the fanciful notion that the

8    Constitution subjugates the legal obligations and choices of a religious organization to that

9    organization's religious beliefs.  In the United States, no religious organization or individual

10   is permitted to be "a law unto itself." *Smith*, 494 U.S. at 885 (quoting *Reynolds*, 98 U.S. at

11   167).

12             Debtor deliberately and freely chose its civil law structure and its form of real

13   property ownership out of a range of organizational options.  It may not now reverse those

14   recorded actions by invoking its internal ecclesiology.  Moreover, Debtor successfully

15   asserted in prior litigation that it is a unitary entity.  There is no impediment to this Court's

16   application of neutral, generally applicable corporate, property and bankruptcy law to the

17   structure Debtor chose in the exercise of its rights under Oregon law, the First Amendment,

18   and the Fourteenth Amendment.

19        **A.    DEBTOR, INCLUDING ITS PARISHES AND SCHOOLS, ARE ONE
                  CIVIL LAW ENTITY**
20

21             **1.    THERE IS NO MATERIAL FACT IN DISPUTE AND,
                        THEREFORE, SUMMARY JUDGMENT IS APPROPRIATE**

22             The issue before this Court is whether Debtor's parishes and schools have a

23   civil law existence separate and apart from Debtor such that they can sue or be sued pursuant

24   to Fed. R. Civ. P. 17.  The issue is not whether they are recognized as separate ecclesiastical

25   entities by the internal rules of a religious organization.  There is no dispute regarding any

26

**Page 8 of 42 -**   PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
                      RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
                      DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | material fact and, therefore, summary judgment is appropriate.[2]

2 | **2.    DEBTOR'S ELECTION OF A CORPORATION SOLE**
**ORGANIZATIONAL STRUCTURE AND ITS DECISION NOT**
3 | **TO SEPARATELY INCORPORATE THE PARISHES LED TO**
**THE CREATION OF A UNITARY PROPERTY HOLDER IN**
4 | **THE ARCHDIOCESE**

5 | The Committee asks that this Court give legal effect to the civil law structure

6 | chosen by Debtor to conduct its secular affairs. That civil law structure is a single

7 | corporation sole. The position of Debtor in response is unclear. It does not argue that

8 | parishes (or schools) are separate civil law entities. Debtor argues only that they are separate

9 | enough to be beneficiaries of a trust.

10 | Unsurprisingly, Debtor cannot cite a single case in support of its position.

11 | That is because the cases reach the opposite conclusion. All reported cases hold that parishes

12 | that are not separately incorporated are a part of the diocese's corporate structure. *F.E.L.*

13 | *Publications, Ltd. v. Catholic Bishop of Chicago*, 754 F.2d 216 (7th Cir. 1985); *EEOC v.*

14 | *St. Francis Xavier Parochial School*, 77 F.Supp. 2d 71 (D.D.C. 1999), *aff'd,* 254 F.3d 315

15 | (2000 WL 1584578) (D.C. Cir. 2000). In *F.E.L.*, the court unequivocally held that the

16 | unincorporated parishes within the Archdiocese of Chicago were not separate legal entities,

17 | but were "subsumed under" the corporation sole. 754 F.2d at 221. In *St. Francis Xavier*, the

18 | court held that an unincorporated parish is a division of the Washington, D.C. Archdiocese (a

19 | corporation sole) and lacks "<u>any</u> independently recognized legal status." 77 F.Supp. 2d at 79

20 | (emphasis added).[3]

21 |

22 | [2] The Committee and Debtor agree that the issue of whether the parishes and Debtor are a
single entity is appropriate for summary judgment. Debtor's Cross-Motion for Summary
23 | Judgment issue #7; Committee's Second Restated Motion for Summary Judgment.

24 | [3] The brief filed on behalf of the parishes and school on appeal clearly presents the argument
that a parish exists only as part of the corporation sole. Fletcher Decl., Ex. 11. The District
25 | Court's opinion was affirmed by an unpublished decision of the D.C. Circuit Court of
Appeals. *EEOC v. St. Francis Xavier Parochial School*, 254 F.3d 315 (2000 WL 1584578)
26 | (D.C. Cir. 2000).

**Page 9 of 42 -**    PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Rather than relying on civil law authorities,[4] Debtor argues that its beliefs—

2  and not civil law—determine property ownership and corporate relationships. Debtor's

3  reliance is severely misplaced. With all due respect, Debtor's canon law simply does not

4  apply to the question before this Court.

5                   **a.    The Parishes and Schools Do Not Operate as Separate**
                           **Legal Entities From Debtor**
6

7    Debtor suggests that because its parishes and schools are allowed autonomy in

8  their day-to-day operations, they are separate entities. Debtor fails to cite any legal support

9  for its position. The law is to the contrary.

10    To support its argument, Debtor states that its parishes open checking

11  accounts, hire employees, administer payroll, enter into contracts, and have their own names,

12  letterhead and check stock. These facts are entirely consistent with an entity's use of a

13  divisional structure. A division or other subpart of an entity does not gain separate civil law

14  status by operating independently, by using different names, or even by using separate

15  letterhead or check stock.

16             "There are all kinds and breeds of divisions. However, a 'true'
               division might be defined as an organizational unit that acts in
17             all respects like a subsidiary whose stock is held by the parent
               or holding company, differing primarily in that <u>it has no legal</u>
18             <u>existence apart from the parent company</u>."

19  Robert W. Murphy, *Corporate Divisions v. Subsidiaries*, 34 Harvard Business Review 83, 84

20

---

21  [4] The only case Debtor cites relating to the civil law existence of an unincorporated entity is
    not on point. In *Brown v. Webb*, 60 Or. 526 (1912), the Court held that the benevolent
22  association at issue was a *de facto* corporation because it had filed articles of incorporation
    and had conducted itself as a corporation for many years. The fact that its original corporate
23  filing was technically deficient was not sufficient to defeat its corporate status. *Id.* at 529-33.
    In any event, *Brown* is an archaic case. The *de facto* corporation doctrine was abolished with
24  the enactment of the Oregon Business Corporation Act, which recognizes only *de jure*
    corporations. *See Timberline Equipment Co., Inc. v. Davenport*, 267 Or. 64, 66 (1973). The
25  abolition of *de facto* corporations evidences Oregon's public policy in favor of granting the
    benefits of corporate status only to entities that have been properly incorporated. *See id.*
26  (quoting Comment to Model Business Corporation Act).

**Page 10 of 42 -** PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
         RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
         DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    (1956) (emphasis added) (Fletcher Decl., Ex. 15 at 2. A division or subpart of a corporation

2    may have significant autonomy and may act as if it is a separate entity. However, the law

3    does not convert the division into a separate civil law entity, independent of its parent.

4            This is illustrated by *In re Convertible Rowing Exerciser Patent Litigation*,

5    817 F.Supp. 434 (D. Del. 1993), which involved a subdivision with far more independence

6    than the parishes are permitted in this case. The court analyzed the relationship between

7    Columbia Manufacturing Company ("Columbia"), an unincorporated division, and its parent,

8    MTD Products, Inc. ("MTD"). The Court noted that Columbia was a highly autonomous

9    operation that ran its own business. *Id.* at 441. Columbia operated independently under a

10   separate name, maintained separate offices, maintained a separate bank account, paid its own

11   officers and employees, utilized its own independently-selected legal counsel, maintained its

12   own headquarters, and operated its own purchasing, sales, design and engineering functions.

13   *Id.* at 436, 441. Nevertheless, the court recognized that Columbia was not a separate legal

14   entity. It was merely a division of MTD. *Id.; see also United States of America v. BCCI*

15   *Holdings*, 833 F.Supp. 32, 38-39 (1993) (citing *Sokoloff v. National City Bank of New York*,

16   130 Misc. 66 (Sup. Ct. N.Y. Cty. 1927), for the proposition that each branch of a bank is a

17   "separate business entity, with separate books and in many other respects the branches are

18   considered separate corporate entities and as distinct from one another as any other bank.

19   Nevertheless, when considered with relation to the parent branch, they are not independent

20   agencies . . .); *Schiavone v. Fortune, aka Time Incorporated*, 477 U.S. 21, 22-23 (1986)

21   (noting that "Fortune" is merely an internal division of Time, Incorporated).

22           Debtor's argument further ignores the undisputed fact that parishes are not

23   independent of Debtor. Debtor owns and controls the parishes and schools. Only the

24   Archbishop has authority to erect, merge and suppress a parish. The pastor is the

25   administrator of the parish. Parishes have no authority to hire, supervise or terminate their

26   pastors. The Archbishop is responsible for placement and supervision of pastors. Debtor's

**Page 11 of 42 -** PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Director of Financial Affairs is a signatory on all parish checking accounts. All parishes are

2   required to invest any financial resources in excess of three months' operating requirements

3   into the Archdiocesan Loan and Investment Program. Any withdrawals, or accumulation of

4   withdrawals within a short period of time in excess of $10,000, require the Archbishop's (or

5   his designee's) approval. All parishes must pay assessments to Debtor. The assessments are

6   established by the Archbishop. Debtor establishes the financial and accounting policies and

7   procedures that the parishes must follow. Factual Supplement, *supra*, at 6-7.

