1    **Albert N. Kennedy**, OSB No. 82142
       Direct Dial: (503) 802 -2013
2      Facsimile:    (503) 972-3713
       E-Mail:    al@tonkon.com
3    **Timothy J. Conway**, OSB No. 85175
       Direct Dial: (503) 802 -2027
4      Facsimile:    (503) 972-3727
       E-Mail:    tim@tonkon.com
5    **Michael W. Fletcher**, OSB No. 01044
       Direct Dial: (503) 802 -2169
6      Facsimile:    (503) 972-3869
       E-Mail:    michaelf@tonkon.com
7    **TONKON TORP** LLP
     1600 Pioneer Tower
8    888 S.W. Fifth Avenue
     Portland, OR  97204
9
         Attorneys for Tort Claimants Committee
10

11              IN THE UNITED STATES BANKRUPTCY COURT

12                 FOR THE DISTRICT OF OREGON

13   In re                                    )
                                              )
14   ROMAN CATHOLIC ARCHBISHOP OF             )  Case No. 04-37154-elp11
     PORTLAND IN OREGON, AND SUCCESSORS, A    )
15   CORPORATION SOLE, DBA THE ARCHDIOCESE    )
     OF PORTLAND IN OREGON,                   )
16                                            )
                                              )
17          Debtor.                           )
     _____)
18   TORT CLAIMANTS COMMITTEE,                )  Adv. Proc. No. 04-03292-elp
                                              )
19              Plaintiff,                    )  **TORT CLAIMANTS
                                              )  COMMITTEE'S REPLY
20       v.                                   )  BRIEF RE THIRD MOTION
                                              )  FOR PARTIAL SUMMARY
21   ROMAN CATHOLIC ARCHBISHOP OF             )  JUDGMENT
     PORTLAND IN OREGON, AND SUCCESSORS, A    )  (11 U.S.C. § 544(a)(3))**
22   CORPORATION SOLE, dba THE ARCHDIOCESE    )
     OF PORTLAND IN OREGON; JOHN RICKMAN,     )
23   GLENN PELIKAN and JOHNSTON MITCHELL,     )
     individually and on behalf of all others similarly )
24   situated; ST. ANDREWS CHURCH (PORTLAND), )
     as represented by its pastor, REV. CHARLES )
25   LIENERT, ST. ANTHONY CHURCH (TIGARD), as )
     represented by its pastor, REV. LESLIE M. SIEG, and )
26   ST. JUAN DIEGO CHURCH, as represented by its )

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

CLERK US BANKRUPTCY COURT
DISTRICT OF OREGON

'05 NOV -7 A10 :48

LODGED_____ REC'D_____
PAID_____ DOCKETED_____

pastor, REV. JOHN KERNS, individually and on
behalf of all parishes; COMMITTEE OF CATHOLIC
PARISHES, PARISHIONERS AND INTERESTED
PARTIES; CENTRAL CATHOLIC HIGH SCHOOL
PARENTS' ASSOCIATION; CENTRAL CATHOLIC
HIGH SCHOOL ALUMNI ASSOCIATION;
PHOEBE JOAN O'NEILL; MARIST HIGH SCHOOL
PARENTS AND ALUMNI SERVICE CLUB;
FRIENDS OF REGIS HIGH SCHOOL; MARIST
HIGH SCHOOL FOUNDATION, an Oregon non-
profit corporation; CATHOLIC YOUTH
ORGANIZATION/CAMP HOWARD, an Oregon
non-profit corporation; the ST. ELIZABETH PARISH
OF PORTLAND, OREGON, an Oregon non-profit
corporation; MISSIONARIES OF THE HOLY
SPIRIT, a California corporation; REGIS HIGH
SCHOOL FOUNDATION, an Oregon non-profit
corporation,

Defendants.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   FACTUAL SUPPLEMENT ...............................................................2

      A.    No Defendant Has Any Interest of Record in Any of The Test
            Properties ..............................................................................2

      B.    Debtor has the Unfettered Right to Transfer Fee Title to The Test
            Properties ..............................................................................3

      C.    None of Debtor's Parishes or Schools Has a Civil Law Existence
            Separate or Apart from Debtor .........................................................6

      D.    The Use and Occupancy of the Test Properties is Consistent in All
            Respects with Debtor's Record Title to The Test Properties ...........................8

III.  ARGUMENT.......................................................................................9

      A.    A BFP WOULD HAVE NO CONSTRUCTIVE NOTICE OF
            DEFENDANT CLASS MEMBERS' PURPORTED EQUITABLE
            INTERESTS IN THE TEST PROPERTIES .....................................................9

            1.    Inquiry Notice Has Been Statutorily Abolished in Oregon .................. 9

            2.    Under Venerable Principles of Real Property Law, a Purchaser
                  Had No Inquiry Notice of Defendants' Purported Interests in
                  The Test Properties ..........................................................11

                  a.    Debtor's Articles and Oregon Corporation Law Do Not
                        Provide Inquiry Notice............................................. 11

                  b.    The School and Parish Defendants' Use of The Test
                        Properties Does Not Provide Inquiry Notice ......................... 14

                        (1)    The Presence of Defendant Class Members at
                               The Test Properties is Consistent With Record
                               Title.......................................................... 16

                        (2)    Defendant Class Members' Occupancy of The
                               Test Properties is Not Exclusive................................. 17

                        (3)    Defendant Class Members' Occupancy of The
                               Test Properties is Temporary and Occasional ........... 18

i

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

c.   Debtor's Internal Practices Do Not Provide Inquiry
     Notice ................................................................................... 19

d.   Publicity Surrounding the Roman Catholic Church's
     Recent Woes Does Not Provide Inquiry Notice ..................... 20

e.   Defendants Do Not Have Any Evidence that Purchasers
     of Debtor's Property Have Sought Release from the
     Purported Equitable Interests ................................................ 21

B.   RFRA AND THE FIRST AMENDMENT DO NOT BAR THE
     ROUTINE ENFORCEMENT OF SECTION 544(a)(3) .................................21

     1.   RFRA ................................................................................................. 22

          a.   Substantial Burden ................................................................. 22

          b.   Least Restrictive Means and Compelling Governmental
               Interest ................................................................................... 22

     2.   FIRST AMENDMENT ....................................................................... 23

     3.   If the Court Concludes That it Cannot Apply § 544(a)(3), The
          Appropriate Remedy is Dismissal of the Case ................................... 24

C.   THE ALLEGED EXISTENCE OF EQUITABLE INTERESTS HAS
     NO BEARING ON THIS MOTION FOR SUMMARY JUDGMENT ..........24

IV.   CONCLUSION ............................................................................................24

ii

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1

# TABLE OF AUTHORITIES

2

3    **Cases**

4    *Addeo v. Braver*, 956 F. Supp. 443 (S.D.N.Y. 1997) .............................................................. 20

5    *AK Steel Corp. v. Viacom, Inc.*, 835 A.2d 820 (Pa. Super. 2003) ......................................... 20

6    *Akins v. Vermast*, 150 Or. App. 236 (1997).......................................................................... 12

7    *Archdiocese of Portland in Oregon v. Dept. of Revenue*, 14 Or. Tax 264 (1998)................. 17

8    *Bacote v. Wyckoff*, 251 Ga. 862 (1984) ................................................................................ 15

9    *Barnett v. City of Yonkers*, 731 F. Supp. 594 (S.D.N.Y. 1990) ............................................ 20

10   *Beals v. Cryer*, 99 Ill. App. 3d 842 (1981) ........................................................................... 15

11   *Belisle v. Plunkett*, 877 F.2d 512 (7th Cir. 1989) ................................................................. 19

12   *Black v. Black*, 202 S.W.2d 659 (Tenn. 1947)...................................................................... 19

13   *Carnes v. Smith*, 236 Ga. 30 (1976)...................................................................................... 23

14   *Central Catholic Education Association v. Archdiocese of Portland*, 323 Or. 238,
         916 P.2d 303 (1996)........................................................................................................... 7

15   *Chaffin v. Solomon*, 255 Or. 141 (1970)............................................................................... 18

16
     *Clay Properties, Inc. v. Washington Post Co.*, 604 A.2d 890 (D.C. Ct. App. 1992)............. 15

17   *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).............................................................. 10

18
     *Gen'l Dynamics Corp. v. United States*, 47 Fed. Cl. 514 (Fed. Cl. 2000) ............................ 20

19   *Gorzeman v. Thompson*, 162 Or. App. 84 (1999).................................................................. 11

20
     *Gregory v. Alexander*, 51 Tenn. App. 307 (1963) ................................................................. 15

21
     *High Fidelity Enterprises, Inc. v. Hull*, 210 Cal. App. 2d 279 (1962)................................... 15

22
     *High v. Davis*, 283 Or. 315 (1978)................................................................................ 10, 12

23
     *In re Catholic Bishop of Spokane*, 329 B.R. 304 (Bankr. E.D. Wash. 2005) ........................ 24

24
     *In re Clearwater*, 1997 WL 101975, at *3 (Bankr. D. Or. Feb. 28, 1997) ........................... 11

25
     *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351 (S.D.N.Y. 2003)................................. 20

26

iii

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

*In re Thomas*, 147 B.R. 526 (9th Cir. B.A.P. 1992) ................................................................ 16

*Kane v. Huntley Financial*, 146 Cal. App. 3d 1092 (1983) ....................................................... 15

*Klamath Falls Assembly of God v. State Highway Comm.*, 255 Or. 211 (1970).............. 12, 21

*Kransky v. Hensleigh*, 146 Mont. 486 (1965) .......................................................................... 15

