**Below is an Opinion of the Court.**

*Elizabeth L Perris*
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, AND SUCCESSORS, A CORPORATION SOLE, dba the ARCHDIOCESE OF PORTLAND IN OREGON,<br><br>        Debtor. | ) Bankruptcy Case<br>) No. 04-37154-elp11<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| TORT CLAIMANTS COMMITTEE,<br><br>        Plaintiff,<br><br>        v.<br><br>ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, AND SUCCESSORS, A CORPORATION SOLE, dba the ARCHDIOCESE OF PORTLAND IN OREGON, et al.,<br><br>        Defendants. | ) Adv. Proc. No. 04-3292<br>)<br>) AMENDED MEMORANDUM OPINION<br>) (TORT CLAIMANTS COMMITTEE'S<br>) THIRD MOTION FOR PARTIAL<br>) SUMMARY JUDGMENT)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

In this chapter 11[1] case of the Roman Catholic Archbishop of

---

[1]    Unless otherwise indicated, all chapter and section references
(continued...)

Page 1 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
        MOTION FOR PARTIAL SUMMARY JUDGMENT)

Portland in Oregon, and Successors, a Corporation Sole, dba the Archdiocese of Portland in Oregon ("debtor" or "the Archdiocese"), the Archdiocese has taken the position that, although it holds legal title to an extensive amount of real estate, most of that real estate is held in trust and, thus, is not available to be used to pay the claims of creditors. The Tort Claimants Committee ("TCC") filed this adversary proceeding in part to avoid any unrecorded interests in real property titled in debtor's name and to determine whether real property listed by debtor in its Statement of Financial Affairs as being held for others is property of debtor's bankruptcy estate. The TCC seeks through this motion to (1) avoid any unrecorded interests in certain test properties,[2]

---

[1](...continued)
are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330.

[2]    The test properties consist of the real estate used by nine parishes and one high school that debtor claims is held for the benefit of the parishes and school. The parishes and school to be used to test the parties' legal theories were chosen by debtor in an effort to make discovery manageable in this adversary proceeding. The test properties are associated with the following parishes and high school:

    Immaculate Conception Parish, Stayton
    Holy Redeemer Parish, Portland
    St. Michael Parish, Oakridge, and its mission, St. Henry, Dexter
    St. Birgitta Parish, Portland
    St. Mary, Our Lady of the Dunes Parish, Florence
    St. John Fisher Parish, Portland
    St. Philip Benizi Parish, Redland
    Queen of Peace Parish, Salem
    St. Elizabeth Ann Seton Parish, Aloha
    Regis High School, Stayton

The properties associated with the parishes consist of parish churches, schools, and cemeteries.

                                                    (continued...)

Page 2 – AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
         MOTION FOR PARTIAL SUMMARY JUDGMENT)

which debtor claims that it holds in trust, by using the bankruptcy trustee's rights and powers as a hypothetical bona fide purchaser of the real property on the date debtor filed bankruptcy; and (2) obtain a declaration that debtor holds both legal and equitable title to the properties so that they are part of debtor's bankruptcy estate. For the reasons discussed below, the unrecorded equitable interests in the test properties may be avoided and the estate owns both the legal and equitable title to the test properties.

---

[2](...continued)
The TCC chose to seek summary judgment on less than all of the parcels associated with the nine parishes and one school. It lists the various parcels that are at issue in this motion by tax lot number in its Exhibits 1 and 2 to its reply brief. The 33 parcels listed in the TCC's Exhibits 1 and 2 do not correspond precisely with those parcels listed in debtor's Amended Statement of Financial Affairs ("SOFA") as being held by debtor for the nine parishes and one school. There are two discrepancies that are apparent. For St. Michael Church, the SOFA lists five separate parcels; the TCC includes only two in its list. For Immaculate Conception Church, debtor's SOFA lists 13 parcels; the TCC lists only 12.

The TCC says on more than one occasion in its reply brief that the parcel that is the subject of Exhibit 21 to the Affidavit of Malcolm Newkirk, which is shown as Tax Account No. R103758, is not the subject of this motion for partial summary judgment. It does not explain why that lot and the three additional St. Michael Church lots are excluded from this summary judgment proceeding. Defendants do not complain that this motion does not address all of the test properties. It is the TCC's motion, and it may choose the properties for which it seeks a ruling. Therefore, I will not consider evidence regarding the parcel identified as Tax Account No. R103758, or any evidence (if any has been submitted) about the three excluded St. Michael's parcels.

None of the test properties involve the Missionaries of the Holy Spirit. Therefore, the Missionaries are correct that this motion for partial summary judgment does not directly affect it.

Page 3 –   AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

# I.  STANDARD FOR SUMMARY JUDGMENT

The court shall grant a party summary judgment on all or part of a claim or counterclaim "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.

# II.  FACTS[3]

The Archdiocese is a corporation sole.  Within the Archdiocese are 124 parishes and three Archdiocesan high schools.  One parish is separately incorporated.  The Archdiocese holds legal title to real properties associated with the unincorporated parishes and the Archdiocesan high schools.  The real properties are used for parish churches, Catholic schools, and Catholic cemeteries.  Parishioners and others contribute financially to the parishes and to the Archdiocesan schools.  They also donate time and services to further the work of both the churches and the schools.

# III.  DISCUSSION

1.  <u>Avoidance of unrecorded interests under § 544(a)(3)</u>

The filing of a bankruptcy petition creates an estate, which is comprised of "all legal or equitable interests of the debtor in property

---

[3]     The parties raised numerous evidentiary objections to the declarations filed in support of and in opposition to this motion.  To the extent it is necessary for me to rule on the evidentiary objections, I specifically do so in this opinion.  I need not rule on objections to evidence that did not affect my decision.

