**Below is an Opinion of the Court.**

_Elizabeth L. Perris_
ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, AND SUCCESSORS, A CORPORATION SOLE, dba the ARCHDIOCESE OF PORTLAND IN OREGON,<br><br>                    Debtor. | ) Bankruptcy Case<br>) No. 04-37154-elp11<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| TORT CLAIMANTS COMMITTEE,<br><br>                    Plaintiff,<br><br>          v.<br><br>ROMAN CATHOLIC ARCHBISHOP OF PORTLAND IN OREGON, AND SUCCESSORS, A CORPORATION SOLE, dba the ARCHDIOCESE OF PORTLAND IN OREGON, et al.,<br><br>                    Defendants. | ) Adv. Proc. No. 04-3292<br>)<br>) MEMORANDUM OPINION RE TORT<br>) CLAIMANTS COMMITTEE'S FOURTH<br>) MOTION FOR PARTIAL SUMMARY<br>) JUDGMENT AND DEBTOR'S CROSS-MOTION<br>) FOR PARTIAL SUMMARY JUDGMENT<br>) (PERPETUAL ENDOWMENT FUND)<br>)<br>)<br>)<br>)<br>)<br>) |

In this chapter 11[1] case, the Tort Claimants Committee (TCC) filed

---

[1]     Unless otherwise indicated, all chapter and section references
                                                            (continued...)

Page 1 -  MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1  this adversary proceeding to obtain a declaration of whether certain real
2  and personal property is property of debtor Roman Catholic Archbishop of
3  Portland's (debtor) bankruptcy estate.  The parties have filed cross-
4  motions for a determination of whether the Perpetual Endowment Fund
5  (fund), which was established in 1981, more than 20 years before
6  bankruptcy, is property of debtor's estate.  In the alternative, the TCC
7  seeks a determination that debtor's beneficial interest in the fund and
8  certain powers it may exercise are property of the estate.

9                                   FACTS

10      Debtor is a corporation sole, organized under Oregon non-profit
11  corporation law.  It filed chapter 11 in 2004.  In its Statement of
12  Financial Affairs filed in connection with the bankruptcy case, debtor
13  listed a Perpetual Endowment Fund,[2] valued at approximately $36,000,000,
14  as "personal property held for another."  Debtor takes the position that
15  the fund is held in a charitable trust and therefore is not part of the
16  bankruptcy estate and is not available to pay the obligations it may owe
17  to the tort claimants.  The TCC takes the position that the fund is not a
18  valid trust, and is therefore part of debtor's bankruptcy estate and is
19  subject to the claims of creditors.

20  _____

21      [1](...continued)
    are to the version of the Bankruptcy Code, 11 U.S.C. §§ 101-1330, in
22  effect before the 2005 amendments.

23      [2]   This fund has at times been referred to as the "Quasi-Endowment
    Fund," but there is no dispute that the two different names refer to the
24  same fund.  Because the Declaration of Trust establishes the Perpetual
    Endowment Fund, I will refer to it by that title to the extent I use a
25  particular title.

26
    Page 2 -  MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
              FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
              PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1    The fund was created in 1981 by a Declaration of Trust. Because

2  interpretation of the particular provisions of the declaration is the key

3  to resolving these motions, I will set out at length the language of the

4  Declaration of Trust:

5      CORNELIUS M. POWER, Archbishop of Portland in Oregon, being mindful
        of the solemn duty imposed upon him by reason of his office to see
6      to the perpetuation of the work of the Church in western Oregon,
        hereby establishes the Perpetual Endowment Fund (Fund) for the
7      Archdiocese of Portland in Oregon (Archdiocese).

8      Source of Endowment Fund.

9      The net proceeds from the sale of land in Washington County, Oregon,
        known as the St. Mary's Home property, shall constitute the initial
10     assets of the Fund. Other money or property may, from time to time,
        be designated by the Archbishop as assets of the Fund. In addition,
11     any gifts, bequests or other assignments of property to the Fund,
        upon acceptance thereof, shall become a part of the Fund, subject to
12     the provisions of this Declaration of Trust.

13     Goals and Objectives.

14     The primary goal of the fund shall be the perpetuation of the
        mission of the Church. The particular objectives of the Fund are as
15     follows:

16     1.   The funding of the operating expenses of the Chancery Office of
             the Archdiocese.
17
18     2.   The funding of the religious, charitable and educational
             programs of the Archdiocese.

19     3.   The funding of the religious, charitable and educational
             programs of the Roman Catholic Church in America and throughout
20           the world.

21     Management of the Fund.

22     The management of the assets of the Fund shall be handled by one or
        more Investment Managers selected by the Vicar for Business Affairs
23     of the Archdiocese, with the approval of the Archbishop. Subject to
        other provisions of this Declaration of Trust and the authority of
24     the Archbishop or other authorized officers of the Archdiocese, the
        Investment Managers shall have, in dealing with the assets of the
25     Fund, all of the powers and duties set forth in the Uniform

26
Page 3 -  MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

Trustees' Powers Act as the same is now or may hereafter be enacted in the State of Oregon.

. . . .

<u>Investment Objectives and Inviolability of Principal of the Fund.</u>

The primary investment objective shall be the safety of the principal of the Fund. In order to protect the Fund from erosion by inflation, the Investment Managers shall annually return to the principal of the Fund such amount as shall be directed by the Vicar for Business Affairs, but not less than 5% nor more than 20% of the income of the Fund.

Subject to the foregoing priority, the Fund shall be managed with a view to maximum income. Subject to long-term economic trends, it is contemplated that the income from the Fund should be not less than 10% per annum.

<u>Distribution and Uses of Income.</u>

After reinvestment of a portion of the income to preserve the integrity of the Fund, as provided above, the annual income of the Fund shall be distributed for the following purposes:

1.  The first priority shall be the operating expenses of the Chancery of the Archdiocese. To the extent that income from the Fund is sufficient, minimal assessments shall be levied upon the parishes of the Archdiocese for such purpose.

2.  The second priority for the use of the income from the Fund shall be the support of programs of the Archdiocese, including St. Mary's Home.

3.  The third priority for the use of the income of the Fund shall be assistance to other segments of the Church in the United States and throughout the world.

All uses of the anticipated income of the Fund shall be subject to the normal budgetary procedures of the Archdiocese.

<u>Procedure for Withdrawal of Income from the Fund.</u>

After appropriate budgets have been completed, income from the Fund shall be distributed in such manner as the Fund managers are instructed in writing by three corporate officers of the Archdiocese.

<u>Modification and Amendment of this Declaration of Trust.</u>

Page 4 -  MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

> The Fund established hereby is intended to be perpetual. However, recognizing that change is inevitable, the power to amend or modify any of the provisions of this Declaration of Trust is reserved to the office of the Archbishop of Portland in Oregon. Should this instrument be terminated or the Fund otherwise dissolved, all assets of the Fund shall be distributed to the General Treasury of the Archdiocese.

Declaration of Trust, Declaration of Albert N. Kennedy in Support of Tort Claimants Committee's Fourth Motion for Partial Summary Judgment, Exhibit 6 at 127-130.