8          Consequently, although the parishes have some autonomy with respect to their

9   day-to-day operations, they operate as a part of, and not independent from, Debtor. Just like

10   parishes in Chicago and Washington, D.C., Debtor's parishes are part of its civil law

11   structure and, therefore, cannot have any separate legal existence. *See F.E.L.* and *St. Francis*

12   *Xavier, supra.*

### b. Debtor Has Admitted Its Parishes Cannot be Separately Sued

15          Debtor contends that its parishes can sue, and be sued, because some tort

16   claimants have named parishes in their suits against Debtor. Yet, not one of the suits Debtor

17   identifies as against the parishes was against the parish alone.[5] Rather, they are recent suits

18   that name the parishes in addition to the Debtor to defend against Debtor's new-found

19   strategy of claiming that the parishes are separate entities with separate property, but that

20   they have no liability. More to the point, there is no showing that (a) any parish has ever

21   initiated a lawsuit on its own; (b) Debtor has ever filed suit in the name of any parish alone;

22   or (c) Debtor or any parish has ever defended any case on the basis that a parish is a different

23   civil law entity from Debtor. To the contrary, Debtor has always advocated in civil courts

24   that its parishes have no separate legal existence apart from that of Debtor.

25

---

26   [5] Debtor claims 25 lawsuits have named parishes as defendants. Debtor fails to mention that a significant number of these cases name parishes as assumed business names of Debtor.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    Debtor regularly has admitted that its parishes are nothing more than assumed

2 business names, and that they are not separate legal entities.  As recently as a few months

3 before the bankruptcy filing, Debtor admitted that St. Anne's Catholic Church/School was an

4 assumed business name for the Roman Catholic Archbishop of Portland in Oregon, and

5 Successors, a corporation sole.  Debtor further admitted that the plaintiff in that proceeding

6 (an administrative secretary at the school) was an employee of Debtor.  Fletcher Decl.,

7 Ex. 13 at 1.  In another case, Debtor expressly admitted that "the parish is not a separate

8 secular legal entity."  Debtor stated:

9      "The Archdiocese further admits that the Church of St. Michael
       the Archangel is a parish of the Archdiocese under the Canon
10     law of the Roman Catholic Church, which Canon law (church
       law) governs the duties, and obligations and relationships
11     within the Archdiocese of Portland, but that the parish is not a
       separate secular legal entity."

12

13 Fletcher Decl., Ex. 12 at 1 (emphasis added).

14    **B.    JUDICIAL ESTOPPEL APPLIES**

15    The purpose of judicial estoppel is to prevent a party from successfully

16 maintaining a particular factual or legal position and then asserting a contrary position in a

17 later proceeding as it best suits the party to do so.  *Hamilton v. State Farm Fire & Casualty*,

18 270 F.3d 778, 782-84 (9th Cir. 2001).

19    The application of judicial estoppel in this case is required.  Debtor has

20 consistently and repeatedly taken the position in civil courts that its parishes and schools are

21 not separate entities from Debtor.  Debtor, which now finds its previous arrangements

22 inconvenient, claims before this Court that it is entitled to reverse itself and have this Court

23 rule that they are separate entities.  This is precisely the type of double talk that the judicial

24 estoppel doctrine is designed to prevent.  *Id.*

25

26

**Page 13 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    **1.    THIS COURT'S POWERS ARE NOT EXPANDED BY**
     **APPLICATION OF JUDICIAL ESTOPPEL**

2

3         Judicial estoppel is a generally applicable, neutral principal of law, which

4    does not expand this Court's powers. The Committee is seeking the application of judicial

5    estoppel to prevent Debtor from taking inconsistent positions in civil courts of law.

6    **2.    DEBTOR MISCONSTRUES THE ELEMENTS OF JUDICIAL**
     **ESTOPPEL**

7

8         Debtor identifies some of the factors that courts may use in examining

9    whether to apply judicial estoppel. However, instead of explaining that courts may use any

10   one or more of those factors, Debtor implies that all its enumerated factors must be present.

11   Debtor is wrong. There is no precise definition of the doctrine, nor checklist of factors to be

12   met, for its application. *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (there are no

13   inflexible prerequisites, nor is there any exhaustive formula for determining the application

14   of judicial estoppel); *In re The Catholic Bishop of Spokane*, 329 B.R. at 318.

15   **3.    DEBTOR'S PRIOR CIVIL LAW POSITIONS ARE BINDING IN**
     **THIS CASE**

16

17        Debtor contends judicial estoppel should not apply because (a) the average

18   age of the prior cases is 34 years old, and (b) Debtor did not previously argue the position it

19   is taking in this case.

20        Debtor has it backwards. The fact that there are cases dating back 73 years

21   shows that Debtor has been enjoying for many years the advantages it sought when it

22   established single entity status. Given Debtor's long history of benefiting from its status as a

23   single civil law entity, it should not be allowed to put forward a contrary legal position here.

24        Second, Debtor contends it is not bound by its prior position because it did not

25   previously assert that parishes and schools are separate "juridic persons" under the internal

26   rules of the church. This argument is disingenuous and not on point. The issue before this

**Page 14 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1   Court is the status of the parishes and schools for civil law purposes—they are either separate

2   entities or they are not, and that issue is determined by neutral, generally applicable Oregon

3   property law and federal bankruptcy law. Its arguments claiming its religious beliefs have

4   the power to reverse its prior civil law choices are not on point. What matters is that Debtor

5   is asserting in this civil proceeding that its parishes and schools are separate and distinct from

6   Debtor while in prior civil proceedings Debtor consistently and successfully asserted that

7   they were not. Judicial estoppel prevents such conduct. *New Hampshire*, 532 U.S. at 749-

8   51. The fact that Debtor now relies on novel arguments does not excuse its about-face.

9          Our opening brief relied on *Thorne, Mattson* and *Central Catholic*. Debtor's

10  attempt to distinguish or dismiss these cases is unpersuasive.

                        **a.    *Thorne***

12         The issue in *Thorne* was whether Debtor was an employer within the meaning

13  of certain unemployment laws. The court determined that the plaintiff (Debtor) was an

14  employer of the school personnel but qualified for an exclusion from the unemployment

15  compensation tax rules under ORS 657.072(1)(a)(A). Debtor asserted that it qualified for the

16  exemption because the schools were part of the "church." The "church" referenced by

17  Debtor was not just the worldwide Catholic Church as is now being suggested by Debtor, but

18  was specifically Debtor as a corporate law entity. Debtor stated: "[t]he parochial schools, <u>not</u>

19  <u>being separately incorporated</u>, are clearly <u>not legal entities separate</u> from the church itself."

20  Conway Decl., Ex. 6 at 5 (emphasis added). In addition, Debtor carefully explained that:

21             "Plaintiff [Debtor] also meets the requirements of control in
               that the parochial schools of the Archdiocese are operated,
22             supervised, controlled or principally supported by the Catholic
               Church <u>represented by the Archdiocese here in Western</u>
23             <u>Oregon.</u> These schools <u>are not separately incorporated</u> and the
               Catholic Church has legal control over them."
24

25  *Id.* at 6 (emphasis added). The referee adopted Debtor's position that its schools were part of

26  Debtor's corporate structure and found:

**Page 15 of 42 -** PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    "the parochial schools are <u>so intertwined within plaintiff's</u>
     <u>corporate structure as to be an inseparable part thereof.</u>  Clearly
2    plaintiff is a church within the meaning of
     ORS 657.072(1)(a)(A) and Oregon Administrative Rules,
3    Chapter 471-30-090(1)(a) and it cannot be found that its
     parochial schools are any less so."
4

5    *Id.* at 8 (emphasis added).  The referee did not find, as Debtor now tries to suggest, that the

6    schools were not part of plaintiff's corporate organization.  Rather, the referee made an

7    additional alternative finding that <u>even if</u> they were not part of the corporate structure, they

8    could be exempt under ORS 657.672(1)(a)(B).  However, the principal finding by the referee

9    was that they were a part of Debtor's corporate structure and, therefore, qualified as a church

10   under ORS 657.672(1)(a)(A).  Debtor took the position that its parishes and schools were

11   part of its corporate entity.  That position was accepted and was the primary basis upon

12   which Debtor prevailed.

13           Debtor further emphasized its single corporate entity position in its appeal

14   brief in *Thorne*.  Debtor argued that there is a "distinction between church-operated

15   institutions <u>which are separately incorporated and those which are not.</u>"  Conway Decl., Ex. 7

16   at 7 (emphasis added).  Debtor argued that church-operated institutions that are not separately

17   incorporated (its parishes and schools) were exempt from unemployment taxation.  Debtor

18   unequivocally reaffirmed its position on its civil law structure when it stated that its parish

19   schools "<u>are one organization within the legal entity of the corporate structure of the Portland</u>

20   <u>Archdiocese.</u>"  *Id.* at 5 (emphasis added).

21           Debtor also cited with approval the referee's conclusion that "the parochial

22   schools are so intertwined within the plaintiff's corporate structure as to be an inseparable

23   part thereof."  *Id.* at 11.