*Olson v. Olson*, 203 Minn. 199 (1938) .................................................................................... 15

*Ortiz v. Jacquez*, 420 P.2d 305 (N.M. 1966) .......................................................................... 18

*Patten v. Moore*, 32 N.H. 382 (1855) ..................................................................................... 15

*PGE v. Bureau of Labor & Industries*, 317 Or. 606 (1993) .................................................... 10

*Randall v. Lingwall*, 43 Or. 383 (1903) .................................................................................. 18

*Rayburn v. Davisson*, 22 Or. 242 (1893) ................................................................... 15, 16, 17

*Roman Catholic Archbishop of Diocese of Oregon v. Baker*, 140 Or. 600, 15 P.2d
    391 (1932).......................................................................................................................... 7

*Roman Catholic Archdiocese of the Archbishop of Portland in Oregon v. Dept. of
    Revenue*, 13 Or. Tax 211 (1995) ................................................................................. 7, 17

*Thorne v. Archdiocese of Portland in Oregon*, 42 Or. App. 421, 600 P.2d 926
    (1979).................................................................................................................................. 7

*Touchstone v. Peterson*, 443 So.2d 1219 (Ala. 1983) ............................................................. 15

*Townsend v. Little*, 109 U.S. 504 (1883) ................................................................................ 15

*Valley Nat'l Bank of Arizona v. Avco Dev. Co.*, 14 Ariz. App. 56 (1971) .............................. 15

*Worrell v. Dept. of Revenue*, 282 Or 531 (1978)..................................................................... 17

*Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658,
    n.10 (9th Cir. 1998).......................................................................................................... 10

**Statutes**

Oregon General Laws, 136 § 4 ................................................................................................ 13

Oregon Revised Statutes 65.042 ............................................................................................. 12

Oregon Revised Statutes 65.067 ............................................................................................. 12

Oregon Revised Statutes 65.077 ..................................................................................... 3, 12, 22

Oregon Revised Statutes 65.531 ....................................................................................... 3, 12

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Oregon Revised Statutes 93.643 .................................................................................. 9

**Other Authorities**

92A C.J.S. *Vendor and Purchaser* § 508 (updated June 2005) ....................................... 14, 18

Annotation, *Occupancy of Premises by Both Record Owner and Another as Notice of Title or Interest of Latter*, 2 A.L.R. 2d 857 (1948) ............................................ 17

Herbert T. Tiffany & Basil Jones, LAW OF REAL PROPERTY § 1288 (3d ed. updated November 2004).................................................................................................. 14

Joyce Palomar, 1 PATTON & PALOMAR ON LAND TITLES § 12 (3d ed. updated 2005) ............................................................................................................... 14, 15, 17

Joyce Palomar, 3 PATTON & PALOMAR ON LAND TITLES § 674 (3d ed. updated 2005) .................................................................................................................... 14, 18

v

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

## I.    INTRODUCTION

1

2          The parties agree that, pursuant to 11 U.S.C. § 544(a)(3), all unrecorded

3    equitable interests in the Test Properties[1] are avoided unless a bona fide purchaser ("BFP")

4    would have had constructive notice of such interests at the time Debtor filed for bankruptcy.

5    In their latest effort to avoid the routine application of state and federal law, the defendants

6    take up the well-worn theme that this case is different because Debtor is a religious

7    corporation.  They argue that Debtor's status as a corporation sole, and the use of the Test

8    Properties for religious activities somehow imposes an open-ended duty of inquiry on a

9    prospective purchaser of the Test Properties.  Defendants also expend tremendous energy in

10   attempting to prove the existence of the purported equitable interests, even though that issue

11   is outside the scope of this motion for summary judgment.  As a last resort, they claim that

12   the enforcement of fundamental bankruptcy principles violates the First Amendment to the

13   United States Constitution and the Religious Freedom Restoration Act ("RFRA").  These

14   arguments misconstrue Oregon property and corporations law, Debtor's own Articles of

15   Incorporation, and the religious freedom guarantees of the First Amendment and RFRA.

16   They are also belied by the plain fact that Debtor has failed to come forward with a single

17   example of a real property transaction in which a purchaser obtained a quitclaim deed or

18   release from the equitable interests with which Debtor's properties are purportedly

19   encumbered.  For the reasons detailed below, there are no issues of law or material fact that

20   would preclude this Court from avoiding any unrecorded equitable interests in the Disputed

21   Properties.  If this Court finds that the even-handed application of § 544(a)(3) unduly

22   burdens the free exercise of religion, the proper outcome is dismissal of this bankruptcy.

23

24   [1]  The Test Properties are described by name, city, county and property tax account number
     in Exhibit 1 to the Committee's Third Motion for Partial Summary Judgment.  A copy of
25   Exhibit 1 is also attached hereto and incorporated herein.  The Test Properties do not include
     the real property identified in Exhibit 14 to Debtor's Amended Statement of Financial Affairs
26   as Marion County tax account number R103758.

**Page 1 of 25 -**   TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
                PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

**II.     FACTUAL SUPPLEMENT**

Defendants have filed scores of declarations numbering several hundred pages. But defendants have not identified a single disputed fact that is material to plaintiff's Third Motion for Partial Summary Judgment. No defendant has any interest of record in any Test Property. For over 130 years, Debtor has had clear, unambiguous and unfettered right to sell or dispose of its property. Debtor's right to sell its property is and has been granted by every applicable Oregon statute and every version of Debtor's and its predecessor's articles of incorporation. No limitation on Debtor's right to sell or dispose of its property appears in any public record. No Test Property is being used or occupied in any way that is inconsistent with Debtor's title; all of the Test Properties are being used by the Catholic Church for the purposes of the Catholic Church.

Attached hereto as Exhibit 2 is an updated table setting forth each Test Property, its use and references to the relevant Preliminary Title Reports, vesting deeds and documents relating to transfers.

**A.     NO DEFENDANT HAS ANY INTEREST OF RECORD IN ANY OF THE TEST PROPERTIES**

1.     None of the vesting deeds pursuant to which Debtor obtained title to the Test Properties reflect any interest in such Test Properties in any defendant to this Adversary Proceeding, except Debtor. Tort Claimants Committee's Concise Statement of Material Facts in Support of Third Motion for Partial Summary Judgment, ¶ 15 ("Plaintiff's Concise Statement"); Committee of Catholic Parishes, Parishioners and Interested Parties Response to Tort Claimants Committee's Concise Statement of Material Facts in Support of Third Motion for Partial Summary Judgment ("Parish Response to Concise Statement"), ¶ 15. Although other defendants deny this statement of fact, they cite no evidence that creates a disputed fact.

2.     None of the Preliminary Title Reports attached to the Affidavit of

Page 2 of 25 -     TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3))

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  Malcolm Newkirk in Support of Tort Claimants Committee's Third Motion for Partial

2  Summary Judgment (11 U.S.C. § 544(a)(3)) ("Newkirk Affidavit") disclose any interest of

3  record in any of the Test Properties in any defendant to this Adversary Proceeding, except

4  Debtor.[2]  None of the defendants have produced any recorded documents evidencing an

5  interest in any of the Test Properties.  Although defendants point to some references to

6  churches or schools in the documents contained in the exhibits to the Newkirk Affidavit, a

7  review of those references clearly demonstrates that none of them create or reflect, or purport

8  to create or reflect, any interest in favor of any defendant in the Test Properties.[3]  The

9  references merely identify the division of Debtor that is occupying the property.

10
11  **B.    DEBTOR HAS THE UNFETTERED RIGHT TO TRANSFER FEE
         TITLE TO THE TEST PROPERTIES**

12          3.    Debtor is an Oregon non-profit corporation that was originally

13  incorporated in Oregon in 1874.  Concise Statement, ¶ 1; Parish Committee Response to

14  Concise Statement ("Parish Response to Concise Statement"), ¶ 1; Response of Friends of

15  Regis High School and Regis High School Foundation to Tort Claimants Committee's

16  Concise Statement of Material Facts in Support of Third Motion for Partial Summary

17  Judgment ("Regis Response to Concise Statement"), ¶ 1; Debtor's Response to Tort

18  Claimants Committee's Concise Statement of Material Facts ("Debtor's Response to Concise

19  Statement"), ¶ 1.

20          4.    An Oregon non-profit corporation is authorized to sell, convey or

21  otherwise dispose of all or any part of its property.  ORS 65.077; ORS 65.531.  Approval by

22  its members or any other person of a sale is not required.  ORS 65.531(2).  Concise

23

24  [2] The Test Properties do not include the real property which is the subject of Exhibit 21 to the
    Newkirk Affidavit.

25
26  [3] Plaintiff addresses each of those references in its replies to defendant's responses to
    plaintiff's concise statement of material facts.