Page 4 –  AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

as of the commencement of the case," as well as any interests in property that the bankruptcy trustee may recover under § 550. § 541(a)(1), (3). Section 550 allows a trustee to recover for the benefit of the bankruptcy estate any interests in property that have been avoided under § 544. § 550(a).

In this case, debtor argues that most of the real property titled in its name is held for the benefit of Catholic parishes and schools, and therefore the property is not part of the bankruptcy estate that is available to pay the claims of its creditors. The TCC argues that the property is not held in trust but that, even if it is, under § 544(a)(3), the TCC is entitled to avoid any beneficial interests in that property that are not recorded in the real property records. The TCC has clarified that this motion addresses only whether any equitable interests that exist can be avoided under § 544(a)(3). This motion does not address whether any such equitable interests, in fact, exist.

Bankruptcy Code § 544(a)(3) allows a bankruptcy trustee to avoid an interest in property that would be voidable by a bona fide purchaser of real property who has perfected the transfer as of the filing of the case.[4] This statute gives a trustee the rights of a hypothetical bona

---

[4]     Section 544(a) provides, as relevant:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by --

     . . . .

(continued...)

Page 5 -  AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

fide purchaser. "The powers of a bona fide purchaser of real property are defined by *state* law." <u>In re Seaway Express Corp.</u>, 912 F.2d 1125, 1128 (9th Cir. 1990)(emphasis in original). Although the statute gives the trustee powers to avoid transfers, it also applies when there has been no transfer; it allows the trustee to avoid any unrecorded interests in real property. <u>Id.</u> at 1129.

By order dated July 22, 2005, this court granted the TCC standing to assert the § 544(a)(3) claim made in this adversary proceeding. <u>See In re Parmetex, Inc.</u>, 199 F.3d 1029,, 1031 (9th Cir. 1999)(bankruptcy court may authorize a creditor to bring an avoidance action under § 544).

Defendants[5] argue that the Bankruptcy Code provides that property in which the debtor has only legal but not equitable title does not become property of the estate, § 541(d),[6] and that the TCC cannot avoid

_____

[4](...continued)
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

[5] Defendants include the Archdiocese as well as others who claim an interest in the properties. The adversary proceeding has been designated a class action in order to allow everyone with a claimed interest to be represented in and bound by the litigation.

[6] Section 541(a) provides that all legal or equitable interests of the debtor in property as of the petition date become property of the estate. Section 541(d) provides, however, that:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's
> (continued...)

Page 6 –  AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT)

1  unrecorded equitable interests in property titled in debtor's name,

2  because the property has never become property of the estate.

3      The Ninth Circuit has held that a trustee can avoid an unrecorded

4  interest of a person claiming a constructive trust in property held in

5  the name of a debtor.   See Seaway Express Corp., 912 F.2d at 1128-29.

6  The court followed the majority rule "that § 541(d) does not limit the

7  trustee's powers over real property under § 544(a)(3)." Id. at 1128.

8  Accord In re Thomas, 147 B.R. 526 (9th Cir. BAP 1992), aff'd, 32 F.3d 572

9  (9th Cir. 1994)(table)(§ 544(a)(3) allows trustee to avoid equitable

10 interests in property that would be avoidable by a bona fide purchaser);

11 In re Chenich, 100 B.R. 512 (9th Cir. BAP 1987)(trustee can use

12 § 544(a)(3) to avoid equitable lien).

13     Defendants argue that an express or charitable trust is different

14 from a constructive trust, because a constructive trust is a remedy

15 imposed by a court for wrongdoing, while an express or charitable trust

16 is a true trust created intentionally by the parties.  They argue that,

17 because the beneficiaries' equitable interests in property held in such

18 trust do not become part of the bankruptcy estate pursuant to § 541(d),

19 those interests could not be avoided by a bona fide purchaser of real

20 property under § 544(a)(3).

21     Although constructive trusts are a different species of trust from

22 trusts such as charitable or express trusts, that difference does not

23 affect the trustee's authority under § 544(a)(3) to avoid unrecorded

24

25     [6](...continued)
       legal title to such property, but not to the extent of any equitable
26     interest in such property that the debtor does not hold.

Page 7 -  AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

equitable interests.  In <u>In re Tleel</u>, 876 F.2d 769, 771-72 (9th Cir. 1989), the Ninth Circuit held that the trustee could avoid a claimed interest in a constructive trust that had not been imposed under state law before bankruptcy, because the trustee did not have constructive notice of the existence of that trust.  If the constructive trust had been imposed by a state court prepetition, the equitable interests arising out of that constructive trust would not have been avoidable, because the state court judgment imposing the trust would have given a bona fide purchaser notice of the interest in the property.  Thus, it was not the character of the trust that determined whether the interest was avoidable, but whether there was constructive notice of that interest at the time of bankruptcy.

Applying that reasoning to this case, the question is whether, under state law, a bona fide purchaser of the real property on the date of the petition would have had notice that someone other than debtor might have interests in the property.

All of the test properties are located in Oregon.  Under Oregon law, a good faith purchaser of real property for valuable consideration takes the property free of unrecorded interests in the property.  ORS 93.640(1).[7]

---

[7]    That statute provides, as relevant here:

(1)  Every conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest in a land sale contract or other agreement or memorandum thereof affecting the title of real property within this state which is not recorded as provided by law is void as against any subsequent purchaser in good
(continued...)

Page 8 –  AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT)

> The notice that will deprive the [subsequent purchaser] of priority
> can be either actual or constructive.  Actual notice is direct
> knowledge of the outstanding interest.  Constructive notice
> encompasses both notice chargeable under the recording statute . . .
> and "inquiry notice."