The entity that established the fund in 1981 was the Archdiocese of Portland in Oregon, an Oregon non-profit corporation incorporated in 1909 (the 1909 corporation). In 1991, the 1909 corporation merged with debtor, the Roman Catholic Archbishop of Portland in Oregon. Debtor is the surviving corporation.

The fund was originally made up of the proceeds from the sale of certain land owned by the 1909 corporation. There is no indication that the real property was a substantial portion of the real property used in the 1909 corporation's operations. Additions to the fund included unrestricted gifts to the Archdiocese or the Archbishop, and interest income on the fund that was retained in the fund. Declaration of Leonard Vuylsteke at ¶ 4.

After debtor filed its chapter 11 petition, it listed the fund in its Statement of Financial Affairs as personal property held for another. The TCC filed an adversary proceeding to obtain a determination whether the fund and other assets listed by debtor as being held for others were in fact property of the bankruptcy estate. With regard to the fund, the TCC filed a motion for summary judgment "(a) declaring that the fund

Page 5 -  MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1  . . . is not subject to a valid trust and is property of the Debtor's

2  estate; or, alternatively, (b) declaring that Debtor's powers to amend,

3  modify, terminate and direct distribution of the Fund, together with

4  Debtor's beneficial interest in the Fund, are property of the estate."

5  TCC'S Fourth Motion for Partial Summary Judgment at 2.  Debtor in turn

6  filed a cross-motion for partial summary judgment "that the Perpetual

7  Endowment Fund is a charitable trust and is not property of the Debtor's

8  estate."  Debtor's Cross Motion for Partial Summary Judgment at 2.

9                              ISSUES

10 1.    Whether the fund is property of debtor's bankruptcy estate.

11 2.    Whether debtor has a beneficial interest in the fund or certain

12 powers that are property of the estate.

13                            DISCUSSION

14 I.   Standard for summary judgment

15      The court shall grant summary judgment "if the pleadings,

16 depositions, answers to interrogatories, and admissions on file, together

17 with the affidavits, if any, show that there is no genuine issue as to

18 any material fact and that the moving party is entitled to a judgment as

19 a matter of law."  Fed. R. Civ. P. 56(c), made applicable to adversary

20 proceedings by Fed. R. Bankr. P. 7056.

21 II.  The fund as property of the estate

22      The filing of a bankruptcy petition creates an estate that is

23 comprised of "all legal or equitable interests of the debtor in property

24 as of the commencement of the case."  § 541(a).  Property of the estate

25 does not include "any power that the debtor may exercise solely for the

26

Page 6 -   MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
           FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
           PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

benefit of an entity other than the debtor," § 541(b)(1), or "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . ." § 541(d). Under § 541(d), property held in trust by a debtor for another is not property of the bankruptcy estate. <u>In re Unicom Computer Corp.</u>, 13 F.3d 321, 324 (9th Cir. 1994); <u>In re Bishop College</u>, 151 B.R. 394 (Bankr. N.D. Tex. 1993) (charitable trust not property of bankruptcy estate).

Debtor asserts that the fund is a valid charitable trust and that, as trustee, debtor holds only legal but not equitable title to the fund. The TCC argues that the fund is not a valid trust, because it is self-settled and revocable, and because debtor is both the trustee and the sole beneficiary of the trust. In the alternative, it asserts that the estate holds the power to modify, amend, terminate, and direct distribution of the fund, together with debtor's beneficial interest in the fund.

Although bankruptcy law defines what is property of the bankruptcy estate, "[p]roperty interests are created and defined by state law." <u>Butner v. U.S.</u>, 440 U.S. 48, 55 (1979). I turn then to Oregon law to determine what rights debtor has in the fund, which it holds in its name.

A.   <u>Did the Declaration of Trust create a charitable trust?</u>

The first question is whether the Declaration of Trust purported to create a trust that is charitable in nature.

A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose.

Page 7 -  MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

Case 04-03292-elp   Doc 659   Filed 07/20/06

Restatement (Second) of Trusts § 348 (1959).[3]  A charitable trust is

created in the same way as a private trust is created.  Id. at § 349 cmt.

a.  However, there are differences between private trusts and charitable

trusts.  A private trust requires an identifiable, specific beneficiary,

while a charitable trust has indefinite beneficiaries and has a "public

charitable purpose."  Pennoyer v. Wadhams, 20 Or. 274, 278-79 (1891).

Unlike a private trust, a charitable trust may continue for an indefinite

or unlimited period; the rule against perpetuities does not apply.

Restatement (Second) of Trusts § 365; Agan v. U.S. Nat'l Bank, 227 Or.

619 (1961).

Determining whether the Declaration of Trust created a valid,

enforceable charitable trust requires interpretation of the Declaration

of Trust.  Under Oregon law, "[t]he same rule of construction applies in

the interpretation of an instrument creating a trust as controls in

construing any other document, to wit, that the intention of the maker of

the instrument must, if possible, be determined and given effect."

Williams v. Morris, 144 Or. 620, 625 (1933).

In this case, the 1909 corporation executed a Declaration of Trust

---

[3]  Oregon courts have relied on the Restatement (Second) of Trusts
in deciding cases dealing with trusts under Oregon law.  See, e.g., Agan
v. U.S. Nat'l Bank, 227 Or. 619 (1961); Lozano v. Summit Prairie
Cattlemens Ass'n, 155 Or. App. 32 (1998).  They have cited the
Restatement (Third) of Trusts, the first two volumes of which were
published in 2003, only once.  See Generaux v. Dobyns, 205 Or. App. 183
(2006).  The parties do not point to any substantive differences between
the second and third restatements that are relevant to my decision on
these motions.  Therefore, I will rely primarily on the Restatement
(Second) of Trusts where reference to the Restatements is necessary or
helpful.

Page 8 -  MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

under which it declared that it was holding certain property in a fund

for particular uses that benefit certain definite and indefinite

beneficiaries.  That language manifests an intent to create a trust.  A

trust can be created by the owner of property declaring that he holds the

property in trust.  Restatement (Second) of Trusts § 17(a)(trusts in

general).  A charitable trust can be created by the owner of property

declaring that he holds the property "upon a charitable trust[.]"

Restatement (Second) of Trusts § 349(a)(charitable trust).[4]  Nothing

prevents a charitable organization that owns property from declaring that

---

[4]     Debtor cites ORS 130.155, Oregon's enactment of the Uniform
Trust Code, as setting out the requirements for creation of a trust.  ORS
chapter 130 was enacted by the 2005 legislature, with an effective date
of January 1, 2006.  Debtor says that this statute applies to this case,
quoting ORS 130.910(a) as follows: "O.R.S. Chapter 130 applies to all
trusts created before, on or after January 1, 2006."

     That quotation is misleading and debtor's assertion that chapter 130
applies to this case is wrong.  What the application statute actually
says, when the pertinent portion is quoted in its entirety, is:

     (1)  Except as otherwise provided in ORS chapter 130:

          (a) ORS chapter 130 applies to all trusts created before, on or
     after January 1, 2006.

          (b) ORS chapter 130 does not apply to judicial, administrative
     and other proceedings concerning trusts commenced before January 1,
     2006.