24           **b.    *Mattson***

25           Debtor seeks to diminish the applicability of *Mattson* on the grounds that the

26   Archdiocese did not prevail on its claim.  Yet, Debtor omits to tell this Court that it did

**Page 16 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  prevail in persuading the referee and courts that its parishes and schools are part of the

2  Archdiocese. Judicial estoppel does not require that Debtor win the case. It only requires

3  that Debtor succeeded in persuading the court to accept that party's position. *New*

4  *Hampshire,* 532 U.S. at 750; *Hamilton,* 270 F.3d at 783.

5          Just as it did in *Thorne,* Debtor clearly took the position in *Mattson* that it is a

6  single corporate entity with its parishes and schools. In the agreed stipulated findings of fact,

7  Debtor stated that it was "made up of local parishes." Conway Decl., Ex. 8 at 2. Debtor

8  stated that it "operates elementary and secondary schools through [its] local parishes" and

9  "those schools have no separate legal existence apart from that of [Debtor]." *Id.* at 3, 8. In

10  its brief to the Oregon Supreme Court and the U.S. Supreme Court, Debtor continued to state

11  that it runs the schools through its parishes and that they "have no separate legal existence

12  apart from that of the [Debtor]." Conway Decl., Ex. 10 at 3; Ex. 4 at 3. It is more than

13  disingenuous in this proceeding, where Debtor's ownership of the parishes may increase its

14  financial liability, to argue the opposite.

### c.    *Central Catholic*

16          Debtor broadly states that the positions it advocated in *Central Catholic* are

17  irrelevant. Debtor fails to explain why that is so. Debtor took the position in *Central*

18  *Catholic* that it owns and operates its parishes and schools. It now advocates the opposite.

19  The court relied on Debtor's position in reaching its conclusion. *Central Catholic Educ.*

20  *Ass'n v. Archdiocese of Portland,* 323 Or. 238, 240, 251-52 (1996).

### C.    THE COMMITTEE IS NOT SEEKING TO CHANGE CHURCH POLITY

23          Debtor claims that the Committee is asking this Court to rearrange church

24  polity by asking the Court to "ignore the separateness of the parishes and combine them with

25  Debtor." Debtor's Response to Tort Claimants Committee's Second Motion for Partial

26  Summary Judgment ("Debtor's Resp.") at 1. The Committee is not even asking this Court to

**Page 17 of 42 -**   PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1   interpret religious beliefs regarding internal relationships, much less rearrange those

2   relationships.  Rather, the Committee is simply asking this Court to recognize and enforce the

3   civil law structure voluntarily selected by Debtor—which is the very same structure that

4   Debtor itself has successfully asserted in civil court proceedings numerous times in the past.

5   **D.     CANON LAW IS NOT THE LAW OF OREGON**

6           According to Debtor, Oregon's corporation sole statute "imports" religious

7   law into the governance of a corporation sole.  From this premise, Debtor reasons that canon

8   law governs both the identity of parishes and the secular relations between itself and third

9   parties.  Debtor's argument leads to the absurd conclusion that canon law governs title to

10  property.  The implications of this argument are staggering.  If Debtor is correct, then the

11  doctrinal rules of any corporation sole govern its secular activities and relationships with

12  third parties, such as creditors, property purchasers, and property neighbors, and are binding

13  on courts that adjudicate disputes between those outsiders and the corporation sole.

14          Oregon rules of statutory construction reject such an irrational result.  Under

15  Oregon law, the court's task in interpreting a statute is to discern the intent of the legislature

16  by examining both the text and context of the statute in accordance with relevant rules of

17  construction.  *PGE v. Bureau of Labor & Industries*, 317 Or. 606, 610-11 (1993).  Debtor's

18  novel construction of ORS 65.067 violates at least three such rules:  (1) The statutory duty

19  "not to insert what has been omitted, or to omit what has been inserted," ORS 174.010;

20  (2) the principle that "words of common usage typically should be given their plain, natural,

21  and ordinary meaning," *PGE*, 317 Or. at 611; and (3) the maxim that "when one plausible

22  construction of a statute is constitutional and another plausible construction of a statute is

23  unconstitutional, courts will assume that the legislature intended the constitutional meaning."

24  *State v. Kitzman*, 323 Or. 589, 602 (1996).

25

26

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1     **1.     ORS 65.067 AUTHORIZES THE FORMATION OF A CORPORATION SOLE, BUT DOES NOT MANDATE ITS**

2              **INTERNAL GOVERNANCE OR ITS RELATIONSHIP WITH OTHER ENTITIES**

3

4     The best place to begin is with the text of ORS 65.067. The statute provides as

5   follows:

6          "(1) Any individual may, in conformity with the constitution, canons, rules, regulations and disciplines of any church or

7          religious denomination, form a corporation hereunder to be a corporation sole.  Such corporation shall be a form of religious

8          corporation and will differ from other such corporations organized hereunder only in that it shall have no board of

9          directors, need not have officers and shall be managed by a single director who shall be the individual constituting the

10        corporation and its incorporator or the successor of the incorporator.

11

12        "(2) The name of such corporation shall be the same as the office within the church or religious denomination held by the

13        incorporator, and shall be followed by the words 'and successors, a corporation sole.'

14        "(3) All of the provisions of ORS 65.044 to 65.067 shall apply to such corporation.  If the corporation has no officers, the

15        director may perform any act required by or permitted by an officer in the same manner and with the same effect as though

16        such act were performed by one or more officers of the corporation."

17

18   The 1872 statute in effect when Debtor first incorporated similarly provided that "[a]ny

19   person being the bishop . . . of any church . . . , may in conformity with the . . . canons . . . of

20   such church . . . , become a corporation sole for religious and educational purposes."  Or.

21   Gen'l Laws at 127 § 9.

22     Judge Williams of the United States Bankruptcy Court for the Eastern District

23   of Washington recently examined the Washington corporation sole statute, which is quite

24   similar to Oregon's, and provides that a bishop or other leader of a church "may, in

25   conformity with the . . . canons, rules, regulations or discipline of such church . . . , become a

26   corporation sole."  R.C.W. 24.12.010.  She concluded:

**Page 19 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1  "A common sense reading of the statute is that, assuming that
   the internal rules of the religious organization so allow, a duly
2  appointed Bishop or other religious leader may incorporate as a
   corporation sole under Washington law. Contrary to debtor's
3  contentions, it does not state that by exercising the right to
   become a corporate sole, the internal rules of the religious
4  organization become part of the laws of the State . . . and
   thereafter govern the secular activities in which the corporate
5  sole engages. 'We need not leave our common sense at the
   door step when we interpret a statute . . . .'"

6

7  *In re The Catholic Bishop of Spokane*, 329 B.R. at 326 (Bankr. E.D. Wash. 2005) (quoting

8  *Price Waterhouse v. Hopkins,* 490 U.S. 228, 241 (1989)).

9         Like the Washington law, ORS 65.047 is nothing more than a corporate

10  formation statute. It authorizes a religious organization to choose to incorporate as a

11  corporation sole. There is no requirement for the organization to choose this form. Nor does

12  the statute codify by reference a religious organization's beliefs. Rather, it offers a ready-

13  made legal structure if the religious organization chooses to adopt it. Neither the language

14  nor history of ORS 65.067 indicates that the legislature intended to import religious doctrine

15  into the law of Oregon and make it binding upon third parties. Debtor's theory violates the

16  most basic rules of statutory construction because it "inserts what has been omitted" and

17  ignores the plain text of ORS 65.067. *PGE*, 317 Or. at 611. It also defies common sense.

18       **2.**     **OTHER PROVISIONS OF OREGON LAW PROVIDE
    RELIGIOUS CORPORATIONS WITH THE FREEDOM TO
19  GOVERN THEIR INTERNAL AFFAIRS IN ACCORDANCE
    WITH DOCTRINE, BUT THEY DO NOT GRANT CIVIL LAW
20  STATUS TO RELIGIOUS DOCTRINE**

21         In an effort to provide contextual support for its interpretation of ORS 65.067,

22  Debtor cites other provisions of the Oregon Nonprofit Corporation Act and the 1872

23  religious incorporation statutes. These laws do not support the claim that Oregon law

24  imports religious doctrine and makes it relevant in disputes involving third parties.

25         ORS 65.042. This statute reiterates the truism that if a requirement of the

26  Nonprofit Corporation Act is inconsistent with the doctrine or practice of a religious

**Page 20 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1   corporation, the doctrine or practice trumps the statute to the extent required under the First

2   Amendment and its state constitutional analogue. ORS 65.042 does not import religious law

3   into the law of Oregon. It merely confirms that the state and federal constitution take

4   precedence over statutory enactments. Here, Debtor has not identified any requirement of

5   the Oregon Nonprofit Corporation Act that violates the First Amendment or the Oregon state

6   constitution.

7           ORS 65.357(2)(d) and 65.377(2)(c). These statutes provide that a director or

8   officer of a religious corporation will not violate a fiduciary duty by relying on information

9   from or the opinions of a religious leader, if the director or officer believes that the leader's

10  position justifies reliance and confidence and that the leader is "reliable and competent in the

11  matters presented." These provisions have no relevance in a dispute involving third parties

12  because they would only be implicated in a case involving a director's or officer's fiduciary

13  duties to the nonprofit corporation itself or its members.