**Page 3 of 25 -**   TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
                PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

1  Statement, ¶¶ 2, 3; Parish Response to Concise Statement, ¶¶ 2, 3; Regis Response to

2  Concise Statement, ¶¶ 2, 3; Debtor's Response to Concise Statement, ¶¶ 2, 3.

3         5.     Debtor's Articles of Incorporation state that one of its purposes is "for

4  acquiring, holding and disposing of church property for the benefit of the Roman Catholic

5  Church for works of charity and for public worship." Concise Statement, ¶ 4; Parish

6  Response to Concise Statement, ¶ 4; Regis Response to Concise Statement, ¶ 4; Debtor's

7  Response to Concise Statement, ¶ 4.

8         6.     In 1874, when Debtor was incorporated as an Oregon non-profit

9  corporation, the relevant Oregon statutes unambiguously authorized Debtor to purchase,

10 possess, sell, convey and dispose of real and personal property at pleasure.  Declaration of

11 Howard M. Levine ("Levine Decl."), Ex. 2 of Ex. 1; Ex. 4 of Ex. 1; Declaration of

12 Thomas W. Stilley, Ex. 2 at 1, 2; Ex. 4 at 2.

13        7.     Debtor is the surviving corporation of the 1991 merger with the

14 Archdiocese of Portland in Oregon (formerly known as Archdiocese of Oregon City), an

15 Oregon non-profit corporation.  Kennedy Declaration in Support of Tort Claimants

16 Committee's Third Motion for Partial Summary Judgment (11 U.S.C. § 544(a)(3)) ("Kennedy

17 Decl."), Ex. 1 at 21-23; 48-50.  The Plan of Merger between Debtor and the Archdiocese of

18 Portland in Oregon states at paragraph 3 that "each merging corporation is a religious

19 corporation organized for the purpose of holding and administering the assets of and

20 conducting the corporate purposes and mission of the Roman Catholic Archdiocese of

21 Portland in Oregon." Kennedy Decl., Ex. 1, at 23, 50.

22        8.     The Articles of Incorporation of the Archdiocese of Oregon City were

23 filed with the Oregon Secretary of State in 1909 and state:

24           The general purpose of this corporation is to take, hold,
          receive, sell, convey, encumber and dispose of any and all real

25           or personal property for the use and benefit of the aforesaid
          diocese, and for the use and benefit of the religious

26

**Page 4 of 25 -**   TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
                PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3))

1  denomination aforesaid, and to administer the temporalities of
   such diocese; . . .

2

3  Kennedy Decl., Ex. 1 at 29-34.

4       9.    Among the powers conferred upon the Archdiocese of Oregon City, an

5  Oregon non-profit corporation, by the statutes in effect on the date of its incorporation is the

6  power to:

7       take, hold, receive, sell, convey, encumber and dispose of any
        real or personal property for the use and benefit of such
8       diocese, and for the use and benefit of the religious
        denomination therein creating such diocese, and to administer
9       the temporalities of such diocese; . . .

10  Second Kennedy Declaration in Support of Tort Claimants Committee's Third Motion for

11  Partial Summary Judgment ("Second Kennedy Decl."), ¶ 7; Ex. 5 at 2.

12       10.    On March 4, 1929, the Archdiocese of Oregon City filed its

13  Supplementary Articles of Incorporation with the Oregon Secretary of State pursuant to

14  which it changed its name to the Archdiocese of Portland in Oregon and stated:

15       The general purposes of this corporation are to take, hold,
        receive, sell, convey, encumber and dispose of any and all real
16      or personal property for the use and benefit of the aforesaid
        Diocese, and for the use and benefit of the religious
17      denomination aforesaid, and to administer the temporalities of
        such Diocese; . . ..

18

19  Kennedy Decl., Ex. 1 at 35-40.

20       11.    The Archdiocese of Portland in Oregon was the grantee of a

21  significant portion of the real estate now owned by Debtor, including certain of the Test

22  Properties.  Kennedy Decl., Ex. 6 at 39-49, 55, 56, 60, 83-86, 90-96, 120-126.

23       12.    Debtor has routinely conveyed its real property, including interests in

24  and portions of the Test Properties, by deeds executed solely in Debtor's name.  More than

25  100 deeds executed solely by Debtor in Debtor's name and conveying property throughout

26  the Archdiocese are attached as Exhibits to the Kennedy Declaration and the Newkirk

**Page 5 of 25 -**    TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
                 PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

1  Affidavit.  Concise Statement, ¶ 16.  Many of the deeds are warranty deeds.  Although

2  defendants quibble with plaintiff's Sixteenth Statement of Fact, they do not dispute the

3  authenticity of any of the deeds attached as Exhibits to the Kennedy Declaration and the

4  Newkirk Affidavit.  Moreover, defendants do not offer a single example of any deed signed

5  by Debtor that reflects any interest in any other defendant.  Defendants do not offer a single

6  example of any purchaser of real estate from Debtor obtaining a quitclaim deed, release,

7  waiver or other form of agreement from any other defendant.

8          13.    On August 25, 2005, Debtor produced additional documents to

9  plaintiff, including 13 additional deeds and leases executed solely by Debtor conveying real

10  properties and interests in real properties, including interests in and portions of the Test

11  Properties.  Second Kennedy Decl., ¶ 2; Ex. 1 at 7-80.

12          **C.    NONE OF DEBTOR'S PARISHES OR SCHOOLS HAS A CIVIL LAW**
            **EXISTENCE SEPARATE OR APART FROM DEBTOR**
13

14          14.    None of the 10 designated parishes/schools is an entity organized

15  under Oregon law and none of the designated parishes/schools has registered an assumed

16  business name.  Second Kennedy Decl., Ex. 4 at 9-10; Declaration of Patricia L. Miller in

17  Support of Plaintiff's Reply to Responses to Tort Claimants Committee's Restated Second

18  Motion for Partial Summary Judgment and Debtor's Cross-Motion for Partial Summary

19  Judgment, ¶ 3.

20          15.    Debtor has consistently and repeatedly taken the position in pleadings

21  filed in the public record with civil courts that its parishes and schools are not separate

22  entities from Debtor and that Debtor is the owner of property used by parishes and schools.

23  Declaration of Timothy J. Conway in Support of Tort Claimants Committee's Second Motion

24  for Partial Summary Judgment ("Conway Decl."), Exs. 6, 7, 8, 9, 10, 11, 12, 13, 14, 15;

25  Declaration of Michael W. Fletcher in Support of Plaintiff's Reply to Responses to Tort

26  Claimants Committee's Restated Second Motion for Partial Summary Judgment and Debtor's

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  Cross-Motion for Partial Summary Judgment ("Fletcher Decl"), Exs. 12, 13, 16.

2      16.    Several reported decisions of Oregon courts hold that Debtor owns or

3  controls the real property upon which parishes or schools are located.  *Central Catholic*

4  *Education Association v. Archdiocese of Portland*, 323 Or. 238, 916 P.2d 303 (1996); *Roman*

5  *Catholic Archbishop of Diocese of Oregon v. Baker*, 140 Or. 600, 15 P.2d 391 (1932);

6  *Roman Catholic Archdiocese of the Archbishop of Portland in Oregon v. Dept. of Revenue*,

7  13 Or. Tax 211 (1995); *Thorne v. Archdiocese of Portland in Oregon*, 42 Or. App. 421, 600

8  P.2d 926 (1979).

9      17.    Immaculate Conception Parish of Stayton, Oregon was an Oregon

10 non-profit corporation until it was administratively dissolved on November 27, 1997.

11 Second Kennedy Decl., Ex. 2.

12     18.    Article III of the Articles of Incorporation of Immaculate Conception

13 Parish of Stayton, Oregon provided:

14         "Provisions for the distribution of assets on dissolution or
           liquidation are:  Solely to Archdiocese of Portland in Oregon,
15         an Oregon non-profit religious corporation."

16 Second Kennedy Decl., Ex. 3 at 3.

17     19.    In August of 1998, the Trustees of Immaculate Conception Parish of

18 Stayton, Oregon adopted consent minutes relating to the dissolution and transfer of its assets.

19 The consent minutes state:

20         WHEREAS, the Articles of Incorporation of the Corporation
           provide that the distribution of assets on dissolution will be
21         solely to the Roman Catholic Archbishop of Portland in
           Oregon, and successors, a corporation sole (fka Archdiocese of
22         Portland in Oregon, a non-profit religious corporation); . . .

23         RESOLVED, that the assets of the Corporation consisting of
           three parcels of real property, more particularly described on
24         attached Exhibit A, shall be distributed to the Roman Catholic
           Archbishop of Portland in Oregon, and successors, a
25         corporation sole; . . ..

26 Kennedy Decl., Ex. 6 at 97-99; Yates Declaration, Ex. 17.

**Page 7 of 25 -**    TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
                PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

20.     Immaculate Conception Parish of Stayton, Oregon, an Oregon corporation, transferred its interests in real property to Debtor by deeds executed on behalf of Immaculate Conception Parish of Stayton, Oregon, an Oregon corporation, by John G. Vlazny, Archbishop of Portland in Oregon. Newkirk Aff., Ex. 11 at 7, 8; Yates Decl., Ex. 13; Kennedy Decl., Ex. 6 at 14-17, 106-111.

**D.    THE USE AND OCCUPANCY OF THE TEST PROPERTIES IS CONSISTENT IN ALL RESPECTS WITH DEBTOR'S RECORD TITLE TO THE TEST PROPERTIES**

21.     Each of the Test Properties is being used as a Catholic church, Catholic school or Catholic cemetery. Concise Statement, ¶ 17; Parish Committee Response to Concise Statement, ¶ 17; Regis Response to Concise Statement, ¶ 17; Debtor's Response to Concise Statement, ¶ 13.

22.     Debtor's website lists its parishes alphabetically by city and by county. The parishes are identified as the "parishes of the Archdiocese of Portland" or are simply listed under the heading "Archdiocese of Portland." Kennedy Decl., ¶ 9, Ex. 8.

23.     Debtor's website includes links to the web pages of four of the designated parishes. In each instance, the home page of the websites reflects that the parish is a Catholic church or a Catholic parish. Kennedy Dec., ¶ 11; Ex. 10.