High v. Davis, 283 Or. 315, 333 (1978).  Bankruptcy law makes actual notice irrelevant to a trustee's avoidance of an unrecorded interest in real property.  See 5 Lawrence P. King, Collier on Bankruptcy ¶ 544.02 (15th ed. Rev. 2005).[8]  Therefore, the question is whether there was constructive notice of the asserted interests of the defendants in this case.

Oregon's recording statute provides that, in order "[t]o give constructive notice of an interest in real property," a person must have recorded that interest in the real property records of the county in which the property is located.  ORS 93.643(1).  Inquiry notice, on the other hand, "arises when the existence of a claimed interest in real property may be determined through investigation based on facts available to the claimant that would cause a reasonable person to make such inquiry."  Gorzeman v. Thompson, 162 Or. App. 84, 93 (1999).

---

[7](...continued)
faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance, deed, land sale contract, assignment of all or any portion of a seller's or purchaser's interest in a land sale contract or other agreement or memorandum thereof is first filed for record, and as against the heirs and assigns of such subsequent purchaser.

[8]     Section 544(a) provides that a bankruptcy trustee may avoid any interest in property that is avoidable by a bona fide purchaser, "without regard to any knowledge of the trustee or of any creditor . . . ."

Page 9 –  AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

A.   Record notice

The TCC argues that, because title to all of the test properties is in the name of debtor, there is no record notice of any claimed interests of the defendants in the real property records for any of the test properties.   The TCC provides title reports for all properties at issue; all show debtor as the record owner.   Affidavit of Malcolm Newkirk in Support of Tort Claimants Committee's Third Motion for Partial Summary Judgment Exh. 1 - 20; 22.

None of the defendants explicitly argue that there is record notice of their asserted interest in the properties.   The Committee of Catholic Parishes, Parishioners and Interested Parties ("Parish Committee") points out that three documents in the real property records for the test properties[9] refer to parishes: Newkirk Affidavit Exh. 1 p. 16 lists the owner of property subject to an Agreement to Waive Rights to Notice, Hearing and Remonstrance as "Archdiocese of Portland By St. Elizabeth Ann

_____

[9]     The Parish Committee also points to Exh. 21 to the Newkirk Affidavit, which is a preliminary title report that shows title to the particular parcel is vested in "Roman Catholic Archbishop of Portland in Oregon and successors, a corporation sole for the benefit of Immaculate Conception Church[.]"

As I have explained above in footnote 2, I will not consider the evidence contained in Exh. 21, which relates to Tax Account No. R103758, because the TCC is not seeking any ruling with regard to that parcel.

In its response to the TCC's Concise Statement of Facts, the Parish Committee also refers to Exh. 5 p. 37 and Exh. 8 pp. 5, 12, and 13, all of which are plot maps that show the names of the respective parish churches (Holy Redeemer and Queen of Peace).   The Parish Committee does not rely on those map references to argue that there is record notice of asserted interests of defendants in the properties.

Page 10 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

1    Seton Catholic Church;" his Exh. 7 p. 27 shows a reference in a city

2    ordinance affecting the disputed property to a petition filed by "the

3    Archdiocese of Portland in Oregon for the St. John Fisher Parish;" and

4    Exh. 7 p. 54 shows an Agreement for Use of Property between "Archdiocese

5    of Portland in Oregon/St. John Fisher Church."

6         None of the exhibits show ownership by anyone other than debtor.  I

7    have concluded in my ruling on the TCC's Second Restated Motion for

8    Partial Summary Judgment that the parishes are not separate civil

9    entities that can hold title to property or hold beneficial interests in

10   their own right.  They are simply divisions or parts of debtor.

11   Reference in the real property records to a parish that is a part of

12   debtor is the same as a reference to debtor.  Therefore, I conclude that

13   there is no genuine issue of material fact that there is no record notice

14   of the asserted interests of defendants in the test properties.

15        B.   _Inquiry notice_

16        As I explained above, constructive notice has long been made up of

17   two different concepts: record notice and inquiry notice.  The TCC argues

18   that the Oregon legislature's 1987 enactment of ORS 93.643 abolished

19   inquiry notice in Oregon, leaving only constructive notice based on the

20   recording of a property interest in the real property records.  It points

21   to the language of ORS 93.643(1), which says that constructive notice of

22   an interest in real property is given by recording the interest in the

23   real property records of the county in which the property is located, and

24   that "[s]uch recordation, and no other record, constitutes constructive

25   notice to any person of the existence of the interest, [with exceptions

26

not applicable here]." ORS 93.643(1)(emphasis supplied).

In interpreting Oregon statutes, the court "is to discern the intent of the legislature." _Portland Gen. Elec. Co. v. Bureau of Labor and Indus._, 317 Or. 606, 610 (1993). In doing that, a court must first look at the text of the statutory provision, which provides the best evidence of the legislature's intent. _Id._ Also considered at this first level is the context of the statutory provision. _Id._ If the legislature's intent is clear from that inquiry, "further inquiry is unnecessary." _Id._ at 611. If, however, the statute is ambiguous, then the court looks to legislative history. _Id._ If, after considering text, context, and legislative history, the meaning of the statute is still not clear, "the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." _Id._ at 612.

I conclude that the statutory language is ambiguous. The language in the statute that "[s]uch recordation, and no other record, constitutes constructive notice" could be read to mean that only the recording of an interest in real property as provided in the statute will constitute constructive notice, thereby abolishing the concept of inquiry notice in Oregon. However, it could also be read to say that record constructive notice can be accomplished only by compliance with the statute. Such an interpretation would not affect constructive notice arising from inquiry notice.