ORS 130.910(a)(emphasis supplied).  This bankruptcy case was commenced in
2004, as was this adversary proceeding, which concerns the trust.  Thus,
ORS chapter 130 does not apply to my determination of whether the fund is
property of the bankruptcy estate.  See also Generaux v. Dobyns, 205 Or.
App. 183, 188 n.3 (2006) (Uniform Trust Code as adopted by 2005
legislature does not apply to judicial proceedings concerning trusts that
were commenced before January 1, 2006).

Page 9 -  MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

it holds that property in a charitable trust.  Further, "[i]t is not uncommon for a non-profit corporation to be a trustee of a charitable trust[.]"  <u>In re Parkview Hospital</u>, 211 B.R. 619, 638 (Bankr. N.D. Ohio 1997).  <u>See also</u> <u>Restatement (Second) of Trusts</u> § 348 cmt. f. (property may be put in charitable trust by transferring it to charitable organization).

The purpose of this trust is charitable.  The fund has three objectives: payment of operating expenses of the Chancery Office of the Archdiocese; funding the religious, charitable and educational programs of the Archdiocese; and funding the religious, charitable and educational programs of the national and international Roman Catholic Church.  Whether or not the funding of the operating expenses of the Chancery Office is a charitable purpose, funding religious and educational programs of the church, either local, national, or international, certainly is a charitable purpose.  <u>See</u> <u>Restatement (Second) of Trusts</u> § 368 (charitable purposes include advancement of education and religion); <u>Pennoyer v. Wadhams</u>, 20 Or. 274 (1891)(support of religion is charitable purpose).[5]

Thus, debtor has established that the Declaration of Trust created a charitable trust.  I turn now to whether that charitable trust is valid.

B.    <u>Is the trust valid under Oregon law?</u>

The TCC argues that the fund is not a valid trust enforceable under

---

[5]    The TCC does not seriously challenge the fact that the fund is a charitable trust; its argument is that the trust is invalid for reasons discussed below.

Page 10 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

Oregon law, because it is a self-settled revocable trust, and because debtor is its sole beneficiary.

1.   Is the fund a revocable self-settled trust?

Under Oregon law, the settlor of a trust that the settlor can revoke is considered to be the owner of the trust property, and the trust assets are subject to being reached by the settlor's creditors.  Johnson v. Commercial Bank, 284 Or. 675, 680-82 (1978).

(i)   Settlor of fund

The parties agree that the settlor of the fund was the 1909 corporation, the Archdiocese of Portland in Oregon, which merged into debtor after the fund was created.  The original trustee of the fund was also the 1909 corporation.

Debtor argues, without citing any authority, that, because debtor is the surviving corporation of the merger of the 1909 corporation with debtor, debtor was not the settlor.  It argues that debtor is the trustee of the fund only as a "successor trustee" under trust law, not by virtue of having absorbed the 1909 corporation into debtor.

There is no dispute that debtor is the current trustee of the fund. The question is whether debtor was the settlor of the fund.  I agree with the TCC that debtor was the settlor of the fund, because debtor is the surviving corporation to the 1909 corporation that created the fund.

ORS 65.494 sets out the effect of a merger of non-profit corporations: "Every other corporation party to the merger merges into the surviving corporation" when the merger takes effect.  ORS 65.494(1). "The surviving corporation has all liabilities and obligations of each

Page 11 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

corporation party to the merger[.]" ORS 65.494(3). Actions pending against merging corporations may continue as if the merger did not occur, or the surviving corporation may be substituted as a party. ORS 65.494(5). Thus, the corporation that merges into the surviving corporation simply becomes part of the surviving corporation, and actions that had been taken by the corporation that ceases to exist after the merger should be considered to be the actions of the surviving corporation.

The <u>Restatement (Second) of Trusts</u> § 385, on which debtor relies, does not specifically deal with merger of corporations, but merely says that "powers conferred upon a trustee of a charitable trust can properly be exercised by his successors . . . ." As I said above, the question is not whether debtor is a successor trustee; it is whether debtor was the settlor.[6]

Even apart from the statute, debtor's argument that the 1909 corporation must be viewed as different from debtor would lead to illogical results. For example, the Declaration of Trust lists as an objective of the fund "funding of the operating expenses of the Chancery Office of the Archdiocese." Under debtor's theory, because the Archdiocese (the 1909 corporation) merged into debtor, there is no longer a Chancery Office of the Archdiocese that could receive operating expenses from the fund. That is clearly not the position debtor takes

---

[6] Because I conclude that debtor is the settlor of the fund by virtue of having absorbed the 1909 corporation, I will hereafter refer to the settlor of the fund as debtor.

Page 12 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1  with regard to the use of the income from the fund.

2      I conclude that debtor, through its predecessor the 1909

3  corporation, was the settlor of the fund.

4                  (ii) <u>Right to revoke or terminate</u>

5      The TCC argues that the Declaration of Trust gives debtor the right

6  to modify, amend, or terminate the trust.  Debtor responds that debtor

7  does not have the power to amend or modify the trust, and that the trust

8  is intended to be perpetual and therefore irrevocable.

9      The pertinent portion of the Declaration of Trust provides:

10     The Fund established hereby is intended to be perpetual.  However,
       recognizing that change is inevitable, the power to amend or modify
11     any of the provisions of this Declaration of Trust is reserved to
       the office of the Archbishop of Portland in Oregon.  Should this
12     instrument be terminated or the Fund otherwise dissolved, all assets
       of the Fund shall be distributed to the General Treasury of the
13     Archdiocese.

14 Declaration of Trust, Declaration of Albert Kennedy, Exh. 6 at 130.  This

15 language contains three ideas.  First, that the fund is intended to be

16 perpetual.  Second, that the fund may be amended or modified by "the

17 office of the Archbishop of Portland in Oregon."  Third, that, upon

18 termination of the fund, the fund assets will be distributed to debtor's

19 general treasury.

20     The Declaration of Trust does not specifically reserve to anyone the

21 right to revoke the fund.  The Declaration of Trust does reserve to "the

22 office of the Archbishop of Portland in Oregon" the right to amend or

23 modify the fund.  Assuming for purposes of this section of the discussion

24 that the right to modify or amend a declaration of trust includes the

25 right to revoke the trust, the question is whether that right is reserved

26

Page 13 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1   to debtor.

2       Debtor argues that "the office of the Archbishop" is not debtor, the

3   corporation sole, but instead is the canonical office of Archbishop.

4       The Declaration of Trust says that it is created for "the

5   Archdiocese of Portland in Oregon," which is then referred to as

6   "Archdiocese."  The parties agree that "the Archdiocese of Portland in

7   Oregon" is debtor's predecessor 1909 corporation, which has merged into

8   debtor.  Thus, where the Declaration of Trust intended to refer to debtor

9   (or its predecessor), it used the term "Archdiocese" or "Archdiocese of

10  Portland in Oregon."

11      The language in the provision dealing with amendment and

12  modification is very different; it reserves the right to modify or amend

13  not to the Archdiocese, but to "the office of the Archbishop of Portland

14  in Oregon."  It is not readily apparent what the term "office of the

15  Archbishop" means.  What is readily apparent is that it refers to

16  something or someone different from the Archdiocese.