14          Church Property-Holding Statute. Oregon's 1872 statute authorizing the

15  creation of corporations for the holding of church property, Or. Gen'l Laws at 135-36 §§ 2-4,

16  does not support Debtor's theory that Oregon law "imports" religious law; in fact, its text

17  belies any such intention on the part of the legislature. Similar to the corporation sole statute,

18  this law permits church leaders "chosen, elected, or appointed, in accordance with the usages

19  and regulations" of their church to choose to become a religious, property-holding

20  corporation. *Id.* at § 2. In a clause that Debtor tellingly neglected to quote, the statute further

21  provides that such a corporation may "sell, grant, . . . or otherwise dispose of [its property] at

22  pleasure." *Id.* at § 4. This statute did no more and no less than make it possible for a

23  religious organization to hold property like any other, with unfettered powers of disposition.

24  It does not permit church property holders to be laws unto themselves. *Smith*, 494 U.S. at

25  885 (quoting *Reynolds v. United States*, 98 U.S. 145, 167 (1897)); *In re Catholic Bishop of*

26  *Spokane*, 329 B.R. at 327 ("the general purpose of such statutes was to provide a device by

**Page 21 of 42** - PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1   which a religious organization could hold and acquire property as a separate perpetual legal

2   entity. . . . Nothing in the language of the statute indicates it was intended to graft

3   ecclesiastical doctrine onto the laws of the state or establish a trust for the benefit of any

4   particular religious group.").

5                **3.    DEBTOR'S INTERPRETATION OF ORS 65.067 VIOLATES**

6                        **THE UNITED STATES AND OREGON CONSTITUTIONS**

7          Debtor's construction of ORS 65.067 is also patently unconstitutional under

8   the First, Fifth and Fourteenth Amendments to the United States Constitution, as well as the

9   equivalent provisions of the Oregon Constitution.

10                       **a.    Establishment Clause**

11          The Establishment Clause of the First Amendment prevents government from

12   enacting laws that "aid one religion, aid all religions, or prefer one religion over another."

13   *School Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 216 (1963), *quoting Everson v.*

14   *Bd. of Educ.*, 330 U.S. 1, 15 (1947). Debtor's theory that the canons of a corporation sole are

15   binding on third parties because they are "imported" into state law under ORS 65.067 would

16   result in an establishment of religion in two respects.

17          First, Debtor's construction of ORS 65.067 grants an advantage to religion—

18   the importation of its canons into state law and the privilege of receiving the benefits of

19   incorporation without taking the measures required under state law—that no individual or

20   secular entity would ever enjoy. A business corporation that failed to incorporate its

21   divisions could never file for bankruptcy and then claim that its internal operational and

22   accounting policies shielded "division" assets from the claims of creditors. The same

23   principles must govern the bankruptcy of a religious corporation. *See Lemon v. Kurtzman*,

24   403 U.S. 602, 612 (1971); *see also County of Allegheny v. Greater Pittsburgh ACLU*, 492

25   U.S. 573, 592 (1989); *Christian Science Reading Room Jointly Maintained v. City and*

26   *County of San Francisco*, 784 F.2d 1010, 1014 (9th Cir. 1986).

**Page 22 of 42 -** PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
                RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
                DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Second, the Establishment Clause requires government neutrality between

2    religions and between religion and non-religion. *Wallace v. Jaffree*, 472 U.S. 38, 53 (1985).

3    Debtor's creative theory puts hierarchical religious organizations in a privileged position

4    over non-hierarchical ones. Debtor's theory hinges on the phrase "in conformity with . . .

5    canons" found in ORS 65.067. The only provision of the Oregon Nonprofit Corporation Act

6    authorizing incorporation "in conformity with" a religion's canons is the corporation sole

7    statute. Accordingly, congregational churches and other religious groups whose doctrines

8    preclude the corporation sole form must create ordinary nonprofit entities and tailor their

9    articles and bylaws to reflect doctrinal requirements. Debtor's theory would have Oregon

10   permit churches whose doctrines permit incorporation under ORS 65.067 to make internal

11   church regulations controlling in disputes with third parties, while other churches would not

12   have a similar benefit. *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 8 (1989); *Bd. of Educ. of*

13   *Kiryas Joel v. Grumet*, 512 U.S. 687, 696 (1994); *Lemon*, 403 U.S. at 612; *Separation of*

14   *Church & State Comm. v. City of Eugene*, 93 F.3d 617, 619 (9th Cir. 1996). Debtor's theory

15   thus leads to an unconstitutional result, and is, in any event, simply an irrational means of

16   regulating nonprofit corporations.

17   Debtor's theory would fail scrutiny under the Oregon Constitution as well,

18   because it also requires governmental neutrality between religions. *Salem College &*

19   *Academy, Inc. v. Employment Div.*, 298 Or. 471, 489 (1985) (holding that the right to free

20   exercise of religion under the Oregon Constitution does not relieve religious schools from

21   paying payroll taxes pursuant to a general statutory scheme, but that should the state elect to

22   exempt religious schools, then the Constitution would prohibit the state from discriminating

23   among similar religious schools); *see also Meltebeke v. Bureau of Labor & Indus.*, 322 Or.

24   132, 147-48 (1995).

25   **b.    Equal Protection**

26   The Fifth and Fourteenth Amendments to the United States Constitution

**Page 23 of 42 -** PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    respectively prohibit federal and state government from denying similarly situated persons

2    the equal protection of the law.[6]  Certain classifications, like race, are inherently suspect and

3    can only withstand equal protection scrutiny if narrowly tailored to serve a compelling

4    governmental interest.  *See Adarand Constructors v. Pena*, 515 U.S. 200, 224-25 (1995).

5    Classifications according to religious belief receive strict scrutiny as well.  *See Church of*

6    *Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993); *cf. Johnson v. Robison*, 415

7    U.S. 361, 375 n.14 (1974) (noting that strict scrutiny need only be applied to Equal

8    Protection analysis if there is a free exercise violation, i.e., targeting of a religious institution

9    or class of believers).  Under Debtor's theory, Oregon's religious incorporation scheme grants

10   a privilege—the importation of religious canons into state law—only to religious groups that

11   can incorporate under ORS 65.067.  There is no compelling governmental interest, or even a

12   rational basis, for granting such an advantage to some religions but not others.  Debtor's

13   theory similarly fails under the equal protection provision of the Oregon Constitution,

14   pursuant to which classifications on the basis of religious affiliation are suspect and subject

15   to strict scrutiny.  *Hewitt v. State Accident Ins. Fund Corp. (In re Williams)*, 294 Or. 33, 43

16   (1982); *Tanner v. OHSU*, 157 Or. App. 502, 522-23 (1998).

17            In sum, Debtor's construction of ORS 65.067 would so privilege corporations

18   sole in their dealings with third parties that it would result in multiple violations of the

19   federal and state constitutions.  It is difficult to imagine that, beginning in 1872 and

20   continuing through the various rewordings and recodifications of the corporation sole statute,

21   the Oregon legislature intended to give such an unconstitutional advantage to particular

22   religious entities.  Even if the legislature had such an intent, this Court would violate the First

23

24   [6] The Equal Protection Clause of the Fourteenth Amendment is expressly binding upon the
     states.  The Due Process Clause of the Fifth Amendment prohibits the federal government
25   from denying equal protection under the law.  Equal protection analysis under the Fifth and
     Fourteenth Amendments is identical.  *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2
26   (1975).

**Page 24 of 42** -  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
                    RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
                    DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1   and Fifth Amendments by enforcing it. *See Everson v. Board of Education*, 330 U.S. 1, 15

2   (1947) (holding that under Establishment Clause, state or federal government may not "prefer

3   one religion over another"); *Adarand Constructors*, 515 U.S. at 224-25; *Shelley v. Kraemer*,

4   334 U.S. 1, 20-21 (1948) (holding that courts may not enforce racially restrictive covenants).

5   
6   **E.    DEBTOR'S ARTICLES OF INCORPORATION DO NOT "IMPORT" CANON LAW INTO CORPORATE GOVERNANCE, AND THEY CAN NOT MAKE CANON LAW APPLICABLE IN A DISPUTE WITH THIRD PARTIES**
7   

8          Debtor next argues that its articles of incorporation "import" canon law into

9   corporate governance. Debtor's construction of these documents ignores their plain text.

10  Even if its articles embodied the governance principles asserted by Debtor, such provisions

11  would be irrelevant in a dispute with a third party. *See In re Catholic Bishop of Spokane*, 329

12  B.R. at 322.

13         Debtor's articles do not incorporate canon law into corporate governance.

14  Debtor points to seven provisions in the original articles and supplementary articles. Six of

15  these provisions address such corporate capacity issues as Archbishop Blanchet's authority to

16  serve as the corporation sole and the criteria for the appointment of his successors. *See*

17  Debtor's Resp. at 13-14.

18         The remaining provision states that the purpose of the corporation is to

19  provide for worship according to the doctrines and canons of the Roman Catholic Church and

20  to acquire, hold and dispose of church property. The only language that is even remotely

21  relevant to the issues in this case is the provision dealing with the acquisition and disposal of

22  property. It provides that one of the objects of the corporation sole is the "acquiring, holding

23  and disposing of church property for the benefit of the Roman Catholic Church for works of

24  charity and for public worship." Declaration of Thomas W. Stilley dated October 19, 2005

25  ("Stilley Decl."), Ex. 1, at 6. Conspicuously absent from this provision is any requirement

26  that property ownership be determined first and foremost by ecclesiastical law.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1          Even if Debtor's articles actually provided that the corporation sole must be

2    governed in accordance with canon law, such a provision would not turn religious law into

3    the law of the state.  A nonprofit corporation's articles can control any number of internal

4    governance matters.  They can put third parties on notice as to the authority of directors and

5    officers within the corporation to enter into transactions.  But they cannot replace the civil

6    law with an alternative set of rules and norms that are binding on third parties.