24.     All employees at Debtor's parishes and schools are employees of Debtor. Second Declaration of Michael W. Fletcher in Support (1) Tort Claimants Committee's Third Motion for Partial Summary Judgment (11 U.S.C. § 544(a)(3)), and (2) Tort Claimants Committee's Omnibus Evidentiary Objections to Defendants' Declarations Filed in Opposition to the Third Motion for Partial Summary Judgment, Ex. 1 at 6; Ex. 3 at 5.

25.     The Archbishop is personally responsible for the appointment of pastors, assistant pastors, deacons and lay administrators. Levine Decl., Ex. 4 at 4; Conway Decl., Ex. 4 at 3, 4; Ex. 5 at 4-9; Ex. 21 at 6.

26.     The Catholic Church is hierarchal. Levine Decl., Ex. 2 at 8, ¶ 20. The

**Page 8 of 25 -**   TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1   Archbishop is responsible for the governance of Debtor. Conway Decl., Ex. 4 at 3, 4; Ex. 5

2   at 2, 9; Ex. 9 at 2, 4; Ex. 11 at 2, 3; Ex. 13 at 2; Ex. 26, at 6-8.

3              27.    The Archbishop has final authority to suppress parishes. Conway

4   Decl., Ex. 4 at 10, 11; Ex. 19 at 2. Declaration of Monsignor Robert W. McElroy.

5   **III.    ARGUMENT**

6         **A.    A BFP WOULD HAVE NO CONSTRUCTIVE NOTICE OF**

              **DEFENDANT CLASS MEMBERS' PURPORTED EQUITABLE**

7                 **INTERESTS IN THE TEST PROPERTIES**

8           Defendants argue that no prudent purchaser of property from Debtor would

9   complete such a transaction without embarking on a detailed investigation of the purported

10   interests of the class defendants, which would include an inquiry into the canons of the

11   Catholic church. They claim that a purchaser would be put on notice of such interests by the

12   fact that Debtor is a corporation sole, Debtor's internal conveyancing practices, and by the

13   use of the Test Properties. These arguments ignore the requirements of Oregon real property

14   law and § 544(a)(3). Moreover, they are intertwined with the same illogical reading of

15   Oregon's corporation sole statute and Debtor's Articles of Incorporation that Debtor offered

16   in response to the Committee's Second Motion for Partial Summary Judgment. In tacit

17   acknowledgment of the weakness of their argument, the defendants have declined to come

18   forward with *any* evidence that purchasers of real property from Debtor have *ever* sought

19   release from or demanded the assignment of any other party's equitable interests. That is

20   because there is no such evidence.

21             **1.    INQUIRY NOTICE HAS BEEN STATUTORILY ABOLISHED**

22                  **IN OREGON**

23           Defendants first take issue with the Committee's reliance on ORS 93.643.

24   This statute, which was enacted in 1987, provides as follows:

25               To give *constructive notice* of an interest in real property, a

            person *must have documentation of the interest recorded* in the

26               indices maintained under ORS 205.130 in the county where the

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1               property is located. Such recordation, and no other record,
constitutes constructive notice to any person of the existence of
2               the interest . . . . ORS 93.643(1) (emphasis added).

3          In construing an Oregon statute, the court's task is to discern the intent of the

4  legislature by examining both the text and context of the statute in accordance with relevant

5  rules of construction. *PGE v. Bureau of Labor & Industries*, 317 Or. 606, 610-11 (1993).

6  The plain language and context of ORS 93.643 suggest that the legislature intended to

7  abolish inquiry notice. At the time this statute was enacted, the term "constructive notice"

8  was a term of art in Oregon real property law and embraced both "record" and "inquiry"

9  notice. *High v. Davis*, 283 Or. 315, 333 (1978). The context of ORS 93.643—one of a series

10  of measures intended to simplify and clarify the process of giving notice under Oregon's

11  property statutes—is consistent with the abolition of inquiry notice.

12          The defendants first attempt to counter the plain meaning of the statute by

13  offering the reminiscences of a title insurance executive and an unsubstantiated footnote in a

14  practitioners' guide to real estate law. This is not legislative history that is entitled to judicial

15  notice. They next point to a handful of post-1987 Oregon cases which reference a buyer's

16  duty of inquiry. However, there is no evidence that the courts in these cases considered the

17  impact of ORS 93.643. Finally, the defendants suggest that the exclusion of inquiry notice in

18  title insurance policies is evidence of the continued viability of inquiry notice. Such a clause

19  indicates possible risks that a title insurer wishes to shift onto the insured, but it is not

20  evidence of what is or is not Oregon law. It would be reasonable for this Court to predict

21  that, faced with a case involving the construction of ORS 93.643, the Oregon Supreme Court

22  would rule that inquiry notice has been statutorily abolished. *See Wyler Summit Partnership*

23  *v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 663 n.10 (9th Cir. 1998) (describing

24  federal court's duty under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)).

25  * * *

26  * * *

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1      **2.**    **UNDER VENERABLE PRINCIPLES OF REAL PROPERTY**
                **LAW, A PURCHASER HAD NO INQUIRY NOTICE OF**
2                  **DEFENDANTS' PURPORTED INTERESTS IN THE TEST**
                **PROPERTIES**

3

4          Even if inquiry notice remains viable in Oregon, a prospective purchaser on

5  July 6, 2004 would have been under no duty to inquire into the unrecorded, purported

6  interests of the defendants.

7            **a.**    **Debtor's Articles and Oregon Corporation Law Do Not**
                    **Provide Inquiry Notice**
8

9          Under Oregon case law, a purchaser has inquiry notice "when the existence of

10  a claimed interest in real property may be determined through investigation based on facts

11  available to the claimant that would cause a reasonable person to make such inquiry."

12  *Gorzeman v. Thompson*, 162 Or. App. 84, 94 (1999). The most common form of inquiry

13  notice arises when a party with an unrecorded interest occupies the property. *See infra* at

14  14-18 (explaining why occupancy of Debtor's property in this case does not create inquiry

15  notice). Inquiry notice can also arise from other facts available to the purchaser, but Oregon

16  courts have never taken the position that purchasers are bound by unrecorded interests if they

17  fail to engage in a wide-ranging, open-ended historical investigation of the seller and the

18  property. This would impose an expensive, unreasonable and unwieldy burden on

19  purchasers, and would cripple the efficiency of real estate transactions in Oregon. *Accord, In*

20  *re Clearwater*, 1997 WL 101975, at *3 (Bankr. D. Or. Feb. 28, 1997) (noting that "the

21  purchaser is charged with notice of every fact that a *reasonable* inquiry would have disclosed

22  (emphasis added)).

23          In each of the cases cited by defendants, the purchasers either ignored facts

24  that actually came to their attention or failed to determine the meaning of ambiguous terms in

25  * * *

26  * * *

**Page 11 of 25 -** TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

**Tonkon Torp**ʟʟᴘ
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  recorded documents.[4]  Defendants seek to benefit from these prior Oregon cases by

2  suggesting that a land purchase from Debtor is, in and of itself, such a complex and

3  anomalous transaction that a buyer would be on inquiry notice.  These arguments are not

4  convincing.

5             First, defendants claim that Oregon nonprofit corporation law would place a

6  purchaser under a duty of inquiry.  This assertion fails for the all the reasons set forth in the

7  Tort Claimants Committee's Memorandum in Support of Second Motion for Partial

8  Summary Judgment dated May 5, 2005 (hereafter, "Committee's Second MPSJ Opening

9  Brief"), as well as Plaintiff's Reply to Responses to Tort Claimants Committee's Restated

10  Second Motion for Partial Summary Judgment and Debtor's Cross Motion for Partial

11  Summary Judgment (hereafter "Committee's Second MPSJ Reply").  ORS 65.067 does not

12  require the internal governance of a corporation sole "in conformity with" canon law.

13  ORS 65.042 merely provides that no provision of the Oregon Nonprofit Corporation Act (the

14  "Act") is enforceable to the extent that it would already be trumped by the state or federal

15  * * *

16

17  [4] In *High v. Davis*, 283 Or. 315 (1978), a mortgage firm received a title report that excluded
    the rights of members of a hunting and fishing club, but it did not make further
18  investigations.  The Oregon Supreme Court held that the mortgage firm was on inquiry
    notice of the club members' interests. *Id.* at 333-34.  In *Akins v. Vermast*, 150 Or. App. 236
19  (1997), an investor responded to an advertisement seeking a $20,000 loan for the purchase of
    a $40,000 lot.  At the time of closing, the borrower inexplicably requested that the investor
20  provide a portion of the loan proceeds in cash.  The borrower then made a $5,000 down
    payment on the lot and disappeared with $15,000 of the investor's money.  The Oregon Court
21  of Appeals held that the investor had inquiry notice of the borrower's fraud arising from the
    discrepancy between the transaction as initially contemplated and the borrower's subsequent
22  request for cash. *Id.* at 243-44.  Finally, defendants rely heavily on *Klamath Falls Assembly
    of God v. State Highway Comm.*, 255 Or. 211 (1970).  In this rather unremarkable case, the
23  deed to a church's land referenced an adjoining parcel that had been conveyed to the state for
    "highway purposes."  The church never investigated to determine the nature of the
24  contemplated highway and, several years later, were chagrined to learn that the state was
    building a road with no access to their property.  The Oregon Supreme Court held that the
25  church had constructive notice, because the state highway commission had published its
    intentions concerning the highway six years before the church purchased the land. *Id.*
26  at 214-15.

**Page 12 of 25** -  TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
                    PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3))

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1 | constitution.[5]

2 |     Rather than being prompted to make inquiries into Debtor's internal canons, a

3 | prospective purchaser who examined the Act and its predecessors would instead learn that

4 | Oregon law gives nonprofit corporations such as Debtor great flexibility in selling property.