The context of the statute provides a clue into the legislature's intent. ORS 93.643 is found in a chapter of the Oregon Revised Statutes relating to "Conveyancing and Recording." It falls within a series of

Page 12 – AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT)

statutes that come under the heading "Recordation and its Effects."
Because the statutes relate to recordation and not inquiry notice, it
appears the legislature was contemplating clarifying recording
requirements, not changing long-settled Oregon law on inquiry notice.
The placement of ORS 93.643 in the recording statutes lends weight to the
interpretation that the statute affects only record constructive notice,
not constructive notice arising out of the duty to inquire. However, the
context does not clarify the intent sufficiently to end the analysis.

The next step is to consider the legislative history. None of the
parties has provided any legislative history that would bear on the
interpretation of this statute.[10]

Therefore, I move to the third level of analysis, application of
rules of statutory construction. None of the parties cite to any rules
of statutory construction that are helpful to a determination of the
question presented here, and I do not find any that are helpful.

The only indication of legislative intent that bears on the
interpretation of this statute is its placement in the statutes dealing
with the effects of recording. If the legislature had intended to
abolish inquiry notice, which has been the law of Oregon for many years,
one could expect that the legislature would make that intent clear. In
light of the legislature's silence with regard to any effect the 1987
amendment was intended to have on inquiry notice, and the legislature's
placement of the amending language in a statute dealing with the effect

---

[10]    I do not consider the Declaration of Craig M. Chisholm,
submitted by debtor in opposition to the TCC's motion, to bear on the
legislative history of this 1987 provision.

Page 13 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

of recording, I conclude that the legislature did not intend to abolish inquiry notice in Oregon.

This conclusion is supported by the fact that, despite the enactment of ORS 93.643 in 1987, Oregon courts have continued to consider and apply the rules of inquiry notice. <u>E.g.</u>, <u>Akins v. Vermast</u>, 150 Or. App. 236, <u>adhered to on reconsideration</u>, 151 Or. App. 422 (1997); <u>Vandehey Dev. Co. v. Suarez</u>, 108 Or. App. 154 (1991). <u>See also</u> <u>Spady v. Graves</u>, 307 Or. 483, 488 n.3 (1989)(explaining that constructive notice can be either record notice under the statutes or inquiry notice).

"Inquiry notice . . . arises when the existence of a claimed interest in real property may be determined through investigation based on facts available to the claimant that would cause a reasonable person to make such inquiry." <u>Gorzeman v. Thompson</u>, 162 Or. App. 84, 93 (1999). The purchaser is "charged with notice of every fact that a reasonable inquiry would have disclosed." <u>Vandehey Dev. Co.</u>, 108 Or. App. at 157. In order to be charged with notice of facts a reasonable inquiry would have disclosed, there first must be facts that would cause a reasonable person to make such inquiry. In other words, there must be a duty to inquire before the purchaser is charged with notice of what she would have learned had she made the inquiry.

Defendants point to numerous facts that they assert would give rise to a duty of a purchaser to inquire into whether there were unrecorded interests in the properties.

        i.   <u>Debtor's statement of financial affairs</u>

Marist High School argues that debtor's statement of financial

Page 14 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
            MOTION FOR PARTIAL SUMMARY JUDGMENT)

affairs provided information sufficient to put a bona fide purchaser on notice of the existence of equitable interests in the test properties, because debtor listed the parish and school properties as properties held for others.

A trustee is given the status of a bona fide purchaser of real property "at the time of the commencement of the case." § 544(a)(3). The hypothetical bona fide purchaser created by § 544(a)(3) is "one who is without actual knowledge 'at the instant the petition is filed,' and purchases property from the debtor for value and in good faith." In re Professional Invest. Prop. of Am., 955 F.2d 623, 628 n.3 (9th Cir. 1992). Thus, the trustee is charged with notice of facts in existence as of the moment the petition is filed. The Ninth Circuit Court of Appeals has held that, where the debtor's bankruptcy schedules are filed with the petition, facts set out in those schedules can provide constructive notice that someone other than the debtor claims an interest in property to which the debtor holds title. Id. Where, however, the schedules are not filed along with the petition but are filed at a later date, the information would not be available to a bona fide purchaser as of the moment of filing, and therefore information contained in those schedules does not deprive the trustee of the status of a bona fide purchaser. In re Castro, 158 B.R. 180 (Bankr. C.D. Cal. 1993).

In this case, debtor filed its bankruptcy petition on July 6, 2004 and did not file its schedules and statement of financial affairs until July 30, 2004. Thus, the information contained in the statement of financial affairs was not available upon the filing of the petition and

Page 15 – AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

therefore could not have provided constructive notice of defendants'
asserted equitable interest in property to a bona fide purchaser as of
the petition date.  The later-filed statement of financial affairs does
not defeat the TCC's status as a bona fide purchaser with respect to the
test properties.

Defendants also argue that the petition itself should have raised
questions about other interests in property, because debtor indicated on
its petition that it had between $10,000,001 and $50 million in assets.
According to defendants, a purchaser on that date should have realized
from the valuation of debtor's assets that it was asserting that someone
other than debtor had interests in some of debtor's property.

The mere listing of the value of assets is not sufficient to raise
questions about unrecorded ownership interests in particular property
titled in debtor's name.  The fact that debtor showed assets of no more
than $50 million did not raise a duty of inquiry into ownership interests
in particular parcels of property.

ii.  Title report documents and deeds

Next, defendants argue that some of the title report documents show
a beneficial interest of the parishes (St. Elizabeth Ann Seton and St.
John Fisher), and that "many of the warranty deeds" require taxes and
recorded title to be sent to the parishes, not to the debtor's offices.
Parish Committee Memorandum in Opposition to Plaintiff's Third Motion for
Partial Summary Judgment at 9.