17      In determining the intent of the settlor, the court looks at the

18  language used in the document, giving the language its ordinary meaning.

19  See ORS 42.250 (terms of a writing presumed to have been used in their

20  "primary and general acceptation").  However, evidence is admissible that

21  certain terms "have a technical, local, or otherwise peculiar

22  signification and were used and understood in the particular instance[.]"

23  Id.  Here, it is not clear what the meaning of "the office of the

24  Archbishop" is.  Given that the role of the court is to determine the

25  intent of the settlor, and that this Declaration of Trust was executed by

26

    Page 14 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
              FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
              PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

a Roman Catholic Archbishop, dealing with Archdiocesan assets, the term
should be interpreted according to the understanding of the Archbishop
who used the term.  See Restatement (Third) of Property (Wills & Donative
Transfers) § 11.2(b)(3) cmt. r. ("The donor's personal usage is . . . the
donor's habitual usage of a term in a manner used in the donor's
profession, business, religion, or academic discipline[.]"); ORS 42.250.

Debtor has presented evidence that the term "office of the
Archbishop of Portland in Oregon" means the ecclesiastical office of
Archbishop under Canon Law.  Declaration of Most Rev. John G. Vlazny at
¶ 15; Declaration of Nicholas P. Cafardi at ¶ 11.  Archbishop Vlazny
reasons that the office of the Archbishop referred to in the modification
and amendment provision is the same office referred to in the Preamble of
the Declaration of Trust, where Archbishop Power refers to "being mindful
of the solemn duty imposed upon him by reason of his office to see to the
perpetuation of the work of the Church in western Oregon[,]" and "[t]he
only 'office' which imposed a solemn duty upon him would be the
ecclesiastical office of Archbishop."  Declaration of Most Rev. John G.
Vlazny at ¶ 15.  Professor Cafardi relies on the 1983 version of the Code
of Canon Law, c. 383 § 1, which describes the pastoral functions of a
diocesan bishop.

In light of the difference in language used to refer to debtor and
to the person who holds the power to modify or amend the Declaration of
Trust, I agree with debtor that the two are not the same.  The TCC has
not provided any evidence contradicting debtor's evidence of the
specialized meaning of "office of the Archbishop" as used in the

Page 15 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

Declaration of Trust.  Therefore, I conclude that the power to modify or amend the Declaration of Trust is reserved to the Archbishop as an ecclesiastical office, not to debtor, which is a corporation sole organized under state law.  Thus, debtor, as the settlor of the trust, does not retain the power to modify or amend the trust.  Therefore, even if a power to modify or amend included the power to revoke, that power does not belong to debtor.

Furthermore, even if the Declaration of Trust reserved to debtor the right to modify or amend, that would not necessarily mean that debtor has the power to revoke the trust.  Under Oregon law applicable to this adversary proceeding, the settlor of a trust may reserve the right to revoke a trust, but if the settlor does not reserve that right, the trust is irrevocable without the consent of the beneficiaries.  _Stipe v. First Nat'l Bank of Portland_, 208 Or. 251, 268 (1956).[7]  Here, the Declaration of Trust does not mention revocation, let alone expressly reserve that right.

The TCC argues that, because the terms of the trust allow

---

[7]  ORS 130.505(1) now provides that the settlor may revoke or amend a trust unless the terms of the trust expressly provide that it is irrevocable.  As I explained in n.4, _supra_, Oregon's enactment of the Uniform Trust Code, of which ORS 130.505 is a part, does not apply to this adversary proceeding.

I reject the TCC's argument that the Oregon Trust Code merely codified what was already the law in Oregon.  First, it has cited no legislative history to support that assertion.  More importantly, at least with regard to this particular provision of the code, the Uniform Trust Code is directly contrary to existing Oregon law as set out in _Stipe_.

Page 16 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1    modification of any of the provisions of the Declaration of Trust, the

2    trust could be modified to provide for revocation.

3        "If the settlor reserves a power to modify the trust, it is a

4    question of interpretation to be determined in view of the language used

5    and all the circumstances whether and to what extent the power is subject

6    to restrictions.  If the power to modify is subject to no restrictions,

7    it includes a power to revoke the trust."  Restatement (Second) of Trusts

8    § 331 cmt. h.  Where there is a question of whether the settlor intended

9    to reserve the right to revoke, a statement that the trust is irrevocable

10   will control, unless contradicted by other terms of the trust.  George G.

11   Bogert, et al., The Law of Trusts and Trustees § 992 (Rev. 2d ed. 2005).

12       I conclude that, reading the Declaration of Trust as a whole, the

13   power to modify does not include the power to revoke the trust.  The

14   Declaration of Trust specifically says that the fund "is intended to be

15   perpetual."  "Perpetual" is defined as "[l]asting or destined to last

16   forever, eternal; never ending or ceasing."  Oxford English Dictionary

17   (Online), http://www.oed.com/ (enter "perpetual" and click on "Find

18   Word").

19       The TCC is correct that the Declaration of Trust does not say that

20   it is irrevocable or that it actually is perpetual (as opposed to being

21   intended to be perpetual).  However, the court's job is to ascertain the

22   intent of the settlor of the trust.  Language that the trust is intended

23   to be perpetual indicates an intent that it not be revocable.  Therefore,

24   even if debtor had reserved to itself the right to modify the trust, that

25   right did not include the right to revoke the trust.

26

Page 17 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
           FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
           PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1    The facts of this case differ from those in <u>Askanase v. LivingWell,</u>
2 <u>Inc.</u>, 45 F.3d 103 (5th Cir. 1995). In that case, the bankruptcy trustee
3 sought to exercise the reserved rights of the debtor settlor to modify
4 the termination provisions of a trust to make termination effective
5 immediately instead of after 36 months, as provided in the trust
6 instrument. Unlike in this case, the debtor settlor itself had the right
7 to modify the trust. Also, the trust in <u>Askanase</u> was expressly
8 terminable under certain conditions. Therefore, the bankruptcy trustee,
9 succeeding to the rights of the debtor, had the power to modify those
10 conditions to allow termination at an earlier date than originally
11 provided in the trust instrument. In this case, in contrast, debtor does
12 not have the power to modify the trust. Further, the Declaration of
13 Trust does not provide for the right to revoke, which right could be
14 exercised on behalf of the bankruptcy estate. In fact, the trust
15 instrument indicates that the trust fund is intended to be perpetual.
16 There is no power granted in the Declaration of Trust for debtor or
17 anyone else to revoke the trust.

18    The TCC also claims that debtor has the right to terminate the
19 trust, pointing to the provision in the Declaration of Trust that,
20 "Should this instrument be terminated or the Fund otherwise dissolved,
21 all assets of the Fund shall be distributed to the General Treasury of
22 the Archdiocese." That provision does not contain a reservation of a
23 right to terminate the fund, but instead provides for the possibility
24 that termination could occur at some future time and directs distribution
25 of the assets if that happens.