7          In considering the implications of Debtor's theory, it is worth noting that there

8    are at least 304 active and inactive corporations sole in Oregon.  Many of them deny the

9    authority of the courts to adjudicate their disputes with third parties, and these views stem

10   from their theologically-based rejection of manmade law, but that does not mean they are not

11   governed by the civil law.  The following examples are instructive:

12        •    Office of Presiding Bishop (Overseer), and Successors, a Corporation
               Sole, Over/For the Meatus Beo.  This corporation sole was formed on
13             April 15, 2005.  Article Five of the Meatus Beo's[7] canons, which have
               been filed with the Oregon Secretary of State, provide that the Meatus
14             Beo "is a manifestation of the Reign of God on Earth and so is free and
               independent of control by any earthly government or institutions . . . ."
15             Article Nine, in turn, provides that

16             "[s]hould any controversy arise with any outside contractor, Natural
               Person, Government Agencies, Business or Corporation doing
17             business with The Meatus Beo it will be settled at a <u>trial by jury</u> under
               original jurisdiction, <u>(not a jury trial).</u>  Said jury must consist of
18             12 <u>members of the community</u> who are Christians of like mind that are
               acquainted with the Overseer.  A Notary Public shall call the members
19             of the petit jury by such method, as the Notary Public deems
               appropriate . . . . If a controversy should arise outside the normal area
20             of operation of The Meatus Beo the controversy will be handled in the
               following manner.  All parties, Companies, Natural Persons,
21             Government agencies and other Business agree that <u>only</u> the <u>positive</u>
               <u>law of the United States of America</u> will be the rule of law . . . . The
22             remedy, which arises from the administrative process is to be entered
               by Federal Tribal Court, Pembina Nation Little Shell Band, a Treaty
23             court under the 1778 and 1863 Treaties between the United States of
               America and the Pembina Nation Little Shell Band."

24

25   _____

[7] According to the documents on file with the Secretary of State, "Meatus Beo" is Latin for
26   "the Pathway to Enlightenment."  Fletcher Decl., Ex. 4 at 18, 25.

**Page 26 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
             RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
             DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Fletcher Decl., Ex. 4 at 12, 14-15 (emphasis in original).

2        •   A.H.O.Y. The Office of the Ambassador Mervin Winston Brown
     (Overseer) and Sucessors [sic], a Corporation Sole. The articles of this
3    administratively dissolved entity state that the only law governing it is
     "Yahvah's Kingdom Covenant Law." They further provide that the
4    exclusive court for the adjudication of any matter "for, against, or
     concerning" the corporation sole is "Yahvah's Kingdom Ecclesiastical
5    Common Law Court."

6    Fletcher Decl., Ex. 3 at 6, 8.

7        •   The Office of Overseer, and Her Successors, a Corporation Sole for
     Convergence Ministries. The articles of incorporation for this active
8    corporation sole state that "the Overseer is accountable only to God."
     The Overseer is expressly granted the power to "[r]esolve any and all
9    disputes in all lawful matters and proceedings whatsoever including
     binding arbitration exclusively, in accordance with the sincerely held
10   spiritual beliefs [sic] of the Overseer, at a location convenient and
     appropriate to the Overseer."

11

12   Fletcher Decl., Ex. 2 at 4, 6.

13          These organizations may believe that they are above the law, but it is settled

14   under the First Amendment that no man is permitted to be "a law unto himself." *Smith*, 494

15   U.S. at 885 (quoting *Reynolds*, 98 U.S. at 167). No secular corporation could use its bylaws

16   to determine its property relationships and its obligations to third parties, and neither can any

17   religious organization.

18       **F.**     **THE FIRST AMENDMENT HAS NO BEARING ON THE ISSUES IN
     THIS ADVERSARY PROCEEDING**
19

20          Debtor argues that its Third and Fifth Affirmative Defenses should not be

21   dismissed because the property issues in this case implicate the so-called "Church Autonomy

22   Doctrine." According to Debtor, the First Amendment's treatment of religion is not limited

23   to the Free Exercise and Establishment Clauses; instead, there is a third "branch" of the First

24   Amendment that gives religious organizations broad-based liberty to avoid the obligations of

25   civil law. Debtor's gloss on the First Amendment fails for three reasons.

26          First, under settled First Amendment jurisprudence, there is no religious

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    defense to neutral, generally applicable laws governing conduct. *Smith*, 494 U.S. at 878-79;

2    *Gillette v. United States*, 401 U.S. 437, 449 (1971); *Cantwell*, 310 U.S. at 304; *Reynolds*, 98

3    U.S. at 167.

4              Second, courts are only disabled from addressing cases involving religious

5    entities where the matter before the court is intrachurch and purely ecclesiastical in nature.

6    *Jones v. Wolf*, 443 U.S. 595, 603 (U.S. 1979); *Presbyterian Church in United States v. Mary*

7    *Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 449 (1969). This case

8    involves only the secular decisions of Debtor.

9              Third, the First Amendment provides no shelter for the religious organization

10   involved in litigation with third parties. *In re Catholic Bishop of Spokane*, 329 B.R. at 325.

11   Debtor has marshaled only a single case, with highly unusual facts, in which a court granted

12   an exception to this rule. *See Bryce v. Episcopal Church in the Diocese of Colorado*, 289

13   F.3d 648 (10th Cir. 2002). Certainly, no court has ever held that the rights of a creditor of a

14   religious organization are governed by the organization's religious beliefs.

15              **1.    THE FIRST AMENDMENT PROVIDES NO REFUGE FOR**
16                      **RELIGIOUS ORGANIZATIONS SEEKING SPECIAL**
                        **TREATMENT UNDER NEUTRAL, GENERALLY**
17                      **APPLICABLE PROPERTY AND BANKRUPTCY LAWS**

18              Despite Debtor's theories to the contrary, religious organizations are not

19   immune from neutral laws of general applicability. While it is true that churches have the

20   right to define their theology and to enforce internally their own tribunal's ecclesiastical

21   determinations, *see, e.g., Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708-09

22   (1976); *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 116

23   (1952); *Watson v. Jones*, 80 U.S. 679, 733-34 (1871), such a right does not extend beyond

24   the internal, ecclesiastical polity. *See In re Catholic Bishop of Spokane*, 329 B.R. at 322-23.

25

26

**Page 28 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
               RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
               DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1

        **a.**    **A Church's Secular Decisions and Conduct are Subject to
Ordinary Principles of Law**

2

3        Debtor would turn the First Amendment on its head, by making canon law the

4 sole arbiter of property ownership. It argues that this Court must defer to canon law on the

5 legal question of the ownership of church property. Under its view, Debtor exists beyond the

6 bounds of settled property law and may itself independently determine what property is

7 available to satisfy each liability it generates. Debtor has the misguided notion that the

8 United States Constitution and the laws of the State of Oregon permit complete and

9 compulsory deference to its religious beliefs for the purpose of determining the ownership of

10 real property. On its theory, this Court may not apply neutral principles of property law

11 because of the existence of canon law.

12        Debtor's remarkable position flies in the face of black letter First Amendment

13 law. Debtor would have this Court turn away from the rule of law and give arbitrary power

14 to the church to decide what legal remedies are available to third parties on an ad hoc basis.

15        The law, however, does not support Debtor's position. "To permit this

16 [position] would be to make the professed doctrines of religious belief superior to the law of

17 the land, and in effect to permit every citizen to become a law unto himself." *Reynolds*, 98

18 U.S. at 167; *see also Smith*, 494 U.S. at 885. While federal and state principles deprive this

19 Court of jurisdiction to hear and decide cases involving solely ecclesiastical, intrachurch

20 disputes, it is required to apply neutral principles of law in all other circumstances, even

21 when the dispute involves a religious institution. Adoption of a contrary rule—that disputes

22 between the Roman Catholic Church and secular creditors over ownership of church property

23 are governed by ecclesiastical law as decided by ecclesiastical authorities—would be a patent

24 violation of the Establishment Clause. Nor can Debtor circumvent this law by characterizing

25 this case as the functional equivalent of an intrachurch ownership dispute. There is no

26 authority for its position that issues of church property ownership are subject to compulsory

**Page 29 of 42 -** PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  deference regardless of the identity of the parties.  The express rationale for compulsory

2  deference is to avoid entanglement in religious disputes between parties inside an

3  organization who have submitted themselves to the rules and authority of the organization.

4  That is not the case here.  Neutral principles of state property law must be applied to this

5  dispute, and their application is fully compatible with—and mandated by—constitutional

6  requirements.  As the Ninth Circuit explained,

7       "[w]hile we recognize that applying any laws to religious
        institutions necessarily interferes with the unfettered autonomy
8       churches would otherwise enjoy, this sort of generalized and
        diffuse concern for church autonomy, without more, does not
9       exempt them from the operation of secular laws. Otherwise,
        churches would be free from all of the secular legal obligations
10      that currently and routinely apply to them."