5 | ORS 65.077 grants a nonprofit corporation the power to dispose of property unless its articles

6 | provide otherwise, and ORS 65.531(1)(a) enables a nonprofit to dispose of all or

7 | substantially all of its assets. The purchaser would also notice that ORS 65.531(2) authorizes

8 | a nonprofit to sell assets without the approval of its members "or any other person," unless

9 | required by its articles of incorporation. The 1872 statutes under which Debtor first

10 | incorporated expressly state that a religious corporation may dispose of property "at

11 | pleasure." Or. Gen'l Laws, 136 § 4.

12 |     If the purchaser turned to Debtor's Articles of Incorporation, he or she would

13 | conclude that it is not necessary to examine the internal canons of the Catholic church or

14 | inquire into the interests of persons who use the Test Properties.[6] Instead, the Articles would

15 | give the purchaser confidence in dealing directly with the Archdiocese:

16 |   &bull; Debtor's Articles state that the purposes of the corporation sole are to
17 | provide for worship according to Roman Catholic doctrine and canons and the "acquiring, holding and disposing of church property for the benefit of the Roman Catholic Church for works of charity and for
18 | public worship."[7] The articles provide that the Archbishop and his successors must be appointed in conformity with canon law, but these

19 |

20 | [5] See, specifically, Committee's Second MPSJ Opening Brief at 21; Committee's Second MPSJ Reply Brief at 18-27.

21 |

22 | [6] If Debtor's view is correct, would a purchaser be required to hire a "canon lawyer" to assist with the transaction and receive a "legal opinion" from a canon lawyer representing the seller?

23 |

24 | [7] These provisions of Debtor's Articles appear to have been carefully drafted to further the purposes of the original incorporator—the creation of a secular entity for managing the secular affairs of the Archdiocese. This statement provides that worship—the quintessential

25 | internal activity of a religious organization—must be according to Catholic doctrine and canons. By contrast, the provision of the Articles that deals with the disposal of property

26 | does not reference canon law.

**Page 13 of 25 -** TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

1    provisions would only be relevant if the purchaser had reason to
     believe that the Archbishop's appointment was procedurally irregular.
2

3    •    The original and Supplementary Articles of the Archdiocese of Oregon
          City (later known as the Archdiocese of Portland in Oregon) similarly
          provide that it has the power to sell, convey, and dispose of "any and
4         all real or personal property for the use and benefit of the . . . . diocese,
          and for the use and benefit of the religious denomination . . . . , and to
5         administer the temporalities of such diocese . . . . . " Factual
          Supplement, *supra* at 5.
6

7    •    The 1991 Articles of Merger between Debtor and the Archdiocese of
          Portland in Oregon confirmed that each is "a religious corporation
          organized for the purpose of holding and administering the assets of
8         and conducting the corporate purposes and mission of the Roman
          Catholic Archdiocese of Portland in Oregon." *Id.* at 4.
9

10        In sum, a purchaser would conclude that he or she was dealing with a

11   corporation empowered by Oregon nonprofit corporation law and its own articles of

12   incorporation to dispose of real property to which it holds title.  Unless a purchaser had

13   reason to believe that it was dealing with a "rogue" Archbishop who was improperly

14   appointed, the inquiry into Debtor's power to sell property would be at an end.

15                    **b.    The School and Parish Defendants' Use of The Test
                             Properties Does Not Provide Inquiry Notice**
16

17        Defendants claim that the school and parish defendants' occupancy and use of

18   the Test Properties provides inquiry notice of their purported equitable interests.[8]  This

19   argument ignores over 150 years' worth of law on the forms of use and occupancy that

20   provide inquiry notice of a third party's equitable interests.  The legal standard for

21   determining whether occupancy gives rise to a duty of inquiry is clear:

22                    Possession of land which will be sufficient to put a purchaser on
                      inquiry and affect him with notice of the possessor's rights and
23

     _____

24   [8] Defendants also make assertions as to what pastors and parishioners would say if
     approached by a prospective purchaser.  Such speculation is irrelevant in determining
25   whether a purchaser is on inquiry notice.  The issue in a case involving inquiry notice is not
     what the purchaser would have learned by asking questions, but whether there was a duty to
26   ask questions in the first place.

**Page 14 of 25** -  TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
              PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3))

1    equities must be actual, open, visible, notorious, distinct, clear,
     exclusive and unequivocal . . . . . [I]t must not only be actual,
2    open, visible, and exclusive, but also unambiguous, so as not to
     be susceptible to misconstruction or misunderstanding. 92A
3    C.J.S. *Vendor and Purchaser* § 508 (updated June 2005).

4    The occupier's possession must be sufficiently open, exclusive,
     and inconsistent with a title in the record owner to place a
5    prudent person on inquiry by indicating that someone other
     than the record owner claims some right in the premises."
6    Joyce Palomar, 3 PATTON & PALOMAR ON LAND TITLES § 674
     (3d ed. updated 2005); *see also* Joyce Palomar, 1 PATTON &
7    PALOMAR ON LAND TITLES § 12 (3d ed. updated 2005);
     Herbert T. Tiffany & Basil Jones, LAW OF REAL PROPERTY
8    § 1288 (3d ed. updated November 2004) (possession must be
     "sufficiently open, continuous and unambiguous in character to
9    indicate to the purchaser . . . . that some person other than the
     vendor claims possession thereof").

10

11          Oregon courts have endorsed these principles for over a century.  In 1893, the

12   Oregon Supreme Court held that "[o]pen and exclusive possession is sufficient to put a

13   purchaser upon inquiry . . . . The rule is . . . . that possession, to be notice, must be open,

14   visible, exclusive, and unambiguous, not liable to be misunderstood or misconstrued."

15   *Rayburn v. Davisson*, 22 Or. 242, 244-45 (1893) (internal citations and quotations omitted).[9]

16   Under this exacting standard, the defendants' occupancy of the Test Properties would not

17   create inquiry notice as to their purported equitable interests.

18   * * *

19

20   [9] The above-described principles have been endorsed in so many jurisdictions, for so long,
     that space constraints preclude a complete listing of cases.  A representative sample includes
21   the following: *Townsend v. Little*, 109 U.S. 504, 511 (1883) (construing Utah law);
     *Touchstone v. Peterson*, 443 So.2d 1219, 1225 (Ala. 1983); *Valley Nat'l Bank of Arizona v.*
22   *Avco Dev. Co.*, 14 Ariz. App. 56, 61 (1971); *Kane v. Huntley Financial*, 146 Cal. App. 3d
     1092, 1095 (1983) (possession must be inconsistent with record title); *High Fidelity*
23   *Enterprises, Inc. v. Hull*, 210 Cal. App. 2d 279 (1962) (possession must be exclusive); *Clay*
     *Properties, Inc. v. Washington Post Co.*, 604 A.2d 890, 896 (D.C. Ct. App. 1992) (possession
24   must be "sufficiently distinct and unequivocal so as to put the purchaser on his guard");
     *Bacote v. Wyckoff*, 251 Ga. 862, 866 (1984); *Beals v. Cryer*, 99 Ill. App. 3d 842, 844-45
25   (1981); *Olson v. Olson*, 203 Minn. 199, 205 (1938); *Kransky v. Hensleigh*, 146 Mont. 486,
     492 (1965); *Patten v. Moore*, 32 N.H. 382 (1855); *Gregory v. Alexander*, 51 Tenn. App. 307,
26   315 (1963).

**Page 15 of 25** -  TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
                     PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

1

**(1)    The Presence of Defendant Class Members at The
Test Properties is Consistent With Record Title**

2

3          No duty of inquiry arises if the occupancy by another party is consistent with

4    record title. *See In re Thomas*, 147 B.R. 526, 530-31 (9th Cir. B.A.P. 1992) (California law);

5    *see also* 1 PATTON & PALOMAR ON LAND TITLES § 12 ("[F]or possession to afford notice of

6    an unrecorded interest, enough inconsistency must exist between the possession and the

7    record to raise a question in the mind of anyone having a transaction with the holder of the

8    record title."). The occupancy must be unambiguous and "not liable to be misunderstood or

9    misconstrued." *Rayburn*, 22 Or. at 244-45.

10          A purchaser viewing the Test Properties would see nothing inconsistent with

11   Debtor's exclusive ownership and plenary power to convey property. A hierarchical church,

12   like universities and other nonprofit institutions, typically has many divisions, each with

13   administrative offices and employees, as well as licensees and invitees who are on its

14   property at any given time. A prudent purchaser would expect to see parishioners and parish-

15   level employees on the Test Properties. Certainly, any purchaser would expect to see

16   property owned by the Roman Catholic Archdiocese being used by Catholics as a Catholic

17   facility for the purposes of the Catholic Church. It would be unreasonable to require such a

18   purchaser to inquire into whether these individuals claim equitable interests in the property.

19   For this Court to rule otherwise would cast doubt on the ability of any purchaser to take good

20   title from a nonprofit organization with donors, program participants or administrative

21   subdivisions.

22          Defendants' own conduct and representations would lead a prudent purchaser

23   to conclude that Debtor is a unitary entity that encompasses parishes and schools and can

24   give unfettered title to the Test Properties. None of the 10 designated parishes and school is

25   an entity organized under Oregon law. None has registered an assumed business name.