As I explained above in discussing record notice, the reference to
the two parishes in the recorded documents does not give record notice of

a claimed interest by someone other than debtor.  The parishes are part of debtor, so mention of the parishes in title report documents does not give rise to a duty to inquire whether someone other than debtor had an interest in the property.[11]

As to the requirement in "many of the warranty deeds" that certain official documents be sent to the parishes, the Parish Committee points to only two such references, both relating to St. Philip Benizi Church: Exhibit 4 to Newkirk's Affidavit p. 11 shows that the warranty deed for one parcel of property provides that tax statements and the recorded deed are to be sent to the Archdiocese of Portland in Oregon, at what appears to be the address of the parish church.  Page 13 of that exhibit shows the address for the taxpayer Archdiocese of Portland OR as "St. Philip Benizi - Redland 2838 E. Burnside St., Portland, OR 97214 USA."  In both of those documents, the record owner is listed as debtor.  The fact that the address debtor gives for receipt of official documents is the address of the local parish is not sufficient to raise a duty of inquiry into whether some third party may claim an unrecorded interest in the property.

Regis High School argues that a purchaser would have a duty to inquire as to the Regis property, because the Regis property was deeded to debtor by Catholic Educational Corporation.  Declaration of Brad T.

_____

[11]    None of the recorded documents relating to the test properties contain trust language such as "for the benefit of" a particular parish or school.  Although I have already held that a parish or school that is not separately incorporated cannot be a beneficiary of a trust, I express no opinion about whether such language of trust could be sufficient to give rise to a duty to inquire.

Page 17 – AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

Summers Exh. 34 p. 1. Regis claims that the identity of the grantor should cause a purchaser to inquire further into the ownership of the property, because a purchaser should have realized that a corporation called Catholic Educational Corporation likely would have a charitable purpose, and that a transfer from that charitable corporation to debtor, which is another charitable corporation, should raise questions about the beneficial interest in the property.

I do not see how the character of the entity that transferred the property to debtor should excite inquiry into whether someone other than the record title holder might have an interest in the properties. First, there is no reason a purchaser would have inquired into the character of the grantor to learn whether it was a charitable corporation incorporated for a particular educational purpose. What would matter is that the grantor had good title to transfer. Second, the property was deeded to debtor alone. Regis does not point to any authority that would prohibit a grantor that is a charitable organization from deeding property without restriction to a third party. I conclude that the real property records do not give rise to inquiry notice.[12]

iii. <u>Debtor's existence as a corporation sole</u>

Defendants argue that the very character of debtor as an ecclesiastical entity should excite inquiry that it might be holding property for the benefit of others. They rely on the Oregon religious

---

[12]    Even if Regis's argument were correct, the argument applies only to one of two parcels of real property that make up the Regis properties. The second parcel was deeded to debtor by individuals, not by a corporation. <u>See</u> Declaration of Brad T. Summers Exh. 35.

Page 18 – AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT)

corporation statutes and debtor's articles of incorporation, arguing that those authorities require reference to canon law, which limits debtor's authority with regard to the real property it holds for parishes.

Debtor is a corporation sole, organized under Oregon law. A corporation sole differs from other nonprofit corporations under Oregon law "only in that it shall have no board of directors, need not have officers and shall be managed by a single director who shall be the individual constituting the corporation and its incorporator or the successor of the incorporator." ORS 65.067(1).

Unless a nonprofit corporation's articles of incorporation provide otherwise, such corporations have the power to, among other things, "[p]urchase, take by gift, devise or bequest, receive, lease or otherwise acquire, and own, hold, improve, use and otherwise deal with, real or personal property or any interest in property, wherever located." ORS 65.077(5). Nonprofit corporations may also "[s]ell, convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of its property." ORS 65.077(6). ORS 65.531(2) provides that a nonprofit corporation may sell or otherwise dispose of substantially all of its property in the regular course of business, and that no approval by the members of the corporation or anyone else is required unless required by the articles of incorporation. Because the statutes expressly authorize a nonprofit corporation, including a corporation sole, to buy and sell real property, without approval by anyone else, the fact that the record owner is a corporation sole would not excite inquiry into other, unrecorded interests.

Page 19 – AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
         MOTION FOR PARTIAL SUMMARY JUDGMENT)

Defendants argue that the corporation sole statute and other
religious corporation statutes require reference to canon law to
determine the authority of the corporation sole to convey property.  As I
discussed in ruling on the TCC's Restated Second Motion for Partial
Summary Judgment, the reference in the corporation sole statute to canon
law[13] does not incorporate canon law into the law of Oregon, and the
references to religious or canon law in other nonprofit corporation
statutes, ORS 65.042 (religious doctrine and practice can take precedence
over nonprofit corporation law under certain circumstances); ORS 65.077
(power of nonprofit corporation conditioned on its articles of
incorporation); and ORS 65.357(2)(d) and 65.377(2)(c)(permitting
religious corporations to rely on information provided by religious
authorities in managing the corporation), would not excite inquiry into
whether the corporation sole has limits on its authority to convey
property, other than those set out in the corporation statutes and the
articles of incorporation.  The statutes do not provide that real
property transactions of religious corporations are governed by the law
of the religion; they merely allow such corporations to look to canon law

[13]    ORS 65.067(1) provides:

    Any individual may, in conformity with the constitution,
canons, rules, regulations and disciplines of any church or
religious denomination, form a corporation hereunder to be a
corporation sole.  Such corporation shall be a form of religious
corporation and will differ from other such corporations organized
hereunder only in that it shall have no board of directors, need not
have officers and shall be managed by a single director who shall be
the individual constituting the corporation and its incorporator or
the successor of the incorporator.