26

Page 18 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
         FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
         PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1    Trusts may terminate for various reasons other than revocation by

2  the settlor.[8]  For example, a trust may terminate because the purposes

3  for which the trust is created become impossible to accomplish,

4  Restatement (Second) of Trusts § 335, or because, as a result of

5  unanticipated circumstances, continuation of the trust would impair the

6  accomplishment of the purposes of the trust.  Id. at § 336.  Merely

7  providing for the disposition of trust assets if termination occurs is

8  not a reservation of the right to terminate the trust.

9    Because the fund is an irrevocable trust, I reject the TCC's

10  argument that the fund is subject to the claims of creditors as a self-

11  settled revocable trust.

12        2.  Is debtor the sole beneficiary of the fund?

13    The TCC next argues that the fund is not a valid trust, because

14  debtor is both the trustee and the sole beneficiary, and a trustee cannot

15  hold property in trust for itself.  Debtor responds that the

16  beneficiaries of the trust are an indefinite group comprised of Catholics

17  and non-Catholics, both in western Oregon and throughout the nation and

18  the world, who benefit from debtor's work.

19    Although the trustee of a trust can be one of several beneficiaries,

20  there is no valid trust where the same person is the trustee holding

21  legal title and the sole beneficiary holding the entire equitable

22

23        [8]    The concepts of revocation and termination are not the same.  A
      trust may be terminated in various ways; revocation by the settlor is but
24    one method of termination.  See In re Marrama, 316 B.R. 418, 422 (1st
      Cir. BAP 2004); Restatement (Second) of Trusts §§ 330 - 343 (listing
25    various methods of terminating trusts).

26

interest in property.  <u>Allen v. Hendrick</u>, 104 Or. 202 (1922)(trustee can be one of several beneficiaries); <u>Morse v. Paulson</u>, 182 Or. 111, 117 (1947)(no trust where sole beneficial interest and legal title in same person).  <u>See also</u> <u>Restatement (Second) of Trusts</u> § 99(5) (sole beneficiary cannot be sole trustee).

In support of its argument that debtor is the sole beneficiary of the trust, the TCC relies on the language of the trust document, other contemporaneous evidence of intent, and debtor's recent characterizations of the nature of the fund.

(i) <u>The trust document and other contemporaneous evidence</u>

In arguing that the Declaration of Trust shows that debtor is the sole beneficiary of the trust, the TCC first points to the preamble, in which Archbishop Power declares that he establishes the fund "for the Archdiocese of Portland in Oregon (Archdiocese)."  The TCC reads that statement as an indication that the fund was created solely for the benefit of debtor (through its predecessor).

That language is ambiguous.  Creating the fund "for" debtor could mean "on behalf of," as the Archbishop was acting on behalf of debtor and not himself.  Or creating the fund "for" debtor could mean "for the benefit of" debtor, in which case debtor would be a beneficiary.  The identity of the beneficiary or beneficiaries cannot therefore be determined by reference to the preamble alone.

The TCC next relies on the statement under the Goals and Objectives heading that "[t]he primary goal of the Fund shall be the perpetuation of the mission of the Church."  It argues that "the Church" is the same as

1  debtor, and therefore debtor is the sole beneficiary.  Debtor responds

2  that "the Church" is a broader concept under Canon Law than just this

3  debtor.

4      It is clear, reading the different provisions of the Declaration of

5  Trust in context, that the drafter did not use the terms "Archdiocese"

6  and "Church" interchangeably.  Although it said that the primary goal of

7  the fund was to perpetuate the mission of the Church, it then listed

8  three particular objectives, two of which referred to the Archdiocese and

9  the third of which referred to "the Roman Catholic Church in America and

10 throughout the world."

11     The declaration identifies the settlor as the "Archdiocese," not

12 "the Church."  In the first and second distribution priorities, the

13 declaration refers to "the Archdiocese."  But in the third distribution

14 priority, it refers to "assistance to other segments of the Church in the

15 United States and throughout the world."  Considering the use of these

16 different terms throughout the Declaration of Trust, I conclude that "the

17 mission of the Church" must refer to the mission of the church beyond

18 simply the Archdiocese of Portland.

19     The identity of the beneficiaries can most readily be determined by

20 looking at the language relating to the goals and objectives of the fund,

21 and to the provisions for distribution.  The objectives of the fund are

22 listed as:

23     1.  The funding of the operating expenses of the Chancery Office of
            the Archdiocese.
24
25     2.  The funding of the religious, charitable and educational
            programs of the Archdiocese.
26

Page 21 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
           FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
           PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1        3.   The funding of the religious, charitable and educational
              programs of the Roman Catholic Church in America and throughout
2             the world.

3   The distribution provision says that income from the fund is to be

4   distributed for these purposes:

5        1.   The first priority shall be the operating expenses of the
              Chancery of the Archdiocese.  To the extent that income from
6             the Fund is sufficient, minimal assessments shall be levied
              upon the parishes of the Archdiocese for such purpose.
7
         2.   The second priority for the use of the income from the Fund
8             shall be the support of programs of the Archdiocese, including
              St. Mary's Home.
9
         3.   The third priority for the use of the income of the Fund shall
10            be assistance to other segments of the Church in the United
              States and throughout the world.
11

12  Declaration of Trust, Declaration of Albert Kennedy, Exh. 6 at 127, 129.

13
                     a.   Funding of operating expenses of the Chancery
14                   Office of the Archdiocese

15       The TCC argues that funding the operating expenses of the Chancery

16  Office of the Archdiocese is merely funding the operating expenses of

17  debtor itself, because the Chancery Office (now called the Pastoral

18  Center) is simply a part of debtor, not an independent entity that may

19  benefit from a trust administered by debtor.  It further argues that a

20  religious corporation is a beneficiary of a charitable trust if the

21  purpose of the trust is to support the corporation's programs and

22  administration, citing Restatement (Second) of Trusts § 391 cmt. c.

23       I agree with the TCC that debtor is a beneficiary of this trust,

24  because one of the objectives of the trust is to provide funding for

25  debtor's Pastoral Center.  The fact that debtor is to benefit from the

26

income of the trust, through funding of the Pastoral Center, makes debtor a beneficiary.

That does not make debtor the sole beneficiary, however. As I explain below, debtor is but one of several beneficiaries of this trust.

<u>b. Funding of the religious, charitable and educational programs of debtor and of the national and international Roman Catholic Church</u>

The second and third objectives of the fund are funding of the religious, charitable, and educational programs of debtor and of the national and international Roman Catholic Church.

Although religious, charitable, and educational programs are charitable purposes, see Restatement (Second) of Trusts § 368, the TCC argues that these two objectives in actuality are to benefit debtor by supporting its own programs and funding its obligations to the national and international church. It relies on a memorandum written by Archbishop Power to the priests of the Archdiocese within weeks of the creation of the fund, in which Archbishop Power explained the priorities of use of the income from the fund:

> First priority after the annual reinvestment of some of the income will be to relieve the parishes of a major portion of the annual assessment by using the endowment income to support most of the services provided by the Archdiocesan offices. The second priority will be to support Archdiocesan programs, and the third priority will be to enable the Archdiocese to meet its obligations to the national and international Church.