11  *Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 948 (9th Cir. 1999); *see*

12  *also Bryce*, 289 F.3d at 657; *Bell v. Presbyterian Church (U.S.A.)*, 126 F.3d 328, 331 (4th

13  Cir. 1997) (noting that the threshold question under *Watson* and its progeny is whether a case

14  involves "discipline, faith, internal organization, or ecclesiastical rule, custom or law" or

15  instead is a "purely secular dispute[] between third parties and . . . a religiously affiliated

16  organization"); *Roman Catholic Diocese of Jackson v. Morrison*, 905 So.2d 1213, 1237,

17  1256-59 (Miss. 2005) (courts have jurisdiction over claims that church negligently hired

18  and/or supervised sexually abusive priest, because these claims involve secular conduct and

19  do not require inquiry into church doctrine); *McKelvey v. Pierce*, 173 N.J. 26, 32 (2002).

20       The Court of Appeals for the Ninth Circuit has repeatedly endorsed the

21  principle that generally-applicable civil law governs the secular conduct and decisions of a

22  church.  *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1031 (9th Cir.

23  2004); *Guam v. Guerrero*, 290 F.3d 1210, 1215-16 (9th Cir. 2002).  Moreover, it has held

24  that the First Amendment does not bar a minister's Title VII sexual harassment claim against

25  his or her church employer, where the church offers no religious justification for its conduct.

26  *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 959-64 (9th Cir. 2004), *petition for*

**Page 30 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1  *rehearing en banc denied*, 397 F.3d 790, 793 (9th Cir. 2005) ("[S]uits seeking damages for

2  sexual harassment do not pose a threat to First Amendment rights, and are therefore

3  permitted.") (W. Fletcher, J., concurring); *Bollard*, 196 F.3d at 947-48.

    **b.    This Case Only Implicates Debtor's Secular Conduct and Decisions**

6         In the present case, Debtor exercised its discretion to choose a corporate form

7  with the advice of legal counsel. Debtor voluntarily chose a unitary form. To avoid liability,

8  it now seeks to use its religious beliefs to amend the civil law option it chose.

9         Parish Incorporation. Debtor could have separately incorporated its parishes

10  and ensured that each of these "juridic persons" held legal title to property. In September and

11  October of 2002, the Diocese of Baker in eastern Oregon took precisely this step. It

12  incorporated each of its parishes and missions under the Oregon Nonprofit Corporation Act

13  and transferred title to the real properties in use by each parish to its respective parish

14  corporation. Factual Supplement, *supra*, at 4.

15         By contrast, the evidence of record shows that Debtor has taken affirmative

16  steps to eliminate parish corporations and instead operate as a unitary entity. In the past, at

17  least four of Debtor's parishes were separately incorporated and held title to real property in

18  their own names. *Id.* at 3-4. Today, only one of Debtor's parishes, The St. Elizabeth Parish

19  of Portland, is now separately incorporated. *Id.* at 3. In 1986, Debtor and its then-attorney

20  Robert W. McMenamin considered incorporating all of Debtor's parishes, but they decided

21  not to take this step for secular reasons that would be recognizable to any attorney who gives

22  advice on corporate structure:

23         "We at one time investigated the possibility of separately
           incorporating each parish, but this would be a lengthy and
24         involved matter with attendant additional expense for
           accounting and legal fees. It would be sensible to attempt to
25         limit liability, but under the present structure of the Roman
           Catholic Church it appears that the corporate veil of a separate

26

**Page 31 of 42 -** PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    parish could easily be pierced and that liability would rest with
     the diocese."
2

3    Fletcher Decl., Ex. 10 at 17.

4            <u>Deeds to Real Property</u>.  Even if Debtor elected not to incorporate parishes, it

5    could have recorded deeds that reflect the parishes' alleged interests in real property.

6    Debtor's own conduct demonstrates that Debtor knew how to take this precaution because it

7    holds a few properties "for the benefit of" particular parishes.[8]  Nevertheless, Debtor chose to

8    take unfettered title to virtually all of the properties it now claims to hold in trust for its

9    parishes.

10           Debtor has failed to come forward with any doctrinal justification for its

11   failure to take these basic measures.  This case involves nothing more than the secular

12   decisions of Debtor concerning its secular affairs—and their consequences in a secular

13   dispute with creditors.  As Judge Williams points out,

14           "Religious organizations do not exist on some ethereal plane
             far removed from society. As institutions, they engage in many
15           secular activities. . . . Those secular activities often result in
             conflicts with others. . . . Application of state law to the
16           resolution of those disputes, which necessarily requires a
             determination of the rights of the parties, does not generally
17           impose an impermissible burden on the practice of religion."

18   *In re Catholic Bishop of Spokane*, 329 B.R. at 324.

19           The law in this situation is clear.  Generally-applicable principles of civil law

20   govern the dispute.  *Smith*, 494 U.S. at 878-89.

21           **2.    THE LIMITATION ON COURTS DETERMINING
                     INTRACHURCH, SOLELY ECCLESIASTICAL DISPUTES
22                   HAS NO APPLICATION TO A THIRD-PARTY DISPUTE**

23           Debtor's First Amendment argument further fails because this case involves a

24   dispute between Debtor and third-party creditors.  As the Committee detailed in its Opening

25   ───────────────────────────
     [8] The Committee has excluded these properties from its pending Motion for Summary
26   Judgment on Section 544(a)(3).

**Page 32 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
                     RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
                     DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Brief,[9] courts repeatedly have held that ordinary principles of civil law apply to secular

2    disputes between religious organizations and third parties.  *See* Opening Brief at 7-9 (citing

3    numerous cases); *see also In re Catholic Bishop of Spokane*, 329 B.R. at 321-323.

4             In contrast, Debtor asserts that courts have refused to exercise jurisdiction in

5    disputes between religious organizations and third parties.  On closer scrutiny, Debtor's cases

6    do not support its expansive and misguided view of the First Amendment.

7             The cases on which Debtor relies address issues not relevant here.  They

8    involve intrachurch disputes,[10] internal church discipline or ecclesiastical dialogue,[11]

9    decisions concerning the training or employment of ministers,[12] or claims that required

10   inquiry into religious belief.[13]

11            In many of these cases, the courts emphasized that churches are exempt from

12   the civil law only in narrowly-defined circumstances:  when the issue is solely intrachurch

13   and ecclesiastical.  While they dismissed certain claims on First Amendment grounds, they

14   authorized other theories of liability that were based on the same conduct but did not require

---

15   [9] Tort Claimants Committee's Memorandum in Support of Second Motion for Partial

16   Summary Judgment dated May 5, 2005 (hereafter, "Opening Brief").

17   [10] *See Parish of the Advent v. Protestant Episcopal Diocese of Massachusetts*, 688 N.E.2d
     923 (Mass. 1997).

18
     [11] *See Bryce*, 289 F.3d at 659 (internal ecclesiastical dispute and dialogue); *O'Connor v.*
19   *Diocese of Hawaii*, 885 P.2d 261 (Hawaii 1994) (claims stemming from excommunication
     proceedings); *Cimijotti v. Paulsen*, 230 F.Supp. 39, 41 (N.D. Iowa 1964) (defamation claims
20   stemming from ecclesiastical tribunal testimony).

21   [12] *See Hutchinson v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986); *EEOC v. Southwestern*
     *Baptist Theological Seminary*, 651 F.2d 277, 284-85 (5th Cir. 1981) (faculty and some
22   administrators of seminary deemed "ministers" for Title VII purposes); *Hiles v. Episcopal*
     *Diocese of Massachusetts*, 773 N.E.2d 929 (Mass. 2002); *Turner v. Church of Jesus Christ of*
23   *Latter-Day Saints*, 18 S.W. 3d. 877, 892-93 (Texas App. 2000) (concluding that missionary
     qualified as "minister" for purposes of First Amendment analysis).

24
     [13] *See F.G. v. MacDonell*, 696 A.2d 697, 703 (N.J. 1997) (explaining that clergy malpractice
25   claims require inquiry into religious belief); *Tilton v. Marshall*, 925 S.W.2d 672, 678 (Tex.
     1996); *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979); In *Thomas v. Review*
26   *Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 715-16 (1981).

**Page 33 of 42** -  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
                     RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
                     DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    the courts to determine religious doctrine or internal religious governance.  In *Mabus v.*

2    *St. James Episcopal Church*, for example, the Mississippi Supreme Court rejected a "clergy

3    malpractice" theory of liability, but concluded that plaintiffs can state a claim against a pastor

4    for breach of fiduciary duty because it does not require inquiry into religious matters.  884

5    So.2d 747, 757-61 (Miss. 2004); *see also Fortin v. Roman Catholic Bishop of Portland*, 871

6    A.2d 1208, 1225 (Me. 2005) (imposition of fiduciary duty on diocese does not violate Free

7    Exercise Clause of First Amendment); *McKelvey*, 173 N.J. at 50-51.  In *Hiles v. Episcopal*

8    *Diocese of Massachusetts*, the Massachusetts Supreme Judicial Court rejected a minister's

9    defamation claim stemming from statements made in church disciplinary proceedings, but it

10   confirmed that "[t]he absolute First Amendment protection for statements made by a Church

11   member in an internal church disciplinary proceeding would not apply to statements made or

12   repeated outside that context."  773 N.E.2d at 937 n.12.  In *Cimijotti*, a case involving

13   allegedly defamatory statements made in ecclesiastical proceedings, the court cautioned that

14   the statements might have been actionable if made to third persons or "outside strictly

15   religious activities."  230 F.Supp. at 41.