26   Debtor has repeatedly asserted in litigation that its parishes and schools are not separate

**Page 16 of 25** - TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3))

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    entities from Debtor and that it owns land "at" a parish.  Several reported cases hold that

2    Debtor owns the property at its parishes.[10]  Debtor's website lists its parishes alphabetically

3    by city and by county.  In each instance, the parishes are identified as the "parishes of the

4    Archdiocese of Portland" or are simply listed under heading "Archdiocese of Portland."  The

5    website provides links to the web pages of four of the designated test parishes and Regis

6    High School.  Each parish's web page reflects that it is a Catholic church or a Catholic parish.

7    This information is consistent with Debtor's ownership of the Test Properties.  It belies any

8    claim by the parish and school defendants that their occupancy is "unambiguous" evidence of

9    their purported interests that is "not liable to be misunderstood." *Rayburn*, 22 Or. at 244-45.

10
                        **(2)    Defendant Class Members' Occupancy of The Test
11                                Properties is Not Exclusive**

12                  When two or more persons jointly occupy property, one of whom is the record

13    owner, a purchaser is under no duty to inquire into the rights of others.  The rationale for this

14    rule is that "where a prospective purchaser or encumbrancer of property finds the record

15    owner in occupancy thereof, there is normally nothing in the mere circumstance that there are

16    other occupants of the property to arouse any suspicion that such others are claiming an

17    interest inconsistent with the record title."  Annotation, *Occupancy of Premises by Both*

18    *Record Owner and Another as Notice of Title or Interest of Latter*, 2 A.L.R. 2d 857, at § 2

19    (1948); *see also* 1 PATTON & PALOMAR ON LAND TITLES § 12.

20
_____

21    [10] The Committee has already examined Debtor's representations in *Mattson, Thorne* and
      *Central Catholic*.  *See* Committee's Second MPSJ Opening Brief at 25-31; Committee's

22    Second MPSJ Reply Brief at 13-17.  In addition to those cases, Debtor has repeatedly
      engaged in tax litigation, which proceeded on the assumption that Debtor owns a summer

23    camp and rectories.  *See Roman Catholic Archdiocese of the Archbishop of Portland in*
      *Oregon v. Dept. of Revenue*, 1995 WL 33130 at *1 (Or. Tax Jan. 18, 1995) (Debtor "owns"

24    rectory of St. Edward's Catholic Parish in Keizer); *Archdiocese of Portland in Oregon v.*
      *Dept. of Revenue*, 14 Or. Tax 264, 265 (1998)(1998 WL 101698, at *1) (Debtor appealed

25    denial of property tax exemption for caretaker's residence "at its summer youth camp");
      *Worrell v. Dept. of Revenue*, 282 Or 531, 531 (1978) (appeal from denial of property tax

26    exemption for the "Archdiocese's convent and rectories" in Yamhill County).

**Page 17 of 25** -  TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
              PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

In 1903, the Oregon Supreme Court cited four earlier cases for the proposition that:

> the open, *exclusive*, and notorious possession of property by a stranger to the title is sufficient to put those who deal with it upon inquiry concerning the rights and equities of the party in possession, and to charge them with knowledge thereof when no inquiry is made.

*Randall v. Lingwall*, 43 Or. 383, 386 (1903) (emphasis added).

More recently, the Oregon Supreme Court stated that a plaintiff had constructive notice of a defendant's unrecorded interest where the defendant was "in open, exclusive and notorious possession at all times." *Chaffin v. Solomon*, 255 Or. 141, 149 (1970).

Each of the Test Properties is a Catholic church, a Catholic school or a Catholic cemetery. All parish and school personnel are employees of Debtor. Additionally, all pastors and administrative personnel are appointed by the Archbishop. Factual Supplement, *supra*, at 8.

Any parishioner or other individual Defendant Class member who could conceivably claim occupancy of a Test Property would at best be in joint occupancy with the pastor and Debtor's employees. Under black-letter Oregon law, such occupancy would not put a reasonable prospective purchaser on inquiry notice.

> **(3)    Defendant Class Members' Occupancy of The Test Properties is Temporary and Occasional**

A purchaser is not put on inquiry notice by an occupancy that is only temporary or occasional. 3 PATTON & PALOMAR ON LAND TITLES § 674; 92A C.J.S. *Vendor and Purchaser* § 508; *see also Chaffin*, 255 Or. at 149 (holding that judgment creditor had constructive knowledge of interests of grantee with unrecorded deed where grantee was in "possession at all times"); *Ortiz v. Jacquez*, 420 P.2d 305, 308 (N.M. 1966) ("Intermittent or * * *

**Page 18 of 25** - TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    occasional use of land is insufficient to operate as notice to a purchaser."); *Black v. Black*,

2    202 S.W.2d 659, 664 (Tenn. 1947) (same).

3            Individual Defendant Class members' occupancy of the Test Properties is

4    temporary and occasional, and would be recognized as such by a reasonable purchaser.

5    Nothing about their presence on the properties would prompt a purchaser to inquire about

6    potential equitable interests.

7            **c.    Debtor's Internal Practices Do Not Provide Inquiry Notice**

8            Debtor asserts that its internal practices would put a prospective purchaser on

9    inquiry notice of the parish's purported interests, because a purchaser typically deals with

10   parish representatives before the Archdiocesan Property Office completes the transaction.

11   This argument fails for two principal reasons.

12           First, it misconstrues the nature of this Court's inquiry under § 544(a)(3).  A

13   court's duty under § 544(a)(3) is to engage in a thought experiment:  If the debtor had

14   conveyed the property at the moment of the bankruptcy filing to a BFP without actual

15   knowledge, would the BFP "come ahead of the 'true' owner's rights . . . "?  *Belisle v. Plunkett*,

16   877 F.2d 512, 515 (7th Cir. 1989).  The premise of this thought experiment is that the

17   conveyance occurred <u>without</u> the consent of other parties, who are now engaged in a priority

18   contest with the BFP.  The prior practices of Debtor are irrelevant because § 544(a)(3)

19   assumes that the debtor did not follow such a practice with the BFP.  Debtor's theory would

20   impose actual knowledge of debtor's prior conveyancing policies on the BFP, something that

21   § 544(a)(3) forbids.

22           Second, Debtor's internal practices are consistent with a unitary structure that

23   encompasses the test parishes.  At the risk of repetition, each parish is unincorporated,

24   Debtor directly employs the individuals who work there, and the pastor is directly appointed

25   by and supervised by the Archbishop.  All transfers of real property must be and, in the past,

26   have been signed by the Archbishop or his designee.  Debtor's Resp. at 5.  The Archbishop

**Page 19 of 25** - TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3))

1  can dissolve the parish.  There is nothing unusual about a corporation giving an

2  unincorporated division the autonomy to initiate transactions.  Nevertheless, the

3  corporation—and not its division—is the party to the transaction.  *AK Steel Corp. v. Viacom,*

4  *Inc.*, 835 A.2d 820, 823-824 (Pa. Super. 2003); *Gen'l Dynamics Corp. v. United States*, 47

5  Fed. Cl. 514, 530 (Fed. Cl. 2000) (corporation, not its division, was the "only entry with legal

6  import" in the "Name and Address of Contractor" box of letter contract).

7

8

### d.    Publicity Surrounding the Roman Catholic Church's Recent Woes Does Not Provide Inquiry Notice

9          The Parish Committee points to an article that appeared in the *Boston Globe*

10  concerning parish and school closures in Boston, as well as an *Oregonian* article forecasting

11  issues in this bankruptcy, and claim that such publicity would put a prospective buyer on

12  inquiry notice.  There are at least two difficulties with this argument.  In the first place, the

13  Parish Committee has not come forward with a single case suggesting that newspaper articles

14  can provide constructive notice of an interest in real property.[11]  Second, the pre-filing

15

---

16  [11] Instead, the Parish Committee misleadingly relies on cases that have nothing to do with
    constructive notice in the conveyancing real property context.  In *Barnett v. City of Yonkers*,

17  731 F. Supp. 594 (S.D.N.Y. 1990), the issue was whether a school board had constructive
    notice of asbestos in a school.  The court denied the board's motion for summary judgment.  It

18  concluded that there was a jury issue as to whether the board had constructive notice of the
    dangerous condition on its property by 1970 because (1) the board had actual knowledge by

19  1970 that certain ceilings contained asbestos and were crumbling, *and* (2) by 1970, articles
    had appeared that discussed the dangers of asbestos.  *Id.* at 600-01.  Given its procedural

20  context (a decision denying summary judgment), *Barnett* is not even good authority on
    constructive notice of landowners.  It has no bearing whatsoever on what forms of notice

21  bind a BFP.

22          *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 378-81 (S.D.N.Y. 2003),
    applied the principle that, for statute of limitations purposes, investors are charged with

23  constructive knowledge of securities fraud when "storm warnings" appear in the press or
    analysts' reports.  *Id.* at 378-81; *see also Addeo v. Braver*, 956 F. Supp. 443, 449 (S.D.N.Y.

24  1997) (discussing "storm warnings").

25          *Klamath Falls* does not stand for the proposition that newspaper articles provide
    constructive notice to purchasers of real property.  The purchaser in that case encountered an

26  ambiguous term—"highway purposes"—in a deed.  It was charged with constructive
    knowledge of a publicly available official document that defined the ambiguous term.  255

**Page 20 of 25** -  TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3))

1    publicity in this case would, at most, provide a purchaser with <u>actual</u> notice of the purported

2    equitable interests.  However, actual knowledge is irrelevant under § 544(a)(3).