Page 20 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
        MOTION FOR PARTIAL SUMMARY JUDGMENT)

1  in their internal affairs, including in deciding whether they may,

2  consistent with their internal church law, incorporate as a corporation

3  sole.

4      The statutes do, however, provide that a nonprofit corporation's

5  powers are subject to what is set out in the articles of incorporation

6  for the corporation.  ORS 65.077.  A purchaser of property from a

7  corporation sole would, therefore, look to debtor's articles of

8  incorporation to determine whether they somehow limit that authority

9  granted by statute.

10     A purchaser reviewing debtor's articles of incorporation would not

11 find anything inconsistent with the authority granted by statute to own

12 and sell property.  Debtor's original articles of incorporation, filed in

13 1874, provide for the incorporation of debtor as a corporation sole, and

14 that

15         the object and purpose of this corporation is to provide for and
        maintain the worship of Almighty God, and the preaching of the
16         gospel of our Lord Jesus Christ, according to the doctrine, canons,
        rules and usages of the Roman Catholic Church; to establish and
17         maintain educational and charitable institutions for the promotion
        of piety and learning, and the maintenance of the poor, sick and
18         impotent; <u>and for acquiring, holding and disposing of church
        property for the benefit of the Roman Catholic Church for works of
19         charity and for public worship</u>.

20 Articles of Incorporation, Declaration of Albert Kennedy in Support of

21 Third Motion for Partial Summary Judgment Exh. 2 p. 8 (emphasis

22 supplied).

23     Debtor is the surviving corporation of a 1991 merger between the

24 Archdiocese of Portland in Oregon and the Roman Catholic Archbishop of

25 the Archdiocese of Portland in Oregon.  Declaration of Albert Kennedy in

26

Page 21 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
           MOTION FOR PARTIAL SUMMARY JUDGMENT)

Support of Third Motion for Partial Summary Judgment Exh. 1 pp. 22-23.

The terms and conditions of the merger included:

> Each merging corporation is a religious corporation <u>organized for the purpose of holding and administering the assets of and conducting the corporate purposes and mission of the Roman Catholic Archdiocese of Portland in Oregon</u>.

<u>Id.</u> at p. 23 (emphasis supplied). Defendants do not point to any language in the articles of incorporation that in any way limits debtor's authority to convey real property to third parties, or that conditions such conveyance on approval of parishes or schools or parishioners or parents and students of the schools.

As I explained in my ruling on the Second Restated Motion for Partial Summary Judgment, one of the very purposes of a religious organization incorporating as a corporation sole is to create a civil legal entity that can hold and convey real property. Nothing in the Oregon nonprofit corporation statutes or debtor's articles of incorporation would excite inquiry into whether debtor was holding title to real property in trust for some other beneficial interests. Nor would either of those sources cause a reasonable purchaser to refer to canon law to determine whether there might be some unrecorded interests in the property.

I conclude that debtor's existence as a corporation sole would lead a reasonable purchaser to inquire into the corporation sole statutes and debtor's articles of incorporation, and that both of those sources confirm debtor's authority to convey real property without limitation. Neither source would cause a reasonable purchaser to inquire into whether

Page 22 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT)

1   anyone other than debtor had an unrecorded interest in the property.

2          iv.  <u>Possession, use, and maintenance of properties by parishes</u>
3               <u>and schools</u>

4          Defendants argue that a purchaser of real property from debtor would

5   have a duty to inquire into whether there were any unrecorded interests

6   in the property, based on the possession, use and maintenance of the

7   properties by the parishes and schools.  According to defendants, a

8   reasonable and prudent purchaser would question why property titled in

9   the name of debtor is occupied, used, and maintained by parishes and

10  schools.

11         Under Oregon law, possession of real property by a third party other

12  than the grantor puts "a purchaser upon inquiry as to the possessor's

13  interest."  <u>Webb v. Stewart</u>, 255 Or. 523, 536 (1970).  This is because

14  the possession by someone other than the grantor "is a fact inconsistent

15  with the record title[.]"  <u>Id.</u> (quoting <u>Groff v. State Bank of</u>

16  <u>Minneapolis</u>, 50 Minn. 234, 238 (1892)).

17         In this case, even considering all of the evidence presented by

18  defendants that bears upon possession of the test properties,[14] the facts

19  would not lead a reasonable and prudent person to inquire into whether

20  defendants claim any unrecorded interest in the properties.

21         Each of the parcels that make up the test properties is used as a

22

23         [14]  The TCC has filed an omnibus evidentiary objection to most if
    not all of that evidence.  Because I conclude that, even considering the
24  evidence presented by defendants, they have not established a genuine
    issue of material fact with regard to inquiry notice, I will not consider
25  whether to exclude the evidence on the various grounds asserted by the
    TCC.
26

Page 23 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
         MOTION FOR PARTIAL SUMMARY JUDGMENT)

Catholic church, a Catholic school, or a Catholic cemetery.  The church properties are occupied by parish priests, other employees, and parishioners; the school properties by students, teachers, and administrators.  To the extent there are identifying signs on the premises, those signs show the name of the parish or school; they do not mention debtor.

Defendants argue that the signs on the property, reflecting the name of the parish or the school, would lead a reasonable person to question whether the parish or school had an interest in the property, because title is held by the Archdiocese, not by the parish or school.  However, as I have already explained, the parishes and schools are simply parts or divisions of debtor.  If a reasonable prospective purchaser were to look in the state's corporate records, the purchaser would see that none of the parishes, churches, schools, or cemeteries are separately incorporated so that they could hold real property interests in their own behalf.  If the purchaser were to visit debtor's website, the purchaser would see that the parishes are listed as "Parishes of the Archdiocese of Portland."  It is unremarkable that real property owned by a church organization, here the Archdiocese, is occupied by and used as churches, schools, and cemeteries and is frequented by parishioners of the churches, students and teachers of the schools, and people visiting cemeteries.  Having a sign on the property that shows that the property is occupied by a division of the title owner would not give rise to inquiry about whether there is some other unrecorded interest in the property.