Declaration of Albert Kennedy, Exhibit 6 at 131. The TCC argues that this memorandum clarifies the Declaration of Trust and shows that, in fact, the sole beneficiary of the fund is debtor.

The language of the Declaration of Trust is clear with regard to the

objectives and priorities.  There is no ambiguity that needs to be
clarified by resort to extrinsic evidence.  The objectives listed in the
Declaration of Trust refer to the funding of "religious, charitable and
educational programs" of debtor and of the Roman Catholic Church in
America and worldwide.  The provision governing distribution of income
refers to the second and third priorities as "support of programs of the
Archdiocese" and "assistance to other segments of the Church in the
United States and throughout the world."  Nothing in that language
indicates any preexisting obligation of debtor to those programs or
segments of the church.

In determining the intent of the settlor of a trust, the court looks
at the language of the trust instrument.  Here, the language is clear
that the income is to be used to support charitable works both of debtor
itself and of the wider church.

In any event, debtor has provided uncontroverted evidence that
debtor has no legally enforceable obligations to the national or
international church.  Second Declaration of Leonard Vuylsteke ¶ 4;
Second Declaration of Most Rev. John G. Vlazny ¶ 10.

The TCC also relies on the provision of the Declaration of Trust
that provides that the use of income generated by investment of the fund
is subject to the normal budgetary procedures of debtor.  Presumably, the
use of income from a trust to fund charitable works will normally be
subject to a budgetary process of the trustee, in order to provide
financial accountability.  The fact that the use of income is subject to
debtor's budgetary process does not demonstrate that debtor is the sole

beneficiary of the fund.

The Declaration of Trust shows that the fund is intended to benefit not only debtor, by providing for the operating expenses of the Chancery Office, but also the community that is served by the religious, charitable, and educational programs of debtor and the national and international church. Although that may make debtor a beneficiary, debtor is not the sole beneficiary.

(ii) <u>Debtor's recent characterizations</u>

The TCC also points to debtor's recent characterizations of the purpose of the fund as showing that debtor has treated the fund as a discretionary asset to be used for its sole benefit, not as a trust fund for the benefit of the public.

First, the TCC points to a September 26, 1996 Memorandum written to Archbishop George by the Vicar for Administration, proposing a spending limit policy for the fund. The Vicar describes the fund as being discretionary, so that "not only the earnings but the principal may be utilized to support annual operations." Declaration of Albert Kennedy, Exhibit 6 at 133.

This statement, made long after the establishment of the fund, cannot vary the clear terms of the Declaration of Trust. Intent is determined by looking at the manifestations of intent made at the time the trust was created, not long afterward. <u>See</u> <u>Trustees of the Presbytery of Willamette v. Hammer</u>, 235 Or. 564, 566 (1963)(intent to create trust must be manifested before or at time trust created). <u>See also</u> <u>Allen v. Hendrick</u>, 104 Or. 202, 227 (1922)(whether trust exists

Page 25 – MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

depends on intent of party "as manifested by the words used and the surrounding circumstances.") Further, extrinsic evidence cannot be used to vary the terms of an integrated document. <u>Abercrombie v. Hayden Corp.</u>, 320 Or. 279 (1994).

Nor is the statement a part of the spending limit policy that the Archbishop actually authorized. The spending limit policy itself, which is found on the second page of the September 26, 1996 Memorandum, does not authorize the invasion of principal to fund operations of debtor.

I also note that debtor has provided evidence that this policy and the description of the fund that accompanied the transmission of the policy to Archbishop George was written during a time when the actual Declaration of Trust was lost, and debtor was not aware of the precise language of the trust document, which must govern its terms. Whether or not debtor misunderstood the limitations on use of the fund at the time the 1996 spending limit policy was adopted, that misunderstanding cannot govern interpretation of the clear language of the Declaration of Trust.

The TCC does not claim that the spending limit policy was a modification or amendment of the Declaration of Trust. The original Declaration of Trust controls whether the fund is a valid charitable trust.

The TCC also complains that debtor has represented in its more recent financial statements that the fund is unrestricted and may be used

Page 26 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
         FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
         PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

Case 04-03292-elp   Doc 659   Filed 07/20/06

1  at the discretion of the Pastoral Center.[9]  This conduct, says the TCC,

2  indicates that the fund is in fact unrestricted and discretionary,

3  showing that debtor is the sole beneficiary.

4      As I explained above, the validity of the fund as a charitable trust

5  is determined by the language of the Declaration of Trust, not by

6  debtor's conduct in administering the trust long after it was created.

7  The trust language is not ambiguous, and therefore the extrinsic evidence

8  is not necessary to determine the settlor's intent.  The trust language

9  shows that debtor is but one of multiple beneficiaries outlined in the

10  trust objectives and priorities.  To the extent the TCC seeks to use the

11  extrinsic evidence to show that the use of the fund is not circumscribed

12  by the priorities set out in the Declaration of Trust, that evidence

13  would be offered to vary or alter the unambiguous terms of the trust,

14  which is not permitted under Oregon contract interpretation law.

15  Abercrombie v. Hayden Corp., 320 Or. 279, 292 (1994).

16      I also note that debtor has provided evidence that characterizing

17  the fund as an unrestricted net asset is correct under Generally Accepted

18  Accounting Principles, because "any assets, whether restricted or not for

19  legal purposes, which were not transferred to the Archdiocese of Portland

20  in Oregon with a restriction for use or time by an external donor, are

21  required to be reported as 'Unrestricted.'"  Declaration of Gary McGee

22

23      [9]    The TCC points mainly to the Annual Financial Statements for
    fiscal years ending June 30, 1999, 2000, and 2001, which list the fund as
24  an "unrestricted net asset" and indicate that unrestricted net assets
    "may be used at the discretion of the Pastoral Center."  Declaration of
25  Albert Kennedy, Exh. 6 at 117; Exh. 7 at 30.

26

Page 27 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

¶ 7.  Therefore, a characterization of the fund as unrestricted on a financial statement does not provide persuasive evidence that its use is subject to the unfettered discretion of debtor.  It may be misleading, but it does not change the intention of the settlor of the trust as set out in the 1981 Declaration of Trust.

The TCC complains that the charitable purposes of the fund are the same or nearly the same as the charitable purposes of debtor corporation. It is not surprising that the purposes of the trust parallel the purposes of debtor as a non-profit corporation.  As one court said, if the purposes of a trust administered by a non-profit, charitable corporation were not closely parallel to the purposes of the corporation's existence, there would be a question whether the corporation was acting ultra vires in administering the trust.  In re Parkview Hosp., 211 B.R. 619, 638 (Bankr. N.D. Ohio 1997).

> By its very nature the mission of a non-profit is charitable as compared to the profit motive of other corporations.  The fact that the purpose of the trust in this case furthers the existence and mission of the trustee-hospital does not defeat the charitable intent of the hospital in initiating and contributing to a charitable trust.

Id.

I conclude that debtor is not the sole beneficiary of the fund. Because debtor is not the sole beneficiary, it does not hold both legal title and the entire beneficial interest.