16            The only case that even remotely supports Debtor's view is *Bryce*, which was

17   not decided by the Ninth Circuit and is not on point in any event.  In *Bryce*, the plaintiff was

18   the homosexual partner of the church's youth minister, and she brought a sexual harassment

19   claim based on statements made at a church meeting she had attended, as well as in a letter

20   the church's minister had circulated to church leaders prior to the meeting.  The plaintiff was

21   not a minister or parishioner of the church.  The court held that she could not state a claim

22   based on the statements at the meeting because she had "affirmatively interjected herself into

23   the church's internal ecclesiastical dialogue," 289 F.3d at 658, and because the written

24   reference to her was non-defamatory.  *Id.* at 659.  The court left open the question whether

25   the First Amendment shields a church from liability for defamatory statements about a third

26   party, even if made in the context of internal dialogue.  *Id.  Bryce* is not ultimately helpful to

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1 | Debtor. The Court reached its result because the church's conduct was "rooted in religious

2 | belief" and because the only nonconsensual aspect—the nondefamatory statement in the

3 | letter—was part of a religious discussion about the youth minister's relationship with the

4 | plaintiff. Here, by contrast, Debtor's choice of corporate structure was a secular decision

5 | involving conduct, not speech. If it is exempted from the civil law consequences of its

6 | choices, third-party creditors will suffer direct harm.

7 |        Finally, Debtor cites *Gonzalez v. Roman Catholic Archbishop of Manila,* 280

8 | U.S. 1 (1929), and claims the legal decision was based on canon law. Justice Brandeis's

9 | opinion does not support Debtor's characterization of the case. In *Gonzalez,* the plaintiff's

10 | ancestor established a pious Catholic educational foundation. Under the terms of the

11 | founder's will, the chaplain was to be a member of her family and would receive the

12 | foundation's surplus income. As a result of changes in canon law, the Archbishop of Manila

13 | refused to appoint the plaintiff to the chaplaincy. The Court rejected the plaintiff's suit for

14 | appointment to the chaplaincy under *Watson. Id.* at 16. The Court then turned to the

15 | plaintiff's claim that, even if he was not entitled to the chaplaincy, he was entitled to the

16 | surplus income earned during its vacancy. The Court did not decide the case on the basis of

17 | canon law, which would have been forbidden by the Establishment Clause. *Watson,* 80 U.S.

18 | at 727. Instead, it reasoned that, under the secular terms of the founder's gift, a descendant

19 | could only claim the income if he had been appointed as chaplain. Because the plaintiff was

20 | not entitled to the appointment, he had no grounds for claiming the income. *Gonzalez,* 280

21 | U.S. at 18-19. In sum, the Court applied ordinary, secular principles of trust and gift law and

22 | rejected the plaintiff's claim to be a creditor.

23 | **G.    RFRA IS INAPPLICABLE HERE**

24 |        RFRA benefits Debtor only if the enforcement of ordinary principles of

25 | bankruptcy law will place a substantial burden on its exercise of religion and is not the least

26 | restrictive means of advancing a compelling governmental interest. These requirements are

**Page 35 of 42 -** PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1 | not satisfied here.

2 | **1.    SUBSTANTIAL BURDEN**

3 |       Debtor argues that an adverse ruling will substantially burden its exercise of

4 | religion because it will "combine" the assets of Debtor and its parishes in disregard of canon

5 | law.  It then analogizes this result to the avoidance of a debtor's pre-petition tithes, which one

6 | federal appellate court held to be a substantial burden for RFRA purposes.  *See In re Young*,

7 | 82 F.3d 1407, 1418-19 (8th Cir. 1996).

8 |       This argument fails for several reasons.  First, there is no substantial burden

9 | on the exercise of religion where the party invoking RFRA has alternative means of religious

10 | expression.  *Bryant v. Gomez*, 46 F.3d 948, 949-50 (9th Cir. 1995) (per curiam); *see also*

11 | *Henderson v. Kennedy*, 253 F.3d 12, 16-17 (D.C. Cir. 2001).  Debtor has not argued that its

12 | religious doctrines treat parishes as separate juridic persons with property rights yet *require* it

13 | to adopt a unitary corporate form, refrain from incorporating those parishes, and hold

14 | unfettered fee title to property.  *Cf. American Life League, Inc. v. Reno*, 47 F.3d 642, 654-55

15 | (4th Cir. 1995) (plaintiffs stated prima facie case under RFRA because their religious beliefs

16 | required them to obstruct the entrances to abortion clinics).  Instead, for the reasons detailed

17 | above, Debtor could have selected from a variety of civil law forms that would have

18 | complemented canon law.  Debtor deliberately chose the organizational structure whose

19 | bankruptcy consequences it now seeks to avoid.  In the absence of any religiously-imposed

20 | constraints on its conduct, Debtor cannot state a prima facie case under RFRA.

21 |       Second, there is no substantial burden on religion where the conduct at issue is

22 | secular.  As Judge Williams recently held, commencing a bankruptcy proceeding is a secular

23 | matter, and "[i]t is not a burden on a religious organization which voluntarily seeks the

24 | protection of the bankruptcy laws to require it to treat its creditors in the same manner as any

25 | other debtor."  *In re Catholic Bishop of Spokane*, 329 B.R. at 324-25.

26 |       Third, there is no substantial burden where the consequence of governmental

**Page 36 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1   action is nothing more than a reduction in the assets of a religious organization. *See Civil*

2   *Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003) (holding

3   that financial considerations do not constitute a substantial burden); *see also Midrash*

4   *Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004); *San Jose Christian*

5   *College v. City of Morgan Hill*, 360 F.3d 1024, 1035-36 (9th Cir. 2004); *Episcopal Student*

6   *Found. v. City of Ann Arbor*, 341 F.Supp. 2d 691, 706-07 (E.D. Mich. 2004) (holding that

7   "'monetary and logistical burdens'. . . are not 'substantial' as defined by the Supreme Court,

8   the Sixth Circuit, and other federal and state courts"). If the loss of assets could constitute a

9   substantial burden on the exercise of religion, a church that improvidently borrowed money

10  secured by its real property could invoke RFRA to defeat foreclosure after it defaulted on the

11  loan. No court has ever endorsed such an expansive view of either RFRA or the First

12  Amendment. *Cf. Braunfeld v. Brown*, 366 U.S. 599, 605 (1961) (plurality opinion) (there is

13  no burden on free exercise where a law or policy merely "operates so as to make the practice

14  of . . . religious beliefs more expensive"); *Goodall by Goodall v. Stafford County School Bd.*,

15  60 F.3d 168, 171 (4th Cir. 1995); *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc.*

16  *v. City of Lakewood, Ohio*, 699 F.2d 303, 307-08 (6th Cir. 1983).

17          Finally, Debtor relies principally on *In re Young*, which is neither controlling

18  nor persuasive. In that case, the Eighth Circuit eviscerated the "substantial burden" standard

19  by concluding that "[i]t is sufficient that the governmental action in question meaningfully

20  curtails, albeit retroactively, a religious practice of more than minimal significance in a way

21  that is not merely incidental." 82 F.3d at 1418-19. In contrast, the rule in the Ninth Circuit,

22  which controls this case, is that the governmental action must "put substantial pressure on an

23  adherent to modify his behavior and to violate his beliefs, including when, if enforced, it

24  results in the choice to the individual of either abandoning his religious principle or facing

25  criminal prosecution." *Guam v. Guerrero*, 290 F.3d 1210, 1222 (9th Cir. 2002) (internal

26  quotations and citations omitted).

**Page 37 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1                In contrast to *In re Young*, Judge Dunn of this Court has applied the more

2   stringent Ninth Circuit standard and reached the opposite result from *Young* on identical

3   facts.[14] In *In re Gomes*, 219 B.R. 286 (Bankr. D. Or. 1998), Judge Dunn concluded that the

4   avoidance of a tithe did not constitute a substantial burden on religion where tithing was not

5   compulsory to remain a church member, there was no restriction on the debtors' post-petition

6   tithing, and the bankruptcy trustee could not have done anything to shake the debtors' belief

7   in their obligation to tithe. *Id.* at 294. Similar to the debtors in *In re Gomes*, Debtor cannot

8   satisfy the Ninth Circuit's definition of a substantial burden on the exercise of religion. It

9   cannot show that it is being pressured to modify its behavior or abandon religious doctrine

10   because its corporate structure and long-term property-holding arrangements were freely

11   chosen. If there is any burden on religious belief or conduct, it is an incidental burden arising

12   from the operation of neutral, generally applicable state corporate law and voluntarily

13   assumed when Debtor chose its operating structure.

14           **2.     COMPELLING GOVERNMENTAL INTEREST**

15                Debtor next asserts that the ordinary application of the Bankruptcy Code in

16   this case does not advance a compelling governmental interest, because the government does

17   not have a compelling interest in maximizing debtors' estates for the benefit of creditors.