3              **e.    Defendants Do Not Have Any Evidence that Purchasers of
              Debtor's Property Have Sought Release from the
4              Purported Equitable Interests**

5              Defendants argue that a prudent purchaser of property from Debtor would

6    ascertain the canonical validity of the transaction and engage in a detailed examination of the

7    relationship between Debtor, its parishes and schools, and other parties.  If a purchaser took

8    these steps and concluded that the property was encumbered with unrecorded equitable

9    interests, the only prudent course of action would be to obtain a quitclaim deed or written

10   release of those interests.  Defendants have failed to adduce a single example of a purchaser

11   in 130 years who obtained such protection.  If defendants are sincere in their conviction that

12   the purported equitable interests are real, their argument amounts to the position that every

13   prior purchaser of real property from Debtor was imprudent.  The fact is that purchasers have

14   never taken such measures because they have been dealing with a corporation empowered to

15   dispose of property without regard to the interests of any other party.

16   **B.    RFRA AND THE FIRST AMENDMENT DO NOT BAR THE
         ROUTINE ENFORCEMENT OF SECTION 544(A)(3)**
17

18             In a final attempt to show that they are not subject to generally applicable

19   principles of bankruptcy and property law, Debtor and the Parish Committee assert that this

20   Court's enforcement of § 544(a)(3) is barred under RFRA and the First Amendment.  This

21   argument fails for the all the reasons that the Committee has set forth in the context of its

22   Second Motion for Partial Summary Judgment.  *See* Committee's Second MPSJ Opening

23   Brief at 2-19; Committee's Second MPSJ Reply at 17-41.

24   * * *

25

26   Or. at 214-15.

**Page 21 of 25** -  TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
            PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

1  **1.    RFRA**

2      RFRA applies here only if defendants can show that the avoidance of the

3  purported equitable interests would impose a substantial burden on their exercise of religion,

4  and if the enforcement of § 544(a)(3) is not the least restrictive means of advancing a

5  compelling governmental interest.

6  **a.    Substantial Burden**

7      Defendants first argue that the enforcement of § 544(a)(3) would burden their

8  exercise of religion because the avoidance of the purported equitable interests is at odds with

9  canon law.  As the Committee has already explained, there is no substantial burden here

10  because (1) Debtor deliberately selected its current organizational structure from a variety of

11  options; (2) the conduct at issue—Debtor's choice of corporate form, the manner in which it

12  holds title, and the decision to file for bankruptcy—is secular; and (3) the consequence of

13  Section 544(a)(3)'s enforcement would be nothing more than a reduction in the assets of a

14  religious organization or group.  *See* Committee's Second MPSJ Reply at 36-38.

15      Second, Debtor offers the curious claim that the enforcement of

16  Section 544(a)(3) would burden religion by "diverting real estate set aside to advance the

17  ministry of the Church to be used to pay tort claimants for claims that arose from the alleged

18  wrongful conduct of an earlier generation of Catholic priests and those with authority over

19  them."  Debtor's Response at 14-15.  This argument ignores the fact that some tort claimants

20  were harmed by Debtor's priests within recent memory.  It also ignores the fact that Debtor is

21  a nonprofit corporation that can "sue and be sued."  ORS 65.077(1), and is liable for its torts.

22  **b.    Least Restrictive Means and Compelling Governmental
23  Interest**

24      Even if defendants could show a substantial burden on their exercise of

25  religion, this Court would be justified in enforcing § 544(a)(3).  There is a compelling

26  governmental interest in the routine and predictable enforcement of the Bankruptcy Code.

**Tonkon Torp**LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1   Section 544(a)(3) is an integral component of the Code.  There is also a compelling

2   governmental interest in ensuring that the victims of crime, particularly victims of childhood

3   sexual abuse, have a legal remedy.  The least restrictive means of advancing these

4   compelling governmental interests is to allow bankruptcy courts to enforce the Code

5   regardless of the religious status of the debtor.  *See* Committee's Second MPSJ Opening Brief

6   at 16-19; Committee's Second MPSJ Reply at 35-41.

### 2.    FIRST AMENDMENT

8          Debtor, echoed by the Parish Committee, argues that the "Church Autonomy

9   Doctrine" requires this Court to defer to the internal canons of the Roman Catholic Church

10  because an adverse ruling in this case would disappoint the expectations of donors and

11  somehow alter Debtor's polity.  The Committee has already addressed this argument in its

12  Second Motion for Partial Summary Judgment.  Despite Debtor's novel reading of the First

13  Amendment, autonomy principles only apply to the internal, ecclesiastical affairs of a

14  church.  This case, by contrast, involves Debtor's secular dealings with third parties.  *See*

15  Committee's Second MPSJ Opening Brief at 2-16; Committee's Second MPSJ Reply

16  at 27-35.[12]

17  * * *

18  * * *

19

---

20  [12] In an attempt to find doctrinal moorings for its view that ordinary principles of property

21  law do not apply to religious organizations, Debtor has seized upon *Carnes v. Smith*, 236 Ga. 30 (1976).  Debtor expansively asserts that the United States Supreme Court's citation of this

22  case in *Jones v. Wolf* shows that "a church's authority to define its own polity is so great that church law regarding property ownership controls even when it produces an opposite result

23  from merely looking to the named transferee on a deed." Debtor's Response at 19.  *Carnes* does not serve Debtor's purposes for two reasons.  First, it involved an intrachurch dispute.

24  Second, the court's decision rested on a Georgia statute providing that trustees who hold church property are "subject to the authority of the church or religious society for which they

25  hold the same in trust . . . ." *Carnes*, 236 Ga. at 38, *discussing* GA. CODE ANN. § 22-508 (now codified at GA. CODE ANN. § 14-5-47).  Unfortunately for Debtor, there is no such law

26  in Oregon.  This is one of the reasons why a purchaser of Debtor's property would not be an inquiry notice of Debtor's internal canons.

**Page 23 of 25 -**  TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    **3.    IF THE COURT CONCLUDES THAT IT CANNOT APPLY
     § 544(A)(3), THE APPROPRIATE REMEDY IS DISMISSAL OF**
2    **THE CASE**

3    Should the Court conclude that it is prohibited from applying § 544(a)(3), the

4    appropriate remedy would be dismissal of this Case.  As the United States Bankruptcy Court

5    for the Eastern District of Washington recently stated:

6        If application of a particular Code section would constitute a
         substantial burden on religion, the appropriate remedy would
7        be dismissal of the bankruptcy case.  The code is an integrated
         statutory scheme.  Bankruptcy debtors who voluntarily choose
8        to participate in that statutory scheme, even those of a religious
         nature, should not be able to "pick and choose" among Code
9        sections. *In re Catholic Bishop of Spokane*, 329 B.R. 304, 324
         (Bankr. E.D. Wash. 2005).

10

11   **C.    THE ALLEGED EXISTENCE OF EQUITABLE INTERESTS HAS NO
            BEARING ON THIS MOTION FOR SUMMARY JUDGMENT**

12   The parish and school defendants go to great lengths to assert the existence of

13   their purported equitable interests in the Test Properties.  This argument has no bearing on

14   the Committee's motion for summary judgment.  For the purposes of this motion, even if the

15   Court assumes the existence of the purported equitable interests, the Court can determine that

16   they are avoidable under Section 544(a)(3).  There is no need for the Court to determine

17   whether the purported equitable interests actually exist.

18   **IV.    CONCLUSION**

19   For the foregoing reasons, the Court should grant the Committee's Third

20   Motion for Partial Summary Judgment. There is no issue of material fact as to whether any

21   * * *

22   * * *

23   * * *

24   * * *

25   * * *

26   * * *

**Page 24 of 25** - TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  unrecorded equitable interests in the Test Properties are avoidable under § 544(a)(3), and the

2  First Amendment and RFRA are no impediment to the Court's enforcement of the statute.

3     DATED this 7th day of November, 2005.

4        TONKON TORP LLP

5

6        By _____

7           ALBERT N. KENNEDY, OSB No. 82142
            Attorneys for Tort Claimants Committee

8  032545\00001\659336 V001

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 25 of 25 -**  TORT CLAIMANTS COMMITTEE'S REPLY BRIEF RE THIRD MOTION FOR
             PARTIAL SUMMARY JUDGMENT (11 U.S.C. § 544(a)(3)