Page 24 – AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
        MOTION FOR PARTIAL SUMMARY JUDGMENT)

Nor does the use of the properties as Catholic churches, schools, and cemeteries raise a question about record title. The Archdiocese is authorized by its articles of incorporation to acquire, hold, and dispose of church property "for public worship." Articles of Incorporation, Declaration of Albert Kennedy in Support of Third Motion for Partial Summary Judgment Exh. 2 p. 8. The existence of Catholic churches, Catholic schools, and Catholic cemeteries on property titled in the name of the Archdiocese is entirely consistent with record title.

Similarly, the fact that a purchaser would find on the premises priests at the parishes and school administrators for the school is entirely consistent with ownership by the highest authority of the church in this region. It is undisputed that the parish priests are assigned to the parishes by the Archbishop. The employees of the parishes are Archdiocesan employees. The school administrators and teachers are Archdiocesan employees.[15] Possession of property by agents of the record

---

[15] These facts are established through Exhibit 3 to the Second Declaration of Michael Fletcher in Support of the TCC's Third Motion for Summary Judgment. Debtor moves to strike this exhibit, arguing that it is the same exhibit the court denied the TCC leave to file in connection with the Second Restated Motion for Partial Summary Judgment.

My ruling denying the TCC's motion for leave to file a supplemental response in connection with the Second Restated Motion was based on the fact that it was untimely under the briefing schedule for the Second Restated Motion, not for any substantive reason. I will not strike it from the record for the Third Motion for Partial Summary Judgment, because it was timely submitted in support of that motion.

Debtor also argues that its personnel policies and employee benefits are irrelevant to the issue of inquiry notice. I consider the exhibit, which is the Archdiocese's Employee Handbook for School and Parish
(continued...)

owner does not excite inquiry into whether other unrecorded interests exist in the property.

The fact that parishioners are often on the properties engaging in various activities, including maintenance and service functions, does not excite inquiry. A parish church or parochial school would be expected to be frequented and maintained by parishioners or others who are committed to the mission of the parish and school. There is nothing inconsistent with record title in the use or maintenance of church and school property by parishioners and persons committed to the school mission.

Even considering the evidence presented by defendants bearing on inquiry notice arising from use of the properties by the parishes, schools, and cemeteries, I conclude that there is no genuine issue of material fact and that such possession and use is not sufficient to give rise to a duty of a reasonable and prudent prospective purchaser to inquire into whether there are interests in the test properties that are not reflected in the real property records.

v. Internal church practice

Defendants argue that, because parish and school property cannot as a matter of practice be sold without the input and consent of the parish priest or school administrator, a prudent purchaser would question whether the parishes or schools have interests in the properties that are not reflected in the title. However, the duty to inquire is not

<hr>

[15](...continued)
Personnel, as relevant evidence that persons employed at the parishes and schools are Archdiocesan employees, not employees of the parishes or schools. Thus, I will not strike the exhibit.

Page 26 – AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

triggered by what one might learn if, in fact, one were to actually inquire.

> "If a purchaser, or encumbrancer, dealing concerning property, of which the record title appears to be complete and perfect, has information of extraneous facts, or matters *in pais*, sufficient to put him on inquiry respecting some unrecorded conveyance, mortgage, or encumbrance, or respecting some outstanding interest, claim, or right which is not the subject of record, and he omits to make proper inquiry, he will be charged with constructive notice of all facts which he might have learned by means of a due and reasonable inquiry."

Petrain v. Kiernan, 23 Or. 455, 457-58 (1893)(quoting 2 Pom. Eq. Jur. §§ 613, 615). There must first be facts that would lead a reasonable person to inquire into other possible interests in the property, that is, that would give rise to a duty to inquire. Only if there is a duty to inquire is one charged with the facts that would be learned on inquiry.[16]

---

[16] Debtor provided the declaration of Craig M. Chisholm, in which he says that, "Inquiry notice certainly includes both what could be ascertained by an inspection of the land and what could be ascertained by making inquiry of persons in possession thereof." Declaration of Craig M. Chisholm ¶ 9. That statement is a legal conclusion, not a factual assertion. Declarations or affidavits submitted in opposition to a motion for summary judgment are to set out "such facts as would be admissible in evidence[.]" Fed. R. Civ. P. 56(e). A legal conclusion is not a fact admissible in evidence. Therefore, I will strike ¶ 9 of Chisholm's declaration.

Debtor argues that the statement is admissible as an expert opinion. I can reach opinions about what the law is without considering the opinion of a legal expert.

Further, Chisholm's statement does not say that the duty to inquire is triggered by making the inquiry. Inquiry notice is comprised of two steps: first, the duty to inquire, and second, the facts that would be learned on inquiry. It is not clear whether Chisholm in his statement is saying that the duty to inquire is triggered by what would have been learned if inquiry had been made, or rather that inquiry notice includes
(continued...)

1    Although someone inquiring about purchasing property titled in the

2    name of the Archdiocese of Portland and occupied by Catholic churches,

3    schools, and cemeteries might be told that the parish or school needed to

4    agree to the sale, that fact does not give rise to a duty to make the

5    inquiry in the first place.