The TCC seems concerned that a charitable organization could create a trust for which it is both the sole trustee and the sole beneficiary, and holds complete control over use of the funds, as a way of shielding

Page 28 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

Case 04-03292-elp   Doc 659   Filed 07/20/06

1   its assets from creditors.

2       There are three ready answers to that argument.  First, that
3   hypothetical trust is not this case.  Here, debtor is not the sole
4   beneficiary of the trust, but is one of multiple beneficiaries.

5       Second, there is no evidence or argument that debtor created this
6   fund with the intent of shielding its assets from the claims of
7   creditors.  This fund was created in 1981, more than 20 years before
8   debtor filed bankruptcy.  It was created with the proceeds of the sale of
9   real property, which does not appear to have been substantially all of
10  the real property that the 1909 corporation used in its operations.  If
11  there were indicators that the 1909 corporation had created the fund to
12  shield its assets from creditors, there might be theories available to
13  support a claim for disregarding the trust.  None of those arguments is
14  being made here.

15      Third, debtor has not retained complete control over the fund.  As I
16  explained above, debtor itself does not have the right to modify or amend
17  the fund, and the fund is irrevocable.  Further, contrary to what the TCC
18  argues, debtor does not have a right to use the principal for whatever
19  uses it desires.  The Declaration of Trust provides for distribution of
20  income only.  Under the heading "Investment Objectives and Inviolability
21  of Principal of the Fund," the document says that "[t]he primary
22  investment objective shall be the safety of the principal of the Fund."
23  The fund managers are required to return to the fund at least 5% of the
24  income of the fund annually to protect the principal against inflation.
25  Under the heading "Distribution and Uses of Income," the document says:

26

"After reinvestment of a portion of the income to preserve the integrity
of the Fund, as provided above, the annual income of the Fund shall be
distributed for the following purposes[.]"  Finally, under the heading
"Modification and Amendment of this Declaration of Trust," the document
says that the fund "is intended to be perpetual."  Those provisions make
it clear that the principal is to remain untouched, and indeed protected
against inflation by adding a percentage of income each year to the
principal.  The use of income is circumscribed by the distribution
provisions that I discussed above.

I agree with debtor that this fund is similar to the fund that was
found to be a charitable trust and so excluded from the debtor's estate
in <u>In re Parkview Hosp.</u>, 211 B.R. 619 (Bankr. N.D. Ohio 1997).  In that
case, a non-profit hospital established a development fund for use in
furthering research and staff development activities of the hospital.
The hospital solicited donations for the fund and also placed
unrestricted donations in the fund.  Only the income could be used to
further the purposes of the fund; the principal was to remain untouched.

When the hospital ceased operation and filed bankruptcy, the chapter
11 trustee argued that the fund was property of the estate and should be
available to pay the claims of the hospital's creditors.

The court concluded that the fund was a restricted charitable trust,
and so was not property of the bankruptcy estate.

There are many similarities between <u>Parkview Hosp.</u>, and this case.
In both cases, the non-profit organization created the fund and acted as
its trustee in administering the fund.  In both cases, unrestricted gifts

to the organization were placed in the fund.  The principal may not be touched, and only the income may be used to further the purposes of the fund.

The TCC argues that the fund in this case is different from _Parkview Hosp._, because in _Parkview Hosp._, the hospital's solicitation of funds specified that the use of the contributions would be restricted, and so keeping those funds from the bankruptcy estate followed the donors' intent, and because the purpose of the charitable trust was not to benefit the hospital.

These distinctions do not detract from the value of the case to my analysis of this case.  Although in this case debtor did not specifically solicit donations for the fund (as had happened in _Parkview Hosp._), here debtor has a written trust document creating the fund and showing its intent with regard to the fund.  Thus, debtor's intent in creating the fund can be determined from the trust document itself, rather than from looking at debtor's actions over a period of years.  Second, as I have explained above, I do not agree that the purpose of the fund in this case is solely to benefit debtor.  It has as its purpose the furthering of the work of the church locally, nationally, and internationally.  Thus, the purpose to benefit the public is similar to, not different from, the purpose of the fund in _Parkview Hosp._

C.   Conclusion

I conclude that the Declaration of Trust created a valid, charitable trust, and that debtor is not the sole beneficiary of that charitable trust.  Therefore, the fund itself is not property of the bankruptcy

Page 31 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1  estate, as debtor holds legal but not the entire equitable title to the

2  fund.  <u>See</u> § 541(d).

3  III. <u>Debtor's beneficial interest in the fund and right to exercise
   certain powers over the fund as property of the estate</u>
4

5       As an alternative to a holding that the fund itself is property of

6  the bankruptcy estate, the TCC seeks a determination that debtor's

7  beneficial interest in the income of the trust is property of the estate,

8  as is its right to exercise the powers to amend, revoke, and direct

9  distribution of the fund.

10      A.   <u>Beneficial interest</u>

11      Property of the estate includes all legal or equitable interests of

12 debtor in property.  § 541(a).  As I have explained above, debtor is not

13 the sole beneficiary of this charitable trust.  It is, however, one of

14 multiple beneficiaries, and has a beneficial interest in the fund that is

15 limited to its receipt of a portion of the income from the trust to fund

16 the operating expenses of the Pastoral Center and its other programs, so

17 it can further the mission of the church.

18      The bankruptcy estate takes whatever interests a debtor has in

19 property as of the petition date, subject to the same limitations and

20 restrictions on the use of the property that existed prepetition.  <u>In re</u>

21 <u>Bishop College</u>, 151 B.R. 394, 398 (Bankr. N.D. Tex. 1993).  The estate

22 also includes "[a]ny interest in property that the estate acquires after

23 the commencement of the case."  § 541(a)(7).

24      The TCC first argues that the restrictions on use of the fund income

25 are illusory, because debtor has used the fund to pay tort liabilities

26

Page 32 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

Case 04-03292-elp   Doc 659   Filed 07/20/06

1  and as collateral to obtain financing for the plan.  The TCC points to

 2  evidence that debtor borrowed money from the fund to put into debtor's

 3  insurance fund to pay tort liabilities, and that it has offered the fund

 4  as collateral for a loan to fund debtor's reorganization plan, subject to

 5  the approval of the Archbishop and other financial advisors.  Deposition

 6  of Leonard Vuylsteke, Second Declaration of Albert Kennedy, Exh. 1 at 8-

 7  13.

 8      This evidence does not show that the restrictions on use of the fund

 9  are illusory.  The Declaration of Trust requires investment of the

10  principal to produce income.  The evidence is that the fund loaned debtor

11  money from the fund, at an interest rate of 7%, to replenish its

12  Insurance Fund, which had been depleted by the payment of claims.  Second

13  Declaration of Leonard Vuylsteke ¶ 6.  There is no evidence that the loan

14  to debtor was anything other than a legitimate investment of fund assets.

15      Further, the Declaration of Trust allows for use of the fund,

16  subject to approval of the Archbishop and the financial advisors for the

17  fund.  Leonard Vuylsteke testified in his deposition that the fund was

18  being offered as collateral for a line of credit to fund debtor's

19  proposed plan, "if it's approved by the archbishop" and the financial

20  advisors.  Second Declaration of Albert Kennedy, Exh. 1 at 12-13.  There

21  is no evidence that debtor has in fact pledged the assets of the fund for

22  a loan or that the use of the fund as collateral could not be consistent

23  with the fund's investment goals.