18   Debtor's Resp. at 47-48. This is a straw man. As the Committee argued in its Opening Brief,

19   the government has a compelling interest in the <u>uniform</u> and <u>predictable</u> enforcement of the

20   Code. Opening Brief at 17-18. The framers of the Constitution grasped the significance of a

21

22   [14] At that time, a Ninth Circuit decision defined a substantial burden as governmental action
that "burdens the adherent's practice of his or her religion . . . by preventing him from

23   engaging in conduct or having a religious experience which the faith mandates. This
interference must be more than an inconvenience; the burden must be substantial and an

24   interference with a tenet or belief that is central to religious doctrine." *In re Gomes*, 219 B.R.
at 294, *quoting Bryant*, 46 F.3d at 949. The current Ninth Circuit standard has dropped the

25   "centrality" requirement but is otherwise identical in its essentials. Under both articulations
of the standard, the governmental action must force the adherent to choose between

26   exercising religion and suffering a penalty or loss of a benefit.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1   predictable bankruptcy system when they authorized Congress to enact "uniform Laws on the

2   subject of Bankruptcies." U.S. Const. Art. 1, § 8, cl. 4.  During the tithing controversy,

3   several courts, as well as the dissenting judge in *In re Young*, rightly concluded that the

4   government has a strong interest in maintaining an equitable system for protecting creditors

5   and for permitting debtors to obtain a fresh start.  See *In re Newman*, 203 B.R. 468, 477

6   (D. Kan. 1996); *In re Bloch*, 207 B.R. 944, 951 (D. Colo. 1997) (citing *In re Newman*); *In re*

7   *Navarro*, 83 B.R. 348, 353 (Bankr. E.D. Pa. 1988); see also *In re Young*, 82 F.3d at 1422-23

8   (8th Cir. 1996) (Bogue, J. dissenting).

9          Determining the scope of the estate is a threshold issue and a core function of

10   the bankruptcy court, one that is "so integral to the bankruptcy system that its ability to carry

11   out its mission would be severely compromised by [its] absence."  *In re Hodge*, 220 B.R.

12   386, 392 (D. Idaho 1998) (describing what constitutes a compelling governmental interest in

13   the bankruptcy context).  Moreover, there is a further compelling interest in the predictable

14   and reliable application, through federal bankruptcy law, of state property law.  Debtor's

15   theory would create havoc for third parties dealing with property owned by religious

16   organizations.

17          There is another compelling governmental interest implicated by this case.

18   Debtor filed this case in an attempt to limit the claims and assets available to pay claims of

19   plaintiffs who were sexually abused as children by Debtor's employees.  The outcome of this

20   litigation may be the most important determinant of whether these victims are compensated

21   for the harm they have suffered.  The state has a compelling interest to ensure that victims of

22   egregious crimes have recourse.  The State of Oregon has demonstrated its compelling

23   interest in ensuring that the victims of child abuse have a legal remedy.  In 1989, the

24   legislature enacted ORS 12.117, which provides a special statute of limitations for claims

25   based on child abuse.  When the legislature learned of the danger that certain plaintiffs'

26   claims might be barred because it was unclear whether ORS 12.117 applied retroactively, it

**Page 39 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1   immediately amended the statute to provide for retroactivity and, by an emergency clause,

2   made the amendment effective on the date it was approved by the Governor. *A.K.H. v.*

3   *R.C.T.*, 312 Or. 497, 500 (1992); *see also Crawford v. Lungren*, 96 F.3d 380, 386 (9th Cir.

4   1996), cert. denied, 520 U.S. 1117 (1997) ("there is 'a compelling interest in protecting the

5   physical and psychological well-being of children'"); *Pelster v. Walker*, 185 F. Supp. 2d

6   1185, 1190 (D. Or. 2001) ("The government. . . has a compelling interest in protecting

7   children from sexual abuse and prosecuting abusers.").

### 3.    LEAST RESTRICTIVE MEANS

9           Finally, Debtor argues that the uniform enforcement of the Code is not the

10  least restrictive means of advancing the government's interests because "the Bankruptcy

11  Code subordinates the interests of creditors to the interests of debtors and other public policy

12  interests in numerous circumstances." Debtor's Resp. at 48 (quoting *In re Hodge*, 220 B.R.

13  386, 392 (Bankr. D. Idaho 1998)). The short answer to Debtor's contention is that this

14  balancing of interests is a Code-based aspect of the bankruptcy process. Debtor, by contrast,

15  would subordinate the bankruptcy process to religious rules. In practical terms, Debtor

16  would give religious organizations a trump card they could play against both their creditors

17  and the court, because they could make unassailable claims about the requirements of their

18  faith, depending on the circumstances of their particular bankruptcy.

19          Courts routinely reject free exercise challenges to tax laws because the

20  recognition of religiously-based exemptions could undermine the government's ability to

21  collect revenue. *See Jimmy Swaggart Ministries v. Board of Equalization*, 493 U.S. 378, 389

22  (1990) (sales and use tax); *United States v. Lee*, 455 U.S. 252, 260 (1982) (Social Security

23  taxes); *see also Droz v. C.I.R.*, 48 F.3d 1120 (9th Cir. 1995); *Goehring v. Brophy*, 94 F.3d

24  1294, 1300-02 (9th Cir. 1996) (analogizing collection of student fees to tax collection and

25  applying *Lee's* least restrictive means analysis); *United States v. Philadelphia Yearly Meeting*

26  *of the Religious Society of Friends*, 322 F.Supp. 2d 603, 609 (E.D. Pa. 2004) (describing

**Page 40 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  government's compelling interest in using levy powers to collect back taxes); *cf. Texas*

2  *Monthly, Inc. v. Bullock*, 489 U.S. 1, 5 (1989) (finding that a tax exemption only for religious

3  publications amounts to state promotion of religion). The same reasoning applies in the

4  bankruptcy context. The fact that certain Code provisions already subordinate creditors'

5  interests is immaterial. Addressing a similar argument about exemptions in the Internal

6  Revenue Code, the Court of Appeals for the Third Circuit held that "exemptions are a matter

7  of legislative grace. It does not follow from Congressional action on such matters that . . .

8  the courts are therefore encouraged to carve out exceptions to the statutory scheme." *Adams*

9  *v. C.I.R.*, 170 F.3d 173, 180 (3d Cir. 1999). Congress amended the Code to resolve the

10  tithing controversy of the 1990s. *See* 11 U.S.C. § 548(a)(2)(A). It could similarly address

11  Debtor's concerns, if it is even possible to do so without violating the Establishment Clause.

12  Such accommodation properly belongs to the legislature, not the courts. *Smith*, 494 U.S. at

13  890. Marci A. Hamilton, *Religion, the Rule of Law, and the Good of the Whole: A View*

14  *From the Clergy*, 18 J.L. & Politics 387, 389 (2002).

15
16  **IV.    DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT
        SHOULD BE DENIED**

17         We have fully responded to the relevant arguments raised by Debtor as

18  follows:

| | | |
|---|---|---|
| 19 | Issue 1: Debtor's status as corporation sole | *Supra* at Section III |
| 20 | Issue 3: Requirements of ORS 65.067 | *Supra* at Section III.D. |
| 21 | Issue 4: Requirements of Debtor's Articles of Incorporation | *Supra* at III.E. |
| 22 | Issue 5: First Amendment | *Supra* at Section III.F, G |
| 23 | Issue 6: Alleged reliance on canon law | *Supra* at Sections III.C, D, E, F, G |
| 24 25 | Issue 7: Alleged separateness of parishes | *Supra* at Section III.A, B |

26         Debtor's second issue—the vows taken by Catholic bishops—is utterly

**Page 41 of 42 -**  PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

1    irrelevant and requires no response.  Debtor's motion must be denied as a matter of law.

2    **V.**   **CONCLUSION**

3            The Debtor chose a unitary structure for the Archdiocese and its parishes,

4    which it has vigorously defended in other litigation.  Under the neutral and generally

5    applicable property and corporate laws of Oregon, which control the determination of the

6    "estate" for purposes of federal bankruptcy law by this Court, the parishes are part of the

7    Archdiocese, and Debtor is judicially estopped from arguing to the contrary.  There is no

8    Oregon corporations law, First Amendment or RFRA theory that will save Debtor from the

9    operation of the civil law in this case.  Accordingly, the Committee's Restated Second

10   Motion for Partial Summary Judgment should be granted.  Debtor's Cross Motion for Partial

11   Summary Judgment should be denied.

12            DATED this 26th day of October, 2005.

13                   TONKON TORP LLP

15                   By _____

16                     ALBERT N. KENNEDY, OSB No. 82142
                      Attorneys for Tort Claimants Committee

17                     MARCI A. HAMILTON, *Pro Hac Vice*
                      36 Timber Knoll Drive

18                     Washington Crossing, PA 18977
                      Telephone:  (215) 493-1973

19                     Special Counsel for Tort Claimants Committee

20

21   032545\00001\656637 V001

22

23

24

25

26

**Page 42 of 42 -**   PLAINTIFF'S REPLY TO RESPONSES TO TORT CLAIMANTS COMMITTEE'S
                  RESTATED SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT AND
                  DEBTOR'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440