**EXHIBIT 1**

**TEST PROPERTIES**
**TORT CLAIMANTS COMMITTEE'S**
**THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

| PROPERTY TAX ACCT. | CHURCH/SCHOOL | CITY | COUNTY | PRELIM. TITLE REPORT[1] |
|---|---|---|---|---|
| R359873 | St. Elizabeth Ann Seton Church | Aloha | Washington | Ex. 1 |
| 860773 | St. Mary Our Lady of the Dunes Church | Florence | Lane | Ex. 2 |
| 860781 | St. Mary Our Lady of the Dunes Church | Florence | Lane | Ex. 2 |
| 860799 | St. Mary Our Lady of the Dunes Church | Florence | Lane | Ex. 2 |
| 116204 | St. Michael Church | Oakridge | Lane | Ex. 3 |
| 955045 | St. Michael Church | Oakridge | Lane | Ex. 3 |
| 1376843 | St. Philip Benizi Church | Oregon City | Clackamas | Ex. 4 |
| 1563365 | St. Philip Benizi Church | Oregon City | Clackamas | Ex. 4 |
| 907629 | St. Philip Benizi Church | Oregon City | Clackamas | Ex. 4 |
| R315539 | Holy Redeemer Church | Portland | Multnomah | Ex. 5 |
| R502476 | Holy Redeemer Church | Portland | Multnomah | Ex. 5 |
| R325476 | St. Birgitta Church | Portland | Multnomah | Ex. 6 |
| R325478 | St. Birgitta Church | Portland | Multnomah | Ex. 6 |
| R113793 | St. John Fisher Church | Portland | Multnomah | Ex. 7 |
| R329515 | St. John Fisher Church | Portland | Multnomah | Ex. 7 |
| R329535 | St. John Fisher Church | Portland | Multnomah | Ex. 7 |
| R329566 | St. John Fisher Church | Portland | Multnomah | Ex. 7 |
| R73132 | Queen of Peace Church | Salem | Marion | Ex. 8 |
| R81395 | Queen of Peace Church | Salem | Marion | Ex. 9 |
| R34218 | Immaculate Conception Church | Stayton | Marion | Ex. 10 |
| R103753 | Immaculate Conception Church | Stayton | Marion | Ex. 11 |
| R103810 | Immaculate Conception Church | Stayton | Marion | Ex. 12 |
| R103811 | Immaculate Conception Church | Stayton | Marion | Ex. 13 |
| R103812 | Immaculate Conception Church | Stayton | Marion | Ex. 14 |
| R103848 | Immaculate Conception Church | Stayton | Marion | Ex. 15 |
| R103880 | Immaculate Conception Church | Stayton | Marion | Ex. 16 |
| R103930 | Immaculate Conception Church | Stayton | Marion | Ex. 17 |
| R103931 | Immaculate Conception Church | Stayton | Marion | Ex. 18 |
| R103932 | Immaculate Conception Church | Stayton | Marion | Ex. 19 |
| R34210 | Immaculate Conception Church | Stayton | Marion | Ex. 20 |
| R34219 | Immaculate Conception Church | Stayton | Marion | Ex. 17 |
| R34310 | Regis High School | Stayton | Marion | Ex. 22 |
| R34312 | Regis High School | Stayton | Marion | Ex. 22 |

032545\00001\645666 V001

---

[1] All of the Preliminary Title Reports are attached to the Affidavit of Malcolm Newkirk. The exhibit numbers refer to the Newkirk exhibit number for each such Preliminary Title Report.

**EXHIBIT 2**
**TEST PROPERTIES**
**TORT CLAIMANTS COMMITTEE'S MEMORANDUM IN SUPPORT OF THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT**

| PROPERTY TAX ACCT. | CHURCH/SCHOOL | PRELIM. TITLE REPORT[1] | USE[2] | VESTING DEEDS ATTACHED TO KENNEDY DECLARATION[3] | TRANSFERS[4] |
|---|---|---|---|---|---|
| R359873 | St. Elizabeth Ann Seton Church | Ex. 1 | Parish Facilities | Ex. 6 at 3, 39 | Newkirk Aff., Ex. 1 at 7-9, 14-19 |
| 860773 | St. Mary Our Lady of the Dunes Church | Ex. 2 | Parish Facilities | Ex. 6 at 12, 90 | |
| 860781 | St. Mary Our Lady of the Dunes Church | Ex. 2 | Parish Facilities | Ex. 6 at 12, 90 | |
| 860799 | St. Mary Our Lady of the Dunes Church | Ex. 2 | Parish Facilities | Ex. 6 at 12, 90 | |
| 116204 | St. Michael Church | Ex. 3 | Parish Facilities | Ex. 6 at 12, 91 | |
| 955045 | St. Michael Church | Ex. 3 | Parish Facilities | Ex. 6 at 12, 91 | |
| 1376843 | St. Philip Benizi Church | Ex. 4 | Parish Facilities | Ex. 6 at 4, 5, 45, 46, 49 | Newkirk Aff., Ex. 4 at 7, 8 |
| 1563365 | St. Philip Benizi Church | Ex. 4 | Parish Facilities | Ex. 6 at 4, 5, 47, 48 | |
| 907629 | St. Philip Benizi Church | Ex. 4 | Parish Facilities | Ex. 6 at 4, 5 | |
| R315539 | Holy Redeemer Church | Ex. 5 | Parish Facilities | Ex. 6 at 6, 51-54 | Newkirk Aff., Ex. 5 at 38-41 |
| R502476 | Holy Redeemer Church | Ex. 5 | Parish Facilities | Ex. 6 at 6, 51-54 | |

[1] All of the Preliminary Title Reports are attached to the Affidavit of Malcolm Newkirk. The exhibit numbers refer to the Newkirk exhibit number for each such Preliminary Title Report.

[2] The use of each Test Property is identified by Debtor on Exhibit 14 to Debtor's Amended Statement of Financial Affairs, Kennedy Decl., Ex. 4. Parish facilities, as used by Debtor, clearly include grade schools. Kennedy Decl., Exs., 8, 9, 10; Bachman Aff., Exs. 1-8; Lewis Decl., Exs. 1, 2.

[3] Unless otherwise noted, references are to exhibits attached to the Kennedy Declaration. Exhibits 1, 4, 5, 6 and 7 to the Newkirk Affidavit also include copies of vesting deeds.

[4] References are to transfers of an interest in the Test Properties that were executed by Debtor and that are included in the Preliminary Title Reports attached to the Newkirk Affidavit or are included in Exhibit 6 to the Kennedy Declaration or Exhibit 1 to the Second Kennedy Declaration.

EXHIBIT 2
TEST PROPERTIES
TORT CLAIMANTS COMMITTEE'S MEMORANDUM IN SUPPORT OF THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT

| PROPERTY TAX ACCT. | CHURCH/SCHOOL | PRELIM. TITLE REPORT[1] | USE[2] | VESTING DEEDS ATTACHED TO KENNEDY DECLARATION[3] | TRANSFERS[4] |
|---|---|---|---|---|---|
| R325476 | St. Birgitta Church | Ex. 6 | Parish Facilities | Ex. 6 at 6, 7, 55; Second Kennedy Decl., Ex. 1 at 4, 5, 20-24, 28, 29[5] | Kennedy Decl., Ex. 6 at 8, 57 |
| R325478 | St. Birgitta Church | Ex. 6 | Parish Facilities | Ex. 6 at 6, 7, 56 | Second Kennedy Decl., Ex. 1 at 4-6, 18-19, 33-39 |
| R113793 | St. John Fisher Church | Ex. 7 | Parish Facilities | Ex. 6 at 9-11, 83-85 | Newkirk Aff., Ex. 7 at 26, 29-32, 35-59 |
| R329515 | St. John Fisher Church | Ex. 7 | Parish Facilities | Ex. 6 @ 9-11, 60 | |
| R329535 | St. John Fisher Church | Ex. 7 | Parish Facilities | Newkirk Aff., Ex. 7 at 11 | |
| R329566 | St. John Fisher Church | Ex. 7 | Parish Facilities | Ex. 6 at 9-11, 86 | |
| R73132 | Queen of Peace Church | Ex. 8 | Parish Facilities | Ex. 6 at 13, 14, 92-95 | Newkirk Aff., Ex. 8 at 6-18 |
| R81395 | Queen of Peace Church | Ex. 9 | Parish Facilities | Ex. 6 at 13, 14, 96 | Second Kennedy Decl., Ex. 1 at 6, 7, 40-51 |
| R34218 | Immaculate Conception Church | Ex. 10 | Parish Facilities | Ex. 12 | |
| R103753 | Immaculate Conception Church | Ex. 11 | Parish Facilities | Ex. 6 at 14-17, 106, 107; Newkirk Aff., Ex. 11 at 5-8 | |
| R103810 | Immaculate Conception Church | Ex. 12 | Parish Facilities | Ex. 6 at 14-17, 114-116 | |
| R103811 | Immaculate Conception Church | Ex. 13 | Parish Facilities | Ex. 6 at 14-17, 117 | |
| R103812 | Immaculate Conception Church | Ex. 14 | Parish Facilities | Ex. 6 at 14-17, 118 | |

[5] The Policy of Title Insurance for this property was produced by Debtor and is attached to the Second Kennedy Decl., Ex. 1 at 20-24.

EXHIBIT 2
TEST PROPERTIES
TORT CLAIMANTS COMMITTEE'S MEMORANDUM IN SUPPORT OF THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT

| PROPERTY TAX ACCT. | CHURCH/SCHOOL | PRELIM. TITLE REPORT[1] | USE[2] | VESTING DEEDS ATTACHED TO KENNEDY DECLARATION[3] | TRANSFERS[4] |
|---|---|---|---|---|---|
| R103848 | Immaculate Conception Church | Ex. 15 | Parish Cemetery | Ex. 6 at 14-17, 119 | |
| R103880 | Immaculate Conception Church | Ex. 16 | Parish Cemetery | Ex. 6 at 14-17, 108-109 | |
| R103930 | Immaculate Conception Church | Ex. 17 | Parish Facilities | Ex. 6 at 14-17, 120, 124 | |
| R103931 | Immaculate Conception Church | Ex. 18 | Parish Facilities | Ex. 6 at 14-17, 121, 122 | |
| R103932 | Immaculate Conception Church | Ex. 19 | Parish Facilities | Ex. 6 at 14-17, 123 | |
| R34210 | Immaculate Conception Church | Ex. 20 | Parish Facilities | Ex. 6 at 14-17, 110-111 | |
| R34219 | Immaculate Conception Church | Ex. 17 | Parish Facilities | Ex. 6 at 14-17, 120, 124 | |
| R34310 | Regis High School | Ex. 22 | School Facilities | Ex. 6 at 18, 19, 125 | Kennedy Decl., Ex. 6 at 19, 127-130 |
| R34312 | Regis High School | Ex. 22 | School Facilities | Ex. 6 at 18, 19, 126 | Newkirk Aff., Ex. 22 at 11-15 |

0325451000010645996 V001