6          vi.  Publicity

7          Finally, the Parish Committee argues that there could be no bona

8    fide purchaser of the test properties as of the petition date, because

9    publicity before debtor's bankruptcy filing date informed the public that

10   parishes were asserting an interest in property on which parishes

11   operate.  It relies on two newspaper articles, one from the Boston Globe

12   dated June 2, 2004, and one from the Oregonian dated May 23, 2004.  I

13   agree with the TCC that the article from the Boston Globe is irrelevant;

14   the question here is whether there was sufficient information available

15   to a reasonable prudent purchaser of real property from debtor on the

16   petition date to give rise to a duty to inquire into other possible

17   interests in the property that were not of record.  Events occurring in

18   Boston relating to the Boston Archdiocese are not relevant to information

19   relating to the Archdiocese of Portland.[17]

20         The TCC also argues that the Oregonian article is inadmissible

21   because it is both irrelevant and hearsay.  I need not decide whether to

22

23         [16](...continued)
     inspection, which could give rise to the duty to inquire, which would
24   lead to facts learned upon actual inquiry.

25         [17]   Therefore, I will strike Exhibit 2 to the Declaration of Mark
     Edlen.
26

Page 28 – AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)

strike the article because, even taking it into consideration, I conclude that it does not give rise to inquiry notice. Whether or not pervasive publicity about an asserted interest in property might be sufficient to put a prudent purchaser on notice to inquire further about the grantor's ability to pass clear title, see <u>In re Merrill Lynch & Co., Inc.</u>, 273 F. Supp. 2d 351 (S.D.N.Y. 2003), <u>aff'd on other grounds</u>, 396 F.3d 161 (2d Cir. 2005)(numerous newspaper articles gave inquiry notice of possible claim for securities fraud); <u>Barnett v. City of Yonkers</u>, 731 F. Supp. 594 (S.D.N.Y. 1990)(newspaper articles gave constructive notice of hazards of exposure to asbestos for purposes of wrongful death action), one article cannot be said to be pervasive publicity. The properties at issue in this case are located throughout the western part of Oregon. A single article appearing in even a newspaper of large circulation in the state is not sufficient to excite inquiry.

I conclude that there is no genuine issue of material fact that the TCC is entitled under § 544(a)(3) to avoid any unrecorded interests in the test properties.

2. <u>First Amendment and the Religious Freedom Restoration Act ("RFRA")</u>

Defendants assert that, if § 544(a)(3) allows avoidance of their asserted beneficial interests in the test properties, application of § 544(a)(3) would violate the First Amendment and RFRA, 42 U.S.C. § 2000bb - 2000bb-4.[18]

_____

[18]    In a footnote in its opposition brief, the Parish Committee raises for the first time the argument that applying § 544(a)(3) to avoid pre-1978 unrecorded interests in property would violate the Fifth
                                                    (continued...)

Page 29 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
         MOTION FOR PARTIAL SUMMARY JUDGMENT)

I have discussed and disposed of defendants' First Amendment and RFRA arguments in my ruling on the Second Restated Motion for Partial Summary Judgment. I have concluded that there is a question of fact whether application of the avoidance powers under § 544(a)(3) might substantially burden the exercise of religion in violation of RFRA, if it were to result in the loss of so many parish churches and Archdiocesan high schools that it would leave defendants with no place to worship and study. This motion involves only the test properties, not a significant number of the properties on which Archdiocesan churches and schools are located. Allowing the TCC to avoid the unrecorded interests in the test properties would leave 115 other parishes (there are 124 parishes in the Archdiocese of Portland) where parishioners could worship, and two Archdiocesan high schools where children could obtain religious education. Although having to attend a different parish church or school might be an inconvenience, defendants do not point to any evidence that using alternative facilities would effectively prevent them "from engaging in conduct or having a religious experience which the faith mandates." Worldwide Church of God v. Philadephia Church of God, Inc.,

---

[18](...continued)
Amendment takings provision. Parish and Parishioners' Class and Parish Committee Memorandum in Opposition to Plaintiff's Third Motion for Partial Summary Judgment at 58 n.28. The Parish Committee has not raised a Fifth Amendment affirmative defense in this adversary proceeding (it did raise a religious freedom affirmative defense, based on the First Amendment, ORS 65.042, and RFRA), so the issue is not properly before this court. In addition, I agree with the court in In re Washburn & Roberts, Inc., 17 B.R. 305 (Bankr. E.D. Wa. 1982), that application of § 544(a)(3) to avoid pre-1978 unrecorded transfers of property does not violate the Fifth Amendment.

Page 30 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD MOTION FOR PARTIAL SUMMARY JUDGMENT)

227 F.3d 1110, 1121 (9th Cir. 2000).

Therefore, RFRA does not preclude avoidance of the unrecorded interests in these test properties.[19]

### IV.  CONCLUSION

The TCC has established that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Applying § 544(a)(3) to avoid defendants' asserted unrecorded interests in the test properties would not substantially burden their exercise of religion and thereby violate RFRA.  Therefore, the TCC is entitled to avoid any unrecorded interests in the test properties, and to a declaration that debtor holds both legal and equitable title to those properties so that they are property of debtor's bankruptcy estate.  Mr. Kennedy should submit the order.

###

cc:  Howard M. Levine
     Albert N. Kennedy
     Brad T. Summers
     Steven M. Hedberg
     Brad S. Copeland
     Phoebe Joan O'Neill
     James Ray Streinz
     David Foraker

---

[19]  Nothing in this ruling is intended to establish a particular remedy if defendants are able at trial to establish their RFRA defense. If the defense is established, and I conclude that the remedy is that unrecorded interests may be avoided in only a limited number of properties, the parties may revisit whether these particular test properties are the ones for which the asserted interests should be avoided.

Page 31 - AMENDED MEMORANDUM OPINION (TORT CLAIMANTS COMMITTEE'S THIRD
          MOTION FOR PARTIAL SUMMARY JUDGMENT)