24      Second, the TCC argues that the restrictions on use are invalid

25  spendthrift trusts, because the fund is a self-settled trust.

26

Page 33 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
          FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
          PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

Case 04-03292-elp   Doc 659   Filed 07/20/06

Section 541(c)(2) provides that an interest of a debtor in property becomes property of the estate despite a restriction on transfer of that interest, unless the "restriction on the transfer of a beneficial interest of the debtor in a trust [is one] that is enforceable under applicable nonbankruptcy law[.]" § 541(c)(2). The TCC argues that what it views as the fund's restriction on the transfer of debtor's beneficial interest in the fund is a spendthrift provision that is not enforceable under applicable state law.

I disagree that the restrictions on use imposed by the Declaration of Trust make this a spendthrift trust. A spendthrift trust is one that provides funds for the beneficiary "while at the same time protecting the beneficiary not only from himself or herself, but also from his or creditors[.]" 76 Am.Jur.2d "Trusts" § 94 (2005)(footnote omitted). It is "one in which the beneficiary is unable to transfer, assign, or alienate his or her right to future payments of income or principal." Id. (footnote omitted). "A spendthrift trust can only be created by an express restraint on alienation; the trust agreement must include a spendthrift clause." Id. at § 95 (footnote omitted). Where a settlor of a trust is also the beneficiary, a restraint on the voluntary or involuntary transfer of the beneficiary's interest is invalid as against the beneficiary's creditors. Restatement (Second) of Trusts § 156(1).

Here, the Declaration of Trust limits the use of the income of the fund to certain specified purposes. It does not include a restraint on alienation. The restrictions on use of the income to fund the operating expenses of the Pastoral Center and to further the charitable purposes of

Page 34 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

1    the trust do not make the fund a spendthrift trust.

2         The TCC next argues that the restriction on use is invalid, because

3    debtor exercises dominion and control over the fund.  As I have explained

4    above, however, debtor's exercise of control is as a trustee for the

5    benefit of the multiple beneficiaries of the charitable trust.  The

6    Declaration of Trust requires debtor as trustee to administer the fund in

7    accordance with the Uniform Trustees' Powers Act, which requires it "to

8    act with due regard to his obligation as a fiduciary."  Uniform Trustees'

9    Powers Act § 3(b).  Debtor does not have the power to amend, modify, or

10   revoke the trust, nor does it have unfettered discretion about how to use

11   the income.  The Declaration of Trust preserves the principal and limits

12   the purposes to which the income can be put.  The TCC does not point to

13   any authority that would support a conclusion that the restrictions on

14   use of the charitable trust assets are invalid, based on the narrow

15   discretion given to debtor as trustee to administer the fund assets.

16        The TCC's argument on this point goes more to whether debtor is

17   acting in violation of its fiduciary duties as trustee in allowing use of

18   fund assets for uses other than those specified by the Declaration of

19   Trust.  If someone with standing asserts that debtor is violating its

20   fiduciary duties in administering the fund, that person may seek to hold

21   debtor accountable for that alleged violation.  That is not a question

22   that is before this court in determining what is property of the estate.

23        Finally, the TCC argues that public policy prohibits limiting the

24   use of the fund to those purposes set out in the Declaration of Trust.

25   It relies on the fact that charitable immunity has been abolished in

26

Oregon and reasons that, because charitable organizations are liable for their tortious acts, those organizations cannot create trusts that limit the use of the assets that are put into the trust.

The TCC does not cite any authority for the proposition that a charitable organization is precluded from limiting the use of property by placing it in a charitable trust. If a charitable organization attempts to place all of its assets beyond the reach of tort creditors by creating a trust and transferring all of its assets into the trust, there could be an argument that the transfer to the trust is fraudulent. See ORS 95.230. There is no argument here that the 1909 corporation transferred substantially all of its assets into the fund back in 1981, or that it created the fund in an attempt to place its assets beyond the reach of creditors.

I conclude that property of the estate includes debtor's beneficial interest in the income from the fund, subject to whatever restrictions on use of that income are enforceable under nonbankruptcy law. Thus, if income is distributed to debtor, subject to conditions on the use of the income in accordance with the provisions of the Declaration of Trust, and those conditions are enforceable under nonbankruptcy law, the estate takes that income subject to the conditions on use.

B. Debtor's powers as trustee

The TCC also argues that debtor's power that it can exercise over the trust for the benefit of debtor is property of the estate under § 541(b)(1). Property of the estate includes powers that debtor may exercise for its own benefit. See § 541(b)(1)(property of the estate

Page 36 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
    FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
    PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

Case 04-03292-elp   Doc 659   Filed 07/20/06

does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor[.]"). I have already held that debtor did not retain the power to modify, amend, or revoke the trust. Therefore, those are not powers that became property of the bankruptcy estate.

Debtor does have the power as trustee to direct distribution of the income (not the principal) of the fund to its Pastoral Center and other charitable uses, in accordance with the provisions of the Declaration of Trust. That power is property of the estate. However, that power may be exercised only as provided or limited by the Declaration of Trust, and in accordance with the Uniform Trustees' Powers Act.

IV. First Amendment and Religious Freedom Restoration Act (RFRA)

Debtor argues that the First Amendment and RFRA prohibit bringing the fund into debtor's bankruptcy estate. Because I have concluded that the fund is a valid charitable trust that is excluded from the estate, that any right debtor has as a beneficiary to income from that fund is limited by the restrictions imposed by the Declaration of Trust that are enforceable under nonbankruptcy law, and that debtor's powers as trustee must be exercised as provided in the Declaration of Trust, I need not consider the First Amendment and RFRA arguments.

CONCLUSION

The Declaration of Trust created a valid charitable trust. Therefore, debtor's Cross-Motion for Summary Judgment will be granted. Debtor's beneficial interest in and trustee's power to control the income from the trust assets are property of the bankruptcy estate, but are

Page 37 – MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)

subject to restrictions contained in the Declaration of Trust that are enforceable under nonbankruptcy law.  Therefore, the TCC's Fourth Motion for Partial Summary Judgment will be granted insofar as it seeks a declaration that debtor's beneficial interest in the income generated from the fund and debtor's power as trustee to direct distribution of the income are property of the estate, subject to enforceable restrictions on use set out in the Declaration of Trust.  The TCC's Fourth Motion for Partial Summary Judgment will otherwise be denied.  Mr. Levine shall submit the order.

###

cc:  Howard M. Levine
     Albert N. Kennedy
     Brad T. Summers
     Steven M. Hedberg
     Brad S. Copeland
     Phoebe Joan O'Neill
     James Ray Streinz

Page 38 - MEMORANDUM OPINION RE TORT CLAIMANTS COMMITTEE'S FOURTH MOTION
         FOR PARTIAL SUMMARY JUDGMENT AND DEBTOR'S CROSS-MOTION FOR
         PARTIAL SUMMARY JUDGMENT (PERPETUAL ENDOWMENT FUND)